1986 U.S. Dist. LEXIS 18531

ANNA CAP, Executrix of the Estate of MICHAEL C. CAP v. LOCAL 897 LABOR-MANAGEMENT HEALTH FUND, et al.

CIVIL ACTION No. 86-3271

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1986 U.S. Dist. LEXIS 18531

October 27, 1986, Decided; October 28, 1986, Filed

**CORE TERMS:** venue, motion to dismiss, concede, answers to interrogatories, interrogatory

**COUNSEL:** [*1]

Allan M. Tabas, Esquire, TABAS & ROSEN, for plaintiffs.

LOCAL 807 LABOR-MANAGEMENT HEALTH FUND, HUGH E. SHERIDAN, FRANK SCOTTO, ANDREW FERRARA, ARTHUR GOLDBERG, STUART OLTCHICK, JOSEPH F. MANGAN, JOHN HOHMAN, ROBERT J. RABBITT, JAMES O'ROURKE, BY: J. Warren Mangan Esq., BY: Ronald H. Surkin Esq. (6), for defendants.

**OPINIONBY:** FULLAM

**OPINION:** *MEMORANDUM AND ORDER*

FULLAM, Ch.J.

This is a case brought under the Employee Retirement income Security Act (ERISA). Plaintiff seeks to compel a labor-management health fund to pay certain hospital bills.

On June 23, 1986, defendants filed a motion to dismiss or transfer this case, arguing that venue was not proper in this district. After plaintiff responded and defendants replied, it became clear that certain factual matters remained unresolved. Accordingly, on September 3, 1986, I ordered that defendants' motion to dismiss or transfer the case would be held in abeyance for 30 days during which time the parties were to cooperatively complete discovery regarding the basis for venue in this court. The 30-day period has now expired. Only plaintiffs have seen fit to submit a supplemental memorandum defending their choice of venue here. [*2]

The relevant statute is 29 U.S.C. § 1132(e)(2). It authorizes venue for ERISA actions in districts where the defendant may be found. A defendant is considered to be found in a district if its contacts with the district are sufficient for the exercise of personal jurisdiction. Varsic v. United States District Court. 607 F.2d 245. 248 (9th Cir. 1979); Turner v. CF&I Steel Corp.. 510 F.Supp. 537. 542-43 (E.D. Pa. 1981). Thus, the question is whether defendants maintain minimum contacts with this district.

To support her venue contention, plaintiff propounded 16 interrogatories to defendants. In the answers to interrogatories 7 and 12, defendants concede that the Health Fund receives contributions for over 75 members from six firms whose principal places of business are in Pennsylvania, at addresses including Philadelphia, Sharon Hill, Wynnewood, Folcroft, and Reading. In the answers to interrogatories 14 and 16, the defendants concede that the Health Fund has provided coverage to 16 individuals who have resided in Pennsylvania, at addresses including Easton, Levittown, Philadelphia, Pipersville, Morrisville, and Coatesville, In the answer to interrogatory 15, defendants concede [*3] that the Health Fund has paid benefits to 16 hospitals located in Pennsylvania, at addresses including Meadowbrook, Lancaster, Bristol, Langhorne, and philadelphia. All of the foregoing addresses are within the Eastern District of Pennsylvania.

These answers make several points clear. First, defendants regularly receive money from businesses and pay benefits to pensioners in the Eastern District of Pennsylvania. Thus, defendants maintain continuous contacts, although such contacts involve only a small part of defendants' normal operations. Second, defendants from time to time negotiate with health care providers for covered medical care in this district. Thus, the particular type of contact at issue can be anticipated to occur, although on an irregular basis. Therefore, permitting defendants to be sued in this district, at least in litigation concerning care given in this district, does no violence to the probable expectations of the parties.

Accordingly, the motion to dismiss will be denied. An Order follows.

*ORDER*

AND NOW, this 27th day of October, 1986, it is ORDERED that defendants' motion to dismiss or transfer the case is DENIED.

2004 U.S. Dist. LEXIS 14653, *

LEXSEE 2004 U.S. DIST. LEXIS 14653

**KATHLEEN HATALA, et al., Plaintiffs vs. MOREY'S PIER, INC., et al.,
Defendants**

**CIVIL ACTION No. 03-4952**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

**2004 U.S. Dist. LEXIS 14653**

**July 28, 2004, Decided**

**DISPOSITION:** Action transferred to United States District Court for District of New Jersey.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Plaintiff, KATHLEEN HATALA: ANTHONY L. MARCHETTI, JR., CURETON CAPLAN PC, DELRAN, NJ. HENRY THOMAS HUNT, CURETON CAPLAN, PC, DELRAN, NJ.

For Plaintiff, DAVE HATALA, HER HUSBAND: ANTHONY L. MARCHETTI, JR., CURETON CAPLAN PC, DELRAN, NJ. HENRY THOMAS HUNT, CURETON CAPLAN, PC, DELRAN, NJ.

For Defendant, MOREY'S PIER, INC.: MICHELLE L. COREA, CAPEHART & SCATCHARD, PA, MOUNT LAUREL, NJ. TIMOTHY E. ANNIN, TIMOTHY E. ANNIN, L.L.C., MOUNT HOLLY, NJ.

For Defendant, MOREY'S PIER LAND CORPORATION: MICHELLE L. COREA, CAPEHART & SCATCHARD, PA, MOUNT LAUREL, NJ. TIMOTHY E. ANNIN, TIMOTHY E. ANNIN, L.L.C., MOUNT HOLLY, NJ.

For Defendant, MOREY'S PIERS CONCESSIONS, L.L.C.: MICHELLE L. COREA, CAPEHART & SCATCHARD, PA, MOUNT LAUREL, NJ. TIMOTHY E. ANNIN, TIMOTHY E. ANNIN, L.L.C., MOUNT HOLLY, NJ.

For Defendant, THE MOREY ORGANIZATION, INC.: MICHELLE L. COREA, CAPEHART & SCATCHARD, PA, MOUNT LAUREL, NJ. TIMOTHY E. ANNIN, TIMOTHY E. ANNIN, L.L.C., MOUNT HOLLY, NJ.

**JUDGES:** Pollak, J.

**OPINIONBY:** Pollak

**OPINION:**

**MEMORANDUM/ORDER**

July 28, 2004

Kathleen and David Hatala, citizens of Pennsylvania, have brought a diversity action in the District Court for the Eastern District of Pennsylvania [*2] for negligence, assault and battery, loss of consortium and punitive damages against Morey's Pier ("Morey's"), a New Jersey corporation, and several of its unnamed employees. Morey's owns and operates an amusement park located at Morey's Pier in Wildwood, New Jersey. The plaintiffs' complaint details the injuries alleged to have been suffered by Kathleen Hatala resulting from a ride on a Morey's amusement park slide with her daughter. Mrs. Hatala alleges that while she was writhing in pain following her ride and subsequent injuries, a Morey's employee identifying herself as a "medic" forced her to remove her shoe to assess the damage. Despite Mrs. Hatala's objections, the employee, it is alleged, apparently tried to take off her shoe, leading to additional pain and damage.

Currently before the court are (1) the defendants' motion to transfer venue from this court to the District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a), (2) the plaintiffs' response, (3) the

defendants' reply, and (4) supplemental briefs submitted in compliance with this court's request that the parties fully address the pertinence of 28 U.S.C. § § 1391 (a) [*3] and 1406(a).

Defendants in their initial and supplemental submissions argue that venue in the Eastern District of Pennsylvania is not proper under any of the three scenarios contemplated by § 1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The defendants initially contended that this court should transfer this civil action to New Jersey pursuant to § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might [*4] have been brought." 28 U.S.C. § 1404(a). Though the defendants also briefly invoked § 1406(a) in their initial submission, their supplemental memorandum requests a transfer by relying solely upon § 1406(a), which states that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The plaintiffs, in their initial submission, argued that venue was proper pursuant to § 1391(a)(1). The plaintiffs argued against a transfer of venue under § 1404(a), citing the private and public interest factors recognized by *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). n1 Their supplemental brief still argues that venue is proper under § 1391(a)(1), but also suggests that the defendants have waived any improper venue defense. n2 In the event the court finds venue improper here, the plaintiffs request that the court transfer venue, rather than dismiss the action, pursuant to § 1406(a).

n1 These factors were identified by *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947) in applying the doctrine of *forum non conveniens*. [*5]

n2 The plaintiffs argue that "in their Answer, the Defendants did not plead lack of jurisdiction or improper venue as an affirmative defense or avoidance of Plaintiffs' claims. Nor did Defendants request, in the pending motion, that the Court take action to dismiss the matter pursuant to 28 U.S.C. § 1391(a) or Section 1406(a). Defendants' failure to raise these issues should act as a waiver of any motion to dismiss based upon lack of personal jurisdiction or improper venue." Pl.'s Supp. Br. at 5. This contention is belied by PP14 and 16 of the Answer. At P14, the defendants denied this court's personal jurisdiction over them and stated "Venue in this matter lies with the United States District Court for the District of New Jersey." Paragraph 16 again denied that venue was proper in this district. Any concerns plaintiffs may have that this action will be dismissed are addressed by the fact that the defendants only seek a transfer of venue.

