1986 U.S. Dist. LEXIS 20854

GARY PALKA, Plaintiff, v. THEODORE M. HYLWA, M.D., INC., and THEODORE M. HYLWA, M.D.,
Defendants

CIVIL ACTION No. 85-2480

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

1986 U.S. Dist. LEXIS 20854

September 3, 1986, Decided and Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** In an action brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., plaintiff employee sought to recover pension benefits and to obtain injunctive relief from defendant employers' alleged violations of ERISA.

**OVERVIEW:** The employee sought to recover pension benefits and to obtain injunctive relief arising from the employers' alleged violations of ERISA. The court denied the employers' motion to dismiss for improper venue. The employee was entitled to payment at his residence in Kansas and that was where the employer was found; therefore, venue was proper under 29 U.S.C.S. § 1132(e). The court denied the employers' motion to transfer under 28 U.S.C.S. §1404(a) because the expense of bringing witnesses from out of state did not justify a change of forum. The court also denied a stay of discovery. However, the court allowed the employee to amend his complaint to add defendants because there was no undue delay or prejudice to the employers. The court conditioned the permissive joinder under Fed. R. Civ. P. 18, 20 and required that the employee establish an independent basis for jurisdiction over the additional defendants because they were not proper parties to the ERISA claim.

**OUTCOME:** The court denied the employers' motions to dismiss, to transfer, and to stay discovery in the employee's ERISA action. The employee's motion to amend his pleadings to add parties was granted, provided that an independent basis for jurisdiction, other than ERISA, was established.

**CORE TERMS:** venue, pension, motion to amend, amend, discovery, misrepresentation, administered, compulsory process, occurrence, reside, pension plan, joinder, motion to dismiss, pension benefits, properly joined, cause of action, choice of forum, proper parties, proper venue, moving party, civil action, undue delay, administrator, beneficiary, attendance, fiduciary, breached, managed, advisors, Catanzarite Law

LexisNexis(TM) Headnotes

*Civil Procedure > Venue > General Venue*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN1]Under 29 U.S.C.S. § 1132(e)(2), an Employee Retirement Income Security Act of 1974, action may be brought in the district where the plan is administered, the breach took place, the defendant resides, or the defendant can be found.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures*

[HN2]An Employee Retirement Income Security Act of 1974 plan is "administered" at the location(s) where the plan is managed, rather than where the benefits are distributed.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN3]For a transfer of venue to be proper, the moving party must show that venue is proper in both the transferor and transferee districts and that the transfer is for the convenience of parties and witnesses and is also in the interest of justice. The party seeking the transfer carries the burden of showing that the action should be transferred. Furthermore, a plaintiff's choice of forum should not be disturbed unless the balance of the consideration is strongly in the moving party's favor. Additional consideration is properly given when the plaintiff has chosen the forum in which he resides. When considering a motion for a 28 U.S.C.S. § 1404(a) transfer, the mere shifting of inconvenience from one party to another is insufficient to support the transfer. Another factor to consider is the interest of justice.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

1986 U.S. Dist. LEXIS 20854

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN4] 29 U.S.C.S. § 1132 allows a participant or beneficiary to bring an action: to recover benefits due, enforce rights under the plan, or clarify rights under the plan, 29 U.S.C.S. § 1132(a)(1)(B); to recover a statutory penalty from an administrator for refusing to supply requested information, 29 U.S.C.S. §§ 1132(a)(1) (A), (c); or to obtain equitable relief 29 U.S.C.S. § 1132(a)(3). Because of the types of relief available, the proper defendants to an Employee Retirement Income Security Act of 1974 action brought by plan participants are those who control or administer the plan and/or are fiduciaries as defined by 29 U.S.C.S. § 1102(a).

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN5]The permissive joinder rule allows joinder of multiple defendants if there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out or the same transaction or occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*

[HN6]Fed. R. Civ. P. 15 allows a party to amend its pleadings with leave of the court. Rule 15 also provides that leave shall be freely given when justice so requires. Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties. The decision of whether to grant or deny leave to amend is within the discretion of the court. In deciding a motion to amend, the court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment.

**COUNSEL:** [*1]

Gordon N. Myerson, Law Offices of Gordon N. Myerson, P.C., Dennis M. Clyde, Gates & Clyde; for Plaintiff.

Joseph Mancini, Catanzarite Law Corporation, Leo L. Logan, Boddington & Brown; for Defendants.

**OPINIONBY:** O'CONNOR

**OPINION:** MEMORANDUM AND ORDER

This action is based on claims arising under the Employee Retirement Income Security Act of 1974

(ERISA). The court's jurisdiction is based on 29 U.S.C. 1132 (1982). Plaintiff seeks to recover pension benefits and to obtain injunctive relief arising from defendants' alleged violations of Subchapter I of ERISA, 29 U.S.C. § 1001 et seq.

The facts, briefly stated, are as follows. Plaintiff was employed by T. M. Hylwa, M.D., and a Kansas professional corporation, T. M. Hylwa, M.D., P.A., from July 1, 1977, through September 30, 1981. At the time, plaintiff was a participant in several pension plans administered by Dr. Hylwa and the Kansas corporation. In 1981, Hylwa moved his medical practice to California and incorporated there as Theodore M. Hylwa, M.D., Inc., the defendant herein. The Kansas corporation was dissolved in 1981, but plaintiff continued working for the defendants on an irregular basis from May 14, 1981, to November [*2] 30, 1984. Plaintiff's participation in the Hylwa pension plans also continued until 1984.

In June 1984, the parties began discussing the possibility of plaintiff's retirement and the distribution of retirement benefits under the defendants' pension plans. After receiving a copy of his total plan benefits from defendants' attorney, Kenneth J. Catanzarite, plaintiff retired effective December 1, 1984. This correspondence allegedly stated that the plaintiff was entitled to a total of $168,465.00 from the defendants' three pension funds: the Money Purchase Pension Plan ($8,086.00); the Defined Benefit Purchase Plan ($40,211.00); and the "Unified Credit" Defined Benefit Plan ($120,168.00).

After plaintiff retired, disputes arose between the parties regarding the method of payment and plaintiff's eligibility under the "Unified Credit" Defined Benefit Plan. Another conflict arose when defendants alleged that plaintiff failed to complete certain accounting services contracted for by the defendants. Finally, defendants filed an action in the United States District Court for the Central District of California against the plaintiff to resolve these disputes. Plaintiff subsequently filed the [*3] present case on September 23, 1985. The action pending before the California court was dismissed for lack of personal jurisdiction over Palka.

This matter comes before the Court on various motions of the parties. These motions will be addressed in the order they were filed.

I. Defendants' Motion to Dismiss.

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for improper venue. In actions brought under ERISA, proper venue is determined by 29 U.S.C. § 1132(e)(2). [HN1]Under

1986 U.S. Dist. LEXIS 20854

this provision, an ERISA action may be brought in the district where: (a) the plan is administered; (b) the breach took place; (c) the defendant resides; or (d) the defendant can be found.

Various district and appellate courts recently have been faced with interpreting and applying the venue provisions of 29 U.S.C. § 1132(e)(2). In Sprinzen v. Supreme Court of the State of New Jersey, 478 F.Supp. 722 (S.D.N.Y. 1979), the district court held that [HN2]an ERISA plan is "administered" at the location(s) where the plan is managed, rather than where the benefits are distributed. Id. at 723-24. See also Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan, 517 [*4] F.Supp. 627 (S.D. W.Va. 1981). In the action before this court, there is no evidence that the pension plans in question were managed anywhere except California. Therefore, venue would not lie in this court under this part of the statute.

The application of the provision vesting venue in the district "where the breach occurred" is less clear. In Bostic, the district court determined that the alleged breach could arise where the terms of the pension plan were breached or where the duties imposed by the Act were breached. Id. at 634. In determining where the breach occurred, the Bostic court turned to the federal common law rule that a cause of action for breach of contract arose at the place where the contract was to be performed. In the context of an ERISA civil action, that court held that the place of breach would be the place where the benefit recipient becomes entitled to payment. Id. at 636. Since the plaintiff in this action would be entitled to payment at his residence in the District of Kansas, venue lies with this court under this portion of 29 U.S.C. § 1132(e).

Similarly, this court also has proper venue over this action since Kansas is a district "where [*5] the defendant is found." In applying this venue provision, courts have followed the broad application of the antitrust and copyright venue provisions where a defendant is deemed to be "found" in any district in which personal jurisdiction could be obtained over it. Varsic v. United States Dist. Court for Cent. Dist. of California, 607 F.2d 245, 248 (9th Cir. 1979); see also I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc., 699 F.2d 1254, 1257 (D.C. Cir. 1983). Since this court clearly has personal jurisdiction over these defendants, they are "found" in this district and venue lies here.

For these reasons, the court finds that venue lies in this district pursuant to 29 U.S.C. § 1132(e)(2) and, therefore, defendants' motion to dismiss must be denied.

II. Motion for Transfer.

Defendants have also filed a motion to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). Defendants argue that the California court would be more convenient for the parties and witnesses and that the transfer would serve the interests of justice.

