# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Martha Jane Toy, individually, and as Executrix and Personal Representative of the Estate of Russell B. Toy, deceased,<br><br>      Plaintiffs,<br><br>               v.<br><br>Plumbers & Pipefitters Local Union No. 74 Pension Plan, Trustees of Plumbers & Pipefitters Local Union No. 74 Pension Plan, Health and Welfare Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74, Insurance Plan, Administrators of Pension and Welfare Plans, Trustees of Plumbers & Pipefitters Local Union No. 74 Welfare Plan, Plan Administrator of Pension & Welfare Plans, Insurance Plans, and Health and Welfare Benefit Plan,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 05-cv-1814<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO: [1] DISMISS ACTION AGAINST NON-EXISTENT DEFENDANTS, [2] DISMISS ACTION FOR IMPROPER VENUE, AND [3] DISMISS ACTION AGAINST INDIVIDUAL TRUSTEES

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Timothy J. Snyder, Esquire (No. 35059)
Curtis J. Crowther, Esquire (No. 73122)
D. Fon Muttamara-Walker, Esq. (ADMITTED PRO HAC VICE)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

CO COUNSEL:
JENNINGS SIGMOND, P.C.
Richard B. Sigmond, Esq. (No. 02574)
The Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106-3683

Dated: September 9, 2005          Counsel for Defendants

# **TABLE OF CONTENTS**

                                                                                                    Page

TABLE OF CITATIONS ............................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING...................................................... 1

SUMMARY OF ARGUMENT .................................................................................. 3

STATEMENT OF FACTS ........................................................................................ 4

ARGUMENT............................................................................................................ 10

    *I.*   *This Action Should be Dismissed With Respect to Non-Existent Plans Because Such Plans Simply Do Not Exist* ...........................................................................10

    *II.*   *This Action Should Be Dismissed In Its Entirety Because Venue Is Improper Under ERISA § 502(e)(2) [29 U.S.C. § 1132(e)(2)].* ...........................................11

        A. The Funds are administered in Delaware............................................. 11

        B. The alleged breaches occurred in Delaware.......................................... 12

        C. Neither the Pension Plan nor the Welfare Plan are "found" in the Eastern District of Pennsylvania because insufficient minimum contacts exist to establish personal jurisdiction in this District. .................................................... 14

            i.   The existence of *de minimis* non-party beneficiaries within the district are not enough to maintain venue. ................................................................19

            ii.   The existent employers with Pennsylvania locations contributing to the Funds is irrelevant to the issue of whether venue is proper in the Eastern District of Pennsylvania. ...........................................................................23

    *III.* *This Action Should Be Dismissed With Respect To The Individual Trustees Because No Jurisdiction Or Venue Exists In The Eastern District Of Pennsylvania.* ...............25

CONCLUSION......................................................................................................... 26

i

## TABLE OF CITATIONS

**Cases**

*Bostic v. Ohio River Co. (Ohio Div) Basic Pension Plan,*
   517 F. Supp. 627 (S.D.W.V. 1981) ........................................................................ 11

*Cap v. Local 897 Labor-Management*
   *Health Fund,* C.A. No. 86-3271, 1986
   U.S. District LEXIS 18531
   (E.D. Pa. Oct. 28, 1986) ........................................................... 15,19, 20, 21

*Hanson v. Denckla,*
   357 U.S. 235 (1958) ........................................................................ 14, 25

*Heft v. AAI Corp.,*
   355 F. Supp. 2d 757 (M.D. Pa. 2005) ........................................................ 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) ................................................................... passim

*Holland v. King Knob Coal Co.,*
   87 F. Supp. 2d 433 (W.D. Pa. 2000) ....................................................... 11, 12

*International Shoe Co. v. Washington*
   326 U.S. 310 (1945) ........................................................................ 14, 25

*Keating v. Whitmore Mfg. Co.,*
   981 F. Supp. 890 (E.D. Pa. 1997) ........................................................... 12, 13

*Moore v. St. Paul Cos.,*
   C.A. No. 94-1329, 1995 U.S. Dist. LEXIS 177
   (D. N.J. Jan. 3, 1995) ......................................................................... 14

*Palka v. Theodore M. Hylwa, M.D., Inc.,*
   C. A. No. 85-2480, 1986 U.S. Dist.
   LEXIS 20854 (D.Kan. Sep. 3, 1986) ....................................................... 11

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,*
   196 F.3d 284 (1st Cir. 1999) ............................................................... 22

*Scullin Steel Co. v. Nat'l Ry Utilization Corp.,*
   676 F. 2d 309 (8th Cir. 1982) .............................................................. 22

*Seitz v. Bd. of Trustees of the Pension Plan of*
*The New York State Teamsters Conference Pension and Retirement Fund,*
   953 F. Supp. 100 (S.D.N.Y. 1997) ....................................................... 19, 22

DB01:1833335.11    061011.1005

*Sprinzen v. Supreme Court of New Jersey,*
478 F. Supp. 722 (S.D.N.Y. 1979) ........................................................................ 11

*Turner v. CF&I Steel Corp.,*
510 F. Supp. 537 (E.D. Pa. 1981) .................................................................. passim

*Varsic v. United States Dist. Court for Cent. Dist. of California,*
607 F.2d 245 (9th Cir. 1979) ........................................................................... 14,15

*Waeltz v. Delta Pilots Ret. Plan,*
*301 F. 3d 804 (7th Cir. 2002)* ........................................... ………………………...19,22

*Wallace v. Am. Petrofina, Inc.,*
659 F. Supp. 829 (E.D. TX 1987) ........................................................................ 14

**Statutes**
29 U.S.C. § 1002 (37) ............................................................................................. 5
29 U.S.C. § 1002(16)(A) ......................................................................................... 6
29 U.S.C. § 1002(16)(B) ......................................................................................... 5
29 U.S.C. § 1002(2) ........................................................................................... 5, 10
29 U.S.C. § 1002(21)(A) ......................................................................................... 6
29 U.S.C. § 1132 (e)(2) ........................................................................ 3, 11, 14, 24
29 U.S.C. § 1132(d) .............................................................................................. 10

**Rules**
Fed. R. Civ. P. 12(b)(2) ...................................................................................... 2, 3
Fed. R. Civ. P. 12(b)(3) ...................................................................................... 2, 3

