# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Martha Jane Toy, individually, and as Executrix and Personal  )
Representative of the Estate of Russell B. Toy, deceased,  )
  )
      Plaintiffs,  )
          v.  )     C.A. No. 5-cv-1814
Plumbers & Pipefitters Local Union No. 74 Pension Plan,  )
Trustees of Plumbers & Pipefitters Local Union No. 74  )
Pension Plan, Health and Welfare Plan, Local 74, Welfare  )
Benefit Plan, Life Insurance Plan, Local 74, Welfare Benefit  )
Plan, Life Insurance Plan, Local 74, Insurance Plan,  )
Administrators of Pension and Welfare Plans, Trustees of  )
Plumbers & Pipefitters Local Union No. 74 Welfare Plan, Plan  )
Administrator of Pension & Welfare Plans, Insurance Plans,  )
and Health and Welfare Benefit Plan,Defendants.  )

      Defendants.

---

**COMPENDIUM OF UNREPORTED CASES CITED IN DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO: [1] DISMISS ACTION AGAINST NON-EXISTENT DEFENDANTS, [2] DISMISS ACTION FOR IMPROPER VENUE, AND [3] DISMISS ACTION AGAINST INDIVIDUAL TRUSTEES**

<br>

Young, Conaway, Stargatt & Taylor, LLP

<br>

s/ Curtis J. Crowther
Timothy J. Snyder, Esquire (#35059)
Curtis J. Crowther, Esquire (#73122)
D. Fon Muttamara-Walker (ADMITTED PRO HAC VICE)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone (302) 571-6600

Co-counsel:
Jennings Sigmond, P.C.
Richard B. Sigmond, Esquire (#02574)
The Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106-3683
Telephone (215) 922-3524
Counsel for Defendants

Dated: September 9, 2005

# TABLE OF CONTENTS

*Cap v. Local 897 Labor-Management Health Fund*, C.A. No. 86-3271, 1986
U.S. District LEXIS 18531 at (E.D. Pa. Oct. 28, 1986)

*Moore v. St. Paul Cos.*, C.A. No. 94-1329, 1995
U.S. Dist. LEXIS 177 (D. N.J. Jan. 3, 1995)

*Palka v. Theodore M. Hylwa, M.D., Inc.*, C. A. No. 85-2480, 1986
U.S. Dist. LEXIS 20854 (D.K. Sep. 3, 1986)

1986 U.S. Dist. LEXIS 18531

ANNA CAP, Executrix of the Estate of MICHAEL C. CAP v. LOCAL 897 LABOR-MANAGEMENT HEALTH FUND, et al.

CIVIL ACTION No. 86-3271

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1986 U.S. Dist. LEXIS 18531

October 27, 1986, Decided; October 28, 1986, Filed

**CORE TERMS:** venue, motion to dismiss, concede, answers to interrogatories, interrogatory

**COUNSEL:** [*1]

Allan M. Tabas, Esquire, TABAS & ROSEN, for plaintiffs.

LOCAL 807 LABOR-MANAGEMENT HEALTH FUND, HUGH E. SHERIDAN, FRANK SCOTTO, ANDREW FERRARA, ARTHUR GOLDBERG, STUART OLTCHICK, JOSEPH F. MANGAN, JOHN HOHMAN, ROBERT J. RABBITT, JAMES O'ROURKE, BY: J. Warren Mangan Esq., BY: Ronald H. Surkin Esq. (6), for defendants.

**OPINIONBY:** FULLAM

**OPINION:** *MEMORANDUM AND ORDER*

FULLAM, Ch.J.

This is a case brought under the Employee Retirement income Security Act (ERISA). Plaintiff seeks to compel a labor-management health fund to pay certain hospital bills.

On June 23, 1986, defendants filed a motion to dismiss or transfer this case, arguing that venue was not proper in this district. After plaintiff responded and defendants replied, it became clear that certain factual matters remained unresolved. Accordingly, on September 3, 1986, I ordered that defendants' motion to dismiss or transfer the case would be held in abeyance for 30 days during which time the parties were to cooperatively complete discovery regarding the basis for venue in this court. The 30-day period has now expired. Only plaintiffs have seen fit to submit a supplemental memorandum defending their choice of venue here. [*2]

The relevant statute is 29 U.S.C. § 1132(e)(2). It authorizes venue for ERISA actions in districts where the defendant may be found. A defendant is considered to be found in a district if its contacts with the district are sufficient for the exercise of personal jurisdiction. Varsic v. United States District Court. 607 F.2d 245, 248 (9th Cir. 1979); Turner v. CF&I Steel Corp., 510 F.Supp. 537, 542-43 (E.D. Pa. 1981). Thus, the question is whether defendants maintain minimum contacts with this district.

To support her venue contention, plaintiff propounded 16 interrogatories to defendants. In the answers to interrogatories 7 and 12, defendants concede that the Health Fund receives contributions for over 75 members from six firms whose principal places of business are in Pennsylvania, at addresses including Philadelphia, Sharon Hill, Wynnewood, Folcroft, and Reading. In the answers to interrogatories 14 and 16, the defendants concede that the Health Fund has provided coverage to 16 individuals who have resided in Pennsylvania, at addresses including Easton, Levittown, Philadelphia, Pipersville, Morrisville, and Coatesville, In the answer to interrogatory 15, defendants concede [*3] that the Health Fund has paid benefits to 16 hospitals located in Pennsylvania, at addresses including Meadowbrook, Lancaster, Bristol, Langhorne, and philadelphia. All of the foregoing addresses are within the Eastern District of Pennsylvania.

These answers make several points clear. First, defendants regularly receive money from businesses and pay benefits to pensioners in the Eastern District of Pennsylvania. Thus, defendants maintain continuous contacts, although such contacts involve only a small part of defendants' normal operations. Second, defendants from time to time negotiate with health care providers for covered medical care in this district. Thus, the particular type of contact at issue can be anticipated to occur, although on an irregular basis. Therefore, permitting defendants to be sued in this district, at least in litigation concerning care given in this district, does no violence to the probable expectations of the parties.

Accordingly, the motion to dismiss will be denied. An Order follows.

*ORDER*

AND NOW, this 27th day of October, 1986, it is ORDERED that defendants' motion to dismiss or transfer the case is DENIED.

1995 U.S. Dist. LEXIS 177

GEORGE K. MOORE, Plaintiff, v. THE ST. PAUL COMPANIES, INC., et al., Defendants.

Civil Action No. 94-1329

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

1995 U.S. Dist. LEXIS 177

January 3, 1995, Decided

NOTICE:
PUB-STATUS: [*1] NOT FOR PUBLICATION

CORE TERMS: personal jurisdiction, venue, lack of personal jurisdiction, breach of fiduciary duty, subsidiary, early retirement, forum state, choice of forum, misrepresentation, transferee, convenience, reside, non-resident, prong, resident, retire, motion to dismiss, jury duty, retirement, jurisdictional, directorship, continuous, systematic, sponsor, situs, fiduciary duty, administrator, beneficiaries, non-party, motions to dismiss

COUNSEL: For Plaintiffs: LOWELL PETERSON, ESQ., MEYER, SUOZZI, ENGLISH & KLEIN, Mineola, NY. DAVID GROSSMAN, ESQ., SCHNEIDER, GOLDBERGER, COHEN, FINN, SOLOMON, LEDER & MONTALBANO, Kenilworth, NJ.

For Defendants: JOEL L. FINGER, ESQ., CARTER K. COMBE, ESQ., ROBERTS & FINGER, Parsippany, NJ.

JUDGES: ALFRED M. WOLIN, U.S.D.J.

