# EXHIBIT C

DB02:5043375.1

000000.0

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Martha Jane Toy, individually, : C.A. No.:
And as Executrix and Personal : 05-cv-1814
Representative of the Estate of :
Russell B. Toy, deceased, :
        Plaintiffs, :
        V. :
Plumbers & Pipefitters Local Union :
No. 74 Pension Plan, Trustees of :
Plumbers & Pipefitters Local Union :
No. 74 Pension Plan, Health and Welfare :
Plan, Local 74, Welfare Benefit Plan, :
Life Insurance Plan, Local 74, Welfare :
Benefit Plan, Life Insurance Plan, :
Local 74, Insurance Plan, Administrators :
of Pension and Welfare Plans, Trustees :
of Plumbers & Pipefitters Local Union :
No. 74 Welfare Plan, Plan Administrator :
of Pension & Welfare Plans, Insurance :
Plans, and Health and Welfare :
Benefit Plan, :
        Defendants. :



        Continuation of the deposition of SCOTT A. ERNSBERGER, GEM Group, Senior Account Executive, taken pursuant to notice before Tanya M. Congo, a Notary Public and Certified Shorthand Reporter, at the offices of Young, Conaway, Stargatt & Taylor, LLP, the Brandywine Building, 1000 West Street, 17th Floor Wilmington, Delaware, on Monday, August 29, 2005, beginning at approximately 9:20 a.m., there being present:

APPEARANCES:

    LAW OFFICES OF WILLIAM B. HILDEBRAND, L.L.C.
    1040 Kings Highway North, Suite 601
    Cherry Hill, New Jersey 08034
    BY: WILLIAM B. HILDEBRAND, ESQUIRE
        (Attorney for Plaintiffs)

    JOHN M. STULL, ATTORNEY AT LAW
    1300 North Market Street, Suite 700
    Wilmington, Delaware 19899-1947
    BY: JOHN M. STULL, ESQUIRE
        (Attorney for Plaintiffs)

Page 30

1  ancillary benefits under the Welfare Plan, and this
2  report is specific to the Welfare Plan, that are
3  medical benefits that the trustees have engaged GEM
4  Group to pay, and that's what this report would
5  reflect.
6         Just to clarify, 2005 to date, also,
7  GEM Group has been paying the medical benefit claims
8  for Medicare eligible participants as well, and that
9  would also be included in the medical claims GEM
10 Group issues payments for.
11    Q. All right. Who, physically, is paying the
12 benefits listed in Exhibit H, $8 million?
13    A. That is a third-party prescription benefit
14 manager called Express Scripts, Inc.
15    Q. All right. Turning your attention to page
16 12 of the Interrogatory Answers, it says, since 1997
17 the Funds have paid $216,193.37 to healthcare
18 providers on behalf of pensioners and beneficiaries.
19 That would be the macro number, correct?
20    A. Yes. No, I'm sorry. That would be the
21 total that the GEM Group has issued payments for
22 medical benefits, because Exhibit I that corresponds
23 to that is strictly healthcare providers, all
24 locations that the GEM Group has issued medical
25 benefit payments to.

Page 31

1     Q. On behalf of the Fund. Are those the only
2  medical benefits that the Fund has paid directly?
3     A. Those are issued by the GEM Group.
4     Q. All right.
5     A. The Plans don't issue any benefits
6  directly.
7     Q. So those are the only benefits that the
8  GEM Group would pay directly on behalf of the Funds
9  or are there other medical benefits that they would
10 pay directly on behalf of the Funds?
11    A. I believe that would be all that the GEM
12 Group would pay to medical service providers.
13    Q. And of that $46,276.97 was paid to
14 healthcare providers with Pennsylvania addresses?
15    A. From the Welfare Plan, that's correct.
16    Q. All right. And how did you derive that
17 information?
18        How did you get that number?
19    A. If you turn to Exhibit I.
20    Q. Right.
21    A. And the page numbers are not -- the pages
22 are not numbered, but if you turn to, I think it's
23 the second to last page of the report -- I'm sorry,
24 it starts on the fourth to the last page of the
25 report.

Page 32

1         At the bottom, Nemours Physician
2  Associates.
3     Q. Right. Then it says PA.
4     A. That's PA. And, then, it continues from
5  there for a couple more pages and lists medical
6  service providers who have Pennsylvania addresses
7  listed in the system that GEM Group had issued
8  medical benefit payments to.
9     Q. And you total both numbers?
10    A. That's my understanding.
11    Q. What is Exhibit J?
12    A. Exhibit J is a report that indicates
13 prescription drug benefits that were paid to
14 pharmacies who were listed with a Pennsylvania
15 address from January 1, 2002 through August 14, 2005.
16    Q. Now, I'm directing your attention to the
17 last page of that exhibit. There's a number, total
18 pharmacy payments $1,444,019.14. What does that
19 number represent?
20    A. I believe it's $1,440,019.14. That would
21 be a total of this report under Exhibit J which,
22 again, is prescription drug benefits that were paid
23 to pharmacies that were listed with a Pennsylvania
24 address that are in the system. These are benefits
25 issued by a third party and it would be for the time