A review of the parties' submissions reveals that they essentially agree that venue is improper under § 1391(a)(2) and (3). Venue [*6] in the Eastern District of Pennsylvania is improper under (a)(2) because Mrs. Hatala's accident took place in New Jersey. Therefore, that is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (describing test for determining venue). Moreover (a)(3) is inapplicable because, although the defendants may be subject to personal jurisdiction in the Eastern District of Pennsylvania, New Jersey is a "district in which the action may otherwise be brought."

The parties disagree about the appropriateness of venue under § 1391(a)(1). Section 1391(a)(1) provides for venue "where any defendant resides, if all defendants reside in the same State." Section 1391(c) establishes that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Though the defendants concede that Morey's may be deemed a resident of the Eastern District

pursuant to § 1391(c), they point out that a female medic who the plaintiff intends to name as a defendant [*7] has a last known home address in Long Island City, New York. "Residence, for purposes of determining venue, is the place where an individual has [her] domicile or permanent home." *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 586 (E.D. Pa. 2003). Thus, under § 1391(a)(1), venue in the Eastern District of Pennsylvania would be improper, because all of the defendants do not reside here.

As venue is inappropriate in this district, this court will, in the interests of justice, transfer this action to the District of New Jersey, where the action could have been brought originally. *See* 28 U.S.C. § 1406(a). Since this action will be transferred to the District of New Jersey under § 1406(a), there is no need to consider the arguments raised by defendants' motion to transfer venue under § 1404(a).

Accordingly, it is hereby ORDERED that this action is TRANSFERRED pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the District of New Jersey.

BY THE COURT:

Pollak, J.

2005 U.S. Dist. LEXIS 4723, *

## GORDON L. JOHNSTON, Plaintiff, vs. EXELON CORPORATION, EXELON GENERATION COMPANY, LLC, and EXELON CORPORATION SENIOR MANAGEMENT SEVERANCE PLAN Defendants.

### CIVIL ACTION NO. 04-4040

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *2005 U.S. Dist. LEXIS 4723*

### March 23, 2005, Decided

**DISPOSITION:** Defendants' Partial Motion to Dismiss and Motion to Transfer Venue granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For GORDON L. JOHNSTON, Plaintiff: KIMBERLY H. ASHBACH, KIMBERLY H. ASHBACH, AMBLER, PA.

For EXELON CORPORATION, EXELON CORPORATION SENIOR MANAGEMENT SEVERANCE PLAN, Defendants: MATTHEW M. GUTT, EXELON BUS SERV CO, PHILADELPHIA, PA.

**JUDGES:** JAN E. DUBOIS, J.

**OPINIONBY:** JAN E. DUBOIS

**OPINION:**

ORDER AND MEMORANDUM
ORDER

AND NOW, this 23rd day of March, 2005, upon consideration of Defendants' Partial Motion to Dismiss and Motion to Transfer Venue (Doc. No. 4, filed November 22, 2004), Plaintiff's Opposition to Defendants' Partial Motion to Dismiss and Motion to Transfer Venue (Doc. No. 6, filed December 22, 2005), and the Reply Brief in Support of Defendants' Motion to Dismiss and Motion to Transfer Venue (Doc. No. 7, filed January 10, 2005), **IT IS ORDERED** that Defendants' Partial Motion to Dismiss and Motion to Transfer Venue is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Defendants' Motion to Transfer Venue is **DENIED**;

2. Defendants' Motion to Dismiss Count I of the Complaint as to Exelon Generation is **GRANTED**; and

3. By agreement, Defendants' Motion to Dismiss Count II of the Complaint is **GRANTED**.

**IT IS FURTHER ORDERED** [*2] that the caption of the Complaint is **AMENDED** so as to remove Exelon Generation as a defendant.

**IT IS FURTHER ORDERED** that a Preliminary Pretrial Conference will be scheduled in due course.

## MEMORANDUM

## I. BACKGROUND

Plaintiff was Director of Nuclear Oversight for Exelon Generation, a subsidiary of Exelon Corporation. On August 6, 2003, Exelon Corporation downsized and eliminated plaintiff's position. At that time, Exelon offered plaintiff the opportunity to participate in the Exelon Corporation Senior Management Severance Plan (the "Plan") which provided severance pay and other benefits to qualifying executives. As one of the requirements of the Plan, beneficiaries were required to sign a non-competition provision which prohibited them from obtaining employment in a "competitive business" without Exelon's written consent for a period of two years following termination of employment. Shortly after signing the non-competition provision, plaintiff accepted employment with Florida Power & Light Company ("FP&L").

After the time of plaintiff's termination, plaintiff contends that he had discussions with agents of Exelon concerning potential job opportunities [*3] for plaintiff in the energy industry. Plaintiff alleges that agents of Exelon told him that FP&L was not considered a "competitive business," and therefore, employment with FP&L would not violate the non-competition provision because it was geographically distant and was a regulated electric utility company. n1 Relying on these statements, plaintiff sought employment at FP&L. Exelon, upon learning that plaintiff had become employed at FP&L, terminated plaintiff's severance benefits.

n1 Plaintiff states that because the energy industry in Florida is regulated by the state, FP&L does not engage in direct competition with Exelon and Exelon is prohibited from entering Florida's energy market. (Compl. PP 32, 34).

On August 25, 2004, plaintiff filed the instant action under the Employee Retirement Income Security Act (**ERISA**), *29 U.S.C. § 1001, et seq.* Count I of the Complaint is a claim to recover benefits under the Plan pursuant to **ERISA**, *29 U.S.C. § 1132.* Count [*4] II of the Complaint states a claim for employer discrimination pursuant to **ERISA**, *29 U.S.C. § 1140,* alleging that defendants discriminated against plaintiff by permitting other similarly situated former employees to accept employment at FP&L and maintain their severance benefits. Plaintiff seeks specific enforcement of the Plan and/or an award of damages under the Plan.

Presently before the Court is Defendants' Partial Motion to Dismiss and Motion to Transfer Venue. Defendants move to dismiss Count I of the Complaint with respect to Exelon Generation and Count II of the Complaint in its entirety. Defendants also seek to transfer the case to the U.S. District Court for the Northern District of Illinois. Plaintiff, in his response to the Motion, agrees to dismiss Count II.

## II. Motion to Transfer Venue

Section 502(e)(2) of **ERISA**, *29 U.S.C. § 1132(e)(2)*, governs the determination of venue under the Act:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or [*5] may be found, and process may be served in any other district where a defendant resides or may be found.

2005 U.S. Dist. LEXIS 4723, *

Defendants acknowledge that venue is proper in this district under the third prong of the venue provision because Exelon Corporation "may be found" in Pennsylvania, but contend that transfer is appropriate "for the convenience of the parties" and "in the interest of justice" pursuant to *28 U.S.C. § 1404(a)*. Defendants argue that the case should be transferred to the Northern District of Illinois for the following reasons: (1) plaintiff is a resident of Florida; (2) the Plan is administered in Chicago; (3) Exelon Corporation is headquartered in Chicago; (4) many potential witnesses reside in Illinois, including eight individuals interviewed regarding the decision to deny plaintiff's claim for benefits, the individual who conducted the investigation in connection with plaintiff's claim for benefits, and several executives of Exelon Corporation and Exelon Generation; and (5) the breach, if any, occurred in Chicago, where the decision to deny benefits was made, or in Florida, where benefits would have been paid. n2

> n2 The Court notes that "the Third Circuit has provided no guidance for deciding where a breach of an **ERISA** plan takes place." *Keating v. Whitmore Mfg. Co., 981 F. Supp. 890, 892 (E.D. Pa. 1997)* (Van Antwerpen, J.). Plaintiff argues that the events underlying this action occurred in Chester County, Pennsylvania, where the plaintiff was employed by defendant. The Court need not resolve the issue of where the claim arose because it concludes that this issue is not dispositive of whether venue is proper in the instant case.

[*6]

Plaintiff, in opposition, argues that his choice of venue should not be disturbed and that defendants have not met their burden of demonstrating that the case should be transferred to Illinois. In support of his argument plaintiff states: (1) plaintiff was employed by defendant in this district and resided here for 16 years; (2) while plaintiff no longer resides in Pennsylvania, he maintains close, personal ties to Pennsylvania and travels here on a regular basis; (3) many of the witnesses reside and work in Pennsylvania, including Mark Relken, Exelon Nuclear Director of Human Resources for the Mid Atlantic Regional Operating Group, Ron DeGregorio, V.P. at Limerick, Bill Levis, V.P. of Mid Atlantic Operating Group, Jim Armstrong, Director Operations Support, Bob Braun, V.P. at Peachbotton, and several former Exelon employees/retirees; (4) the facts and circumstances giving rise to the claim occurred in Pennsylvania, including alleged conversations between plaintiff and agents of Exelon; (5) while several Exelon executives maintain their primary offices in Chicago, they travel regularly to Pennsylvania on business; and (6) depositions can be scheduled in Illinois or in conjunction [*7] with the executives plans to travel to Pennsylvania.