Since the related action of T. M. Hylwa, M.D., Inc. v. Gary [*6] Palka was dismissed by the California court, this court will not address defendants' arguments regarding priority of claims and consolidation.

[HN3]For a transfer of venue to be proper, the moving party must show that venue is proper in both the transferor and transferee districts and that the transfer is for the "convenience of parties and witnesses, and is also "in the interest of justice." The party seeking the transfer carries the burden of showing that the action should be transferred. Ammon v. Kaplow, 468 F.Supp. 1304, 1313 (D. Kan. 1979). Furthermore, a plaintiff's choice of forum should not be disturbed unless the balance of the consideration is strongly in the moving party's favor. William A. Smith Contracting Co. v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir. 1972). "Additional consideration is properly given when the plaintiff has chosen the forum in which he resides." Ammon, at 1313. When considering a motion for a section 1404(a) transfer, the mere shifting of inconvenience from one party to another is insufficient to support the transfer. Central States, Southeast & Southwest Areas Pension Fund v. Brown, 587 F.Supp. 1067, 1070 (N.D. Ill. 1984). Another [*7] factor to consider is the "interest of justice." This has been interpreted to include such considerations as the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses and other factors that relate to making the trial "easy, expeditious and inexpensive." ROC, Inc. v. Progress Drilling, Inc., 481 F.Supp. 147, 152 (W.D. Okla. 1979).

Here, the defendants contend that transfer is necessary in the "interest of justice." Defendants contend that all the witnesses except the plaintiff and his expert reside in California. Defendants claim that compulsory process could not reach these witnesses in California if they refused to come to Kansas. However, mere allegations, unsupported by affidavits or other proof, cannot be accorded much weight. Surco Products, Inc. v. Theochem Laboratories, 528 F.Supp. 677, 679 (S.D. Fla. 1981); Essex Crane Rental Corp. v. Vic Kirsch Const. Co., 486 F.Supp. 529, 535 (S.D.N.Y. 19.80). This is especially true due to the nature of defendants' estimated seven witnesses: three employees of the

defendants; the pension plans' enrolled [*8] actuary; the contract pension plan administrator; the defendants' expert witness; and the defendants' personal attorney, Kenneth Catanzarite. All these witnesses are so closely related to defendants' operation that the likelihood of the need for compulsory process is slight. In addition, while the defendants argue that all the documentary evidence is located in California, they have failed to show any hardship in producing documents in this court relevant to the terms of the pension plans and the participation of one employee -- the plaintiff. Therefore, defendants' only argument in support of transfer that carries any weight is the expense of bringing their witnesses to this court from California.

However, the court cannot ignore the legislative purpose behind the broad ERISA venue provisions. In drafting 29 U.S.C. § 1132(e)(2), Congress intended to provide ERISA participants "ready access to the Federal courts." Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Protection, Inc., 578 F.Supp. 94, 95 (D. Md. 1983). Congressional reports also indicate that ERISA's enforcement provisions were "designed specifically to provide . . . participants and [*9] beneficiaries with broad remedies for redressing and preventing violations of the Act . . . and to remove jurisdictional and procedural obstacles which in the past appeared to have hampered effective enforcement of fiduciary responsibilities. . . ." H.R. 93-533, 93rd Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S. Code Cong. & Ad. News, 4639, 4655.

In ERISA actions involving section 1404(a) motions, two federal district courts have imposed an even heavier burden on the moving party due to the special venue provision found in the Act. See International Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., Inc., 621 F.Supp. 906, 907 (D.D.C. 1985); Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Protection, Inc., 578 F.Supp. at 95-96. This increased burden complies with the indications from the legislative history that "the avenues of relief and the right of action afforded pension plan participants should be generously construed." Foltz v. U.S. News & World Report, Inc., 613 F.Supp. 634, 639 (D.D.C. 1985).

After careful consideration, the court finds that the defendants have not shown sufficient substantiated [*10] evidence to overcome the plaintiff's choice of forum. Although defendants would be more convenienced if the transfer was granted, that alone is not sufficient grounds. Therefore, the court denies the defendants' motion for transfer.

III. Defendants' Motion to Stay Discovery.

Defendants filed a motion to stay discovery until the court entered an order relating to its motions to dismiss and for transfer. Since those motions are denied herein, the motion to stay discovery is also denied.

IV. Plaintiff's Motions to Amend and Add Parties.

Plaintiff filed a motion to amend and add parties on December 31, 1985, seeking leave to amend his complaint to add Catanzarite and Co., Inc., Catanzarite Law Corporation and Kenneth J. Catanzarite [hereinafter the Catanzarite parties] as defendants. While this motion was pending, the plaintiff filed a motion to amend and file a second amended complaint. This motion was accompanied by plaintiff's proposed second amended complaint which contained four counts. Count I restated plaintiff's ERISA claims for benefits due and for an injunction. Counts 11 and 111 appear to allege a cause of action for tortious misrepresentation against defendants [*11] and the Catanzarite parties. Count IV was an estoppel claim.

The court will first discuss the propriety of joinder of the additional parties; then the issue of whether plaintiff should be allowed to amend to add these parties will be discussed.

Defendants object to the motion to add the Catanzarite parties arguing that the court lacks subject matter jurisdiction over the proposed additional defendants and, therefore, joinder is prohibited under Federal Rule of Civil Procedure 19. The defendants argue that the Catanzarite parties are not proper defendants in an action under ERISA. [HN4]Title 29, United States Code, section 1132 establishes who can bring a civil action under ERISA and for what purposes such an action can be brought. This section allows a participant or beneficiary to bring an action: (1) to recover benefits due, enforce rights under the plan, or clarify rights under the plan [section 1132(a)(1)(B)]; (2) to recover a statutory penalty from an administrator for refusing to supply requested information [sections 1132(a)(1) (A), 1132(c)]; or (3) to obtain equitable relief [sections 1132(a)(3)]. Because of the types of relief available, the proper defendants to an ERISA [*12] action brought by plan participants are those who control or administer the plan and/or are fiduciaries as defined by section 1102(a). Dhaver v. Weirton Steel Div. of Nat'l Steel Corp., 571 F.Supp. 316, 331-32 (N.D. W.Va.), aff'd, 724 F.2d 406 (4th Cir. 1983); Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan, 481 F.Supp. 454, 458 (N.D. Ga. 1979). There is no evidence at this time that the Catanzarite parties controlled or administered the pension plans in issue in this case. It appears that these parties merely acted as legal and financial advisors to the defendants. It is the court's opinion that a mere advisory role is

insufficient to constitute "control" of the pension plans and as such, advisors or agents are not proper parties to an ERISA action.

However, plaintiff's motion to amend and add parties must also be considered under [HN5]the permissive joinder rule, Federal Rule of Civil Procedure 20. This rule allows joinder of multiple defendants if "there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out or the same transaction or occurrence, or series of transactions or occurrences and if any question [*13] of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. Similar standards apply in determining whether claims can be added under Federal Rule of Civil Procedure 18.

Counts II and III of plaintiff's proposed amended petition allege acts of misrepresentation by defendants and the Catanzarite parties for which damages are claimed. These counts are phrased in terms of an action for tortious misrepresentation. These claims clearly arise out of the same series of transactions or occurrences which underlie plaintiff's ERISA claim, namely the plaintiff's participation in defendants' pension plans and the subsequent dispute over plaintiff's entitlement to pension benefits. Furthermore, the ERISA and misrepresentation claims have a common issue of fact: the determination of amounts due to plaintiff under the terms of the pension plans. Determination of this fact is clearly necessary for resolution of the ERISA claim; it is also vital to establish whether the alleged representations made by defendants and the Catanzarite parties were false. For these reasons, the Catanzarite parties could be properly joined under Federal Rules of Civil Procedure 18 and 20.

Since [*14] the proposed additional defendants can be properly joined pursuant to Rule 20, the next issue is whether the motion to amend should be granted. [HN6]Federal Rule of Civil Procedure 15 allows a party to amend its pleadings with leave of the court. The Rule also provides that "leave shall be freely given when justice so requires." Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties. Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982) (citing 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1471, at 359 (1971)). The decision of whether to grant or deny leave to amend is within the discretion of the court. Lease America Corp. v. Eckel, 710 F.2d 1470, 1473 (10th Cir. 1983). In deciding a motion to amend, the court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment.

Local 472 of United Assoc. of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982).

Defendants make several arguments against granting [*15] the motion to amend. First, the defendants point out that plaintiff's second motion to amend was filed July 21, 1986, well after the December 31, 1985, deadline established by this court's scheduling order. However, the court notes that plaintiff's first motion to amend was filed December 31, 1985, and sought to add the same parties. In addition, discovery to this point has been limited. Therefore, defendants have failed to show any prejudice from the "late" filing.

Defendants also argue that it would be inequitable to allow plaintiff to amend the complaint. Defendants contend that plaintiff had full knowledge of the information regarding the acts of these parties at the time he filed his original pleading. Therefore, defendants state that plaintiff unduly delayed bringing claims against the Catanzarite parties, and that defendants have relied on their ability to use the Catanzarite Law Corporation as counsel for this action.