DB01:1833335.11                                                    061011.1005

## NATURE AND STAGE OF THE PROCEEDING

This is an action arising out of the Employment Retirement Income Security Act of 1974 ("ERISA"). This action was commenced on April 20, 2005 when Martha Jane Toy, individually, and as Executrix and Personal Representative of the Estate of Russell B. Toy, deceased (collectively "Plaintiff"), filed a four count complaint against Plumbers & Pipefitters Local Union No. 74 Pension Plan ("Pension Plan"), and Plumbers and Pipefitters Local Union No. 74 Welfare Plan ("Welfare Plan") (collectively "Funds")[1] and the Trustees and Plan Administrators of the Funds (collectively "Trustees")[2] (the Funds and Trustees collectively referred to as "Defendants") alleging (1) denial of pension benefits under the Pension Fund; (2) denial of medical benefits under the Welfare Fund; (3) denial of life insurance benefits under the Welfare Fund; and (4) breach of fiduciary duty. (Complaint ¶¶ 8-25.)

Defendants filed a Motion to Dismiss or Transfer ("Motion to Dismiss") Plaintiff's Complaint along with a Brief in Support of Defendants' Motion to Dismiss ("Defendants' Brief") on July 5, 2005. Plaintiff filed a Brief in Opposition of Defendants Motion to Dismiss ("Plaintiff's Brief") on July 15, 2005. Defendants filed a Motion for Leave to File a Reply Brief to Plaintiff's Brief on July 19, 2005 ("Motion for Leave") which this Court denied as moot on July 20, 2005 ("July 20 Order"). Defendants' Motion for Leave was denied as moot since, on the same day the Motion for Leave was filed, this Court ordered limited

---

[1] Plaintiffs have named as defendants an array of plans: Plumbers & Pipefitters Local Union No. 74 Pension Plan, Health and Welfare Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74, Insurance Plan, Insurance Plans, and Health and Welfare Benefit Plan. As discussed *infra* Part I, the only plans in existence and relevant to this matter are the Plumbers & Pipefitters Local Union No. 74 Pension and Welfare Plans. Any benefits allegedly due to Plaintiffs would be provided by either of these two plans. The other named "defendant plans" simply do not exist.

[2] The Trustees are designated as the Plan Administrator. (Complaint ¶ 7.)

discovery on the issue of jurisdiction on July 19, 2005 ("July 19 Order") and established a

deadline for Defendants to re-file their Motion to Dismiss and for Plaintiff to respond.  This

Court subsequently issued a supplemental Order on August 23, 2005 ("August 23 Order") that

extended the deadline for Defendants to re-file their Motion to Dismiss and for Plaintiff to

respond.

        Defendants have now re-filed a motion to dismiss this action because this Court

lacks personal jurisdiction over the Defendants and venue is otherwise improper in this District.

This is the opening brief of the Defendants in support of their motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(2) and 12(b)(3).

2

## SUMMARY OF ARGUMENT

1.    The Complaint should be dismissed with respect to the non-existent defendant plans because such alleged plans have no legal significance or existence.

2.    This case should be dismissed because venue is improper under Fed. R. Civ. P. 12(b)(3).  Venue is improper in the Eastern District of Pennsylvania under ERISA § 502 (e)(2) [29 U.S.C. § 1132 (e)(2)] ("ERISA § 502(e)(2) )") because the Funds are administered in Delaware, the alleged breaches by the Funds and the alleged breach of fiduciary duties by the Trustees occurred in Delaware, and Plaintiff is unable to establish sufficient minimum contacts within the Eastern District of Pennsylvania to support the proposition that the Defendants may be "found" or reside within the Commonwealth of Pennsylvania and this District.

3.    The Complaint should be dismissed with respect to the individual Trustees because Plaintiff cannot establish sufficient minimum contacts to establish personal jurisdiction in the Eastern District of Pennsylvania to maintain a cause of action against these defendants under Fed. R. Civ. P. 12(b)(2).  The Plaintiff and all of the individual Trustees are residents of Delaware, eliminating any claim of diversity jurisdiction.  Similarly, Plaintiff is unable to establish sufficient minimum contacts between the individual Trustees and the Commonwealth of Pennsylvania and this District in order for the Eastern District of Pennsylvania to exert personal jurisdiction over them in this Court or for venue to otherwise be proper against the individual Trustees in the Eastern District of Pennsylvania.

3

## STATEMENT OF FACTS

Individual plaintiff, Martha J. Toy ("Toy"), is the widow of Russell B. Toy ("Russell"). (Complaint ¶ 3.) Russell was a member of the Plumbers & Pipefitters Local Union No. 74 ("Union") in Delaware. (Ernsberger Aff. ¶ 20; Attached hereto as Exhibit A.) As a member of the Union, Russell was a participant in the Pension Plan and would have been eligible for pension benefits when he reached the appropriate age for normal retirement. (Ernsberger Aff ¶ 20.) Russell applied for disability pension benefits. (Ernsberger Aff. ¶ 20.) It was determined that Russell had not conformed to Pension Plan requirements to be entitled to disability pension benefits at the time he applied for disability pension benefits. (Ernsberger Aff ¶ 20.) After careful consideration of the circumstances, the Trustees made a decision to award Russell disability pension benefits posthumously and retroactively awarded those benefits from the date he would have otherwise been eligible until the date of his death. (Ernsberger Aff ¶ 20.) The lump sum payment was made to Toy at her home in Hartley, Delaware (Ernsberger Aff. ¶ 20.) Toy continues to receive fifty percent (50%) of Russell's disability pension benefits on a monthly basis at her home in Hartley, Delaware. (Ernsberger Aff ¶ 21.) At one point during Russell's Union membership he was eligible for welfare benefits from the Welfare Plan. (Ernsberger Aff ¶ 22.) However, at the time of his death, Russell was no longer a participant in the Welfare Plan, had not been a Welfare Plan participant for many years, did not conform with the Welfare Plan eligibility rules and was therefore not eligible for welfare benefits. (Ernsberger Aff. ¶ 22.) At all relevant times, both Toy and Russell were residents of Delaware. (Ernsberger Aff. ¶ 24.)