OPINIONBY: ALFRED M. WOLIN

OPINION: OPINION

WOLIN, District Judge

This matter is before the Court upon the motions of defendants, The St. Paul Companies, Inc., The St. Paul Companies, Inc. Employees' Retirement Plan, Thomas W. McKeown, and Greg A. Lee to dismiss the complaint for lack of personal jurisdiction against them and for improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the alternative, defendants have moved to transfer this case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

The Court has decided these motions upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons given below, the Court will grant the motion of defendant Grant A. Lee

and dismiss the complaint against him for lack [*2] of personal jurisdiction and improper venue. The Court will deny all the other motions to dismiss and the motions to transfer the case.

BACKGROUND

Defendants have not answered the complaint and base their motions upon the facts alleged therein. Finger Affidavit ("Aff.") P 4. Accordingly, the Court will consider its factual allegations to be true for the purposes of this motion.

Plaintiff Moore was an executive employee of the Seaboard Surety Company from July 7, 1964 until he retired on July 31, 1992. Moore is a New York resident, but he worked at Seaboard's New Jersey office from 1986 until his retirement.

Seaboard is a New York corporation with its headquarters in New Jersey. Seaboard is owned by the St. Paul Fire and Marine Insurance Company, which is in turn owned by defendant The St. Paul Companies, Inc. ("St. Paul") a Minnesota corporation with its principal offices in St. Paul, Minnesota. St. Paul sponsored and administrated several retirement and benefit plans (collectively defendant The St. Paul Companies, Inc. Employees' Retirement Plan) (the "Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 [*3] -1168.

Defendant McKeown is Vice President and Chief Administrative Officer of St. Paul and resides in Minnesota. Defendant Lee is Vice President of Human Resources of St. Paul. Plaintiff alleges that both are fiduciaries of the Plan.

In the first half of 1992, Moore began to consider his retirement from Seaboard. In June, he heard at third hand that St. Paul was about to announce an early retirement program. From this, Moore surmised that his retirement date might have an impact on the benefits he received. Accordingly, he asked non-party George F. Thompson, the President of Seaboard to make inquiries during an upcoming visit to St. Paul's home office whether the rumor of an impending early retirement plan were true.

While in St. Paul, Thompson asked McKeown whether an early retirement plan would be made available later that year. McKeown told him that no such plan would be offered. In reliance on McKeown's representation, as transmitted by Thompson, Moore decided to retire effective July 31, 1992. Within weeks, St. Paul announced an early retirement program. A condition of eligibility was that the retiring persons be active employees on August 1, 1992. Moore appealed to the Plan [*4] for benefits under the early retirement plan and was denied.

Moore's complaint contains counts alleging that he is a victim of fraud, negligent misrepresentation and breach of the fiduciary duty owed by administrators of ERISA plans to their beneficiaries. In support of this Moore alleges that McKeown knew that his statement was untrue when he made it, and that McKeown knew that Moore was planning to retire that year. Moore further alleges that he relied on McKeown's statement in deciding to retire in July, and that, absent the statement, he would have retired in December of 1992.

Moore also alleges that he requested documents from defendant Lee showing that the early retirement plan was under consideration at the time McKeown spoke with Thompson. Moore wanted these documents to support his appeal within the company of the denial of benefits. Lee provided one document that was dated after Moore's effective retirement date. Moore alleges that other documents that would support his claim exist, and that Lee's failure to provide them was a violation of the duty he owes Moore as a participant in the plan.

## DISCUSSION

### 1. Dismissal for Lack of Personal Jurisdiction or Improper Venue [*5]

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over them, or in the alternative, for improper venue under Rule 12(b)(3). Logically, resolution of a question of personal jurisdiction should precede an issue of proper venue. However, as discussed below, the doctrine interpreting ERISA's venue provision, 29 U.S.C. § 1132(e), has subsumed the question of personal jurisdiction. The parties to this case have not briefed the questions separately. Consequently, the Court will deal with the jurisdiction and venue issues together.

The ERISA venue provision sets forth a three-prong test to determine whether venue is proper. It provides that:
Where an action under this subchapter is brought in a district court of the United States, it may be brought

[1] in the district where the plan is administered, [2] where the breach took place, or [3] where a defendant resides or may be found . . . .
29 U.S.C. § 1132(e)(2).

It is settled that the last prong, "where a defendant resides or may be found," states a test that is congruent with the minimum [*6] contacts analysis of International Shoe v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), used to determine whether personal jurisdiction over a particular defendant is consonant with the due process requirements of the United States Constitution. See Varsic v. United States District Court, 607 F.2d 245, 248-49 (9th Cir. 1979); see also I.A.M. Nat'l Pension Fund v. Wakefield Indus., 226 U.S. App. D.C. 102, 699 F.2d 1254, 1257 (D.C. Cir. 1983) (adopting Varsic's reasoning); Turner v. CF&I Steel Corp., 510 F. Supp. 537, 542 (E.D. Pa. 1981), aff'd, 770 F.2d 43, cert. denied, 474 U.S. 1058, 88 L. Ed. 2d 776, 106 S. Ct. 800 (1986); Folke v. Schaffer, 616 F. Supp. 1322, 1325 n.1 (D. Del. 1985).

Therefore, because its resolution will dispose of both the venue and personal jurisdiction questions, n1 the Court will first decide whether the defendants "may be found" in this jurisdiction [*7] for the purposes of section 1132(e)(2). International Shoe, 326 U.S. at 316, 66 S. Ct. at 158, held that a court may exercise personal jurisdiction over a non-resident defendant only where "minimum contacts" exist such that jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). The purpose of restricting personal jurisdiction to the limits of due process is to protect the individual interests of non-resident defendants. United States v. Morton, 467 U.S. 822, 828, 104 S. Ct. 2769, 2773, 81 L. Ed. 2d 680 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 This Court may exercise jurisdiction over any person who would be subject to the jurisdiction of the courts of the State of New Jersey. Fed. R. Civ. P. 4(e); see North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir.), cert. denied, 498 U.S. 847, 111 S. Ct. 133, 112 L. Ed. 2d 101 (1990). New Jersey's long-arm rule permits personal jurisdiction over non-resident defendants to the extent permitted by Fourteenth Amendment due process. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir.),

1995 U.S. Dist. LEXIS 177

cert. denied, 454 U.S. 1085, 102 S. Ct. 642, 70 L. Ed. 2d 620 (1981).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*8]

A defendant establishes minimum contacts with a forum state by committing some act by which he purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958). These contacts must be of a type that the individual non-resident defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985) (citing World-Wide Volkswagen, 444 U.S. at 295, 100 S. Ct. at 566). What constitutes minimum contacts varies with the "quality and nature of the defendant's activity," Hanson, 357 U.S. at 253, 78 S. Ct. at 1240. The unilateral activity of a plaintiff claiming a relationship with a non-resident defendant does not suffice to create the requisite forum contacts. Id.; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984); [*9] Kulko v. Superior Court of California, 436 U.S. 84, 93-94, 98 S. Ct. 1690, 1698, 56 L. Ed. 2d 132 (1978).

Defendants can be subject to either specific or general personal jurisdiction in a forum state. Specific personal jurisdiction may arise from particular or sporadic contacts if the cause of action arises out of, or relates to the defendant's forum related activities. Helicopteros, 466 U.S. at 414 & n.8, 104 S. Ct. at 1872 & n.8.; North Penn Gas Co., 897 F.2d at 690. There is sufficient due process contact for personal jurisdiction if the defendant purposefully has directed his activities at residents of the forum, and the litigation concerns injuries alleged to have resulted from those activities. Henry Heide, Inc. v. WRH Prods. Co., 766 F.2d 105, 108 (3d Cir. 1985).

If a plaintiff's cause of action against a defendant does not arise out of the defendant's contacts with the forum state, the plaintiff must establish general personal jurisdiction over the defendant. Significantly more of a connection [*10] to the forum is required to establish general jurisdiction. Provident Nat'l Bank v. California Fed. Savs. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Where defendant's activities in the forum are unrelated to the subject matter of the suit, plaintiff must show "continuous and substantial contacts" with the forum state. Helicopteros, 466 U.S. at 414-16 & n.9, 104 S. Ct. at 1872-73 & n.9;

Provident Nat'l Bank, 819 F.2d at 437. However, with either theory of personal jurisdiction, the focus is on whether the activities in the forum are such that defendant could reasonably foresee being made to answer in its courts. World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567.