Page 33

1  period January 1, 2002 to August 14, 2005.
2     Q. What's Exhibit K?
3     A. Exhibit K is information of the total
4  prescription drug plans paid on behalf of the health
5  and welfare fund from 1997 through June of 2005,
6  providing the information year by year for all
7  benefits paid out for prescription drugs to all
8  residents everywhere, all participants.
9     Q. All right. Directing to your attention to
10 Interrogatory 13, were you involved in preparing the
11 Answer to that Interrogatory?
12    A. Let me read that.
13    Q. Sure.
14    A. The answer is yes.
15    Q. Describe the nature of your involvement.
16        What did you do to obtain the
17 information necessary to answer that Interrogatory?
18        MR. CROWTHER: Objection. Beyond the
19 scope of Judge Schiller's initial Order limiting
20 discovery jurisdiction, and secondly, beyond the
21 scope of Judge Schiller's both original and amended
22 Order regarding this deposition.
23        I'll instruct the witness not to
24 answer.
25        MR. HILDEBRAND: I think that's a

Page 34

1  perfectly legitimate question. He said he was
2  involved in the Answer to the Interrogatory, and I
3  asked him what he did with respect to the
4  Interrogatories. I mean, clearly, this question goes
5  to jurisdiction, you know, somebody taking a
6  position, and I think I'm entitled to information as
7  to the basis for that position.
8         And it's not my understanding that
9  this deposition is necessarily restricted to those
10 three topics in Judge Schiller's Order.
11       MR. CROWTHER: Counsel, paragraph 2 of
12 the Order dated August 23rd reads as follows:
13 Plaintiffs may depose a 30(b)(6) witness related
14 solely to the information contained in paragraph 1.
15       The amended Order repeats that same
16 exact language. Paragraph 2 of this Court's Order of
17 August 23rd, 2005 is amended to read, quote,
18 Plaintiffs may depose a 30(b)(6) witness related
19 solely to the information contained in paragraph 1.
20 The deposition shall take place on Monday, August 29,
21 2005 at 9:00 a.m. at Mr. Crowther's office.
22       MR. HILDEBRAND: So your objection is
23 based solely on the language of the Order. You're
24 not objecting that this is beyond the scope of
25 discovery?

Page 35

1         MR. CROWTHER: Well, I believe it is,
2  but I think certainly Judge Schiller's latest Orders
3  make it clear that this deposition was solely related
4  to even a more limited topic than the original Order.
5         MR. HILDEBRAND: All right. Then
6  we'll have another deposition on that. Would that be
7  your position?
8         MR. CROWTHER: My objection stands,
9  counsel.
10        MR. HILDEBRAND: Well, you know, the
11 witness is here. He obviously has the information,
12 can tell me the information. But your position is I
13 have to specifically notice another deposition in
14 order to obtain that information.
15        MR. CROWTHER: No, counsel. These
16 depositions are related to jurisdictional issues.
17        MR. HILDEBRAND: Well, I understand --
18 you keep repeating yourself. I understand that this
19 deposition, according to you, is limited to certain
20 things, okay.
21        Now, I can notice another deposition,
22 I mean, to address your concern. I can notice
23 another deposition for tomorrow and we can come back
24 and we can discuss that information. I mean, that
25 seems to be the logical import of your objection. Is

Page 36

1  that what you want me to do?
2         And the answer is, no, you don't want
3  me to notice another deposition. But if I want to
4  obtain the information, how would you suggest that I
5  obtain it?
6         MR. CROWTHER: When we're done the
7  jurisdictional issue, counsel, if your Complaint
8  still stands, then you'll be able to delve into the
9  merits of your dispute.
10        MR. HILDEBRAND: Well, this definitely
11 goes to the jurisdictional issue. It goes to the
12 people who are involved in the decision to deny
13 Plaintiff's claim for benefits. I mean, that's --
14 not only do we have extensive contact between the
15 Pension and Welfare Plans and Pennsylvania, but it's
16 our position that with respect to the denial of this
17 particular claim that there was extensive
18 Pennsylvania involvement, and, certainly, that goes
19 to the jurisdictional issue.
20        MR. CROWTHER: Is your question where
21 did this stuff take place, counsel, or --
22        MR. HILDEBRAND: No. No.
23        MR. CROWTHER: If you ask where I'll
24 certainly allow --
25        MR. HILDEBRAND: Okay.

Page 37

1         MR. CROWTHER: Because I believe that
2  where is very important.
3         MR. HILDEBRAND: Okay. But if I ask
4  that question, I think I know what his answer will
5  be, but, then, will you permit me to ask him follow-
6  up questions on that?
7         In other words, how does he know? I
8  mean, you can't just let him ask the question and,
9  then, say, I'm not allowed to delve into it.
10        So why don't I just --
11        MR. CROWTHER: If it's outside the
12 jurisdictional limit of discovery I will object, but
13 I have no objection to you asking a question as to
14 where, and any following up as long it relates to
15 jurisdiction.
16        I will not enforce Judge Schiller's
17 latest orders if that's the way you want to go. But
18 I do reserve the right to object to any of your
19 follow-up questions.
20        MR. HILDEBRAND: All right. That's
21 fine.
22 BY MR. HILDEBRAND:
23    Q. Are you aware that Plaintiff in this case
24 made a claim for additional pension, medical and life
25 insurance benefits?