In determining whether venue is proper, the Court is guided by the Third Circuit's ruling that a plaintiff's choice of forum is of paramount concern and should not be lightly disturbed. *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d. Cir. 1970)*. While *§ 1404(a)* "gives the district courts discretion to decide a motion to transfer based on an individualized, case-by-case consideration of convenience and fairness, such motions are not to be liberally granted." *Dinterman v. Nationwide Mut. Ins. Co., 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998)*. The burden of establishing the need for transfer rests with the defendant. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*.

The Court concludes that venue is proper in Eastern District of Pennsylvania. While Illinois may be a more convenient forum for defendants' witnesses and production of documents, it does not appear from the record that the necessary witnesses and documents

would be "unavailable for trial" if venue is retained in the Eastern District of Pennsylvania. See *Jumara, 55 F.3d at 879* (the convenience [*8] of witnesses and location of records are relevant "only to the extent that the witnesses [and records] may actually be unavailable for trial in one of the fora"). Furthermore, a transfer to Illinois "would merely shift the inconvenience associated with choice of venue from [defendants to plaintiff]. This is insufficient to warrant a transfer of venue under *28 U.S.C. § 1404(a)." Trustees of the Nat'l Elevator Indus. Pension v. Ramchandani, 1999 U.S. Dist. LEXIS 3182 (E.D. Pa. Mar. 12, 1999)* (Giles, C.J.).

The Court's conclusion is also in accord with **ERISA's** broad policy of providing "ready access to the Federal Courts." *29 U.S.C. § 1001(b)*; see *Turner v. CF&I Steel Corp., 510 F. Supp. 537, 542 (E.D. Pa. 1981)* (quoting *Bonin v. Am. Airlines, Inc., 621 F.2d 635, 636, n.1 (5th Cir. 1980)* ("A potential **ERISA** plaintiff is granted a wide choice of Federal court venue.")). On this issue, the House Committee on Education and Labor's report on **ERISA** draft legislation stated:

> The enforcement provisions have been designed specifically to provide both the Secretary and beneficiaries [*9] with broad remedies for redressing or preventing violations of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and *to remove jurisdictional and procedural obstacles* which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.

H.R. Rep. No. 93-533, 93rd Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S. Code Cong. & Admin. News p. 4639, 4655 (emphasis added); see also *Keating, 981 F. Supp. at 891-92*.

In light of this authority and the strong presumption in favor of the plaintiff's choice of forum, defendant's motion to transfer venue is denied.

## III. Motion to Dismiss

### A. Standard of Review

A motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* tests the legal sufficiency of a complaint. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. In considering a motion to dismiss under *Rule 12(b)(6)*, a court must take all well-pleaded facts in the complaint as true and view them [*10] in the light most favorable to the plaintiff. See *Jenkins v. McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969)*. A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*.

### B. Discussion

#### 1. *Count I*

Defendants move to dismiss Count I of the Complaint with respect to Exelon Generation on the ground that Exelon Generation, plaintiff's employer, is not a proper defendant in an action to recover benefits under the Plan pursuant to *§ 502(a)(1)(B) of ERISA*. Defendant argues that only the "administrator" of the Plan is a proper defendant in an action to recover benefits under *§ 502(a)(1)(B)* and an employer is not a proper defendant.

Plaintiff takes the position that although an employer is not a proper party in a suit to

2005 U.S. Dist. LEXIS 4723, *

recover benefits, Exelon Generation can be held liable under **ERISA** as a fiduciary of the Plan because its executives had discretionary authority in the administration of the Plan. Moreover, plaintiff alleges that Exelon Generation is liable because it breached **[*11]** its fiduciary duty when its executives made affirmative misrepresentations regarding the non-competition provision resulting in the denial of plaintiff's benefits and discriminated against plaintiff by awarding benefits to similarly situated employees. (Pl. Brief at 3-4).

In their Reply, defendants argue that Exelon Generation did not assume a fiduciary role because there is no evidence that anyone other than the Plan administrator exercised any discretion with regard to the decision to deny plaintiff's benefits claim. Defendants take the position that even if Exelon Generation is found to be a fiduciary, plaintiff's claims should be dismissed because **ERISA** only authorizes fiduciary duty claims where a plaintiff is unable to obtain relief under **ERISA's** other enforcement provisions.

a. *Exelon Generation is a Fiduciary*

Under **ERISA,** a person is a fiduciary to the extent that the person exercises discretionary authority with respect to the management or administration of the plan. *29 U.S.C. § 1002(21)(A)*; *Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994)* ("the linchpin of fiduciary status under **ERISA** is discretion"). **[*12]** Plaintiff alleges that Exelon Generation executives exercised discretionary authority in denying plaintiff's benefits and that Exelon Corporation and the Plan simply "rubber stamped that decision." (Pl. Brief. at 6-7). Moreover, plaintiff avers that Exelon Generation's executives made affirmative misrepresentations to him that employment with FP&L would not violate the non-competition provision. Taking these allegations as true and viewing them in the light most favorable to the plaintiff, the Court concludes that Exelon Generation is a

fiduciary. *Id.* ("**ERISA** broadly defines a fiduciary"); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1500 (3d Cir. 1994)* (fiduciaries can be liable under § *502(a)(1)(B)* of **ERISA** if they mislead plan participants or misrepresent the terms of the plan).

b. *Plaintiff may not seek relief under* **ERISA** *§* *502(a)(3) against Exelon Generation*

**ERISA's** civil enforcement provision, *§* *502(a)(1)(B)*, allows a participant in an **ERISA** plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to **[*13]** future benefits under the terms of the plan." *29 U.S.C. § 1132(a)(1)(B)*. Under this section, a plan participant may file an action seeking damages for breach of fiduciary duty. *Haberern, 24 F.3d at 1501*.

*Section* *502(a)(3)* authorizes suits for individualized equitable relief for breach of fiduciary duty, *Ream v. Frey, 107 F.3d 147, 152 (3d Cir. 1997)*, and permits a beneficiary to sue: "(A) to enjoin any action or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *29 U.S.C. § 1132(a)(3)*. However, such relief is available only where a plaintiff has no alternative remedy under other provisions of § 502. See *Varity Corp. v. Howe, 516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996)*; *Ream v. Frey, 107 F.3d 147, 152-53 (3d Cir. 1997)*.

In *Varity Corp. v. Howe, 516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065*, the Supreme Court held that § *502(a)(3)* authorizes lawsuits for individualized equitable **[*14]** relief for breach of fiduciary duty, but cautioned that "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's

injury, there will likely be no need for further equitable relief, in which case such relief [i.e. under § *502(a)(3)*] normally would not be "'appropriate.'" *Id. at 515.* In concluding that relief was available under § *502(a)(3)*, the Varity Court stated that such relief was "appropriate" because the plaintiffs could not proceed under any other subsection of *502* and would therefore be without any remedy if § *502(a)(3)* relief was denied. See also *Ream, 107 F.3d at 152-53* (advising courts to use a cautious approach when considering granting "appropriate equitable relief" under § *502(a)(3)* and holding that "Ream, like the plaintiffs in Varity, had no alternative means of recovering for his losses").

In this case (unlike the plaintiffs in *Varity*) plaintiff has asserted a claim for benefits under § *502(a)(1)(B)*. Therefore, he cannot pursue the same claim based on breach of fiduciary duty under the "safety-net" provisions of § *502(a)(3)*. *Varity, 516 U.S. at 512 (section 502(a)(3)* [*15] acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that § *502* does not elsewhere adequately remedy"); see also *Kuestner v. Health & Welfare Fund of the Phil. Bakery Emplrs. & Food Driver Salesmen's Union Local No. 463, 972 F. Supp. 905, 911 (E.D. Pa.*

*1997) (DuBois, J.)* (granting defendants' motion to dismiss plaintiff's § *502(a)(3)* claim because plaintiff had available equitable relief under § *502(a)(1)(B)*); *Feret v. CoreStates Fin. Corp., 1998 U.S. Dist. LEXIS 11512, at *15-16 (E.D. Pa. July 27, 1998)* (Yohn, J.) (same); *Reilly v. Keystone Health Plan East, Inc., 1998 U.S. Dist. LEXIS 11337, *15-16 (E.D. Pa. July 27, 1998)* (same). For that reason, plaintiff's claims against Exelon Generation in Count I of the Complaint are dismissed.

### 1. Count II

Plaintiff, in his Opposition to defendant's Motion to Dismiss, agrees to dismiss of Count II of the Complaint. (Pl. Br. at 1). Therefore, Count II of the Complaint is dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants' Motion to Transfer Venue is denied. Defendants' Motion to Dismiss Count I of the Complaint as to [*16] Exelon Generation and Count II of the Complaint in its entirety is granted.