After examining the record, the court finds that there was no undue delay on the part of the plaintiff. Plaintiff's original petition to amend was filed by December 31, 1985. This was within the scheduling order and only two months after the original complaint [*16]   was filed. This delay does not seem unreasonable, and it gave defendants sufficient notice that other counsel may be necessary if the motion was granted. Such a time does not severely prejudice the defendants' right to choose its counsel in this case. Since the defendants and the Catanzarite parties were both actively involved in the events giving rise to this action, it should not be surprising to find both as defendants.

For the foregoing reasons, the court grants the plaintiff's motion to amend. However, since the Catanzarite parties are not proper parties to the ERISA claim, plaintiff must establish an independent basis for jurisdiction of this court.

ORDER

IT IS THEREFORE ORDERED that the motion of defendants T. M. Hylwa, M.D., and T. M. Hylwa, M.D., Inc., to dismiss or in the alternative to transfer is denied. Defendants' motion for stay of discovery is also denied.

IT IS FURTHER ORDERED that plaintiff Gary Palka's motion to amend to add parties is granted.

1986 U.S. Dist. LEXIS 20854

Dated this 3rd day of September, 1986, at Kansas City,
Kansas.

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

# CAROL A. POST, Plaintiff, v. HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

## CIVIL ACTION No. 02-1917

## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *2002 U.S. Dist. LEXIS 23384; 29 Employee Benefits Cas. (BNA) 2931*

### December 6, 2002, Decided

**SUBSEQUENT HISTORY:** Related proceeding at *Post v. Hartford Ins. Co., 2005 U.S. Dist. LEXIS 2633* (E.D. Pa., Feb. 23, 2005)

**DISPOSITION:** Defendant's motion to dismiss granted. Counts dismissed.

### LexisNexis(R) Headnotes

**COUNSEL:** [*1] For Carol A Post, PLAINTIFF: L Paul Johnston, Jr, L Paul Johnston, Jr, Esquire, Allentown PA, USA.

For Hartford Life and Accident Insurance Co, DEFENDANT: Brian P Downey, Pepper, Hamilton & Scheetz, Harrisburg PA, USA. Shannon C Gierasch, Pepper Hamilton LLP, Harrisburg PA, USA.

**JUDGES:** Robert F. Kelly, Sr. J.

**OPINIONBY:** Robert F. Kelly

**OPINION:** ROBERT F. KELLY, Sr. J.

DECEMBER 6, 2002

Presently pending before this Court is Defendant's Motion to Dismiss Counts II-V of Plaintiff's Complaint. For the following reasons, Defendant's Motion will be granted.

### I. Facts

Carol A. Post ("Plaintiff") brought claims against Hartford Life and Accident Insurance Company ("Defendant") for allegedly violating the Employee Retirement Income Security Act of 1974 ("**ERISA**"), *29 U.S.C.A. § 1001* et seq., and breaching its fiduciary duty. This case involves a dispute over an **ERISA** § 3(1) Employee Welfare Benefit Plan. Specifically, the case involves a group disability insurance plan (the "Plan") provided by Plaintiff's employer, Overlook Hospital of New Jersey. Plaintiff claims that she is totally disabled from any and all work. n1 As a result, Plaintiff contends that [*2] she is entitled to the contractually promised benefits of her group disability insurance plan. In late 2001, Defendant terminated Plaintiff's benefits based on her alleged refusal to submit to medical examinations required by Defendant under the Plan. n2 Plaintiff alleges that this request is unwarranted and medically unsound given Plaintiff's condition. Plaintiff also contends that Defendant's request is indicative of a pattern of conduct which shows a breach of Defendant's fiduciary duties.

Case 2:05-cv-00864-BMS   Document 87-4   Filed 07/06/2005   Page 9 of 26

Page 8

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

n1 Plaintiff is certified as both a Dentist and a Pharmacist. (Pl.'s Mem. Law Contra. Def.'s Mot. to Dismiss at 2). On November 27, 1993, Plaintiff was involved in a motor vehicle accident. (Compl., P 10). Between 1995 and 2001, a series of disputes arose between Plaintiff and Defendant regarding Defendant's right to seek medical information to establish Plaintiff's ongoing entitlement to benefits. (Id., PP 13-57).

n2 The Plan vests Defendant with full discretion and authority to determine eligibility for benefits and to construe and interpret all provisions of the Plan. (Def.'s Mem. Law Supp. Mot. to Dismiss at 1-2)(citing Compl., Ex. A (copy of the Plan)).

[*3]

## II. STANDARD

A motion to dismiss, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, tests the legal sufficiency of the complaint. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*(citing *Conley, 355 U.S. at 45-46);* see also *Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985)*. In considering a motion to dismiss, all well pled allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989)*(citations omitted).

## III. DISCUSSION n3

n3 Defendant's Motion to Dismiss pertains only to Counts II, III, IV and V of Plaintiff's Complaint. (Def.'s Mem. Law Supp. Mot. to Dismiss). Defendant does not seek dismissal of Plaintiff's Count I, a claim for denial of benefits pursuant to section **502(a)(1) of ERISA,** *29 U.S.C.A. § 1132*(a)(1). (Id. at 1). **ERISA** section **502(a)(1)**(B) provides that a participant or beneficiary of an **ERISA** plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *29 U.S.C.A. § 1132*(a)(1)(B). Although Defendant disputes Plaintiff's liability contentions regarding Count I, it concedes that her Complaint sets forth a claim for denial of benefits pursuant to **ERISA** section **502(a)(1)**. (Def.'s Mem. Law Supp. Mot. to Dismiss).

[*4]

### A. Count II

Plaintiff's Count II is a claim for breach of fiduciary duty arising out of an alleged injury to the Plan under **ERISA** section 502(a)(2), *29 U.S.C.A. § 1132*(a)(2) and *29 U.S.C.A. § 1109*. n4 (Compl., PP 75-78). "[A] claim under § 1132(a)(2) must be premised upon harm to the entire Plan, rather than harm to a particular individual." *Bellas v. CBS, Inc., 73 F. Supp. 2d 493, 498 (W.D. Pa. 1999)*(citing *McMahon v. McDowell, 794 F.2d 100, 109 (3d Cir. 1986)*, cert. denied, *479 U.S. 971, 93 L. Ed. 2d 417, 107 S. Ct. 473 (1986)*(stating that "damages for breach of fiduciary duty do not go to any individual plan participant or beneficiary, but inures to the benefit of the plan as a whole"))(citations omitted). "Plan participants or beneficiaries may sue a plan fiduciary for breach of a fiduciary duty pursuant to §

Case 2:05-cv-00114-BMS    Document 82-4    Filed 07/06/2005    Page 10 of 26

Page 9

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

1132(a)(2)." *DeFelice v. Daspin, 2002 U.S. Dist. LEXIS 11334, No. 01-1760, 2002 WL 1373759,* at *6 (E.D. Pa. June 25, 2002). However, "they may not do so . . . to obtain individual relief but only for the benefit of the plan." Id. (citing *Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985);* **[*5]** *McMahon, 794 F.2d at 109).* "**ERISA** functions to prevent 'possible misuse of plan assets,' and its remedies function to 'protect the entire plan ....'" *Mose v. U.S. Health Care Sys. of PA, Inc., 1996 U.S. Dist. LEXIS 9913, No. 95-6553, 1996 WL 397465,* at *2 (E.D. Pa. July 9, 1996)(citing *Mass. Mutual, 473 U.S. at 141).* Therefore, "a simple denial of benefits cannot form the basis of a suit for breach of fiduciary duty to the plan itself." Id. (citations omitted).

n4 *29 U.S.C. § § 1109* and 1132(a)(2), state in relevant part:

§ 1109 Liability for breach of fiduciary duty

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem

appropriate, including removal of such fiduciary....

§ 1132 Civil enforcement

(a) Persons empowered to bring a civil action A civil action may be brought--

2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.

*29 U.S.C. § § 1109,* 1132(a)(2).

**[*6]**

Defendant seeks dismissal of Plaintiff's Count II based on the grounds that a simple denial of benefits cannot form the basis of a suit for breach of fiduciary duty to the Plan itself. (Def.'s Mem. Law Supp. Mot. to Dismiss at 3). Defendant argues that "the gravamen of plaintiff's complaint is that she has been denied long term disability benefits to which she claims to be entitled." (Id. at 4). Based upon this argument, Defendant goes on to state that Count II of Plaintiff's Complaint should be dismissed for failure to state a claim "because a simple denial of benefits does not qualify as fiduciary malfeasance." (Id.). Plaintiff counters Defendant's argument with the contention that "this case is nowhere near a 'simple denial of benefits' claim." (Pl.'s Mem. Law Contra Def.'s Mot. to Dismiss at 3). In relation to the Plan, Plaintiff argues that her Complaint includes "over fifty factual allegations detailing the malfeasance of Defendant in the administration of the Plan." (Id.).