While not completely clear in the Complaint, Plaintiff alleges she is entitled to additional pension plan, welfare medical, welfare insurance, as well as spousal election benefits

4

from the Pension Plan and Welfare Plan. (Complaint ¶¶ 11-14, 17, 21.)  Plaintiff alleges that the

Trustees denied Plaintiff's initial application and subsequent appeals for these additional

benefits, with the final denial of benefits coming in August 2003.  (Complaint ¶ 13).

Plaintiff has named as defendants an array of purported plans: Plumbers &

Pipefitters Local Union No. 74 Pension Plan, Health and Welfare Plan, Local 74, Welfare

Benefit Plan, Life Insurance Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74,

Insurance Plan, Insurance Plans, and Health and Welfare Benefit Plan.  However, the only actual

plans in existence and relevant to this matter are the Plumbers & Pipefitters Local Union No. 74

Pension Plan ("Pension Plan") and the Plumbers & Pipefitters Local Union No. 74 Welfare Plan

("Welfare Plan").  (Ernsberger Aff. ¶ 3, 4.)  Any benefits allegedly due to Plaintiff would be

provided by either of these two plans. (Ernsberger Aff. ¶ 4.)  To the extent the Complaint seeks

to identify or name any other alleged or purposed plans, such "defendant plans" simply do not

exist.  (Ernsberger Aff. ¶ 4.)

The Pension Plan and the Welfare Plan are multiemployer plans as defined in

section 3(37) of ERISA.  (Complaint ¶¶ 4, 5.)  The Pension Plan is an employee pension benefit

plan as defined in section 3(2) of ERISA and the Welfare Plan is an employee welfare benefit

plan as defined in section 3(2) of ERISA (Complaint ¶¶ 4, 5.)  Plaintiff alleges that the Union is

the sponsor of the Pension Plan and Welfare Plan.  (Complaint ¶ 6.)  In reality, the Trustees are

the plan sponsors. [3]  (Ersberger Aff. ¶ 6.)  The individual Trustees are: John J. Czerwinski,

Andrew S. Nowell, Anthony M. Papili, Kyle T. Spence, John D. Daniello, George Millar,

---

[3] Since the Pension Plan and the Welfare Plan are multiemployer plans and were established by
and are maintained by one or more employers and one or more employee organizations, the
"plan sponsor", as defined in section 3(16)(B) of ERISA, is the joint board of trustees, not the
Union, who maintain the plan.

Terrence M. Shannon, and Jeffrey A. Sill. (Ernsberger Aff. ¶ 7.) All of the individual Trustees reside in Delaware. (Ernsberger Aff. ¶ 7.)

Plaintiff also alleges that the Trustees of the Pension Plan administer the Welfare Plan. (Complaint ¶ 5.) In reality, the Union and the Delaware Mechanical Contractors Association ("Association") appoint an equal number of Union and management representatives to serve as the joint board of Trustees of the Pension Plan and Welfare Plan. (Ernsberger Aff. ¶ 6.) The Trustees of the Pension Plan and Welfare Plan are the Plan Administrators of the Pension Plan and Welfare Plan as defined in 3(16)(A) of ERISA, and are also fiduciaries of the Pension Plan and Welfare Plan as defined in 3(21)(A) of ERISA. (Complaint ¶ 7.) The Pension Plan and Welfare Plan are fully administered in Delaware. (Ernsberger Aff. ¶ 10.) Each of the Trustees reside in Delaware. (Ernsberger Aff. ¶ 7.) The Trustees hold their bi-monthly meetings to conduct the business of the Pension Plan and Welfare Plan at various locations in Delaware and all meetings wherein the relevant benefit eligibility decisions relating to the Pension Plan or Welfare Plan have been made or discussed have been in Delaware. (Ernsberger Aff. ¶ 12.)

The Trustees have retained the GEMGroup LP as the fund manager/third party administrator ("third party administrator" or "GEMGroup") to manage the day to day operations of the Pension Plan and Welfare Plan. (Ernsberger Aff. ¶ 8, 10.) The GEMGroup maintains an office in Claymont, Delaware where the daily operations of the Pension Plan and Welfare Plan are conducted and the Pension Plan's and Welfare Plan's records are maintained and stored. (Ernsberger Aff. ¶ 10, 11.) GEMGroup has an office in Pittsburgh, Pennsylvania where benefits checks are sent by GEMGroup to benefits recipients. (Ernsberger Aff. ¶ 9.) GEMGroup has set up bank accounts in Pittsburgh, Pennsylvania to facilitate its sending of these benefits checks. (Ernsberger Aff ¶ 9). However, these bank accounts are maintained by GEMGroup and are

6

outside of the immediate control of the Pension Plan and Welfare Plan. (Ernsberger Aff. ¶ 9.)

GEMGroup determines the amount due each beneficiary on a monthly basis and funds the

Pittsburgh account with money from bank accounts in Washington, DC and in Ohio. (Ernsberger

Aff. ¶ 9.)   GEMGroup distributes a report of all benefits paid to beneficiaries on behalf of the

Funds on a monthly basis for the review by the Pension Plan and Welfare Plan. (Ernsberger Aff.

¶ 9.)

Additionally, neither the Pension Plan nor Welfare Plan has negotiated with any

health care providers in Pennsylvania. Since 2001, the Pension Plan and Welfare Plan have

negotiated only with BlueCross BlueShield of Delaware, Express Scripts and GEMGroup for

medical benefits under the Welfare Plan. BlueCross BlueShield of Delaware is located in

Wilmington, Delaware. Express Scripts' main office is in St. Louis, Missouri. The Funds deal

directly with these third party vendors and make no direct payments to medical providers

anywhere, including Pennsylvania. All of the payments made to health care providers are made

directly by these third party vendors on behalf of the Welfare Plan.

The decisions to deny Plaintiff's application for additional benefits were made in

Delaware. (Ernsberger Aff. ¶ 13.) All of the Trustees, designated as Plan Administrator, as well

as the Plaintiff, all reside in Delaware. (Complaint ¶ 3; Ernsberger Aff. ¶¶ 7, 24.) The Union's

collective bargaining agreement only applies to work performed by union labor in Delaware.

(Ernsberger Aff. ¶ 5.) The Pension Plan and Welfare Plan have both retained a Pennsylvania law

firm and one or more  Delaware law firms to represent the Plans and provide advice with regard

to benefits eligibility. (Ernsberger Aff. ¶ 14.) Attorneys from the law firms meet with the

Trustees in Delaware to make the decisions regarding benefits eligibility. (Ernsberger Aff. ¶ 14.)