One distinction may remain in the law between a Rule 12(b)(2) dismissal for lack of personal jurisdiction, and a dismissal for improper venue under the ERISA statute. See I.A.M.Nat'l Pension Fund, 699 F.2d at 1257. Once a jurisdictional challenge has been raised, "then the plaintiff must [*11] sustain its burden of proof in establishing jurisdictional facts through sworn declarations or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984); see also Provident Nat'l Bank, 819 F.2d at 437. In contrast, the ERISA venue provision has been interpreted generously. Congress intended to provide "ready access to the Federal Courts," 29 U.S.C. § 1001(b), and "to remove jurisdictional and procedural obstacles." H.R. Rep. No. 93-533, 93d Cong., 1st Sess. 17, reprinted in 1974 U.S. Code Cong. & Admin. News at 4639, 4655 (1974). The Courts have noted that Congress "clearly struck the balance in favor of liberal venue." Varsic, 607 F.2d at 248.

Although the Court expresses no opinion on the matter, it might be argued that a plaintiff has less of a burden of proof in resisting a motion to dismiss for improper venue under section 1132(e)(2) than in resisting a motion to dismiss for lack of personal jurisdiction. In an excess of caution, the Court assures the parties that it is holding plaintiff [*12] to the burden of proof for personal jurisdiction set forth in Time Share Vacation, 735 F.2d at 67 n.9 (quoted supra). If plaintiff were to fail to carry this burden with regard to a particular defendant, the Court need not reach the venue question. If a defendant is subject to personal jurisdiction under the more rigorous standard, then, a fortiori, venue is proper.

a. Defendant St. Paul and the Plan

The Court finds that there are sufficient contacts between St. Paul, the Plan and this forum to establish personal jurisdiction over both of them in New Jersey. Many of these contacts are associated with the Plan's coverage of Seaboard's employees in New Jersey as well as plaintiff's participation in the Plan. Thus, they give rise to both general and specific personal jurisdiction.

Over four hundred Seaboard employees were enrolled in the Plan. Plaintiff's brief at 8; Defendants' Reply brief at 4-5 (assuming this figure for the purposes of argument). The Plan received contributions from, and

made payments to Seaboard and its employees in New Jersey. n2 St. Paul employees in charge of administering the Plan reviewed the calculations of benefits [*13] due with Seaboard's personnel department. Id. P 14. St. Paul corresponded with Moore and other Seaboard employees concerning benefits under the Plan.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 Moore opines in his brief that the Plan received contributions from Seaboard to cover its employees' accrued service time. Plaintiff's brief at 4. It has not been denied by defendants. Therefore, the Court will accept it as a working hypothesis.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The Court finds that these contacts were purposeful, continuous and systematic. They were sufficient to put St. Paul and the Plan on notice that they might be sued here. Other courts, on similar facts, have come to same conclusion. The leading case, Varsic v. United States District Court, 607 F.2d 245 (9th Cir. 1979), held that the decision "to undertake the fiduciary duty of receiving contributions and making payments based upon work performed [within a jurisdiction], is sufficient to support in personam jurisdiction in that forum." Id. at 250.

Varsic [*14] noted that an ERISA plan purposefully places itself in a fiduciary capacity with regard to its beneficiaries within a particular forum and must anticipate being sued there. Id. Other courts have adopted Varsic's reasoning to hold that the presence of beneficiaries within a forum will, by itself, support a finding of personal jurisdiction over an ERISA plan. Ransom v. Administrative Comm., 820 F. Supp. 1429 (N.D. Ga. 1993). The Third Circuit has affirmed the Eastern District of Pennsylvania's adoption of Varsic's reasoning on slightly different facts. Turner, 510 F. Supp. 537 (plan was also administrated within the district).

Moreover, this line of ERISA cases is consistent with broader principles of personal jurisdiction law. In Burger King v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), the Supreme Court held that:

> where the defendant deliberately has engaged in significant activity within a state, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself

of the privilege [*15] of conducting business there, and because his activities are shielded by the benefits and protections of the forum's law it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum.

Id. at 474.

As trustee of the Plan, St. Paul expressly assumed an ongoing fiduciary relationship with the plan participants. Moore Aff., Exhibit F. St. Paul employees communicated with Moore concerning his benefits. Moore Aff., Exhibit C. They made determinations as to how much Moore was due. Id., Exhibit D. The Court finds that this pattern of significant activity and ongoing relationship with Moore and other New Jersey-based Seaboard residents show the type of purposeful availment that will create personal jurisdiction under Burger King. Moreover, by directing this type of activity at New Jersey, New Jersey workers, and in particular Moore, they could "reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567.

The Court need not consider St. Paul and the Plan separately for [*16] this minimum contacts analysis. The ERISA statute establishes that a plan may be sued as an entity. 29 U.S.C. § 1132(d). It does not mandate that a plan and its sponsor are independent entities for other purposes. Turner held that the a plan had minimum contacts with the forum based on the sponsor's presence there because the sponsor exercised control over the plan and its employees administered it. 510 F. Supp. at 543. Similarly, the activities of St. Paul employees, discussed above, in determining benefits under the plan show that the contacts of the Plan are the contacts of St. Paul.

Defendants argue that plaintiff is attempting to ascribe the residence of the subsidiary Seaboard to its parent St. Paul. They argue that this is contrary to the case law which holds that parent and subsidiary are presumed to be distinct for personal jurisdiction purposes. As a statement of the law, defendants are correct. Cannon Mfg. v. Cudahy Packing Co., 267 U.S. 333, 336-37, 45 S. Ct. 250, 251, 69 L. Ed. 634 (1925); Garshman v. Universal Resources Holding, Inc., 641 F. Supp. 1359 (D.N.J. 1986), [*17] aff'd, 824 F.2d 223 (3d Cir. 1987). Plaintiff must carry the burden of showing that the corporate parent "actually controls the activities of the subsidiary." Id. at 1364. The Court looks at the totality of the circumstances, id., to determine whether the one company is the "alter ego" of the other. Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1067 (M.D. Pa. 1993).

St. Paul's sole ownership of its subsidiary is not sufficient to establish jurisdictional contacts. Garshman, 641 F. Supp. at 1364. Plaintiff has testified that six of the sixteen members of Seaboard's board of directors were St. Paul officers. Moore Aff. P 10. However, common directorships, while evidentiary, will not require a finding of personal jurisdiction over the parent. Clark, 811 F. Supp. 1061; Savin Corp. v. Heritage Copy Prods., Inc., 661 F. Supp. 463, 469 (M.D. Pa. 1987) (four of twelve directors did not establish an alter ego).

Moore has also testified that St. Paul and Seaboard were in constant contact on matters [*18] of operation, policy, and reporting profits to the corporate parent. Moore Aff. PP 4, 6-9. In other contexts, this type of connection might lead to a finding that the parent was present in the jurisdiction of its subsidiary. In this case, however, the Court finds that plaintiff has fallen short of showing that an alter ego relationship exists.

Defendants' argument does not carry the day, however, because, as discussed above, sufficient contacts exist between St. Paul, the Plan and this forum independent of the parent/subsidiary relationship. In addition, St. Paul had a contractual relationship with Seaboard, whereby St. Paul provided personnel services to its subsidiary for a fee. Moore Aff. P 5. The record does not reveal the specifics of the services provided, but presumably they involve activities which overlap those required to administrate employee benefits under the Plan. The Court finds that the activities directed to New Jersey by St. Paul employees under this contract and the fees it received provide further evidence of the type of the systematic contacts and purposeful availment that will subject St. Paul to personal jurisdiction in this forum.