### BY THE COURT:

### JAN E. DUBOIS, J.

1989 U.S. Dist. LEXIS 4230

BARBARA KAUFMAN and MICHAEL KAUFMAN, h/w v. WILSON WORLD HOTEL, MAIN GATE and WILSON HOTEL MANAGEMENT CO.

Civil Action No. 88-9317

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1989 U.S. Dist. LEXIS 4230

April 20, 1989, Decided; April 24, 1989, Filed and Entered

**CORE TERMS:** Conflicts of Laws, statute of limitations, borrowing statute, limitations period, choice of law, dining room, accrues, two-year

**COUNSEL:** [*1]

Joseph J. Aversa, Esq., MANCHEL LUNDY LESSIN & GINSBURG, Philadelphia, PA

ALL DEFTS. BY: Donald M. Davis, Esq., MARGOLIS, EDELSTEIN, SCHERLIS SAROWITZ & KRAEMER, Phila., Pa.

**OPINIONBY:** WALDMAN

**OPINION:** *MEMORANDUM*

*JAY C. WALDMAN, UNITED STATES DISTRICT JUDGE*

*Presently before the court is the defendants' motion to dismiss the plaintiffs' complaint pursuant to Rule 12(b)(6). The defendants argue that the plaintiffs' claim is barred by the applicable two-year Pennsylvania Statute of Limitations. 41 Pa. Cons. Stat. Ann. § 5524 (Purdon Supp. 1988). Based on the following, the defendants' Motion will be granted.*

*The plaintiffs' complaint avers that the plaintiff, Barbara Kaufman, a citizen and resident of Pennsylvania, was injured on December 31, 1985, when she slipped and fell in the dining room of the Wilson World Hotel, Main Gate, Kissimmee, Florida. This action was commenced in this court on December 6, 1988, two years, eleven months and six days after the accident. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. 1332.*

*A federal court sitting in diversity is bound by the choice of law rules of the forum state. Guaranty Trust. 326 U.S. 99 (1945); Cowgill v. Raymark Industries. 780 [*2] F.2d 324, 328 (3d Cir. 1986): (citations omitted); Ross v. Johns-Mansville Corp., 766 F.2d 823, 286-28 (3d Cir. 1985). A Pennsylvania court will ordinarily apply the appropriate Pennsylvania statute of limitations. n1 Cowgill, 780 F.2d at 328; Ross 766 F.2d at 826; Alston v. Blue Streak Transp. Co., No. 88-7743, slip op. (E.D. Pa. April 12, 1989) (1989 U.S.*

*Dist. Lexis 3738); Sherman Industries Inc. v. Goldhammer, 683 F. Supp. 502, 505 (E.D. Pa. 1988); Owens v. LAC D'Amiante Du Quebec. 656 F. Supp. 981, 982 (E.D. Pa.), aff'd, 833 F.2d 305 (3d Cir. 1987); Recchion v. Westinghouse Elec. Corp. v. Kirby, 637 F. Supp. 1309, 1316 (W.D. Pa. 1986): Powell v. GAF Corp., 638 F. Supp. 25, 27 (M.D. Pa. 1986); see Rostron v. Marriott Hotels. 677 F. Supp. 801, 802 (E.D. Pa. 1986). Under Pennsylvania law, the plaintiffs' claim is time-barred because it is governed by the two-year Pennsylvania statute of limitations "applicable to injuries to the person caused by the wrongful act or neglect . . . or negligence of another." 42 Pa. Cons. Stat. Ann. § 5524 (Purdon Supp. 1988).*

n1 *This rule stems from the traditional practice among courts of distinguishing between procedural and substantive laws for the purpose of making choice of law determinations. See Sun Oil Co. v. Wortman. U.S. , 108 S. Ct. 2117 (1988); E. Scoles & P. Hay, Conflicts of Laws § 3.9 at 59-60 (1984). According to this practice, the law of the forum governs matters of procedure. See generally E. Scoles & P. Hay, Conflicts of Laws, §§ 3.8 -.12 (1984). Traditionally, statutes of limitations are considered procedural and thus are controlled by the law of the forum. See generally Sun Oil Co., 108 S. Ct. at 2122; cf. Ross. 766 F.2d at 826 (citing Freeman v. Lawton. 353 Pa. 613. 46 A.2d 205. 207 (1946)). Restatement (second) of Conflicts of Laws, § 142 comment e (April 15, 1986 Revision); E. Scoles & p. Hay, Conflicts of Law § 3.9 at 59-60 (1984). Recently, however, legislation in five states, modeled after the Uniform Conflicts of Law Limitations Act, has characterized statutes of limitations as substantive. E. Scoles & P. Hay, Conflicts of Laws, § 3.9 at 7 (Supp. 1988-89) (discussing the Uniform Conflict of Laws Limitations Act, 12 U.L.A. 46-49 (Supp. 1983). See also*

Page 1

1989 U.S. Dist. LEXIS 4230

*Restatement (second) of Conflicts § 142 Reporter's Note (April 15, 1986 Revision). Pennsylvania, however, has not adopted this approach. See 42 Pa. Cons. Stat. Ann. § 5521 (Purdon); Alston v. Blue Streak Transp. Co., No. 88-7743, slip op. (E.D. Pa. April 12, 1989) (1989 U.S. Dist. Lexis 3738) (applying § 5521 and Louisiana Law to claim arising from plaintiff's injuries suffered in New Orleans, Louisiana); cf. Hafer v. Firestone Fire & Rubber co. , 523 F. Supp. 1216, 1217-19 (E.D. Pa. 1981) (rejecting argument that § 5521 must be construed in terms of modern, flexible conflicts analysis (citing Mack Trucks Inc. v. Bendix-Westinghouse Automotive Air Brake Co., 392 F.2d 18, 20-21 (3d Cir. 1966), cert. denied, 387 U.S. 930 (1967)).*

[*3]

*The Pennsylvania borrowing statute, however, provides an exception to this general rule when the claim accrues outside Pennsylvania. See, e.g., Ross, 766 F.2d at 826; Sherman Industries, 683 F. Supp. at 505; Powell, 638 F. Supp. at 27. See generally E. Scoles & P. Hay, Conflicts of Laws § 3.11 at 62 (1984) (stating borrowing statutes are exception to traditional conflicts analysis and evidence legislative attempt to guard against false claims and forum shopping). The Pennsylvania borrowing statute provides that the limitations period "applicable to a claim occurring outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim occurred or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. Cons. Stat. Ann. § 5521 (Purdon 1981). A claim accrues where and when the last significant event essential to the cause of action occurs. Alston, No. 88-7743, slip op. (E.D. Pa. April 12, 1989); Rostron, 677 F. Supp. at 802; Powell, 638 F. Supp. at 27 (citing Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co., 372 F.2d 18 (3d Cir. 1966), cert. denied, 387 U.S. 930 (1967)); [*4] see Zelernik v. United States, 770 F.2d 20, 22 (3d Cir. 1985).*

*In this case, the plaintiffs' cause of action accrued in Florida where Barbara Kaufman fell in the dining room of the defendant hotel on December 31, 1985. See, e.g., Alston, No. 88-7743, slip op. (E.D. Pa. April 12, 1989); Ralston, 677 F. Supp. at 802. Since, as the parties agree, the applicable Florida statute of limitations is longer than the Pennsylvania limitations period, the Pennsylvania borrowing statute directs this court to apply the shorter Pennsylvania statute of limitations. 42 Pa. Cons. Stat. Ann. § 5521. See, e.g.,*

*Ross, 766 F.2d at 828; Sherman Industries, 683 F. Supp. at 505 n.4; Powell, 638 F. Supp. at 28.*

*Accordingly, since the plaintiffs have made no argument that the statute of limitations was tolled for any reason, the plaintiffs' complaint will be dismissed.*

*ORDER*

*AND NOW, this 24th day of April, 1989, upon consideration of the defendants' Motion to Dismiss and the plaintiffs' response thereto, it is ORDERED that the defendants' Motion is GRANTED.*

1995 U.S. Dist. LEXIS 177

GEORGE K. MOORE, Plaintiff, v. THE ST. PAUL COMPANIES, INC., et al., Defendants.

Civil Action No. 94-1329

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

1995 U.S. Dist. LEXIS 177

January 3, 1995, Decided

**NOTICE:**
PUB-STATUS: [*1] NOT FOR PUBLICATION

**CORE TERMS:** personal jurisdiction, venue, lack of personal jurisdiction, breach of fiduciary duty, subsidiary, early retirement, forum state, choice of forum, misrepresentation, transferee, convenience, reside, non-resident, prong, resident, retire, motion to dismiss, jury duty, retirement, jurisdictional, directorship, continuous, systematic, sponsor, situs, fiduciary duty, administrator, beneficiaries, non-party, motions to dismiss

**COUNSEL:** For Plaintiffs: LOWELL PETERSON, ESQ., MEYER, SUOZZI, ENGLISH & KLEIN, Mineola, NY. DAVID GROSSMAN, ESQ., SCHNEIDER, GOLDBERGER, COHEN, FINN, SOLOMON, LEDER & MONTALBANO, Kenilworth, NJ.