The Court finds that Plaintiff's Count II must be dismissed. The contentions in Plaintiff's Complaint relate to her alleged entitlement of benefits and clarification of her rights under the Plan. **[*7]** Therefore,

Case 2:05-cv-00364-BMS  Document 32-4  Filed 07/05/2005  Page 11 of 26

Page 10

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

Plaintiff's claim is based upon an allegedly wrongful denial of her disability benefits in contravention to the Plan. As stated above, "a simple denial of benefits claim cannot form the basis of a suit for breach of fiduciary duty to the Plan itself." *Mose, 1996 U.S. Dist. LEXIS , 1996* WL 397465,at *2. As a result of the aforementioned, the Court dismisses Plaintiff's Count II regarding Defendant's alleged breach of fiduciary duty to the Plan. The Court takes this opportunity to note that Plaintiff's remaining count, Count I, provides her with the opportunity "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." *29 U.S.C.A. § 1132*(a)(1)(B). Thus, Plaintiff's contentions regarding her alleged entitlement to benefits and clarification of her rights under the Plan will be addressed in Count I.

### B. Count III

Plaintiff's Count III is a claim for equitable relief under **ERISA** section **502(a)(3)**, *29 U.S.C.A. § 1132*(a)(3). n5 (Compl., PP 79-80). "An individual plan participant or beneficiary [*8] may sue any party acting in a fiduciary capacity under § 1132(a)(3) for 'appropriate' equitable relief for breach of fiduciary duty." *Blahuta-Glover v. Cyanamid Long Term Disability Plan, 1996 U.S. Dist. LEXIS 5786, No. 95-7069, 1996* WL 220977, at *4 (E.D. Pa. Apr. 30, 1996)(citing *Varity Corp. v. Howe, 516 U.S. 489, 506-515, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996); Bixler v. Cent. PA Teamsters Health & Welfare Fund, 12 F.3d 1292, 1298 (3d Cir. 1993)).* That is, "they may sue under § 1132(a)(3) but only for 'appropriate equitable relief.'" *DeFelice, 2002 U.S. Dist. LEXIS 11334, 2002* WL 1373759,at *6. Generally, "relief is . . . not appropriate if otherwise provided elsewhere under **ERISA**." (Id.).

n5 Section **502(a)(3)** provides:

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*29 U.S.C. § 1132*(a)(3).

[*9]

"There are no reported cases in which a plan beneficiary was permitted to maintain a § 1132(a)(3) claim for an alleged erroneous denial of benefits." *Blahuta-Glover, 1996 U.S. Dist. LEXIS 5786, 1996* WL 220977, at *5. "Recognizing that § 1132(a)(1)(B) specifically provides a remedy to a beneficiary for a wrongful denial of benefits, the Supreme Court assumed that § 1132(a)(3) was designed to provide 'other remedies for yet other breaches of other sorts' or 'appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.'" *(1996 U.S. Dist. LEXIS 5786,* [WL] at *4)(citing *Varity, 516 U.S. at 510-514).* Since " § 1132(a)(1)(B) provides an adequate remedy, a claim for equitable relief for an alleged simple wrongful denial of benefits cannot be maintained under § 1132(a)(3)." *1996 U.S. Dist. LEXIS 5786,* [WL] at *5 (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 916 F. Supp. 843, 844 (N.D. Ill. 1996)).*

Defendant's Motion to Dismiss Plaintiff's section 1132(a)(3) claim is premised upon the argument that Plaintiff has an adequate remedy

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

under Count I, **ERISA** section 1132(a)(1)(B), which provides a remedy to a beneficiary for a wrongful denial **[\*10]** of benefits. n6 (Def.'s Mem. Law Supp. Mot. to Dismiss at 4). Defendant argues that "because **ERISA** section 1132(a)(1)(B) (Count I) provides plaintiff with an adequate remedy, plaintiff's claim for equitable relief for an alleged simple wrongful denial of benefits cannot be maintained under section 1132(a)(3)." (Id. at 5). Defendant's argument relies upon the decision in *Varity Corporation v. Howe, 516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996)*. In Varity, the Supreme Court opined that if Congress provided plaintiffs with an adequate remedy for their injury elsewhere in **ERISA,** then "there will likely be no need for further equitable relief, in which case such relief would normally not be 'appropriate'" under **ERISA** section 1132(a)(3). *Id. at 515*. Based upon the aforementioned argument, many courts have cited the language in Varity in dismissing claims for breach of fiduciary duty upon a motion to dismiss where a plaintiff has also asserted a claim for benefits under **ERISA** section 1132(a)(1)(B). n7 Plaintiff counters Defendant's argument by stating that Count I, which seeks to recover benefits and guarantee them in the future, does **[\*11]** not afford the equitable relief sought by Plaintiff in Count III. (Pl.'s Mem. Law Contra Def.'s Mot. to Dismiss). In support of her argument, Plaintiff claims that **ERISA** section **502(a)(3)** sculpts the equitable relief that she seeks, whereas, Count I "does not afford the type of relief such as mandating the manner of requesting medical information, the frequency of requesting information, the manner of accounting for the benefits, and the deference that should be afforded to treating physicians." (Id. at 5).

n6 As mentioned earlier, **ERISA** section **502(a)(1)**(B) provides that a participant or beneficiary of an **ERISA** plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *29 U.S.C.A. § 1132(a)(1)(B)*. Plaintiff's Count I is based upon Section **502(a)(1)**(B) and seeks a judgment that she is entitled to benefits and a clarification of her rights under the Plan.

n7 See *Reilly v. Keystone Health Plan East, Inc., 1998 U.S. Dist. LEXIS 11337, No. 98-1648, 1998 WL 422037*, at *4 (E.D. Pa. July 22, 1998); *Smith v. Thomas Jefferson Univ., 52 F. Supp. 2d 495, 498 n. 4 (E.D. Pa. 1999); Feret v. CoreStates Fin. Corp., 1998 U.S. Dist. LEXIS 11512, No. 97-6759, 1998 WL 426560*, at *5 (E.D. Pa. July 27, 1998). But see *Nicolaysen v. BP Amoco Chem. Co., 2002 U.S. Dist. LEXIS 9325, No. 01-5465, 2002 WL 1060587*, at * 2 (E.D. Pa. May 23, 2002); *Moore v. First Union Corp., 2000 U.S. Dist. LEXIS 10730, No. 00-2512, 2000 WL 1052140*, at *1 (E.D. Pa. July 24, 2000); *Parente v. Bell Atl. PA., 2000 U.S. Dist. LEXIS 4851, No. 99-5478, 2000 WL 419981*, at *2-*4 (E.D. Pa. Apr. 18, 2000).

**[\*12]**

The Court finds that Plaintiff's Count III must be dismissed. After examining Plaintiff's claim, it is apparent that the claim is based upon Defendant's alleged wrongful denial of benefits. However, as stated earlier, "a claim for equitable relief for an alleged simple wrongful denial of benefits cannot be maintained under § 1132(a)(3)." *Blahuta-Glover, 1996 U.S. Dist. LEXIS 5786, 1996 WL 220977*, at *5. Plaintiff's request for equitable relief in the form of regulating the manner of requesting medical information, the frequency of requesting such information and the manner of accounting for benefits relate to questions regarding Plaintiff's rights under the Plan. As

Case 2:05-cv-00314-BMS    Document 32-4    Filed 07/08/2005    Page 13 of 26

Page 12

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

such, these contentions are properly part of Plaintiff's denial of benefits claim in Count I. As for Plaintiff's contention relating to her request for equitable relief regarding the issue of what deference should be afforded to treating physicians, the question of how an administrator evaluates various types of medical evidence is common in denial of benefits claims. Based upon the aforementioned, appropriate relief for Plaintiff's alleged injuries is available under **ERISA** section 1132(a)(1)(B) in Count I. Since Plaintiff's Count **[*13]** I provides appropriate relief to Plaintiff under **ERISA** section 1132(a)(1)(B), the Count dismisses Count III seeking equitable relief under **ERISA** section 1132(a)(3).

### C. Count IV

Plaintiff's Count IV is a claim for relief for Defendant's alleged "Failure to Follow Plan Documents." (Compl., PP 81-82). Relying upon **ERISA** section **502(a)(1)**(B), 29 U.S.C.A. § 1132(a)(1)(B), Plaintiff's claim is based upon the allegation that "in addition to failing to meet the minimum standards as are set forth under **ERISA,** Defendant's actions breached their own Summary Plan Description." (Id., P 82). Defendant contends that this claim must be dismissed because it is duplicative of Count I. Defendant argues that in Count IV, Plaintiff merely recharacterizes her Count I (denial of benefits) as a claim for "Failure to Follow Plan Documents." (Def.'s Mem. Law Supp. Mot. to Dismiss 5-6). Defendant states that "**ERISA** does not provide any separate relief to plaintiff based on her recasting of her denial of benefits claim as a failure to follow Plan documents." (Id. at 6). Defendant goes on to argue that "it is implicit in Count I of plaintiff's complaint that she is alleging **[*14]** that [Defendant] failed to follow Plan documents." (Id.). Thus, Defendant seeks dismissal of Plaintiff's Count IV for failure to state a claim for relief. (Id.).