7

A Pennsylvania actuarial firm performs actuarial services fo the Funds. These actuarial services are unrelated to Plaintiff's claims in this action.

The parties lack minimum contacts with Pennsylvania. The Plaintiff and Defendants do not reside in Pennsylvania. (Complaint ¶ 3; Ernsberger Aff. ¶ 6, 10, 11.) Russell was a participant in the Pension Plan through his membership in the Union. (Complaint ¶ 3; Ernsberger Aff. ¶ 20.) In order to participate in the Pension Plan, Russell had to have been a member of the Union in Delaware. (Ernsberger Aff. ¶ 5.) As a Delaware resident, Russell received benefits from the Pension Plan exclusively in Delaware. Toy continues to receive her benefits from the Pension Plan exclusively in Delaware. The Trustees personally are not located in Pennsylvania, nor do the Trustees conduct any business of the Pension Plan and Welfare Plan, in Pennsylvania. (Ernsberger Aff. ¶ 7, 12.)

According to the records of the Pension Plan and Welfare Plan, the breakdown of pensioners and participants are as follows:

**Pension Plan**

| Year | Total Pensioners | Pensioners with Pennsylvania Addresses[4] | Total Amount Paid to All Pensioners | Total Amount Paid to Pensioners with Pennsylvania Addresses |
|------|------|------|------|------|
| 2000 | 376 | 11 | $6,265,646.00 | $188,825.19 |
| 2001 | 417 | 11 | $7,035,844.00 | $145,112.63 |
| 2002 | 459 | 9 | $8,061,903.00 | $137,764.22 |
| 2003 | 476 | 10 | $9,576,354.00 | $139,741.52 |
| 2004 | 484 | 11 | $9,779,575.00[5] | $146,060.65 |
| 2005 | 492 | 11 | $2,325,960.00[6] | $102,507.92 |

---

[4] The information is based on the current address information provided to GEMGroup by the pensioners and the Pension Plan does not know whether such address is the residence address of the pensioner.

[5] Financial information is unaudited.

8

**Welfare Plan**[7]

| Year | Total Participants | Participants with Pennsylvania Addresses[8] |
|------|--------------------|---------------------------------------------|
| 2002 | 1422 | 34 |
| 2003 | 1020 | 38 |
| 2004 | 1204[9] | 45 |
| 2005 | 1011[10] | 41 |

None of the pensioners and participants of the Pension Plan or Welfare Plan self-reporting a Pennsylvania address are involved or related to this litigation. (Ernsberger Aff. ¶ 17.) Similarly, this litigation does not involve payments to any Pennsylvania-based medical providers or services.

---

[6] Financial information is unaudited.

[7] According to GEMGroup's MIS Department, the information is only available from 2002-2005 due to a conversion of eligibility procedures in August 2002. Even if available, the prior system did not allow searches based on prior addresses and only used current address information.

[8] The information is based on the current address information provided to GEMGroup by the participant and the Welfare Plan does not know whether such address is the residence address of the participant.

[9] Information is unaudited.

[10] Information is unaudited.

9

## ARGUMENT

I. *This Action Should be Dismissed With Respect to Non-Existent Plans Because Such Plans Simply Do Not Exist*

Employee benefits plans are defined under ERISA. ERISA § 3(2) [29 U.S.C. § 1002(2)] ("ERISA § 3(2)") defines an "employee pension benefit plan" and "pension plan" to

> mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

ERISA § 3(2). ERISA § 502(d) states that "[a]n employee benefit plan may sue or be sued under this title as an entity." ERISA § 502(d).

Only two of the many named plans listed as a defendant in this case exist as defined under ERISA § 3(2). Those two plans are the Pension Plan and the Welfare Plan. As discussed *supra*, any benefits allegedly due to Plaintiff would be provided by either of these two plans. The other named "defendant plans" simply do not exist. To the extent the defendant plans do not exist, they cannot be sued pursuant to ERISA § 502(d). Thus, the Complaint should be dismissed with respect to all "plan" defendants not actually in existence.

10

## II.     This Action Should Be Dismissed In Its Entirety Because Venue Is Improper Under ERISA § 502(e)(2) [29 U.S.C. § 1132(e)(2)].

Proper venue in an ERISA action is determined pursuant to § 502(e)(2) of ERISA which provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

ERISA § 502(e)(2).

### A.     The Funds are administered in Delaware.

To determine where the Pension Plan and Welfare Plan are administered, this Court must look to where the Funds are managed or supervised. *Holland v. King Knob Coal Co.*, 87 F. Supp. 2d 433, 439-40 (W.D. Pa. 2000). In accepting this definition, the court in *Holland* adopted the reasoning set forth in *Sprinzen v. Supreme Court of New Jersey*, 478 F. Supp. 722, 723 (S.D.N.Y. 1979). With regard to ERISA § 502(e)(2), the court in *Sprinzen* adopted the general definition of "administer" to mean "to manage." *Id.* at 723. In ascertaining where the plan was managed, the court in *Sprinzen* looked to evidence of where the employees responsible for the plan worked, where the trustees met, where the documents and records were held, where the eligibility requirements and appeals were decided and the location identified as the place of administration with the Department of Labor. *Id.*; *see also Bostic v. Ohio River Co. (Ohio Div) Basic Pension Plan*, 517 F. Supp. 627, 631-32 (S.D.W.V. 1981); *Palka v. Theodore M. Hylwa, M.D., Inc.*, C. A. No. 85-2480, 1986 U.S. Dist. LEXIS 20854, *3-*4 (D.Kan. Sep. 3, 1986).

11

In this case, the Trustees are the Administrators of the Pension Plan and Welfare Plan. As the Plan Administrators, the Trustees hold bi-monthly meetings to conduct the business of the Pension Plan and the Welfare Plan at various locations in Delaware. During these bi-monthly meetings, the Trustees make decisions on the eligibility of participants of the Pension Plan and Welfare Plan, as well as determinations on any appeals to the Trustees resulting from the denial of Pension Plan and Welfare Plan benefits. All meetings regarding or pertaining to decisions with respect to eligibility for benefits under the Welfare Plan and the Pension Plan have been conducted in Delaware. The Trustees have retained a third party administrator, GEMGroup, as the Fund Manager, to manage the day to day operations of the Pension Plan and Welfare Plan. GEMGroup manages the Pension Plan and Welfare Plan from its office in Claymont, Delaware. Additionally, all of the Pension Plan's and Welfare Plan's physical documents and records are maintained at the Claymont, Delaware office. Applying the factors adopted by the *Holland* court, there can be no doubt that both the Pension Plan and Welfare Plan are administered in Delaware. Thus, under this prong, venue in the Eastern District of Pennsylvania is improper.