St. Paul's reliance on McFarland v. Yegen, 699 F. Supp. 10 (D.N.H. 1988) [*19] is misplaced. There the complaint charged mismanagement of the assets of an ERISA employee stock option plan. The court stressed that Varsic was not persuasive, because there was no allegation of a denial of benefits, or breach of fiduciary duty owed to the participants in the forum. Id. at 14-15. Furthermore, the plan itself was not named as a defendant. In this case, denial of benefits and breach of fiduciary duty by the Plan and its sponsor are at the heart of the complaint. Moreover, McFarland turned on the situs of the breach of fiduciary duty by the individual administrator. "Where the breach took place" will determine venue under the second prong of section 1132(e)(2). Because the Court has determined that St. Paul and the Plan may be found in this forum (section 1132(e)(2) (prong three)), the question of where the breach took place is not crucial to the issue of personal jurisdiction or venue over them. The

implications of McFarland for the exercise of personal jurisdiction over individual plan administrators is discussed below. Finally, to the extent McFarland held that an ERISA plan is not subject to personal jurisdiction in [*20] the forum where its beneficiaries work and earn credits, this Court must decline to follow the District of New Hampshire and join the majority of jurisdictions that apply Varsic's reasoning.

### b. Defendant McKeown

The complaint names defendant McKeown individually, charging fraud, negligent misrepresentation and breach of fiduciary duty owed to plaintiff pursuant to the plan. It is not disputed that McKeown resides in Minnesota, and that his activities with regard to the Plan take place there. On the other hand, there is evidence that McKeown visited Seaboard's offices on "more than one occasion," and that he was a member of Seaboard's board of directors for a period preceding that during which the acts complained of took place. Moore Aff. P 9-10; McKeown Reply Aff. P 5.

It is apparent that McKeown's contacts with this forum are not of the systematic and continuous variety necessary to establish general personal jurisdiction as set forth in Helicopteros. See 466 U.S. at 414-16, 104 S. Ct. at 1872-73. Directorship of a New Jersey corporation does not constitute the kind of continuous and systematic contact that would [*21] subject one to personal jurisdiction here on a claim unrelated to that directorship. There is no showing that McKeown's visits to Seaboard were connected to the business of the Plan. Absent any contrary evidence, the Court must presume that both his directorship and his visits to Seaboard were connected to his duties as an executive of the parent corporation in the normal course of overseeing its subsidiary. If this type of connection will not establish general personal jurisdiction of the parent corporation, see e.g., Clark, 811 F. Supp. at 1067 (discussed above), then it follows that it will not establish jurisdiction over the parent's employee either.

Therefore, if personal jurisdiction is to be asserted over McKeown, it must be of the specific variety. His contacts with the forum must arise from the acts complained of by the plaintiff. Helicopteros, 466 U.S. at 414-16, 104 S. Ct. at 1872-73. Obviously the alleged misrepresentation took place in Minnesota. However, it is claimed that McKeown knew Thompson's inquiry was made on behalf of Moore, a New Jersey employee. Complaint P 22. Moreover, [*22] it is alleged that McKeown knew that Moore was to retire soon, and that Moore's decision on a retirement date depended on whether an early retirement plan was imminent. Id. P 22-24. Finally, implicit in the count alleging fraud by McKeown, is the allegation that McKeown

misrepresented the likelihood of an early retirement plan with the intent to cause Moore to retire too early to qualify for the new plan.

Assuming the truth of the allegations, n3 it was foreseeable to McKeown that the harm from his misrepresentation in Minnesota would accrue in New Jersey, where Moore relied on it. Certainly one whose utterance injures someone in another state may foresee being sued there. Calder v. Jones, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984). New Jersey holds that a defendant whose fraudulent communication by mail and telephone harms a New Jersey plaintiff is subject to personal jurisdiction in its courts. Lebel v. Everglades Marina, Inc., 115 N.J. 317, 325-26, 558 A.2d 1252, 1256 (1989). The Court can see no distinction based on the fact that the tortious [*23] communication was carried by the innocent messenger, Thompson. See also Vishav Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1066 (4th Cir. 1982) ("'Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.'") (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The Court reiterates that defendants have conceded the facts alleged in the complaint for the purpose of these motions. Finger Declaration P 4 ("The facts upon which this motion is based are those alleged in Plaintiff's Complaint.").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Thus, taking the allegations as true, McKeown's misrepresentation, uttered in Minnesota but directed toward and acted upon in New Jersey, constitutes a contact with this state from which the cause of action arises. Jurisdiction over a nonresident tort defendant can be conferred [*24] by a single deliberate contact with New Jersey where that contact results in the alleged injury. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). Accordingly, this Court finds that it has personal jurisdiction over defendant McKeown. As with defendants St. Paul and the Plan, where personal jurisdiction exists, it follows under Varsic that McKeown may be "found" here for the purposes of determining proper venue under 29 U.S.C. § 1132(e)(2) as well.

**c. Defendant Lee**

Defendant Lee is also alleged to be a fiduciary under the Plan. Like McKeown, he resides in Minnesota and all of his activities with relation to the Plan take place there. He is not alleged to have visited New Jersey in connection with this or any other matter. However, unlike McKeown, he is not alleged to have taken part in the misrepresentation which led to Moore's premature retirement. Moreover, Lee did not join St. Paul until after Moore retired.

Lee's contacts with Moore consist of providing him with documents as requested for his intra-company appeal of the denial of benefits, denying his appeal, [*25] and a sending a letter to that effect to his counsel in New York. Moore's claim against Lee individually is not based on the denial of benefits itself, but solely on an alleged failure to provide him with more documents that Moore presumes exist. Complaint P 65-66. Moore claims that this was in breach of the fiduciary duty Lee owes him as an administrator of the Plan. Id. P 66.

Moore's assertion that personal jurisdiction over Lee exists in this district depends on the premise that the situs of a breach of fiduciary duty under an ERISA plan lies in the place where the participants live or work. The Court notes that while "the place where the breach took place" is dispositive in determining venue under the second prong of 29 U.S.C. § 1132(e)(2), it does not solve the question of personal jurisdiction. As to this predicate question, the burden remains on plaintiff. Time Share Vacation, 735 F.2d at 67 n.9. The Court finds that, even taking into consideration "where the breach took place" on the jurisdictional issue, plaintiff has not sustained his burden by showing that under the cases construing this prong of section [*26] 1132(e)(2) that Lee's alleged breach would be considered to have occurred here.

The issue is confused by the fact that there are two types of breach possible under an ERISA plan. The location of the breach depends on which type of breach is alleged. DiGiovannantonio v. Local 153 Pension Fund, 1992 U.S. Dist. LEXIS 8331, No. 91-7172, 1992 WL 164953 (E.D. Pa. June 10, 1992). The first concerns a breach that results in a denial of benefits, and states a claim for breach of the terms of the plan itself. Courts have recognized that an allegation of a breach of fiduciary duty may in fact state this type of breach. Brown Schools, Inc. v. Florida Power Corp., 806 F. Supp. 146, 151 (W.D. Tex. 1992) (alleged breach of fiduciary duty from misrepresentation that cause a denial of benefits was better characterized as a breach of the terms of the plan). Cf. Sanders v. State Street Bank & Trust Co., 813 F. Supp. 529, 533 n.1 (S.D. Tex. 1993) (action denying a plan benefit may be

1995 U.S. Dist. LEXIS 177

a breach of fiduciary duty). Whether the breach is characterized as one of fiduciary duty or of the terms of the plan is of purely intellectual interest. In either event, this type of [*27] breach has its situs in the place where the participants work or live. DiGiovannantonio, 1992 U.S. Dist. LEXIS 8331, 1992 WL 164953, at *1; Brown Schools, 806 F. Supp. at 151; Sanders, 813 F. Supp. at 533 n.1.