For Defendants: JOEL L. FINGER, ESQ., CARTER K. COMBE, ESQ., ROBERTS & FINGER, Parsippany, NJ.

**JUDGES:** ALFRED M. WOLIN, U.S.D.J.

**OPINIONBY:** ALFRED M. WOLIN

**OPINION: OPINION**

**WOLIN, District Judge**

This matter is before the Court upon the motions of defendants, The St. Paul Companies, Inc., The St. Paul Companies, Inc. Employees' Retirement Plan, Thomas W. McKeown, and Greg A. Lee to dismiss the complaint for lack of personal jurisdiction against them and for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the alternative, defendants have moved to transfer this case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

The Court has decided these motions upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons given below, the Court will grant the motion of defendant Grant A. Lee

and dismiss the complaint against him for lack [*2] of personal jurisdiction and improper venue. The Court will deny all the other motions to dismiss and the motions to transfer the case.

**BACKGROUND**

Defendants have not answered the complaint and base their motions upon the facts alleged therein. Finger Affidavit ("Aff.") P 4. Accordingly, the Court will consider its factual allegations to be true for the purposes of this motion.

Plaintiff Moore was an executive employee of the Seaboard Surety Company from July 7, 1964 until he retired on July 31, 1992. Moore is a New York resident, but he worked at Seaboard's New Jersey office from 1986 until his retirement.

Seaboard is a New York corporation with its headquarters in New Jersey. Seaboard is owned by the St. Paul Fire and Marine Insurance Company, which is in turn owned by defendant The St. Paul Companies, Inc. ("St. Paul") a Minnesota corporation with its principal offices in St. Paul, Minnesota. St. Paul sponsored and administrated several retirement and benefit plans (collectively defendant The St. Paul Companies, Inc. Employees' Retirement Plan) (the "Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 [*3] -1168.

Defendant McKeown is Vice President and Chief Administrative Officer of St. Paul and resides in Minnesota. Defendant Lee is Vice President of Human Resources of St. Paul. Plaintiff alleges that both are fiduciaries of the Plan.

In the first half of 1992, Moore began to consider his retirement from Seaboard. In June, he heard at third hand that St. Paul was about to announce an early retirement program. From this, Moore surmised that his retirement date might have an impact on the benefits he received. Accordingly, he asked non-party George F. Thompson, the President of Seaboard to make inquiries during an upcoming visit to St. Paul's home office whether the rumor of an impending early retirement plan were true.

1995 U.S. Dist. LEXIS 177

While in St. Paul, Thompson asked McKeown whether an early retirement plan would be made available later that year. McKeown told him that no such plan would be offered. In reliance on McKeown's representation, as transmitted by Thompson, Moore decided to retire effective July 31, 1992. Within weeks, St. Paul announced an early retirement program. A condition of eligibility was that the retiring persons be active employees on August 1, 1992. Moore appealed to the Plan [*4] for benefits under the early retirement plan and was denied.

Moore's complaint contains counts alleging that he is a victim of fraud, negligent misrepresentation and breach of the fiduciary duty owed by administrators of ERISA plans to their beneficiaries. In support of this Moore alleges that McKeown knew that his statement was untrue when he made it, and that McKeown knew that Moore was planning to retire that year. Moore further alleges that he relied on McKeown's statement in deciding to retire in July, and that, absent the statement, he would have retired in December of 1992.

Moore also alleges that he requested documents from defendant Lee showing that the early retirement plan was under consideration at the time McKeown spoke with Thompson. Moore wanted these documents to support his appeal within the company of the denial of benefits. Lee provided one document that was dated after Moore's effective retirement date. Moore alleges that other documents that would support his claim exist, and that Lee's failure to provide them was a violation of the duty he owes Moore as a participant in the plan.

## DISCUSSION

### 1. Dismissal for Lack of Personal Jurisdiction or Improper Venue [*5]

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over them, or in the alternative, for improper venue under Rule 12(b)(3). Logically, resolution of a question of personal jurisdiction should precede an issue of proper venue. However, as discussed below, the doctrine interpreting ERISA's venue provision, 29 U.S.C. § 1132(e), has subsumed the question of personal jurisdiction. The parties to this case have not briefed the questions separately. Consequently, the Court will deal with the jurisdiction and venue issues together.

The ERISA venue provision sets forth a three-prong test to determine whether venue is proper. It provides that:

Where an action under this subchapter is brought in a district court of the United States, it may be brought

[1] in the district where the plan is administered, [2] where the breach took place, or [3] where a defendant resides or may be found . . . .
29 U.S.C. § 1132(e)(2).

It is settled that the last prong, "where a defendant resides or may be found," states a test that is congruent with the minimum [*6] contacts analysis of International Shoe v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), used to determine whether personal jurisdiction over a particular defendant is consonant with the due process requirements of the United States Constitution. See Varsic v. United States District Court, 607 F.2d 245, 248-49 (9th Cir. 1979); see also I.A.M. Nat'l Pension Fund v. Wakefield Indus., 226 U.S. App. D.C. 102, 699 F.2d 1254, 1257 (D.C. Cir. 1983) (adopting Varsic's reasoning); Turner v. CF&I Steel Corp., 510 F. Supp. 537, 542 (E.D. Pa. 1981), aff'd, 770 F.2d 43, cert. denied, 474 U.S. 1058, 88 L. Ed. 2d 776, 106 S. Ct. 800 (1986); Folke v. Schaffer, 616 F. Supp. 1322, 1325 n.1 (D. Del. 1985).

Therefore, because its resolution will dispose of both the venue and personal jurisdiction questions, n1 the Court will first decide whether the defendants "may be found" in this jurisdiction [*7] for the purposes of section 1132(e)(2). International Shoe, 326 U.S. at 316, 66 S. Ct. at 158, held that a court may exercise personal jurisdiction over a non-resident defendant only where "minimum contacts" exist such that jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). The purpose of restricting personal jurisdiction to the limits of due process is to protect the individual interests of non-resident defendants. United States v. Morton, 467 U.S. 822, 828, 104 S. Ct. 2769, 2773, 81 L. Ed. 2d 680 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980).

- - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 This Court may exercise jurisdiction over any person who would be subject to the jurisdiction of the courts of the State of New Jersey. Fed. R. Civ. P. 4(e); see North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir.), cert. denied, 498 U.S. 847, 111 S. Ct. 133, 112 L. Ed. 2d 101 (1990). New Jersey's long-arm rule permits personal jurisdiction over non-resident defendants to the extent permitted by Fourteenth Amendment due process. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir.),

cert. denied, 454 U.S. 1085. 102 S. Ct. 642. 70 L. Ed. 2d 620 (1981).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*8]

A defendant establishes minimum contacts with a forum state by committing some act by which he purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. Hanson v. Denckla. 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958). These contacts must be of a type that the individual non-resident defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz. 471 U.S. 462, 474, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985) (citing World-Wide Volkswagen. 444 U.S. at 295, 100 S. Ct. at 566). What constitutes minimum contacts varies with the "quality and nature of the defendant's activity," Hanson. 357 U.S. at 253, 78 S. Ct. at 1240. The unilateral activity of a plaintiff claiming a relationship with a non-resident defendant does not suffice to create the requisite forum contacts. Id.; Helicopteros Nacionales de Colombia. S.A. v. Hall. 466 U.S. 408, 416, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984); [*9] Kulko v. Superior Court of California. 436 U.S. 84, 93-94, 98 S. Ct. 1690, 1698, 56 L. Ed. 2d 132 (1978).

Defendants can be subject to either specific or general personal jurisdiction in a forum state. Specific personal jurisdiction may arise from particular or sporadic contacts if the cause of action arises out of, or relates to the defendant's forum related activities. Helicopteros. 466 U.S. at 414 & n.8, 104 S. Ct. at 1872 & n.8.; North Penn Gas Co.. 897 F.2d at 690. There is sufficient due process contact for personal jurisdiction if the defendant purposefully has directed his activities at residents of the forum, and the litigation concerns injuries alleged to have resulted from those activities. Henry Heide. Inc. v. WRH Prods. Co.. 766 F.2d 105. 108 (3d Cir. 1985).

If a plaintiff's cause of action against a defendant does not arise out of the defendant's contacts with the forum state, the plaintiff must establish general personal jurisdiction over the defendant. Significantly more of a connection [*10] to the forum is required to establish general jurisdiction. Provident Nat'l Bank v. California Fed. Savs. & Loan Ass'n. 819 F.2d 434, 437 (3d Cir. 1987). Where defendant's activities in the forum are unrelated to the subject matter of the suit, plaintiff must show "continuous and substantial contacts" with the forum state. Helicopteros. 466 U.S. at 414-16 & n.9. 104 S. Ct. at 1872-73 & n.9;

Provident Nat'l Bank. 819 F.2d at 437. However, with either theory of personal jurisdiction, the focus is on whether the activities in the forum are such that defendant could reasonably foresee being made to answer in its courts. World-Wide Volkswagen. 444 U.S. at 297, 100 S. Ct. at 567.