Plaintiff counters Defendant's argument with the assertion that **ERISA** sets the floor

and the Plan sets the ceiling. (Pl.'s Mem. Law Contra Def.'s Mot. to Dismiss at 6). Plaintiff fails to identify any case law or provision of **ERISA** suggesting that a separate cause of action exists for denial of benefits for failure to follow Plan documents. Without providing any legal support for her argument, Plaintiff contends that various acts of misconduct by Defendant not only constitute **ERISA** violations, but also constitute breaches of contractual provisions above and beyond **ERISA's** minimums. (Id.). Although not specifically presented as a breach of contract claim, it appears that Plaintiff's Count IV closely resembles a breach of contract claim. If Plaintiff is attempting to assert a breach of contract claim, such claim would be dismissed because "**ERISA** has consistently been interpreted to specifically preempt state law actions for breach of contract." *Nice v. Indep. Blue Cross, 1997 U.S. Dist. LEXIS 7786, 1997 WL 299428,* at *2 (E.D. Pa. May 22, 1997) **[*15]** (citing *Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989); Arber v. Equitable Beneficial Life Ins. Co., 848 F. Supp. 1204, 1215 (E.D. Pa. 1994); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987)).*

In support of her claim under Count IV, Plaintiff also relies upon the principle of "*contra proferentem . . .* which means that all ambiguous terms must be construed against the drafter of the document." (Pl.'s Mem. Law Contra Def.'s Mot. to Dismiss at 6). However, Plaintiff does not identify any term(s) of the Plan that are allegedly ambiguous or subject to being construed against Defendant. Even if there was a dispute as to the construction of the terms of the Plan, it would not provide an independent theory of liability because that dispute is part of Plaintiff's **ERISA** section 1132(a)(1)(B) denial of benefits claim.

Based upon the above reasons, the Court finds that Plaintiff's Count IV must be dismissed. The Court is unaware of any

"Failure to Follow Plan Documents" claim under **ERISA.** In fact, Plaintiff fails to provide any indication of a legal basis for this claim. [*16] After reviewing this claim, it is evident that it is substantively identical to Count I. Since Count I addresses Plaintiff's arguments in Count IV, the Court dismisses Count IV of the Complaint.

### D. Count V

Plaintiff's Count V, entitled "State Claim to the Extent Same is not Pre-empted by **ERISA,**" is a state claim for relief. n8 (Compl., PP 83-84). Count V of Plaintiff's Complaint provides, in pertinent part:

> The actions of Defendant are in violation of Pennsylvania law regarding the Fiduciary Duty owed by an Insurer and/or its fiduciary to a policy holder and/or beneficiary, and despite the fact that this is an employer/employee relationship, there does not appear to be a complete preemption of the claims arising in this particular case, *namely, the improper denial of benefits in contravention to the Summary Plan Benefits.* n9

(Compl., P 83)(emphasis added). The Court notes that Plaintiff's claim fails to identify what state law claim she is attempting to allege. n10

n8 *29 U.S.C.A. § 1144*(a) (preemption clause) states in relevant part:

> Except as provided in subsection (b) of this section [the saving clause] the provisions of this title and

title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

*29 U.S.C.A. § 1144*(a) [*17]

n9 Despite the fact that Plaintiff alleges that the Plan is governed by New Jersey law, her claim is premised upon Pennsylvania law. (Compl., PP 19, 83-84). Based upon the allegations in the Complaint, even if Pennsylvania common law and statutory claims were not preempted and even if Plaintiff could assert a private cause of action under them, Count V would still be dismissed because, according to Plaintiff, the Plan is not subject to Pennsylvania law.

n10 Plaintiff does not identify which Pennsylvania law allegedly governing the relationship between herself and Defendant has been violated. However, it appears that Plaintiff is attempting to state a claim premised upon violation of the Pennsylvania Unfair Insurances Practices Act (the "UIPA"), *40 Pa.C.S.A. section 1171.1* et seq. Any claim by Plaintiff under the UIPA must be dismissed because there is no private right of action under the UIPA. See *Lites v. Great Am. Ins. Co., 2000 U.S. Dist. LEXIS 9036, No. 00-525, 2000 WL 875698,* at *6 (E.D. Pa. June 23, 2000)(stating "it is well settled in Pennsylvania that no private allegation of a UIPA violation can be maintained."); *Smith v. Nationwide Mut. Fire Ins. Co., 935 F. Supp. 616, 620 (W.D. Pa. 1996)*(stating "it is clear that there is no private cause of action under the UIPA. . . .); *Parasco v. Pacific Indem. Co., 870 F. Supp. 644, 647 (E.D. Pa. 1994).*

Case 2:05-cv-00814-BMS   Document 32-4   Filed 07/06/2005   Page 15 of 26

Page 14

2002 U.S. Dist. LEXIS 23384, *; 29 Employee Benefits Cas. (BNA) 2931

[*18]

"Section **502(a)(1)**(B), the civil enforcement provision of the **ERISA** statute, completely preempts all state law claims to recover benefits due, or to clarify the rights to future benefits under the terms of an **ERISA** plan." *Oslowski v. Life Ins. Co. of N. America, 139 F. Supp. 2d 668, 676 (W.D. Pa. 2001)*(citing *29 U.S.C. § § 1001,* et seq., § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987)).* "Section **502(a)(1)**(B) of **ERISA** provides the exclusive civil enforcement mechanism for beneficiaries to recover benefits from a covered employee benefit plan." *Walker v. Aetna Life Ins. Co., 1999 U.S. Dist. LEXIS 1666, No. 98-5154, 1999 WL 84112,* at *2 (E.D. Pa. Feb. 19, 1999)(citing *29 U.S.C. § 1132*(a)(1)(B); *Metro. Life, 481 U.S. at 62-63).* "**ERISA** preempts all state laws insofar as they 'relate to' an employee benefit plan under **ERISA.**" Id. (citing *29 U.S.C. § 1144*(a)). "A state law or common law cause of action relates to a benefit plan if it has a connection with or reference to such a plan." Id. (citing *Pilot Life, 481 U.S. at 47-48).* [*19] An action "relates to" an **ERISA** plan and is preempted "where the existence of an **ERISA** plan is a critical factor in establishing liability and the court's

inquiry must be directed to the plan." Id. (citing *Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-140, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990)).* Upon reading Plaintiff's state law claim, it is clear that it is based upon Defendant's alleged "improper denial of [Plaintiff's] benefits in contravention to the Summary Plan Benefits." (Compl., P 83). Thus, by her own description, Plaintiff's state law claim clearly involves, or "relates to," the **ERISA** plan at issue in this case. Since Plaintiff's Count V "relates to" an **ERISA** plan, it is preempted by *29 U.S.C. § 1144*(a). Thus, Plaintiff's Count V is dismissed.

## IV. CONCLUSION

Based upon the aforementioned, Plaintiff's Counts II, III, IV and V are dismissed.

### ORDER

AND NOW, this 6 th day of December, 2002, upon consideration of Defendant's Motion to Dismiss Counts II-V of Plaintiff's Complaint (Dkt. No.2), the Response and Reply thereto, it is hereby ORDERED that the Motion is GRANTED.

BY THE COURT:  [*20]

Robert F. Kelly, Sr. J.

1988 U.S. Dist. LEXIS 5430, *

LEXSEE 1988 U.S. DIST. LEXIS 5430

**S.D. Warren Company v. Phasar, Inc.**

**Civil Action No. 87-8340**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**1988 U.S. Dist. LEXIS 5430**

**June 9, 1988; June 10, 1988, Filed; June 13, 1988, Entered**

**COUNSEL:**

Patrick W. Kittredge, Esq., Douglas Evan Ress, Esq., KITTREDGE, KAUFMAN & DONLEY, Phila., PA, for Plaintiffs.

Robert J. Gordon, Esq., GREITZER & LOCKS, Phila., PA, Eric J. McCann, P.C., Bloomfield Hills, Michigan, Mitchell Cohen, Esq., LAW OFFICES OF MITCHELL COHEN, Phila., PA, for Defendants.

**OPINIONBY:** [*1]

NEWCOMER

**OPINION:**

MEMORANDUM

Clarence C. Newcomer, J.

I have before me defendant's motion to dismiss this action based on a variety of legal arguments. After a brief factual introduction, I will address each of defendant's arguments and consequently deny defendant's motion.

I. Introduction

Plaintiff, S.D. Warren Company, brought this action against defendant, Phasar, Inc., alleging that defendant violated the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. § 1961 et seq. (Counts I-IV) and that defendant committed various state law torts such as common law fraud (County V), conspiracy to defraud (Count VI), commercial bribery (Count VII), tortious assistance of breach of duty (Count VIII), conspiracy to induce employee's breach of duty (Count IX), and theft by deception (Count X). Plaintiff also seeks punitive damages (Count XI).