### B.     *The alleged breaches occurred in Delaware.*

Pennsylvania district courts have applied two different tests to determine where a plaintiff's ERISA claim has accrued. *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 771 (M.D. Pa. 2005). One line of cases has looked to the state where the decision that amounted to the alleged breach was made to determine where the cause of action accrued. *See e.g., Turner v. CF&I Steel Corp.*, 510 F. Supp. 537, 541 (E.D. Pa. 1981). Another line of cases have looked to the state where the plaintiff was supposed to receive the benefits to determine where a claim accrued. *See e.g., Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 893 (E.D. Pa. 1997).

12

In *Turner*, the court held that the alleged breaches would have occurred in either Colorado, where the "[d]ecisions regarding payment amounts were made," or in New York, where "the checks were sent" and the Defendant bank, who had "been the trustee of each of the trusts forming a part of the Non-Contributory Plan and the Master Plan" had offices. *Turner*, 510 F. Supp. 539, 541. In *Keating*, the court posited that "ERISA benefit plans are, in a very real sense, contracts. Thus, it is logical that...rules of contract law [are followed] when deciding where a breach of an ERISA plan takes place, at least when the plaintiff is suing for benefits due under the terms of the plan." *Id.* at 893. Accordingly, the court held that a contract was breached in the place it is to be performed. *Id.* In applying that theory, the court held that "the alleged breach...took place where the Plaintiff was to receive her benefits." *Id.*

Applying either the *Turner* or *Keating* standard, the alleged breaches by the Trustees or the Plans all occurred exclusively in Delaware. Applying the *Turner* court's standard, the breaches alleged by the Plaintiff occurred exclusively in Delaware where the Trustees, as the designated Plan Administrators, met to decide whether Plaintiff was entitled to any additional benefits under the Pension Plan and/or Welfare Plan. The Trustees also met in Delaware to consider Plaintiff's appeals from the Trustees' decision to deny Plaintiff's request for additional benefits. Because the decisions made by the Trustees regarding Plaintiff's claimed entitlement to benefits under the Pension Plan and/or Welfare Plan occurred exclusively in Delaware, any alleged breach had to have occurred in Delaware. Therefore, venue is improper in the Eastern District of Pennsylvania.

Similarly, even if this Court applied the standard set forth in *Keating*, the conclusion would be the same. Russell received benefits to which he was entitled to, and Toy continues to receive benefits she is entitled to, in Hartly, Delaware, where Russell resided before

13

his death and where Toy continues to reside. Thus, any alleged breaches had to occur

exclusively in Delaware, thereby making venue improper in the Eastern District of Pennsylvania

under this prong of the test.

> ### C.    Neither the Pension Plan nor the Welfare Plan are "found" in the Eastern District of Pennsylvania because insufficient minimum contacts exist to establish personal jurisdiction in this District.

Finally, Defendants do not reside and may not be "found" in the Eastern District

of Pennsylvania. The term "found", as prescribed by ERISA § 502(e)(2) , has been consistently

interpreted by courts to mean any forum where a district court could establish personal

jurisdiction over a defendant under the test established in *International Shoe Co. v. Washington*,

326 U.S. 310 (1945). *See, e.g., Varsic v. United States Dist. Court for Cent. Dist. of California*,

607 F.2d 245, 248-49 (9th Cir. 1979); *Turner,* 510 F. Supp. 542; *Moore v. St. Paul Cos.*, C.A.

No. 94-1329, 1995 U.S. Dist. LEXIS 177 at *5-6 (D. N.J. Jan. 3, 1995); *Wallace v. Am.*

*Petrofina, Inc.*, 659 F. Supp. 829, 831 (E.D. TX 1987). *International Shoe* and its progeny

established that a forum can exert personal jurisdiction over a defendant when: (1) the litigation

pertains to the defendant's contacts within the forum and those contacts exhibit a purposeful

availment of the benefits of the forum's laws, *Hanson v. Denckla*, 357, U.S. 235, 253 (1958), or

(2) the litigation is unrelated to the defendant's contacts, but those contacts display a substantial,

continuous, and systematic linkage with the forum, *Helicopteros Nacionales de Colombia, S.A.*

*v. Hall*, 466 U.S. 408, 416 (1984).

The court in *Varsic* applied a three-part test to determine whether it would be

"reasonable and fair" to force a party to defend himself in a particular forum based on the nature

and quality of his activities. Personal jurisdiction, and accordingly venue, would be proper

where: (1) a non-resident defendant does some act or consummates some transaction with the

forum or performs "some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws…,(2) [t]he claims must be one which arises out of or results from the defendant's forum related activities…, and (3) [e]xercise of jurisdiction must be reasonable." *Varsic*, 607 F.2d. 249; *see also Turner*, 510 F. Supp. 542 (in determining whether minimum contacts exist to maintain a claim against a defendant under "traditional notions of fair play and substantial justice," it must be determined whether the defendant's contacts are of the quality and nature as to be fair and reasonable to force him to defend himself in that state); *Cap v. Local 897 Labor-Mgmt. Health Fund,* C.A. No. 86-3271, 1986 U.S. Dist. LEXIS 18531, *2 ("[a] defendant is considered found in a district if its contacts with the district are sufficient for exercise of personal jurisdiction.").

In order to maintain claims not arising out of the defendant's contacts with a forum state, as in this litigation, the plaintiff must show that the defendant's contacts with the forum state display a substantial, continuous, and systematic linkage with the forum. *Helicopteros*, 466 U.S. 416. In *Helicopteros*, the Supreme Court held that the defendant's contact with Texas, the forum state, did not constitute the kind of continuous and systematic general business contacts that would subject the defendant to *in personam* jurisdiction in Texas. The defendant in *Helicopteros*, a company offering helicopter services, did not have a place of business nor had been licensed to do business in Texas. The contacts the defendant had with Texas

> consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a helicopter retailer] for substantial sums; and sending personnel to [the helicopter retailer]'s facilities in Fort Worth for training.