The second type of breach concerns wrongdoing that does not directly concern a denial of plan benefits, but involves other matters concerned with administrating the plan. This type of breach occurs where the duties imposed were to be performed. DiGiovannantonio, at *1; McFarland v. Yegen, 699 F. Supp. 10 (D.N.H. 1988). For example, in McFarland, an alleged breach of fiduciary duty for mismanagement of the assets of an ERISA employee stock option plan was held to have taken place in the district where the defendant managed the assets. Id. at 15.

The Court finds that this is a case of the second type of breach. Plaintiff has not argued that providing documents for an intra-company appeal is considered one of the benefits of the plan. It is only indirectly concerned with the denial of benefits. In fact, it appears to be more closely akin to a dispute over discovery in a litigation [*28] matter. The Court is reluctant to recast this type of controversy into a substantive issue upon which the core question of personal jurisdiction may turn.

Moore's entitlement to documents under St. Paul's appeal process does not change the equation. Being entitled to documents to substantiate a claim does not automatically raise that entitlement to the dignity of a plan benefit. The Court notes that this conclusion has no bearing on whether a failure to provide information is actionable. It is concerned here only with the situs of the failure under the applicable ERISA case law, insofar as that determination may guide its personal jurisdiction inquiry.

Accordingly, the Court finds that "where the breach took place" was Minnesota, where the duties imposed were to be performed. Consequently, the acts complained of will not support personal jurisdiction. Because plaintiff has failed to establish that the breach occurred in New Jersey, and because it does not appear that the defendant Lee has any other substantial contacts to this forum, this Court finds that it does not have personal jurisdiction over him. Accordingly, the counts against him in the complaint will be dismissed.

2. [*29]   Transfer of Venue Under 28 U.S.C. § 1404(a)

Defendants seek a transfer of venue from this Court to the United States Court for the District of Minnesota under 28 U.S.C. § 1404(a), which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Moore does not dispute that this action originally could have been brought in the District of Minnesota. n4

- - - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n4 Prior to transferring any case, a district court must determine whether venue is proper in the transferee court and whether defendants are subject to personal jurisdiction in transferee court's forum state. Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 306 & n.7 (D.N.J. 1989). Obviously, the District of Minnesota satisfies the requirements of a potential transferee forum in the instant action.

- - - - - - - - - - - - End Footnotes- - - - - - - - -
- - - - - -

The decision [*30] whether to transfer an action rests in the sound discretion of the trial court "appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum or another." Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 632 (3d Cir. 1989); Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973). In making its determination, the Court will consider certain factors enunciated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947). These factors (the "Gulf Oil factors") fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice.

Factors in the first group are: (1) plaintiffs' choice of forum; (2) the ease of access to sources of proof; (3) the availability and cost of compulsory process for unwilling witnesses; (4) any obstacles to a fair trial; and (5) in general, all other factors relating to the expeditious and efficient adjudication [*31] of the dispute. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n5 The Court will not address two additional Gulf Oil private factors: the enforceability of any possible judgment and the availability of impleader. The

Supreme Court conceived the Gulf Oil factors in a case involving forum non conveniens. Courts have turned to the Gulf Oil factors for guidance in section 1404 cases. See Sandvik, 724 F. Supp. at 307 n.8. These additional factors are not relevant to the transfer of actions between federal district courts.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Factors in the second group include: (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating localized disputes; and (4) the appropriateness of having the jurisdiction whose law will govern adjudicate the dispute in order to avoid difficult problems in conflicts of laws. Id.; see Sandvik, 724 F. Supp. at 307; [*32] Hardaway Constructors, Inc. v. Conesco Indus., Ltd., 583 F. Supp. 617, 619-20 (D.N.J. 1983).

### a. The Private Factors

In weighing the Gulf Oil factors, this Court must generally defer to plaintiff's choice of forum unless the balance is tipped strongly in favor of transfer. See Gulf Oil, 330 U.S. at 508, 67 S. Ct. at 843; Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910, 91 S. Ct. 871, 27 L. Ed. 2d 808 (1971). Plaintiff's choice of forum is accorded less consideration when the nucleus of operative facts is outside the forum state. Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 481 (D.N.J. 1993). "The preferred forum is that which is the center of gravity of the accused activity." S.C. Johnson & Son v. Gillette Co., 571 F. Supp. 1185, 1188 (N.D. Ill. 1983).

Here, however, the "center of gravity" appears ambiguous. On one hand, the decisions by St. Paul and the Plan with regard to Moore's benefits [*33] were taken in Minnesota. McKeown's alleged misrepresentation was uttered in Minnesota. On the other hand, Moore earned credits towards benefits under the Plan over the course of a six-year career in New Jersey. As discussed above, it is alleged that McKeown's misrepresentation was directed toward New Jersey, and the harm it caused took effect here. Accordingly, the Court cannot find that the "center of gravity of the accused activity" is so tilted toward Minnesota as to overcome the presumption in favor of plaintiff's choice of forum.

The second and third of the Gulf Oil's private factors are the relative ease of access to sources of proof offered by the two forums, and the availability and cost of compulsory process for unwilling witnesses. In addressing these two Gulf Oil factors, the Court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant" to plaintiff's claims or defendant's potential defenses. Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S. Ct. 1945, 1952, 100 L. Ed. 2d 517 (1988). [*34]

The Court finds that the ease of access to documentary evidence weighs slightly in favor of transfer. Documentary evidence concerning the development of the early retirement plan, if it exists, would be in St. Paul's offices in Minnesota. However, in light of the allegations of large amounts of information that pass between St. Paul and its subsidiary in New Jersey, it can hardly be said that bringing those documents here would be a hardship on defendants.

Under Gulf Oil, the Court must determine and balance the convenience of party and non-party witnesses. Ricoh, 817 F. Supp. at 484. "The convenience of both party and non-party witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991). Despite the importance of this factor, the facts presented do not present a compelling case for transfer.

Defendant McKeown, once a director of Seaboard, cannot claim that travel here is onerously inconvenient. St. Paul employees no doubt continue to visit Seaboard regularly as it is alleged they did [*35] during Moore's tenure there. This undermines St. Paul's argument that sending its employees here to defend the action would be inconvenient. On the other hand, there is no evidence that Moore ever travelled to St. Paul during his career. Furthermore, Moore's resources as an individual litigant would presumably be far more taxed if he had to travel to Minnesota to prosecute this matter, than would those of a large corporation like St. Paul if required to appear here. Thus, the Court must conclude that this factor weighs somewhat against transfer.

In conjunction with witness convenience, the Court must also consider witness availability. The Third Circuit has recognized the burden that confronts litigants and the trial court when key, non-party witnesses are not willing to testify and are beyond the reach of the court's compulsory process. Lacey v. Cessna Aircraft Co., 932 F.2d 170, 183 (3d Cir. 1991). Defendants state that their witnesses will be St. Paul employees, located in Minnesota with the exception of consultants located in Illinois. Schendel Affidavit P 8. Presumably, these persons are under defendants'

control. On the other hand, Moore may need [*36] to call Thompson, who might not be amenable to process in Minnesota. Thus, this Gulf Oil factor is either neutral or weighs against transfer.

Based upon the parties' submissions, the Court finds that Gulf Oil's private factors do not favor transfer. Neither the location of evidence, nor the convenience and availability of witnesses are so clearly weighted toward transfer as to overcome the presumption in favor of the plaintiff's choice of forum.

b. The Public Factors

In addressing defendants' transfer motion, the Court should consider relative docket conditions or calendar congestion in the transferor and transferee jurisdictions to determine whether transfer would unduly delay adjudication of the claims presented. Gulf Oil, 330 U.S. at 508-09, 67 S. Ct. at 843. This Gulf Oil factor is not decisive, but may be given some weight. See Hernandez, 761 F. Supp. at 991. This Court would not consider the size of its own docket to be a valid reason to transfer a case. This factor would only come into play where a movant requested transfer to a more congested district than our own. The [*37] Court finds the District of New Jersey has a slightly heavier case load. New Jersey had 387 cases filed per judge, compared to 366 per judge in Minnesota. Administrative Office of the United States Courts, Federal Court Management Statistics 56, 115 (1993). Obviously, transfer would not increase the time for this matter to be adjudicated. In weighing this factor, the Court concludes that it does not counsel against the transfer.