One distinction may remain in the law between a Rule 12(b)(2) dismissal for lack of personal jurisdiction and a dismissal for improper venue under the ERISA statute. See I.A.M.Nat'l Pension Fund. 699 F.2d at 1257. Once a jurisdictional challenge has been raised, "then the plaintiff must [*11] sustain its burden of proof in establishing jurisdictional facts through sworn declarations or other competent evidence." Time Share Vacation Club v. Atlantic Resorts. Ltd.. 735 F.2d 61. 67 n.9 (3d Cir. 1984); see also Provident Nat'l Bank. 819 F.2d at 437. In contrast, the ERISA venue provision has been interpreted generously. Congress intended to provide "ready access to the Federal Courts," 29 U.S.C. § 1001(b), and "to remove jurisdictional and procedural obstacles." H.R. Rep. No. 93-533, 93d Cong., 1st Sess. 17, reprinted in 1974 U.S. Code Cong. & Admin. News at 4639, 4655 (1974). The Courts have noted that Congress "clearly struck the balance in favor of liberal venue." Varsic. 607 F.2d at 248.

Although the Court expresses no opinion on the matter, it might be argued that a plaintiff has less of a burden of proof in resisting a motion to dismiss for improper venue under section 1132(e)(2) than in resisting a motion to dismiss for lack of personal jurisdiction. In an excess of caution, the Court assures the parties that it is holding plaintiff [*12] to the burden of proof for personal jurisdiction set forth in Time Share Vacation. 735 F.2d at 67 n.9 (quoted supra). If plaintiff were to fail to carry this burden with regard to a particular defendant, the Court need not reach the venue question. If a defendant is subject to personal jurisdiction under the more rigorous standard, then, a fortiori, venue is proper.

### a. Defendant St. Paul and the Plan

The Court finds that there are sufficient contacts between St. Paul, the Plan and this forum to establish personal jurisdiction over both of them in New Jersey. Many of these contacts are associated with the Plan's coverage of Seaboard's employees in New Jersey as well as plaintiff's participation in the Plan. Thus, they give rise to both general and specific personal jurisdiction.

Over four hundred Seaboard employees were enrolled in the Plan. Plaintiff's brief at 8; Defendants' Reply brief at 4-5 (assuming this figure for the purposes of argument). The Plan received contributions from, and

made payments to Seaboard and its employees in New Jersey. n2 St. Paul employees in charge of administering the Plan reviewed the calculations of benefits [*13] due with Seaboard's personnel department. Id. P 14. St. Paul corresponded with Moore and other Seaboard employees concerning benefits under the Plan.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Moore opines in his brief that the Plan received contributions from Seaboard to cover its employees' accrued service time. Plaintiff's brief at 4. It has not been denied by defendants. Therefore, the Court will accept it as a working hypothesis.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Court finds that these contacts were purposeful, continuous and systematic. They were sufficient to put St. Paul and the Plan on notice that they might be sued here. Other courts, on similar facts, have come to same conclusion. The leading case, Varsic v. United States District Court, 607 F.2d 245 (9th Cir. 1979), held that the decision "to undertake the fiduciary duty of receiving contributions and making payments based upon work performed [within a jurisdiction], is sufficient to support in personam jurisdiction in that forum." Id. at 250.

Varsic [*14] noted that an ERISA plan purposefully places itself in a fiduciary capacity with regard to its beneficiaries within a particular forum and must anticipate being sued there. Id. Other courts have adopted Varsic's reasoning to hold that the presence of beneficiaries within a forum will, by itself, support a finding of personal jurisdiction over an ERISA plan. Ransom v. Administrative Comm., 820 F. Supp. 1429 (N.D. Ga. 1993). The Third Circuit has affirmed the Eastern District of Pennsylvania's adoption of Varsic's reasoning on slightly different facts. Turner, 510 F. Supp. 537 (plan was also administrated within the district).

Moreover, this line of ERISA cases is consistent with broader principles of personal jurisdiction law. In Burger King v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), the Supreme Court held that:

where the defendant deliberately has engaged in significant activity within a state, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself

of the privilege [*15] of conducting business there, and because his activities are shielded by the benefits and protections of the forum's law it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum.

Id. at 474.

As trustee of the Plan, St. Paul expressly assumed an ongoing fiduciary relationship with the plan participants. Moore Aff., Exhibit F. St. Paul employees communicated with Moore concerning his benefits. Moore Aff., Exhibit C. They made determinations as to how much Moore was due. Id., Exhibit D. The Court finds that this pattern of significant activity and ongoing relationship with Moore and other New Jersey-based Seaboard residents show the type of purposeful availment that will create personal jurisdiction under Burger King. Moreover, by directing this type of activity at New Jersey, New Jersey workers, and in particular Moore, they could "reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567.

The Court need not consider St. Paul and the Plan separately for [*16] this minimum contacts analysis. The ERISA statute establishes that a plan may be sued as an entity. 29 U.S.C. § 1132(d). It does not mandate that a plan and its sponsor are independent entities for other purposes. Turner held that the a plan had minimum contacts with the forum based on the sponsor's presence there because the sponsor exercised control over the plan and its employees administered it. 510 F. Supp. at 543. Similarly, the activities of St. Paul employees, discussed above, in determining benefits under the plan show that the contacts of the Plan are the contacts of St. Paul.

Defendants argue that plaintiff is attempting to ascribe the residence of the subsidiary Seaboard to its parent St. Paul. They argue that this is contrary to the case law which holds that parent and subsidiary are presumed to be distinct for personal jurisdiction purposes. As a statement of the law, defendants are correct. Cannon Mfg. v. Cudahy Packing Co., 267 U.S. 333, 336-37, 45 S. Ct. 250, 251, 69 L. Ed. 634 (1925); Garshman v. Universal Resources Holding, Inc., 641 F. Supp. 1359 (D.N.J. 1986), [*17] aff'd, 824 F.2d 223 (3d Cir. 1987). Plaintiff must carry the burden of showing that the corporate parent "actually controls the activities of the subsidiary." Id. at 1364. The Court looks at the totality of the circumstances, id., to determine whether the one company is the "alter ego" of the other. Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1067 (M.D. Pa. 1993).

St. Paul's sole ownership of its subsidiary is not sufficient to establish jurisdictional contacts. Garshman. 641 F. Supp. at 1364. Plaintiff has testified that six of the sixteen members of Seaboard's board of directors were St. Paul officers. Moore Aff. P 10. However, common directorships, while evidentiary, will not require a finding of personal jurisdiction over the parent. Clark. 811 F. Supp. 1061; Savin Corp. v. Heritage Copy Prods.. Inc.. 661 F. Supp. 463, 469 (M.D. Pa. 1987) (four of twelve directors did not establish an alter ego).

Moore has also testified that St. Paul and Seaboard were in constant contact on matters [*18] of operation, policy, and reporting profits to the corporate parent. Moore Aff. PP 4, 6-9. In other contexts, this type of connection might lead to a finding that the parent was present in the jurisdiction of its subsidiary. In this case, however, the Court finds that plaintiff has fallen short of showing that an alter ego relationship exists.

Defendants' argument does not carry the day, however, because, as discussed above, sufficient contacts exist between St. Paul, the Plan and this forum independent of the parent/subsidiary relationship. In addition, St. Paul had a contractual relationship with Seaboard, whereby St. Paul provided personnel services to its subsidiary for a fee. Moore Aff. P 5. The record does not reveal the specifics of the services provided, but presumably they involve activities which overlap those required to administrate employee benefits under the Plan. The Court finds that the activities directed to New Jersey by St. Paul employees under this contract and the fees it received provide further evidence of the type of the systematic contacts and purposeful availment that will subject St. Paul to personal jurisdiction in this forum.

St. Paul's reliance on McFarland v. Yegen. 699 F. Supp. 10 (D.N.H. 1988) [*19] is misplaced. There the complaint charged mismanagement of the assets of an ERISA employee stock option plan. The court stressed that Varsic was not persuasive, because there was no allegation of a denial of benefits, or breach of fiduciary duty owed to the participants in the forum. Id. at 14-15. Furthermore, the plan itself was not named as a defendant. In this case, denial of benefits and breach of fiduciary duty by the Plan and its sponsor are at the heart of the complaint. Moreover, McFarland turned on the situs of the breach of fiduciary duty by the individual administrator. "Where the breach took place" will determine venue under the second prong of section 1132(e)(2). Because the Court has determined that St. Paul and the Plan may be found in this forum (section 1132(e)(2) (prong three)), the question of where the breach took place is not crucial to the issue of personal jurisdiction or venue over them. The

implications of McFarland for the exercise of personal jurisdiction over individual plan administrators is discussed below. Finally, to the extent McFarland held that an ERISA plan is not subject to personal jurisdiction in [*20] the forum where its beneficiaries work and earn credits, this Court must decline to follow the District of New Hampshire and join the majority of jurisdictions that apply Varsic's reasoning.