Plaintiff is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, with its registered place of business in Pennsylvania and its principal place of business in Massachusetts. Plaintiff is in the business of manufacturing and distributing certain paper products. Plaintiff utilizes a paper mill facility [*2] located in Westbrook, Maine. In the course of its business, and in the course of operating and maintaining its Westbrook facility, plaintiff purchases roofing supplies and materials. Defendant is a corporation incorporated under the laws of Michigan with its principal place of business in Florida. Defendant is in the business in Florida. Defendant is in the business of manufacturing, supplying, distributing and selling various industrial cleaning compounds such as roofing supplies and materials.

Plaintiff's complaint alleges that commencing in or before 1985, and continuing through early 1987, through the use of interstate wire communications and the United States mails, on at least two occasions, defendant participated in a commercial bribery scheme to defraud plaintiff through "kickbacks" to one of plaintiff's employees in exchange for permitting substantial overcharges and allowing unreasonably high prices for the roofing supplies and materials purchased by plaintiff, and also for the purchase of unnecessary quantities of roofing supplies and materials. Plaintiff further alleges that defendant similarly defrauded some of its various

1988 U.S. Dist. LEXIS 5430, *

other purchasers as well. Allegedly, defendant [*3] agreed with plaintiff's employee that the employee would receive eight (8) to ten (10) percent of each purchase order submitted by plaintiff in exchange for which plaintiff's employee would cause plaintiff to purchase defendant's roofing supplies and materials at substantially overcharged and unreasonably high prices and in unnecessary quantities. Consequently, plaintiff claims it has substantially over paid defendant for roofing supplies and materials in an amount in excess of one hundred eight-five thousand dollars ($ 185,000.00).

Defendant has moved to dismiss plaintiff's complaint on a variety of grounds which will be discussed separately below.

II. Jurisdiction and Venue

Defendant claims that this court lacks personal jurisdiction over it, and that the court should dismiss this action pursuant to Fed.R.Civ.Pro. 12(b)(2). Defendant claims that as a Michigan Corporation with its principal place of business in Florida, defendant owns no real estate, maintains no bank accounts, has no agents, is not registered to do business and has no address or telephone listing in Pennsylvania. Defendant also pays no taxes in Pennsylvania.

Under Fed.R.Civ.P. 4(e), a federal court may assert [*4] personal jurisdiction over nonresident defendants to the extent allowed by the law of the state in which the court sits. The Pennsylvania long-arm statute, 42 Pa. C.S.A. § 5322(b), permits the exercise of jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States." Pennsylvania courts have recognized that this provision renders the reach of the long-arm statute coextensive with that permitted by the due process clause of the United States Constitution. See, e.g., Koenig v. International Brotherhood of Boilermaker, 284 Pa. Super. 558, 426 A.2d 635, 640 (1980). However, the interpretation of the United States Constitution by Pennsylvania courts does not bind federal courts. I may therefore assess the constitutionally of exercising jurisdiction over foreign defendants according to the law of this Circuit. Empire Abrasive Equipment v. H.H. Watson, Inc., 567 F.2d 554, 556 n.1 (3d Cir. 1977).

The basic factors for determining whether the exercise of jurisdiction over a nonresident defendant is proper were set out in International Shoe Co. v. Washington, 326 U.S. 310 (1945). That case held that due process is satisfied when [*5] a nonresident defendant has such minimum contacts with the forum state "that the maintenance of the suit does not offend 'traditional notions of fair plan and substantial justice.'" Id. at 316. The Third Circuit has construed the

requirements of due process in questions of personal jurisdiction in different ways depending on the nature of the claim: "where the defendant's forum-related activities do not give rise to the claim, and . . . where the claim arises out of a specific forum-related act or series of acts." Paolino v. Channel Home Centers, 668 F.2d 721, 724 (3d Cir. 1981). See also, Electro-Catheter Corp. v. Surgical Specialities Instrument Co., Inc., 587 F.Supp. 1446, 1449 (D.N.J. 1984).

If a claim is premised on conduct of a defendant within the forum state a "court must inquire whether the relationship of the transaction at issue to the forum justifies the forum state's assertion of the jurisdiction over the defendant," id. at 1449, under the "minimum contacts" standard. On the other hand, if the claim does not arise out of defendant's activities within the forum state, this court may only exercise personal jurisdiction if defendant's contacts with the [*6] forum are continuous, systematic and substantial. Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggass, 675 F.2d 587, 588 (3d Cir. 1982).

Initially, then, I must determine whether plaintiff's claim arises from defendant's forum related activities or from non-forum related activities. Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 541 (3d Cir. 1985) (two-step process employed "to determine whether personal jurisdiction may be asserted over a nonresident defendant"); Schwilm v. Holbrook, 661 F.2d 12 (3d Cir. 1981). "The focus must be on the relationship of the transaction giving rise to the law suit to the forum where plaintiff seeks to litigate it." Reliance Steel, 675 F.2d at 588 (citing Paolini, 668 F.2d at 724).

Under the applicable standards, it is clear that the only conceivable basis for jurisdiction is general jurisdictions, arising from general contacts between the defendant and Pennsylvania, because the incident giving rise to the lawsuit - the alleged kickback scheme - is in no way related to the forum. If plaintiff can demonstrate sufficient contacts between defendant and the forum state so that defendant could reasonably and [*7] fairly expect to be hauled into court in this forum, then this court may exercise personal jurisdiction over the defendant. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). Because the event giving rise to this cause of action involves non-forum related activity, this Court's jurisdiction is proper only so long as defendant's contacts with the forum state are "substantial, continuous and systematic." Electro-Catheter Corp., supra, 675 F.2d at 589 (citation omitted). See, Compagnie des Bauxites de Guinea v. Insurance Company of North America, 651 F.2d 877, 890 n.2 and cases cited therein elaborating on the 'continuous and substantial' standard.

1988 U.S. Dist. LEXIS 5430, *

Based on plaintiff's allegations and the facts stated in defendant's affidavit by its vice-president Alfred Nawrocki, n1 I find that defendant's contacts with Pennsylvania are sufficient to confer personal jurisdiction in this case. Defendant clearly transacts business in Pennsylvania. According to mr. Nawrocki's affidavit defendant has purposefully shipped merchandise into this district and it does business in the entire Commonwealth of Pennsylvania. Sales within this district alone account for 4.4 % of [*8] the total sales of defendant. Since defendant does business in at least forty-three (43) states, defendant averages only 95.6 % in the other forty-two (42) states, or slightly under 2.3 % per state.

    n1 Defendant has refused to answer discovery requests directed to the issue of jurisdiction and it has filed a motion to stay all discovery in this case. If this court did not find that defendant met the test for jurisdiction, it would stay its decision and order discovery on the issue. This action is unnecessary in light of the finding that jurisdiction exists.

Despite defendant's attempt to categorize its sales within Pennsylvania as minimal, an examination of the character of the business done within the state reveals that it is central to the conduct of defendant's business. Defendant is in the business of manufacturing, supplying, distributing and selling cleaning compounds, including roofing supplies and materials. Defendant has sold and shipped its products in Pennsylvania as well as in forty-two (42) other states nationwide. This action of selling and shipping is both essential and central to defendant's business.

In light of the foregoing discussion, I find that defendant's [*9] contacts with Pennsylvania are substantial, continuous and systematic and the exercise of personal jurisdiction over the defendant will not violate traditional notions of fair play and substantial justice. Defendant's reliance on LaCovara v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 551 F.Supp. 601 (E.D. Pa. 1982) is misplaced as the defendant in that case, Mid-America, did not sell goods or services in Pennsylvania. Therefore, the facts of the case are clearly distinguishable. I will deny defendant's motion to dismiss for lack of personal jurisdiction.

Defendant also request that this court dismiss this action pursuant to Fed.R.Civ.Pro. 12(b)(3) or 28 U.S.C. § 1406(a) because venue is improper in this district. Alternatively defendant requests that this court transfer the action to the Eastern District of Michigan, Southern Division pursuant to 28 U.S.C. § 1406(a).

Since plaintiff has based subject matter jurisdiction on the federal question jurisdiction of RICO, 18 U.S.C. § 1961, et. seq., as well as on diversity of citizenship, the appropriate venue statutes to consult are 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965. Title 28, section 1391(b) states,

A civil action [*10] wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all of the defendants reside, or in which the claim arose, and except as otherwise provided by law.

Since defendant is a corporation, 28 U.S.C. § 1391(c) must be consulted as well. Title 28, section 1391(c) states,

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Plaintiff does not allege that its claim arose in Pennsylvania. Instead venue is asserted in this district because the only defendant, Phasar, Inc., resides in this district by "doing business" here. Defendant claims that since its business activities do not require a license in Pennsylvania, it cannot be held to be doing business here. Conaway Enterprises, Inc. v. Dyna Industries, Inc., 547 F.Supp. 577, 579-580 (W.D. Pa. 1982). The Court cannot agree with defendant's position.