15

*Id.* at 416.  The Supreme Court found that the trip by defendant's CEO to Texas was not

continuous and systematic in nature and that the checks being drawn from a Texas bank was "of

negligible significance." *Id.* at 416-17.  With regard to the checks being drawn from a Texas

bank, the Supreme Court held that the drawer, and not the payee, was responsible for the bank

where the checks were drawn, and that "[s]uch unilateral activity of another party or a third

person is not an appropriate consideration when determining whether a defendant has sufficient

contacts with a forum State to justify an assertion of jurisdiction." *Id.* at 417.  As to the

purchases of equipment and training trips, the court held that

> mere purchases, even if occurring at regular intervals, are not
> enough to warrant a State's assertion of *in personam* jurisdiction
> over a nonresident corporation in a cause of action not related to
> those purchase transactions.  Nor can we conclude that the fact that
> [the defendant] sent personnel into Texas for training in connection
> with the purchase of helicopters and equipment in that State in any
> way enhanced the nature of [the defendant]'s contacts with Texas,
> The training was a part of the package of goods and services
> purchased by [the defendant] from [the helicopter retailer].

*Id.* at 418.

In this case, the litigation does not arise out of any contacts any of the Defendants

have with or in the Commonwealth of Pennsylvania.  Rather, the claims in this case pertain to

benefits claimed to be due and payable exclusively in Delaware.  As such, none of the

Defendants has purposefully availed themselves of the laws of Pennsylvania to come under the

personal jurisdiction of the Eastern District of Pennsylvania.  Thus, exercise of jurisdiction

would not be reasonable.

In addition, none of the Defendants have sufficient minimum contacts with the

Commonwealth of Pennsylvania necessary to display a substantial, continuous, and systematic

linkage with the forum.  The Funds have retained GEMGroup as the third party administrator of

16

the Pension Plan and Welfare Plan. All of the Pension Plan's and Welfare Plan's daily business is conducted by GEMGroup employees working in its Delaware office. Similarly, the physical records of the Funds are maintained and kept in Delaware. While GEMGroup has an office in Pittsburgh, Pennsylvania where benefits checks are sent by GEMGroup to benefits recipients, this function and these bank accounts are the "unilateral activity of another party or a third person" and outside of the control of the Defendants. The Funds deal directly with GEMGroup only in Delaware.

Similar to the defendant in *Helicopteros*, none of the Defendants here have a place of business, or are licensed to do business, in the Commonwealth of Pennsylvania. Most notably, the Funds receive contributions from employers for work performed exclusively in Delaware. Additionally, the actuarial services performed by the actuarial firm are unrelated to Plaintiff's claims in this action. The Supreme Court in *Helicopteros* found that trips to the forum state, along with business transactions wherein substantial purchases of good in that state were made were not enough to constitute a continuous, systematic linkage to that forum. The Funds' use of actuarial services from a Pennsylvania firm is as inconsequential to the issue of venue as the purchase by the defendant in *Helicopteros* of goods in Texas. The Supreme Court's statement that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions" compels a rejection of any contention that the use of a Pennsylvania actuarial firm by the Funds is sufficient to confer jurisdiction over the Funds in the Eastern District of Pennsylvania. *Id.*

In the present action, GEMGroup maintains bank accounts in Pittsburgh, Pennsylvania for all of the accounts they maintain in their Claymont, Delaware offices on behalf

17

of the Pension Plan as well as other, unrelated entities.  GEMGroup maintains the Welfare Plan

bank accounts out of a bank in Washington, D.C.  GEMGroup maintains these accounts in the

names of the Funds and such other entities for which GEMGroup acts as the third party

administrator.  GEMGroup has and maintains immediate control over these accounts.  It was

within the discretion of GEMGroup, and not the Funds, to locate the Pension Plan accounts in

Pittsburgh, Pennsylvania and the Welfare Plan accounts in Washington, D.C.  The Funds

contract with GEMGroup for administrative services, and it is the result of unilateral actions of

GEMGroup that bank accounts are setup and maintained in these specific banks and certain

benefits checks out sent from  Pittsburgh, Pennsylvania by GEMGroup.

Similarly, to the extent Plaintiff claims that payments made to medical providers

in Pennsylvania provides for personal jurisdiction or venue over the Funds, such logic is

mistaken.  The third party vendors, and not any of the Defendants, pay those benefits to the

medical providers.  The Funds have only contracted with the third party vendors, and as

discussed *supra*, those third party vendors have locations in Delaware and Missouri.

Furthermore, Plaintiff's claims do not arise out of any denied benefits claims relating to  any

Pennsylvania medical or other providers.

In *Helicopteros*, the defendant entered into business transactions in Texas and the

Supreme Court held that such business transactions, even though large purchases, were not

enough to establish a substantial, continuous and systematic linkage with that state.  The causes

of action in the *Helicopteros* case were unrelated to the defendant's contact with Texas.  That is

exactly the situation with the present action.  Any contacts Defendants may have with the

Eastern District of Pennsylvania are clearly unrelated to Plaintiff's claims.

18

061011.1005

Additionally, *de minimus* non-party participants of the Pension Plan and Welfare Plan alone are not enough to provide the type of contacts envisioned by the courts to satisfy due process requirements for personal jurisdiction. *See, e.g. Turner v. CF&I Stell Corp.*, 510 F. Supp. 537, 543 (E.D. Pa. 1981); *Cap v. Local 897 Labor-Mgmt. Health Fund*, C.A. No. 86-3271, 1986 U.S. District LEXIS 18531 at *2-*3 (E.D. Pa. Oct. 28, 1986); *Seitz v. Bd. of Trustees of the Pension Plan of The New York State Teamsters Conference Pension and Ret. Fund*, 953 F. Supp. 100, 102 (S.D.N.Y. 1997); *Waeltz v. Delta Pilots Ret. Plan*, 301 F. 3d 804, 810 (7th Cir. 2002). Furthermore, any employers with Pennsylvania addresses contributing to the Pension Plan and Welfare Plan, do so only for work performed exclusively in the state of Delaware.