Under Gulf Oil, the Court must also be aware of the local interests implicated by this lawsuit in the respective districts or, more specifically, in the communities in which they sit. Ricoh, 817 F. Supp. at 486. Along these same lines, the burden of jury duty should not be "imposed upon the people of a community which has no relation to the litigation." Gulf Oil, 330 U.S. at 508-09, 67 S. Ct. at 843; see also Ferens v. John Deere Co., 494 U.S. 516, 529-30, 110 S. Ct. 1274, 1282-83, 108 L. Ed. 2d 443 (1990) (28 U.S.C. § 1404(a) does not exist solely for the benefit of [*38] the moving party).

In this case there are factors that favor both the transferor's and transferee's local interests. New Jersey has a local interest in this litigation that would justify imposing the burden of jury duty on its citizens. Moore and hundreds of coworkers were employed here and participated in the Plan. Clearly New Jersey has a local interest in the fair administration of benefits plans for its workers. On the other hand, it cannot be said that Minnesota has no relation to the litigation. Defendants

reside there. St. Paul is doubtless a major employer there. On these facts, the burden of jury duty would not be an unjustifiable burden on the citizens of either New Jersey or Minnesota.

Other Gulf Oil factors, both public and private, do not seem to have any application to this case. The choice of law factor is irrelevant where the central claim is based on the federal ERISA statute. The Court does not see how the factor concerned with obstacles to a fair trial in the transferor or transferee court would be implicated in this situation.

After weighing the several relevant Gulf Oil factors, the Court does not see any compelling reason to disturb the plaintiff's choice [*39] of forum. The private factors are at best ambiguous. The public factors do not require transfer. Accordingly, the motion to transfer venue will be denied.

CONCLUSION

Accordingly, the motion to dismiss the complaint against defendant Greg A. Lee for lack of personal jurisdiction and improper venue is granted. The Court finds that there are insufficient contacts between this defendant and the forum to assert personal jurisdiction over him in this case. The other defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied. Their connections with this forum are ample to sustain the assertion of personal jurisdiction over them, and consequently venue is also proper. The motions in the alternative to transfer the case to the District of Minnesota are also denied. After balancing the necessary factors, the Court finds insufficient reason to disturb the plaintiff's choice of forum.

An appropriate order is attached.

Dated: January 3, 1995

ALFRED M. WOLIN, U.S.D.J.

ORDER

In accordance with the Court's Opinion filed herewith,

It is on this day of January, 1995,

ORDERED that the motion to dismiss the complaint against defendant Greg A. Lee for [*40] lack of personal jurisdiction and improper venue is granted and the complaint is dismissed as to that defendant only; and it is further

ORDERED that the other defendants' motions to dismiss for lack of personal jurisdiction and improper venue are denied; and it is further

1995 U.S. Dist. LEXIS 177

ORDERED the motions to transfer the case to the District of Minnesota are denied.

ALFRED M. WOLIN, U.S.D.J.

1986 U.S. Dist. LEXIS 20854

GARY PALKA, Plaintiff, v. THEODORE M. HYLWA, M.D., INC., and THEODORE M. HYLWA, M.D.,
Defendants

CIVIL ACTION No. 85-2480

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

1986 U.S. Dist. LEXIS 20854

September 3, 1986, Decided and Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** In an action brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., plaintiff employee sought to recover pension benefits and to obtain injunctive relief from defendant employers' alleged violations of ERISA.

**OVERVIEW:** The employee sought to recover pension benefits and to obtain injunctive relief arising from the employers' alleged violations of ERISA. The court denied the employers' motion to dismiss for improper venue. The employee was entitled to payment at his residence in Kansas and that was where the employer was found; therefore, venue was proper under 29 U.S.C.S. § 1132(e). The court denied the employers' motion to transfer under 28 U.S.C.S. §1404(a) because the expense of bringing witnesses from out of state did not justify a change of forum. The court also denied a stay of discovery. However, the court allowed the employee to amend his complaint to add defendants because there was no undue delay or prejudice to the employers. The court conditioned the permissive joinder under Fed. R. Civ. P. 18, 20 and required that the employee establish an independent basis for jurisdiction over the additional defendants because they were not proper parties to the ERISA claim.

**OUTCOME:** The court denied the employers' motions to dismiss, to transfer, and to stay discovery in the employee's ERISA action. The employee's motion to amend his pleadings to add parties was granted, provided that an independent basis for jurisdiction, other than ERISA, was established.

**CORE TERMS:** venue, pension, motion to amend, amend, discovery, misrepresentation, administered, compulsory process, occurrence, reside, pension plan, joinder, motion to dismiss, pension benefits, properly joined, cause of action, choice of forum, proper parties, proper venue, moving party, civil action, undue delay, administrator, beneficiary, attendance, fiduciary, breached, managed, advisors, Catanzarite Law

LexisNexis(TM) Headnotes

*Civil Procedure > Venue > General Venue*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN1]Under 29 U.S.C.S. § 1132(e)(2), an Employee Retirement Income Security Act of 1974, action may be brought in the district where the plan is administered, the breach took place, the defendant resides, or the defendant can be found.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Procedures*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures*

[HN2]An Employee Retirement Income Security Act of 1974 plan is "administered" at the location(s) where the plan is managed, rather than where the benefits are distributed.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN3]For a transfer of venue to be proper, the moving party must show that venue is proper in both the transferor and transferee districts and that the transfer is for the convenience of parties and witnesses and is also in the interest of justice. The party seeking the transfer carries the burden of showing that the action should be transferred. Furthermore, a plaintiff's choice of forum should not be disturbed unless the balance of the consideration is strongly in the moving party's favor. Additional consideration is properly given when the plaintiff has chosen the forum in which he resides. When considering a motion for a 28 U.S.C.S. § 1404(a) transfer, the mere shifting of inconvenience from one party to another is insufficient to support the transfer. Another factor to consider is the interest of justice.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

1986 U.S. Dist. LEXIS 20854

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN4] 29 U.S.C.S. § 1132 allows a participant or beneficiary to bring an action: to recover benefits due, enforce rights under the plan, or clarify rights under the plan, 29 U.S.C.S. § 1132(a)(1)(B); to recover a statutory penalty from an administrator for refusing to supply requested information, 29 U.S.C.S. §§ 1132(a)(1) (A), (c); or to obtain equitable relief 29 U.S.C.S. § 1132(a)(3). Because of the types of relief available, the proper defendants to an Employee Retirement Income Security Act of 1974 action brought by plan participants are those who control or administer the plan and/or are fiduciaries as defined by 29 U.S.C.S. § 1102(a).

*Civil Procedure > Joinder of Claims & Parties > Permissive Joinder of Coparties*

[HN5]The permissive joinder rule allows joinder of multiple defendants if there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out of the same transaction or occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*

[HN6]Fed. R. Civ. P. 15 allows a party to amend its pleadings with leave of the court. Rule 15 also provides that leave shall be freely given when justice so requires. Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties. The decision of whether to grant or deny leave to amend is within the discretion of the court. In deciding a motion to amend, the court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment.

**COUNSEL:** [*1]

Gordon N. Myerson, Law Offices of Gordon N. Myerson, P.C., Dennis M. Clyde, Gates & Clyde; for Plaintiff.

Joseph Mancini, Catanzarite Law Corporation, Leo L. Logan, Boddington & Brown; for Defendants.