**b. Defendant McKeown**

The complaint names defendant McKeown individually, charging fraud, negligent misrepresentation and breach of fiduciary duty owed to plaintiff pursuant to the plan. It is not disputed that McKeown resides in Minnesota, and that his activities with regard to the Plan take place there. On the other hand, there is evidence that McKeown visited Seaboard's offices on "more than one occasion," and that he was a member of Seaboard's board of directors for a period preceding that during which the acts complained of took place. Moore Aff. P 9-10; McKeown Reply Aff. P 5.

It is apparent that McKeown's contacts with this forum are not of the systematic and continuous variety necessary to establish general personal jurisdiction as set forth in Helicopteros. See 466 U.S. at 414-16, 104 S. Ct. at 1872-73. Directorship of a New Jersey corporation does not constitute the kind of continuous and systematic contact that would [*21] subject one to personal jurisdiction here on a claim unrelated to that directorship. There is no showing that McKeown's visits to Seaboard were connected to the business of the Plan. Absent any contrary evidence, the Court must presume that both his directorship and his visits to Seaboard were connected to his duties as an executive of the parent corporation in the normal course of overseeing its subsidiary. If this type of connection will not establish general personal jurisdiction of the parent corporation, see e.g., Clark. 811 F. Supp. at 1067 (discussed above), then it follows that it will not establish jurisdiction over the parent's employee either.

Therefore, if personal jurisdiction is to be asserted over McKeown, it must be of the specific variety. His contacts with the forum must arise from the acts complained of by the plaintiff. Helicopteros. 466 U.S. at 414-16. 104 S. Ct. at 1872-73. Obviously the alleged misrepresentation took place in Minnesota. However, it is claimed that McKeown knew Thompson's inquiry was made on behalf of Moore, a New Jersey employee. Complaint P 22. Moreover, [*22] it is alleged that McKeown knew that Moore was to retire soon, and that Moore's decision on a retirement date depended on whether an early retirement plan was imminent. Id. P 22-24. Finally, implicit in the count alleging fraud by McKeown, is the allegation that McKeown

misrepresented the likelihood of an early retirement plan with the intent to cause Moore to retire too early to qualify for the new plan.

Assuming the truth of the allegations, n3 it was foreseeable to McKeown that the harm from his misrepresentation in Minnesota would accrue in New Jersey, where Moore relied on it. Certainly one whose utterance injures someone in another state may foresee being sued there. Calder v. Jones, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984). New Jersey holds that a defendant whose fraudulent communication by mail and telephone harms a New Jersey plaintiff is subject to personal jurisdiction in its courts. Lebel v. Everglades Marina, Inc., 115 N.J. 317, 325-26, 558 A.2d 1252, 1256 (1989). The Court can see no distinction based on the fact that the tortious [*23] communication was carried by the innocent messenger, Thompson. See also Vishav Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1066 (4th Cir. 1982) ("'Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.'") (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The Court reiterates that defendants have conceded the facts alleged in the complaint for the purpose of these motions. Finger Declaration P 4 ("The facts upon which this motion is based are those alleged in Plaintiff's Complaint.").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Thus, taking the allegations as true, McKeown's misrepresentation, uttered in Minnesota but directed toward and acted upon in New Jersey, constitutes a contact with this state from which the cause of action arises. Jurisdiction over a nonresident tort defendant can be conferred [*24] by a single deliberate contact with New Jersey where that contact results in the alleged injury. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). Accordingly, this Court finds that it has personal jurisdiction over defendant McKeown. As with defendants St. Paul and the Plan, where personal jurisdiction exists, it follows under Varsic that McKeown may be "found" here for the purposes of determining proper venue under 29 U.S.C. § 1132(e)(2) as well.

**c. Defendant Lee**

Defendant Lee is also alleged to be a fiduciary under the Plan. Like McKeown, he resides in Minnesota and all of his activities with relation to the Plan take place there. He is not alleged to have visited New Jersey in connection with this or any other matter. However, unlike McKeown, he is not alleged to have taken part in the misrepresentation which led to Moore's premature retirement. Moreover, Lee did not join St. Paul until after Moore retired.

Lee's contacts with Moore consist of providing him with documents as requested for his intra-company appeal of the denial of benefits, denying his appeal, [*25] and a sending a letter to that effect to his counsel in New York. Moore's claim against Lee individually is not based on the denial of benefits itself, but solely on an alleged failure to provide him with more documents that Moore presumes exist. Complaint P 65-66. Moore claims that this was in breach of the fiduciary duty Lee owes him as an administrator of the Plan. Id. P 66.

Moore's assertion that personal jurisdiction over Lee exists in this district depends on the premise that the situs of a breach of fiduciary duty under an ERISA plan lies in the place where the participants live or work. The Court notes that while "the place where the breach took place" is dispositive in determining venue under the second prong of 29 U.S.C. § 1132(e)(2), it does not solve the question of personal jurisdiction. As to this predicate question, the burden remains on plaintiff. Time Share Vacation, 735 F.2d at 67 n.9. The Court finds that, even taking into consideration "where the breach took place" on the jurisdictional issue, plaintiff has not sustained his burden by showing that under the cases construing this prong of section [*26] 1132(e)(2) that Lee's alleged breach would be considered to have occurred here.

The issue is confused by the fact that there are two types of breach possible under an ERISA plan. The location of the breach depends on which type of breach is alleged. DiGiovannantonio v. Local 153 Pension Fund, 1992 U.S. Dist. LEXIS 8331, No. 91-7172, 1992 WL 164953 (E.D. Pa. June 10, 1992). The first concerns a breach that results in a denial of benefits, and states a claim for breach of the terms of the plan itself. Courts have recognized that an allegation of a breach of fiduciary duty may in fact state this type of breach. Brown Schools, Inc. v. Florida Power Corp., 806 F. Supp. 146, 151 (W.D. Tex. 1992) (alleged breach of fiduciary duty from misrepresentation that cause a denial of benefits was better characterized as a breach of the terms of the plan). Cf. Sanders v. State Street Bank & Trust Co., 813 F. Supp. 529, 533 n.1 (S.D. Tex. 1993) (action denying a plan benefit may be

a breach of fiduciary duty). Whether the breach is characterized as one of fiduciary duty or of the terms of the plan is of purely intellectual interest. In either event, this type of [*27] breach has its situs in the place where the participants work or live. DiGiovannantonio, 1992 U.S. Dist. LEXIS 8331, 1992 WL 164953, at *1; Brown Schools, 806 F. Supp. at 151; Sanders, 813 F. Supp. at 533 n.1.

The second type of breach concerns wrongdoing that does not directly concern a denial of plan benefits, but involves other matters concerned with administrating the plan. This type of breach occurs where the duties imposed were to be performed. DiGiovannantonio, at *1; McFarland v. Yegen, 699 F. Supp. 10 (D.N.H. 1988). For example, in McFarland, an alleged breach of fiduciary duty for mismanagement of the assets of an ERISA employee stock option plan was held to have taken place in the district where the defendant managed the assets. Id. at 13.

The Court finds that this is a case of the second type of breach. Plaintiff has not argued that providing documents for an intra-company appeal is considered one of the benefits of the plan. It is only indirectly concerned with the denial of benefits. In fact, it appears to be more closely akin to a dispute over discovery in a litigation [*28] matter. The Court is reluctant to recast this type of controversy into a substantive issue upon which the core question of personal jurisdiction may turn.

Moore's entitlement to documents under St. Paul's appeal process does not change the equation. Being entitled to documents to substantiate a claim does not automatically raise that entitlement to the dignity of a plan benefit. The Court notes that this conclusion has no bearing on whether a failure to provide information is actionable. It is concerned here only with the situs of the failure under the applicable ERISA case law, insofar as that determination may guide its personal jurisdiction inquiry.

Accordingly, the Court finds that "where the breach took place" was Minnesota, where the duties imposed were to be performed. Consequently, the acts complained of will not support personal jurisdiction. Because plaintiff has failed to establish that the breach occurred in New Jersey, and because it does not appear that the defendant Lee has any other substantial contacts to this forum, this Court finds that it does not have personal jurisdiction over him. Accordingly, the counts against him in the complaint will be dismissed.

2. [*29]   Transfer of Venue Under 28 U.S.C. § 1404(a)

Defendants seek a transfer of venue from this Court to the United States Court for the District of Minnesota under 28 U.S.C. § 1404(a), which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Moore does not dispute that this action originally could have been brought in the District of Minnesota. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n4 Prior to transferring any case, a district court must determine whether venue is proper in the transferee court and whether defendants are subject to personal jurisdiction in transferee court's forum state. Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 306 & n.7 (D.N.J. 1989). Obviously, the District of Minnesota satisfies the requirements of a potential transferee forum in the instant action.

- - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The decision [*30] whether to transfer an action rests in the sound discretion of the trial court "appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum or another." Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 632 (3d Cir. 1989); Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973). In making its determination, the Court will consider certain factors enunciated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947). These factors (the "Gulf Oil factors") fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice.

Factors in the first group are: (1) plaintiffs' choice of forum; (2) the ease of access to sources of proof; (3) the availability and cost of compulsory process for unwilling witnesses; (4) any obstacles to a fair trial; and (5) in general, all other factors relating to the expeditious and efficient adjudication [*31] of the dispute. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n5 The Court will not address two additional Gulf Oil private factors: the enforceability of any possible judgment and the availability of impleader. The

1995 U.S. Dist. LEXIS 177

Supreme Court conceived the Gulf Oil factors in a case involving forum non conveniens. Courts have turned to the Gulf Oil factors for guidance in section 1404 cases. See Sandvik, 724 F. Supp. at 307 n.8. These additional factors are not relevant to the transfer of actions between federal district courts.



- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Factors in the second group include: (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating localized disputes; and (4) the appropriateness of having the jurisdiction whose law will govern adjudicate the dispute in order to avoid difficult problems in conflicts of laws. Id.; see Sandvik, 724 F. Supp. at 307; Hardaway Constructors, Inc. v. Conesco Indus., Ltd., 583 F. Supp. 617, 619-20 (D.N.J. 1983).

**a. The Private Factors**

In weighing the Gulf Oil factors, this Court must generally defer to plaintiff's choice of forum unless the balance is tipped strongly in favor of transfer. See Gulf Oil, 330 U.S. at 508, 67 S. Ct. at 843; Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910, 91 S. Ct. 871, 27 L. Ed. 2d 808 (1971). Plaintiff's choice of forum is accorded less consideration when the nucleus of operative facts is outside the forum state. Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 481 (D.N.J. 1993). "The preferred forum is that which is the center of gravity of the accused activity." S.C. Johnson & Son v. Gillette Co., 571 F. Supp. 1185, 1188 (N.D. Ill. 1983).

Here, however, the "center of gravity" appears ambiguous. On one hand, the decisions by St. Paul and the Plan with regard to Moore's benefits [*33] were taken in Minnesota. McKeown's alleged misrepresentation was uttered in Minnesota. On the other hand, Moore earned credits towards benefits under the Plan over the course of a six-year career in New Jersey. As discussed above, it is alleged that McKeown's misrepresentation was directed toward New Jersey, and the harm it caused took effect here. Accordingly, the Court cannot find that the "center of gravity of the accused activity" is so tilted toward Minnesota as to overcome the presumption in favor of plaintiff's choice of forum.

The second and third of the Gulf's private factors are the relative ease of access to sources of proof offered by the two forums, and the availability and cost of compulsory process for unwilling witnesses. In addressing these two Gulf Oil factors, the Court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant" to plaintiff's claims or defendant's potential defenses. Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S. Ct. 1945, 1952, 100 L. Ed. 2d 517 (1988). [*34]

The Court finds that the ease of access to documentary evidence weighs slightly in favor of transfer. Documentary evidence concerning the development of the early retirement plan, if it exists, would be in St. Paul's offices in Minnesota. However, in light of the allegations of large amounts of information that pass between St. Paul and its subsidiary in New Jersey, it can hardly be said that bringing those documents here would be a hardship on defendants.

Under Gulf Oil, the Court must determine and balance the convenience of party and non-party witnesses. Ricoh, 817 F. Supp. at 484. "The convenience of both party and non-party witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991). Despite the importance of this factor, the facts presented do not present a compelling case for transfer.

Defendant McKeown, once a director of Seaboard, cannot claim that travel here is onerously inconvenient. St. Paul employees no doubt continue to visit Seaboard regularly as it is alleged they did [*35] during Moore's tenure there. This undermines St. Paul's argument that sending its employees here to defend the action would be inconvenient. On the other hand, there is no evidence that Moore ever travelled to St. Paul during his career. Furthermore, Moore's resources as an individual litigant would presumably be far more taxed if he had to travel to Minnesota to prosecute this matter, than would those of a large corporation like St. Paul if required to appear here. Thus, the Court must conclude that this factor weighs somewhat against transfer.

In conjunction with witness convenience, the Court must also consider witness availability. The Third Circuit has recognized the burden that confronts litigants and the trial court when key, non-party witnesses are not willing to testify and are beyond the reach of the court's compulsory process. Lacey v. Cessna Aircraft Co., 932 F.2d 170, 183 (3d Cir. 1991). Defendants state that their witnesses will be St. Paul employees, located in Minnesota with the exception of consultants located in Illinois. Schendel Affidavit P 8. Presumably, these persons are under defendants'

control. On the other hand, Moore may need [*36] to call Thompson, who might not be amenable to process in Minnesota. Thus, this Gulf Oil factor is either neutral or weighs against transfer.

Based upon the parties' submissions, the Court finds that Gulf Oil's private factors do not favor transfer. Neither the location of evidence, nor the convenience and availability of witnesses are so clearly weighted toward transfer as to overcome the presumption in favor the plaintiff's choice of forum.

**b. The Public Factors**

In addressing defendants' transfer motion, the Court should consider relative docket conditions or calendar congestion in the transferor and transferee jurisdictions to determine whether transfer would unduly delay adjudication of the claims presented. Gulf Oil, 330 U.S. at 508-09, 67 S. Ct. at 843. This Gulf Oil factor is not decisive, but may be given some weight. See Hernandez, 761 F. Supp. at 991. This Court would not consider the size of its own docket to be a valid reason to transfer a case. This factor would only come into play where a movant requested transfer to a more congested district than our own. The [*37] Court finds the District of New Jersey has a slightly heavier case load. New Jersey had 387 cases filed per judge, compared to 366 per judge in Minnesota. Administrative Office of the United States Courts, Federal Court Management Statistics 56, 115 (1993). Obviously, transfer would not increase the time for this matter to be adjudicated. In weighing this factor, the Court concludes that it does not counsel against the transfer.

Under Gulf Oil, the Court must also be aware of the local interests implicated by this lawsuit in the respective districts or, more specifically, in the communities in which they sit. Ricoh, 817 F. Supp. at 486. Along these same lines, the burden of jury duty should not be "imposed upon the people of a community which has no relation to the litigation." Gulf Oil, 330 U.S. at 508-09, 67 S. Ct. at 843; see also Ferens v. John Deere Co., 494 U.S. 516, 529-30, 110 S. Ct. 1274, 1282-83, 108 L. Ed. 2d 443 (1990) (28 U.S.C. § 1404(a) does not exist solely for the benefit of [*38] the moving party).

In this case there are factors that favor both the transferor's and transferee's local interests. New Jersey has a local interest in this litigation that would justify imposing the burden of jury duty on its citizens. Moore and hundreds of coworkers were employed here and participated in the Plan. Clearly New Jersey has a local interest in the fair administration of benefits plans for its workers. On the other hand, it cannot be said that Minnesota has no relation to the litigation. Defendants

reside there. St. Paul is doubtless a major employer there. On these facts, the burden of jury duty would not be an unjustifiable burden on the citizens of either New Jersey or Minnesota.

Other Gulf Oil factors, both public and private, do not seem to have any application to this case. The choice of law factor is irrelevant where the central claim is based on the federal ERISA statute. The Court does not see how the factor concerned with obstacles to a fair trial in the transferor or transferee court would be implicated in this situation.

After weighing the several relevant Gulf Oil factors, the Court does not see any compelling reason to disturb the plaintiff's choice [*39] of forum. The private factors are at best ambiguous. The public factors do not require transfer. Accordingly, the motion to transfer venue will be denied.

**CONCLUSION**

Accordingly, the motion to dismiss the complaint against defendant Greg A. Lee for lack of personal jurisdiction and improper venue is granted. The Court finds that there are insufficient contacts between this defendant and the forum to assert personal jurisdiction over him in this case. The other defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied. Their connections with this forum are ample to sustain the assertion of personal jurisdiction over them, and consequently venue is also proper. The motions in the alternative to transfer the case to the District of Minnesota are also denied. After balancing the necessary factors, the Court finds insufficient reason to disturb the plaintiff's choice of forum.

An appropriate order is attached.

Dated: January 3, 1995

ALFRED M. WOLIN, U.S.D.J.

ORDER

In accordance with the Court's Opinion filed herewith,

It is on this day of January, 1995,

ORDERED that the motion to dismiss the complaint against defendant Greg A. Lee for [*40] lack of personal jurisdiction and improper venue is granted and the complaint is dismissed as to that defendant only; and it is further

ORDERED that the other defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied; and it is further

1995 U.S. Dist. LEXIS 177

ORDERED the motions to transfer the case to the District of Minnesota are denied.

ALFRED M. WOLIN, U.S.D.J.