The Conaway test traces its orgins to Remington Rand, Inc. v. Knapp-Monarch Co., 139 F.Supp. 613 (E.D. Pa. 1956). Remington Rand held [*11] that a corporation is "doing business" under section 1391(c) if its activities within the district include business that has become localized so that some state might require the corporation to be licensed. The test, therefore, is not whether Pennsylvania requires a license, but whether some state would require it. Parliment Import Co. v. Gibson Wine Co., Inc., 537 F.Supp. 72, 74 (E.D. Pa. 1982). Therefore, the determination of whether a license would be required of the foreign corporation should not be dependent upon the licensing requirements of the state in question, but requires the application of a uniform federal standard. Mida Mfg. Co. v. Femic, Inc., 539 F.Supp. 159, 163 (E.D. Pa. 1982). Regular, systematic contacts with the forum state are sufficient to render venue proper. Wright v. Columbia University, 520 F.Supp. 789, 795 (E.D. Pa. 1981). Substantial sales by a foreign corporation in the forum state constitute doing business in that state for purposes of venue. In Parliment

1988 U.S. Dist. LEXIS 5430, *

Import Co., the court found the defendant, a California wine maker, had sufficient contacts with Pennsylvania because it had sold more than $ 126,400.00 worth of its products in [*12] Pennsylvania. Id., 537 F.Supp. at 74.

Similarly, defendant has made substantial sales in Pennsylvania, an average of 4.4 % of its sales in this district alone, potentially much more statewide. Since defendant does business only in forty-three states. Pennsylvania may be one of its largest markets. Moreover, such sales are continuous as they occurred at least at various times over the course of the past few years. Consequently, I find that venue is proper in this district. n2

> n2 This finding is also correct under the RICO venue provision found at 18 U.S.C. § 1965(a).

Defendant finally requests this Court to transfer this action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Michigan, Southern Division. Section 1406(a) states:

The district court of a district in which is filed a case laying in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. (emphasis added). 28 U.S.C. § 1406(a). Thus, this section allows a court in which venue is improper to transfer the case to a district in which venue is proper. [*13] Since this court has found that venue is proper in this district, defendant's request must fail as section 1406(a) is inapplicable under these facts.

III. Rico Claims

Defendant advances a variety of challenges and moves to dismiss the counts of plaintiff's complaint involving RICO, 18 U.S.C. § 1961 et. seq.. I do not find merit in any of defendant's arguments.

First, defendant claims that plaintiff has failed to allege the requisite "pattern of racketeering activity" necessary to establish liability for violations of § 1962(a)-(d). The court was astounded, however, that defendant's argument failed to mention the most recent Third Circuit case law in this point, Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36 (3rd Cir. 1987); Marshall-Silver Construction Company, Inc. v. Mendel, 835 F.2d 63 (3rd Cir. 1987).

RICO prohibits certain investing of income gained from a pattern of racketeering activity (1962(a)), the acquisition of control of an enterprise engaged in interstate commerce through a pattern of racketeering activity (1962(b)), persons conducting an enterprise's activities through a pattern of racketering activity (1962(c)), and finally conspiring [*14] to violate 1962(a)-(c) (1962(d)).

Section 1961, the definitional section, provides:

(5) "pattern of racketeering activity" requires at least two acts of racketering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

In turn, section 1961(1)(B) defines racketeering activity as:

any act which is indictable under any of the following provisions of Title 18 United States Code . . . section 1341 (relating to mail fraud) section 1343 (relating to mail fraud). . . .

Through the now famous footnote fourteen (14) in Sedima S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 496 (1985), it is clear that two predicate acts may not be sufficient to establish a pattern of racketeering activity. n3

> n3 Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "the target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to form a pattern."
>
> Sedima, 473 U.S. at 496 n.14, (citation and emphasis omitted). [*15]

Since Sedima the Third Circuit Court of Appeals has held that there is no rigid rule for determining the presence or absence of a pattern. Courts must make a case-by-case analysis include, but are not limited to, the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity. Barticheck by Fidelity Union Bank, 832 F.2d 36, 39 (3d Cir. 1987); accord

1988 U.S. Dist. LEXIS 5430, *

Marshall-Silver Construction Co. v. Mendel, 835 F.2d 63, 66 (3d Cir. 1987).

Defendant's argument lacks merit under the facts of this case as charged in plaintiff's complaint. n4 Plaintiff's complaint charges defendant with engaging in numerous attempts to defraud various purchasers of its products through repeated kickbacks to the purchasing agents purchasing the products in exchange for overcharges and excess purchases of its products. Defendant participated in this activity over a lengthy period of time; on or before 1985 through 1987 against the plaintiff and possibly longer against other victims. Defendant allegedly defrauded its victims out of a substantial amount of money, including [*16] $ 185,000 from the plaintiff alone. These allegations, encompassing various acts of fraudulent use of the mail and/or wires, clearly set forth a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961, et. seq..

> n4 I must accept these facts as true for the purpose of this motion. Marshall-Silver Construction Company v. Mendel, 835 F.2d 63, 64-5 (3rd Cir. 1987).

Defendant next urges this court to dismiss Count III of the complaint because it does not state a claim under 18 U.S.C. § 1962(c) because defendant is identified as both the "defendant" and the "enterprise" in Count I of the complaint which is incorporated by reference into County III. Once again defendant's position lacks merit. Plaintiff is permitted to name the "enterprise" as the defendant for purposes of a claim for relief for violation of section 1962(a) in Count I. Petro-Tech, Inc. v. Western Company of North America, 824 F.2d 1349, 1360 (3rd Cir. 1987). To meet the requirements of section 1962(c) in Count III, plaintiff correctly distinguished between the defendant as "person" and the association-in-fact between defendant and plaintiff's employee as the "enterprise." Plaintiff [*17] adequately stated separate entities as is required by B.F. Hirsh v. Enright Refining Company, Inc., 751 F.2d 628, 633 (3rd Cir. 1984). n5

> n5 Whether an enterprise has an existence separate and apart from the pattern of racketeering activity in which it engages is a question of fact for the jury's determination. United States v. Riccobene, 709 F.2d 214, 222 (3d Cir. 1983), cert. denied, 464 U.S. 849 (1983).

Defendant's next line of attack is even more attenuated. Defendant claims that count IV of the complaint should be dismissed because plaintiff did not adequately plead a conspiracy within section 1962(d). Defendant directs the court to Jagielski v. Package Machine Company, 489 F.Supp. 232 (E.D. Pa. 1980) to support its argument. Jagielski, however, merely holds that corporation cannot conspire with its own employees, and a corporation cannot conspire with one of its divisions. Id. at 233-4. These legal principles do not apply here where plaintiff properly alleged a conspiracy between defendant, a corporation, and plaintiff's employee.

Finally, defendant claims that the complaint should be dismissed in its entirety because plaintiff failed to plead fraud [*18] with the particularity required by Fed.R.Civ.Pro. 9(b). The rule in this Circuit was set forth in Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3rd Cir. 1984) cert. denied 469 U.S. 1211 (1985) where the Third Circuit reversed the district court's dismissal of a RICO complaint under rule 9(b) stating that allegations of fraud should not be subjected to too strict a scrutiny. Rather, courts must take into account the general simplicity and flexibility contemplated by the federal rules. Id. (citing Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 100 (3rd Cir. 1983)).

The court in Seville stated the standard to be applied as follows:

Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some [*19] measure of substantiation into their allegations of fraud.

Seville, 742 F.2d at 791. Rule 9(b) is satisfied if the defendant is placed on notice of the fraudulent behavior charge. In this case, the complaint certainly apprises the defendant of the basic transactions giving rise to the claims of fraud. Further specificity is not required at this point in the litigation. I will therefore deny defendant's motion to dismiss plaintiff's complaint.

An appropriate order follows.

ORDER

AND NOW, this 9th day of June, 1988, upon consideration of defendant's motion to dismiss the complaint and plaintiffs response thereto, it is hereby

1988 U.S. Dist. LEXIS 5430, *

Ordered that the motion is DENIED.

AND IT IS SO ORDERED.

27 Fed. Appx. 137, *; 2002 U.S. App. LEXIS 1039, **;
27 Employee Benefits Cas. (BNA) 1582

LEXSEE 2002 U.S. APP. LEXIS 1039

**STEVEN C. STAFFORD, Appellant v. EI DUPONT DE NEMOURS, Plan Administrator; Appellee; HOSPITAL AND MEDICAL-SURGICAL PLAN; DENTAL ASSISTANCE PLAN; NONCONTRIBUTORY GROUP LIFE INSURANCE PLAN; CONTRIBUTORY GROUP LIFE INSURANCE PLAN; TOTAL AND PERMANENT DISABILITY INCOME PLAN; SHORT TERM DISABILITY PLAN**

**No. 01-1289**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

**27 Fed. Appx. 137; 2002 U.S. App. LEXIS 1039; 27 Employee Benefits Cas. (BNA) 1582**

**January 18, 2002, Argued, Submitted Under Third Circuit LAR 34.1(a)
January 24, 2002, Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Writ of certiorari denied: Stafford v. E. I. DuPont de Nemours & Co., 2002 U.S. LEXIS 7356 (U.S. Oct. 7, 2002).