This action does not arise out of any contacts Defendants may have with the Eastern District of Pennsylvania. Furthermore, any contacts Defendants may have with this District are insufficient to display a substantial, continuous and systematic linkage to this District. Thus, Plaintiff is unable to establish the requisite minimum contacts to permit personal jurisdiction, and consequently venue, in the Eastern District of Pennsylvania.

       i.      **The existence of *de minimis* non-party beneficiaries within the district are not enough to maintain venue.**

The existence of non-party beneficiaries within the district alone is also not enough to establish minimum contacts within such district for purposes of maintaining venue. Pennsylvania courts have ruled that the existence of pensioners receiving benefits within Pennsylvania, *along with other factors*, are enough to render venue proper in this district. *Turner*, 510 F. Supp. 543; *Cap*, 1986 U.S. District LEXIS 18531 at *2-*3. The "other factors" are not present in this case.

The *Turner* and *Cap* courts held that venue was proper in the Eastern District of Pennsylvania. However, *Turner* and *Cap* are clearly distinguishable from this action. In *Turner*,

the court held that twenty-nine (29) pensioners residing in Pennsylvania, along with the fact that the corporate sponsor was admittedly found in the district, was enough to satisfy the "administered" prong of ERISA § 502(e)(2) and concluded that venue was proper in Pennsylvania. *Turner*, 510 F. Supp. 543. The corporate sponsor of the Plans "maintain[ed] participant records, receive[d] claims for benefits, determine[d] claimant's eligibility for benefits, determine[d] the amount of benefits, authorize[d] benefit payments and decide[d] appeals of claims denials in Pennsylvania." *Id.* None of the facts that supported the decision in Turner exist in this case. In the present action, the Trustees have hired GEMGroup as the third party administrator of the Funds. GEMGroup maintains all physical records of the Funds at their office in Claymont, Delaware. Claims for Pension Plan benefits are also received by GEMGroup in the Delaware office. All determinations of Plan provisions regarding participant eligibility, the amount of benefits payments to participants, any authorization of benefits payments, and all decisions on appeals of claims denials submitted to the Trustees are made by the Trustees at their bi-monthly meetings held in Delaware.

In *Cap*, the court held that venue was proper in the Eastern District of Pennsylvania based on the fact that the Plan paid benefits to sixteen (16) hospitals in Pennsylvania and received contributions from seventy-five (75) members of six (6) firms whose principal place of business was in Pennsylvania and that the basis for the claim was for medical expenses incurred in Pennsylvania. *Cap*, 1986 U.S. Dist. LEXIS at \*2 - \*3. The court took into consideration the fact that defendants received from, and paid benefits to, individuals or entities in the Eastern District of Pennsylvania. *Id.* at 3. The court also took into consideration the nature of defendants' contacts with the Eastern District, that the defendants negotiated with health providers in the district, in determining the sufficiency of the contacts to support proper

20

venue. *Id.* Additionally, unlike the present action, the litigation was based on events occuring in the Eastern District of Pennsylvania and, in fact, the benefits sought by the Plaintiff were to be paid to medical providers located in the Eastern District of Pennsylvania. Accordingly, the court concluded that allowing the action to go forward under all these circumstances in the Eastern District of Pennsylvania would do "no violence to the probable expectations of the parties." *Id.*

In the present action, the Welfare Plan and the Trustees have not negotiated with any health care providers in the Eastern District of Pennsylvania. In fact, the Welfare Plan and the Trustees have contracted only with BlueCross BlueShield of Delaware and Express Scripts as third party vendors for medical services under the Welfare Plan. BlueCross BlueShield of Delaware and Express Scripts negotiate with health care providers and pharmacies and that process does not involve the Welfare Plan or the Trustees. Additionally, and perhaps most importantly, unlike in the *Cap* case, this action does not pertain to any services or claims in the Eastern District of Pennsylvania. It is worth noting that the court in *Cap* did not discuss whether the plaintiff was a Pennsylvania resident. However, presumably, since the medical expenses denied by the plans in that case were incurred in the Eastern District of Pennsylvania, it is likely that the plaintiff in that case was a Pennsylvania resident. Thus it would be logical in *Cap*, as the court stated, to allow the action to proceed in the Eastern District of Pennsylvania without doing "violence to the probable expectations of the parties." This would be because the parties could very well expect that a Pennsylvania claimant, appealing the denial of claims for medical expenses accruing in Pennsylvania, may be subject to suit in the Eastern District of Pennsylvania. In the present action, allowing this suit to proceed in the Eastern District of Pennsylvania *would* "do violence to the probable expectations of the parties," because none of

21

the claims and denials upon which Plaintiff bases her action relates in any way or respect to Pennsylvania.

Similarly, the Southern District of New York has held that "the fact that there are or were contributing employers and retirees receiving benefits in this district, *other than the Plaintiff*, is not sufficient to satisfy the minimum contacts test..." *Seitz*, 953 F. Supp. 102 (emphasis added). Likewise, the Seventh Circuit has held that the mere presence of non-party beneficiaries living within the district is insufficient to meet the test for minimum contacts. *Waeltz*, 301 F. 3d 810.

In *Waeltz*, the court found that the plan in question paid benefits to two pensioners in the Southern District of Illinois, where the case was brought. These two beneficiaries were unrelated to the suit and the court held that "[t]he mere residence in the district of two Plan participants out of 2,740, absent any other contact between the Plan and the district, does not justify the exercise of personal jurisdiction over the Plan under the minimum contacts approach of *Varsic*..." *Id.* at 810. The court further noted that the plaintiffs in *Waeltz* correctly cited to case law supporting their contention that the defendants in those cases "had sufficient contacts with the forum district to support venue," however, "in none of them was the mere residency of plan participants in a district considered a sufficient contact by itself to support a conclusion that the defendant could be found in the district." *Id.* at 810 (citations omitted). Additionally, courts have held that mere payment of benefits to beneficiaries residing in the state did not sufficiently satisfy the minimum contacts requirements. *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 291 (1st Cir. 1999) (noting that while "the location where payments are due under a contract is a meaningful datum[,]...that fact alone does not posses decretory significance"); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F. 2d 309, 314 (8th Cir. 1982) ("the making

of payments in the forum state…[is a] secondary or ancillary factor[] and cannot *alone* provide the 'minimum contacts' required by due process") (emphasis added).