**OPINIONBY:** O'CONNOR

**OPINION:** MEMORANDUM AND ORDER

This action is based on claims arising under the Employee Retirement Income Security Act of 1974

(ERISA). The court's jurisdiction is based on 29 U.S.C. 1132 (1982). Plaintiff seeks to recover pension benefits and to obtain injunctive relief arising from defendants' alleged violations of Subchapter I of ERISA, 29 U.S.C. § 1001 et seq.

The facts, briefly stated, are as follows. Plaintiff was employed by T. M. Hylwa, M.D., and a Kansas professional corporation, T. M. Hylwa, M.D., P.A., from July 1, 1977, through September 30, 1981. At the time, plaintiff was a participant in several pension plans administered by Dr. Hylwa and the Kansas corporation. In 1981, Hylwa moved his medical practice to California and incorporated there as Theodore M. Hylwa, M.D., Inc., the defendant herein. The Kansas corporation was dissolved in 1981, but plaintiff continued working for the defendants on an irregular basis from May 14, 1981, to November [*2] 30, 1984. Plaintiff's participation in the Hylwa pension plans also continued until 1984.

In June 1984, the parties began discussing the possibility of plaintiff's retirement and the distribution of retirement benefits under the defendants' pension plans. After receiving a copy of his total plan benefits from defendants' attorney, Kenneth J. Catanzarite, plaintiff retired effective December 1, 1984. This correspondence allegedly stated that the plaintiff was entitled to a total of $168,465.00 from the defendants' three pension funds: the Money Purchase Pension Plan ($8,086.00); the Defined Benefit Purchase Plan ($40,211.00); and the "Unified Credit" Defined Benefit Plan ($120,168.00).

After plaintiff retired, disputes arose between the parties regarding the method of payment and plaintiff's eligibility under the "Unified Credit" Defined Benefit Plan. Another conflict arose when defendants alleged that plaintiff failed to complete certain accounting services contracted for by the defendants. Finally, defendants filed an action in the United States District Court for the Central District of California against the plaintiff to resolve these disputes. Plaintiff subsequently filed the [*3] present case on September 23, 1985. The action pending before the California court was dismissed for lack of personal jurisdiction over Palka.

This matter comes before the Court on various motions of the parties. These motions will be addressed in the order they were filed.

1. Defendants' Motion to Dismiss.

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for improper venue. In actions brought under ERISA, proper venue is determined by 29 U.S.C. § 1132(e)(2). [HN1]Under

1986 U.S. Dist. LEXIS 20854

this provision, an ERISA action may be brought in the district where: (a) the plan is administered; (b) the breach took place; (c) the defendant resides; or (d) the defendant can be found.

Various district and appellate courts recently have been faced with interpreting and applying the venue provisions of 29 U.S.C. § 1132(e)(2). In Sprinzen v. Supreme Court of the State of New Jersey, 478 F.Supp. 722 (S.D.N.Y. 1979), the district court held that [HN2]an ERISA plan is "administered" at the location(s) where the plan is managed, rather than where the benefits are distributed. Id. at 723-24. See also Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan, 517 [*4] F.Supp. 627 (S.D. W.Va. 1981). In the action before this court, there is no evidence that the pension plans in question were managed anywhere except California. Therefore, venue would not lie in this court under this part of the statute.

The application of the provision vesting venue in the district "where the breach occurred" is less clear. In Bostic, the district court determined that the alleged breach could arise where the terms of the pension plan were breached or where the duties imposed by the Act were breached. Id. at 634. In determining where the breach occurred, the Bostic court turned to the federal common law rule that a cause of action for breach of contract arose at the place where the contract was to be performed. In the context of an ERISA civil action, that court held that the place of breach would be the place where the benefit recipient becomes entitled to payment. Id. at 636. Since the plaintiff in this action would be entitled to payment at his residence in the District of Kansas, venue lies with this court under this portion of 29 U.S.C. § 1132(e).

Similarly, this court also has proper venue over this action since Kansas is a district "where [*5] the defendant is found." In applying this venue provision, courts have followed the broad application of the antitrust and copyright venue provisions where a defendant is deemed to be "found" in any district in which personal jurisdiction could be obtained over it. Varsic v. United States Dist. Court for Cent. Dist. of California, 607 F.2d 245, 248 (9th Cir. 1979); see also I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc., 699 F.2d 1254, 1257 (D.C. Cir. 1983). Since this court clearly has personal jurisdiction over these defendants, they are "found" in this district and venue lies here.

For these reasons, the court finds that venue lies in this district pursuant to 29 U.S.C. § 1132(e)(2) and, therefore, defendants' motion to dismiss must be denied.

II. Motion for Transfer.

Defendants have also filed a motion to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). Defendants argue that the California court would be more convenient for the parties and witnesses and that the transfer would serve the interests of justice.

Since the related action of T. M. Hylwa, M.D., Inc. v. Gary [*6] Palka was dismissed by the California court, this court will not address defendants' arguments regarding priority of claims and consolidation.

[HN3]For a transfer of venue to be proper, the moving party must show that venue is proper in both the transferor and transferee districts and that the transfer is for the "convenience of parties and witnesses, and is also "in the interest of justice." The party seeking the transfer carries the burden of showing that the action should be transferred. Ammon v. Kaplow, 468 F.Supp. 1304, 1313 (D. Kan. 1979). Furthermore, a plaintiff's choice of forum should not be disturbed unless the balance of the consideration is strongly in the moving party's favor. William A. Smith Contracting Co. v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir. 1972). "Additional consideration is properly given when the plaintiff has chosen the forum in which he resides." Ammon, at 1313. When considering a motion for a section 1404(a) transfer, the mere shifting of inconvenience from one party to another is insufficient to support the transfer. Central States, Southeast & Southwest Areas Pension Fund v. Brown, 587 F.Supp. 1067, 1070 (N.D. Ill. 1984). Another [*7] factor to consider is the "interest of justice." This has been interpreted to include such considerations as the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses and other factors that relate to making the trial "easy, expeditious and inexpensive." ROC, Inc. v. Progress Drilling, Inc., 481 F.Supp. 147, 152 (W.D. Okla. 1979).

Here, the defendants contend that transfer is necessary in the "interest in justice." Defendants contend that all the witnesses except the plaintiff and his expert reside in California. Defendants claim that compulsory process could not reach these witnesses in California if they refused to come to Kansas. However, mere allegations, unsupported by affidavits or other proof, cannot be accorded much weight. Surco Products, Inc. v. Theochem Laboratories, 528 F.Supp. 677, 679 (S.D. Fla. 1981); Essex Crane Rental Corp. v. Vic Kirsch Const. Co., 486 F.Supp. 529, 535 (S.D.N.Y. 19.80). This is especially true due to the nature of defendants' estimated seven witnesses: three employees of the

defendants; the pension plans' enrolled [*8] actuary; the contract pension plan administrator; the defendants' expert witness; and the defendants' personal attorney, Kenneth Catanzarite. All these witnesses are so closely related to defendants' operation that the likelihood of the need for compulsory process is slight. In addition, while the defendants argue that all the documentary evidence is located in California, they have failed to show any hardship in producing documents in this court relevant to the terms of the pension plans and the participation of one employee -- the plaintiff. Therefore, defendants' only argument in support of transfer that carries any weight is the expense of bringing their witnesses to this court from California.

However, the court cannot ignore the legislative purpose behind the broad ERISA venue provisions. In drafting 29 U.S.C. § 1132(e)(2), Congress intended to provide ERISA participants "ready access to the Federal courts." Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Protection, Inc., 578 F.Supp. 94, 95 (D. Md. 1983). Congressional reports also indicate that ERISA's enforcement provisions were "designed specifically to provide . . . participants and [*9] beneficiaries with broad remedies for redressing and preventing violations of the Act . . . and to remove jurisdictional and procedural obstacles which in the past appeared to have hampered effective enforcement of fiduciary responsibilities. . . ." H.R. 93-533, 93rd Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S. Code Cong. & Ad. News, 4639, 4655.