**PRIOR HISTORY:** Appeal from the United States District Court For the District of Delaware. D.C. No.: 98-cv-00086. District Judge: Honorable Roderick R. McKelvie.

**DISPOSITION:** The plaintiff's February 1998 suit was untimely and the District Court committed no error in granting summary judgment in favor of defendant. The District Court's judgment was affirmed by the Court of Appeals.

**LexisNexis(R) Headnotes**

**JUDGES:** Before: SCIRICA, ROSENN, Circuit Judge, and KANE, District Judge.

**OPINIONBY:** Max Rosenn

**OPINION:** [*138]

MEMORANDUM OPINION

ROSENN, Circuit Judge.

Steven Stafford (Stafford) was employed by E.I. Du Pont De Nemours and Company (Du Pont) from January 1984 through September 1993. Stafford sued in the United States District Court for the District of Delaware under the Employee Retirement Income Security Act (ERISA) § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), alleging that Du Pont denied him disability benefits due him under Du Pont's Total and Permanent Disability Income Plan (T&P plan). The District Court granted summary judgment in favor of Du Pont. Stafford timely appealed. We affirm.

I.

Because the parties are fully familiar with the facts, we briefly summarize only the most pertinent. [**2] Since we are reviewing a grant of summary judgment, we view those facts in the light most favorable to Stafford. Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Du Pont terminated Stafford's employment in September 1993. In July 1994, Stafford submitted an application for T&P plan benefits. Generally, an employee is eligible for Du Pont's T&P plan benefits if that person is, while a Du Pont employee, "totally disabled by injuries or disease and presumably will be

27 Fed. Appx. 137, *; 2002 U.S. App. LEXIS 1039, **;
27 Employee Benefits Cas. (BNA) 1582

totally and permanently prevented from pursuing any gainful occupation." In support of his application, [*139] Stafford submitted medical records revealing that he suffered from hypertension (i.e., high blood pressure) which was being treated by medication. Nothing in the July 1994 application suggested that Stafford had been disabled in September 1993, when he was terminated.

Following an extensive review by Du Pont's Board of Benefits and Pensions (Board), Du Pont denied Stafford's application and so informed him by a letter dated October 13, 1994. The letter informed Stafford that none of the medical evidence he provided showed that he "had a total and permanent impairment at the time of [] termination. [**3] " The letter also informed Stafford of his "right to appeal the decision to the Board" pursuant to a procedure attached to the letter. It further informed Stafford that to appeal successfully, he had to provide additional objective medical evidence of a total impairment of function. The letter also enumerated some examples of such evidence. On October 19, 1994, Stafford requested an appeal to the Board.

In due course, the Board's secretary wrote Stafford, informing him that the Board would review the previously submitted information and inviting him to submit any additional information helpful to his application. Stafford submitted no new information. In December 1994, the Board denied Stafford's appeal and informed him of the decision by letter dated December 27, 1994.

Approximately two and a half years later, on June 5, 1997, Stafford informed Du Pont that the Social Security Administration had determined that he had been disabled at the time of his termination in September 1993 and had awarded him Social Security disability benefits. Du Pont informed Stafford that a Social Security disability award does not ipso facto qualify a person for T&P plan benefits. Du Pont also advised [**4] him to submit new medical information in support of his claim, which would be reviewed to determine if it warranted reopening Stafford's case before the Board. Stafford submitted new medical records, but none suggested that he had been permanently disabled from working at the time of his termination in September 1993. Therefore, in January 1998, Du Pont advised Stafford that it would not reopen his T&P plan application. On February 23, 1998, Stafford filed this suit.

II.

We exercise de novo review over the District Court's granting summary judgment. Id. Summary judgment is proper when no material facts are in dispute and judgment can be entered as a matter of law. Edelman v.

Comm'r of Soc. Sec., 83 F.3d 68, 70 (3d Cir. 1996). The applicability of a statute of limitations is a legal question and is likewise reviewed de novo. Syed v. Hercules Inc., 214 F.3d 155, 159 n.2 (3d Cir. 2000).

The District Court had two bases for granting summary judgment. First, it looked at Du Pont's rejection of Stafford's original 1994 application. The Court ruled that there was a one-year statute of limitations vis-a-vis Stafford's 1994 application, and that Stafford's challenge [**5] was therefore untimely. The Court then separately looked at Du Pont's January 1998 rejection of Stafford's attempt to reopen his case, and ruled that such denial was not arbitrary and capricious. Stafford, egregiously misapprehending the Court's ruling, believes that the District Court relied on the statute of limitations to reject both his original 1994 claim and his later attempt to reopen it. Because the statute of limitations ruling is the only issue briefed by Stafford, it is the only issue this Court will address.

[*140] Stafford first argues that Du Pont did not assert a statute of limitations defense until after the formal briefing of the summary judgment motion and that Du Pont therefore waived the defense. We first note that affirmative defenses, which include the statute of limitations, are not waived if raised at a "pragmatically sufficient time" with no prejudice to the plaintiff. Eddy v. VI Water & Power Authority, 256 F.3d 204, 209 (3d Cir. 2001) (internal quotations omitted). Moreover, "issues tried by the express or implied consent of the parties are 'treated in all respects as if they had been raised in the pleadings.'" Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991) [**6] (quoting Prinz v. Greate Bay Casino Corp., 705 F.2d 692, 694 (3d Cir. 1983)). Here, Stafford met Du Pont's statute of limitations defense head-on in the District Court, without objection. He had a full and fair opportunity to present his arguments, and he will not now be heard to raise an objection.

Stafford further appears to argue that since Du Pont's procedure allows employees to attempt to reopen their cases, his administrative remedies were never exhausted and the statute of limitations has not begun to run. Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) (noting that federal courts normally will not hear an ERISA claim until the plaintiff has exhausted all remedies available under the plan). Stafford's position defies all logic. If this Court adopted Stafford's theory, there would never be repose for an employer that procedurally allows for the reopening of a case. A decade-old finding of non-disability could then be judicially challenged simply by a plaintiff seeking to reopen the administrative process. Allowing this would in

27 Fed. Appx. 137, *; 2002 U.S. App. LEXIS 1039, **;
27 Employee Benefits Cas. (BNA) 1582

turn create incentives for an employer not to allow any reopening of the administrative process, lest it face a perpetual [**7] risk of litigation. See generally Martin v. Constr. Laborer's Pension Trust, 947 F.2d 1381, 1386-87 (9th Cir. 1991) (noting that tolling the statute of limitations under similar circumstances penalizes employers for giving employees' cases further consideration).

ERISA does not demand that an employer allow for reopening of closed cases. In providing such a procedure, Du Pont acts benevolently, and we do not intend to discourage such benevolence. Stafford's original claim accrued when the Board denied his appeal in December 1994. Du Pont's unwillingness to reexamine Stafford's case in the event of new medical information in support of his claim has no effect on the applicable statute of limitations. The statute of limitations began running in December 1994, when the Board rejected Stafford's appeal.

Stafford cites Doe v. Blue Cross & Blue Shield United, 112 F.3d 869 (7th Cir. 1997), as support for tolling the statute of limitations. The citation is inapposite. Doe involved a defendant who asked the plaintiff to delay filing a suit in order to continue negotiations. Id. at 876-77. Nothing like that occurred here. Du Pont merely encouraged Stafford [**8] to submit additional information beneficial to his claim, and informed him that his claim would be reevaluated if new information came to light. Du Pont did nothing expressly or implicitly to discourage Stafford from timely seeking judicial redress. Doe is therefore unavailing to Stafford.

Finally, Stafford cites Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335 (3d Cir. 1996), for the proposition that when a letter denying benefits does not explain the proper steps for pursuing review of the denial, the plan's time bar for review is not triggered. Id. at 342. Of course, if the plan's time bar is not triggered, administrative review is not exhausted and the statute of limitations does not begin to run. Weldon, 896 F.2d at 800. Here, however, Du Pont [*141] provided Stafford all necessary information. In the October 13, 1994, letter informing Stafford of the denial of his claim, Du Pont also advised him of his right to appeal to the Board, the proper procedure for taking such an appeal, and informed him that to successfully appeal, he had to submit additional objective medical evidence. Du Pont explained to Stafford the proper steps [**9] for reviewing its denial of Stafford's application, and thus Epright is of no benefit to him.

Stafford also argues that a three-year statute of limitations is applicable to his claim, rather than the one-year statute applied by the District Court. This case is on all fours with Syed v. Hercules Inc, 214 F.3d 155 (3d Cir. 2000), which held that Delaware's one-year statute is applicable under these circumstances. Assuming arguendo that the three-year statute is applicable, Stafford's suit is still untimely. Stafford's claim accrued in December 1994. Stafford filed suit on February 23, 1998, more than three years later. Thus, under either statute of limitations, Stafford's efforts to reopen his 1994 claim is barred.

III.

In summary, Stafford's February 1998 suit was untimely and the District Court committed no error in granting summary judgment in favor of Du Pont. Accordingly, the District Court's judgment is affirmed. Each side to bear its own costs.

/S/ Max Rosenn

Circuit Judge