In this case, there are *de minimus* non-party participants of the Pension Plan and Welfare Plan who report an address in Pennsylvania compared to the total number of participants. *See supra.* pp. 8-9. All benefits paid to participants of the Pension Plan and Welfare Plan are paid directly by GEMGroup or other third parties on behalf of the Pension Plan and Welfare Plan. Additionally, the Funds have no immediate control over the bank accounts from which benefits checks are issued. Furthermore, the Funds have not negotiated with any health care providers in Pennsylvania. The Funds have negotiated only with BlueCross BlueShield of Delaware, Express Scripts and GEMGroup for medical benefits under the Welfare Plan. Additionally, all of the events giving rise to this litigation occurred in Delaware. Moreover, as discussed *infra*, the existence of Pennsylvania employers contributing to the Pension Plan and Welfare Plan is irrelevant to the issue of whether venue is proper in the Eastern District of Pennsylvania in this case.

> ii.   **The existent employers with Pennsylvania locations contributing to the Funds is irrelevant to the issue of whether venue is proper in the Eastern District of Pennsylvania.**

The fact that employers with locations in Pennsylvania contribute directly to the Pension Plan and Welfare Plan is irrelevant to the issue of whether venue is proper in the Eastern District of Pennsylvania. Under the Collective Bargaining Agreement between the Union and the Association, employers may only contribute to the Funds for work performed exclusively in Delaware. Employers from *any* state may contribute directly to the Pension Plan and Welfare Plan as long as the work is performed exclusively *within* the state of Delaware. All contributions made by employers, wherever such employers may have a location in Pennsylvania, are for work

23

performed *exclusively* in the state of Delaware.  Similar to *Helicopteros*, the contributions made

to the Funds from employers with a Pennsylvania address are not the responsibility of the Funds

and do not confer jurisdiction or venue over the Funds.  The employers, as the drawers, and not

the Funds, as the payees, are ultimately responsible for where the contribution checks are drawn.

As stated by the Supreme Court, "[s]uch unilateral activity of another party or a third person is

not an appropriate consideration when determining whether a defendant has sufficient contacts

with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. 417.  Here, the

mere fact that employers with Pennsylvania locations make contributions to the Funds in

Delaware for work performed exclusively in Delaware does not advance Plaintiff's contention

that venue is proper in the Eastern District of Pennsylvania.

       This case should have properly been brought in the District of Delaware.  Most

notably, all of the facts giving rise to the present litigation occurred exclusively in Delaware.

Russell was a member of the Union in Delaware,  and he resided and received his benefits

exclusively in Delaware before his death.  Toy still resides and continues to collect benefits from

the Pension Plan exclusively in Delaware.  The Pension Plan and Welfare Plan are administered

by GEMGroup in its Delaware office where all of the Pension Plan's and Welfare Plan's

physical records are stored and maintained.  All of the Trustees are Delaware residents.  The

Trustees make all decisions relating to the Pension Plan and Welfare Plan in Delaware.  There

simply exists no nexus between this suit and the Commonwealth of Pennsylvania.  This is a clear

example of forum shopping on the part of Plaintiff to bring this action in a district that neither the

Plaintiff nor any of the Defendants are located and a jurisdiction that has no connection with the

claims or causes of action brought.  Thus, venue is improper in the Eastern District of

Pennsylvania pursuant to ERISA § 502(e)(2).

### III. This Action Should Be Dismissed With Respect To The Individual Trustees Because No Jurisdiction Or Venue Exists In The Eastern District Of Pennsylvania.

No personal jurisdiction exists over the individual Trustees to permit personal jurisdiction in the Eastern District of Pennsylvania because Plaintiff is unable to establish any minimum contacts by any of the individual Trustees. As discussed *supra*, in order to maintain personal jurisdiction over any party, minimum contacts must exist between the party and the jurisdiction. Under *International Shoe* and its progeny, personal jurisdiction may be exerted over a defendant when: (1) the litigation pertains to the defendant's contacts within the forum and those contacts exhibit a purposeful availment of the benefits of the forum's laws, *Hanson v. Denckla*, 357, U.S. 235, 253 (1958), or (2) the litigation is unrelated to the defendant's contacts, but those contacts display a substantial, continuous, and systematic linkage with the forum, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Here, there clearly is no nexus between the individual Trustees and Pennsylvania. The Plaintiff cannot establish any minimum contacts by the individual Trustees with Pennsylvania to exhibit purposeful availment of Pennsylvania laws or display a substantial, continuous, and systematic linkage with Pennsylvania by the individual Trustees. The individual Trustees of the Pension Plan and Welfare Plan all reside in Delaware. The individual Trustees all work in Delaware. The Plaintiff is also a Delaware resident. Plaintiff cannot present any facts supporting personal jurisdiction, or venue, over the individual Trustees in the Eastern District of Pennsylvania. Thus, the Complaint should be dismissed with respect to the individual Trustees of the Pension Plan and Welfare Plan.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Motion to Dismiss for lack of personal jurisdiction and improper venue be granted.


Dated:  September 9, 2005                    Young, Conaway, Stargatt & Taylor, LLP

                                             /s/ Curtis J. Crowther_____
                                             Timothy J. Snyder, Esquire (No. 35059)
                                             Curtis J. Crowther, Esquire (No. 73122)
                                             D. Fon Muttamara-Walker, Esq. (ADMITTED PRO HAC VICE)
                                             The Brandywine Building
                                             1000 West Street, 17th Floor
                                             P.O. Box 391
                                             Wilmington, DE 19899-0391

                                             CO-COUNSEL:
                                             Jennings Sigmond, P.C.
                                             Richard B. Sigmond, Esq. (No. 02574)
                                             The Penn Mutual Towers, 16th Floor
                                             510 Walnut Street
                                             Philadelphia, PA 19106-3683

                                             Counsel for Defendants

DB01:1833335.11                                                     061011.1005

## CERTIFICATE OF SERVICE

I, Curtis J. Crowther, Esquire hereby certify that on this 9th day of September, 2005, I caused the foregoing document to be served on the following counsel of record in the manner noted below.  The document is available for viewing and downloading from the ECF system.

### BY E-FILING AND FEDERAL EXPRESS

William B. Hildebrand, Esquire
The Law Offices of William B. Hildebrand, LLC
1040 N. Kings Hwy, Suite 601
Cherry Hill, NJ 08034


s/ Curtis J. Crowther
Curtis J. Crowther, Esquire (No. 73122)

DB01:1833335.11

061011.1005