In ERISA actions involving section 1404(a) motions, two federal district courts have imposed an even heavier burden on the moving party due to the special venue provision found in the Act. See International Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., Inc., 621 F.Supp. 906, 907 (D.D.C. 1985); Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Protection, Inc., 578 F.Supp. at 95-96. This increased burden complies with the indications from the legislative history that "the avenues of relief and the right of action afforded pension plan participants should be generously construed." Foltz v. U.S. News & World Report, Inc., 613 F.Supp. 634, 639 (D.D.C. 1985).

After careful consideration, the court finds that the defendants have not shown sufficient substantiated [*10] evidence to overcome the plaintiff's choice of forum. Although defendants would be more convenienced if the transfer was granted, that alone is not sufficient grounds. Therefore, the court denies the defendants' motion for transfer.

III. Defendants' Motion to Stay Discovery.

Defendants filed a motion to stay discovery until the court entered an order relating to its motions to dismiss and for transfer. Since those motions are denied herein, the motion to stay discovery is also denied.

IV. Plaintiff's Motions to Amend and Add Parties.

Plaintiff filed a motion to amend and add parties on December 31, 1985, seeking leave to amend his complaint to add Catanzarite and Co., Inc., Catanzarite Law Corporation and Kenneth J. Catanzarite [hereinafter the Catanzarite parties] as defendants. While this motion was pending, the plaintiff filed a motion to amend and file a second amended complaint. This motion was accompanied by plaintiff's proposed second amended complaint which contained four counts. Count I restated plaintiff's ERISA claims for benefits due and for an injunction. Counts II and III appear to allege a cause of action for tortious misrepresentation against defendants [*11] and the Catanzarite parties. Count IV was an estoppel claim.

The court will first discuss the propriety of joinder of the additional parties; then the issue of whether plaintiff should be allowed to amend to add these parties will be discussed.

Defendants object to the motion to add the Catanzarite parties arguing that the court lacks subject matter jurisdiction over the proposed additional defendants and, therefore, joinder is prohibited under Federal Rule of Civil Procedure 19. The defendants argue that the Catanzarite parties are not proper defendants in an action under ERISA. [HN4]Title 29, United States Code, section 1132 establishes who can bring a civil action under ERISA and for what purposes such an action can be brought. This section allows a participant or beneficiary to bring an action: (1) to recover benefits due, enforce rights under the plan, or clarify rights under the plan [section 1132(a)(1)(B)]; (2) to recover a statutory penalty from an administrator for refusing to supply requested information [sections 1132(a)(1) (A), 1132(c)]; or (3) to obtain equitable relief [sections 1132(a)(3)]. Because of the types of relief available, the proper defendants to an ERISA [*12] action brought by plan participants are those who control or administer the plan and/or are fiduciaries as defined by section 1102(a). Dhaver v. Weirton Steel Div. of Nat'l Steel Corp., 571 F.Supp. 316, 331-32 (N.D. W.Va.), aff'd, 724 F.2d 406 (4th Cir. 1983); Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan, 481 F.Supp. 454, 458 (N.D. Ga. 1979). There is no evidence at this time that the Catanzarite parties controlled or administered the pension plans in issue in this case. It appears that these parties merely acted as legal and financial advisors to the defendants. It is the court's opinion that a mere advisory role is

1986 U.S. Dist. LEXIS 20854

insufficient to constitute "control" of the pension plans and as such, advisors or agents are not proper parties to an ERISA action.

However, plaintiff's motion to amend and add parties must also be considered under [HN5]the permissive joinder rule, Federal Rule of Civil Procedure 20. This rule allows joinder of multiple defendants if "there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out or the same transaction or occurrence, or series of transactions or occurrences and if any question [*13] of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. Similar standards apply in determining whether claims can be added under Federal Rule of Civil Procedure 18.

Counts II and III of plaintiff's proposed amended petition allege acts of misrepresentation by defendants and the Catanzarite parties for which damages are claimed. These counts are phrased in terms of an action for tortious misrepresentation. These claims clearly arise out of the same series of transactions or occurrences which underlie plaintiff's ERISA claim, namely the plaintiff's participation in defendants' pension plans and the subsequent dispute over plaintiff's entitlement to pension benefits. Furthermore, the ERISA and misrepresentation claims have a common issue of fact: the determination of amounts due to plaintiff under the terms of the pension plans. Determination of this fact is clearly necessary for resolution of the ERISA claim; it is also vital to establish whether the alleged representations made by defendants and the Catanzarite parties were false. For these reasons, the Catanzarite parties could be properly joined under Federal Rules of Civil Procedure 18 and 20.

Since [*14] the proposed additional defendants can be properly joined pursuant to Rule 20, the next issue is whether the motion to amend should be granted. [HN6]Federal Rule of Civil Procedure 15 allows a party to amend its pleadings with leave of the court. The Rule also provides that "leave shall be freely given when justice so requires." Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties. Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982) (citing 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1471, at 359 (1971)). The decision of whether to grant or deny leave to amend is within the discretion of the court. Lease America Corp. v. Eckel, 710 F.2d 1470, 1473 (10th Cir. 1983). In deciding a motion to amend, the court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment.

Local 472 of United Assoc. of Journeymen & Apprentices of Plumbing & Pipefitting Indus. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982).

Defendants make several arguments against granting [*15] the motion to amend. First, the defendants point out that plaintiff's second motion to amend was filed July 21, 1986, well after the December 31, 1985, deadline established by this court's scheduling order. However, the court notes that plaintiff's first motion to amend was filed December 31, 1985, and sought to add the same parties. In addition, discovery to this point has been limited. Therefore, defendants have failed to show any prejudice from the "late" filing.

Defendants also argue that it would be inequitable to allow plaintiff to amend the complaint. Defendants contend that plaintiff had full knowledge of the information regarding the acts of these parties at the time he filed his original pleading. Therefore, defendants state that plaintiff unduly delayed bringing claims against the Catanzarite parties, and that defendants have relied on their ability to use the Catanzarite Law Corporation as counsel for this action.

After examining the record, the court finds that there was no undue delay on the part of the plaintiff. Plaintiff's original petition to amend was filed by December 31, 1985. This was within the scheduling order and only two months after the original complaint [*16] was filed. This delay does not seem unreasonable, and it gave defendants sufficient notice that other counsel may be necessary if the motion was granted. Such a time does not severely prejudice the defendants' right to choose its counsel in this case. Since the defendants and the Catanzarite parties were both actively involved in the events giving rise to this action, it should not be surprising to find both as defendants.

For the foregoing reasons, the court grants the plaintiff's motion to amend. However, since the Catanzarite parties are not proper parties to the ERISA claim, plaintiff must establish an independent basis for jurisdiction of this court.

ORDER

IT IS THEREFORE ORDERED that the motion of defendants T. M. Hylwa, M.D., and T. M. Hylwa, M.D., Inc., to dismiss or in the alternative to transfer is denied. Defendants' motion for stay of discovery is also denied.

IT IS FURTHER ORDERED that plaintiff Gary Palka's motion to amend to add parties is granted.

1986 U.S. Dist. LEXIS 20854

Dated this 3rd day of September, 1986, at Kansas City,
Kansas.

## CERTIFICATE OF SERVICE

I, Curtis J. Crowther, Esquire hereby certify that on this 9th day of September, 2005, I caused copies of the foregoing document to be served on the following counsel of record, in the manner indicated below:

### BY E-FILING AND FEDERAL EXPRESS

William, B. Hildebrand, Esq.
The Law Offices of William B. Hildebrand, LLC
1040 N. Kings Hwy, Suite 601
Cherry Hill, N.J. 08034


s/ Curtis J. Crowther
Curtis J. Crowther, Esquire (#73122