# Exhibit B

# Exhibit B



**JENNINGS SIGMOND**
ATTORNEYS AT LAW

JENNINGS SIGMOND, P.C.
THE PENN MUTUAL TOWERS
16TH FLOOR
510 WALNUT STREET
INDEPENDENCE SQUARE
PHILADELPHIA, PA 19106-3683
215-922-6700
FAX 215-922-3524

Richard B. Sigmond
Direct Dial: (215) 351-0609
E-Mail Address: rsigmond@jslex.com

EDWARD DAVIS 1893-1987
M. H. GOLDSTEIN 1904-1971

Member: PA, NY & DC Bars

July 1, 2002

John M. Stull, Esq.
1300 North Market Street, Suite 700
Wilmington, DE 19899-1947

    RE:    **Russell Toy**

Dear Mr. Stull:

    This office represents the Plumbers & Pipefitters Local Union No. 74 Pension Plan ("Pension Plan"). Your letter of March 15, 2002 to the Pension Plan regarding disability benefits payable with respect to Russell B. Toy has been referred to me for reply. You have once again requested a review of the disability benefit calculation for Mr. Toy. In particular, you have asked that disability benefits be calculated in the form of a Joint and 80% Survivor benefit, that interest be credited on retroactive disability payments, and that Martha Jane Toy be entitled to life insurance and medical coverage. This letter provides the determination of the Fund with respect to these items.

### SUMMARY

    The Plan determined that Martha Toy was entitled to payment of a survivor benefit of $460.90 per month for her life, based on Russell Toy's entitlement to a disability pension. This was explained in determination letters of August 15, 2001 and September 14, 2001. This payment amount is based on a 50% Joint and Survivor Annuity form of payment which is the normal form of payment for a married participant under the Pension Plan and is the benefit for the spouse of a vested participant. The Plan does not provide benefits based on a Joint and 80% Survivor form of benefit and the request accordingly is therefore denied.

    Disability payments were made retroactive to May, 1998 when Russell Toy first applied for disability benefits. The Plan is governed by federal law under ERISA and is not required to pay interest on benefits originally denied but subsequently granted on appeal, particularly when the appeal depended on additional information, credit and determinations that were only supplied in 2001. Your request for interest on retroactive disability benefit payments is denied.

99946-2

John M. Stull, Esq.
July 1, 2002
Page 2

    Martha Toy is not entitled to health insurance coverage under the Health and Welfare Plan since Russell Toy was not eligible for health insurance coverage on his death. Your request for health coverage is denied.

    In order to be entitled to life insurance proceeds, a participant must be eligible for benefits under the provisions of the Health and Welfare Plan. Russell Toy was not eligible for health coverage on his death. Therefore, insurance proceeds are not payable to Martha Toy on his death. Your request for life insurance proceeds is denied.

## BACKGROUND

    Mr. Toy was an active participant in the Local 74 Health & Welfare and Pension Plans from 1979 to 1986. He was injured in 1983 and returned to Local 74 work only briefly. He last had Health & Welfare eligibility based on hours in 1988. His last work under the Pension Plan was in 1999. He returned to work in 1991 for a total of 567 hours and again in 1999 for 8 hours. Mr. Toy was found totally and permanently disabled by the Social Security Administration in March, 1998 with an effective date of September 30, 1991.

    Russell Toy applied for a disability pension on March 8, 1998. On July 30, 1998, his disability pension application was denied because he had only 9 years of Vesting Service. Section 4.06(a) of the Plan document requires 10 years of Vesting Service to be eligible for disability benefits. On November 11, 1998, Mr. Toy appealed the Plan's denial and the appeal was also denied. On May 17, 1999 Mr. Toy reapplied for benefits. This second application was denied on appeal on August 10, 1999. No additional information which could change the original determination was submitted, and Mr. Toy continued to lack the requisite years of Vesting Service. Beginning in 1999 and continuing through April, 2002, the Fund Office has responded to multiple requests for information.

    Another appeal dated April 27, 2001 was submitted by you to the Fund Office on behalf of Mr. Toy. The basis for the appeal is that Mr. Toy was entitled to additional Future Service Credit in accordance with Section 3.02(a)(4) of the Pension Plan document. This would have resulted in an additional year of Vesting Service, for a total of 10 years of Vesting Service. This appeal was granted on August 15, 2001. A September 14, 2001 determination corrected prior records to give additional disability credit and a greater benefit.

    Mr. Toy died on May, 2001. The Pension Plan's determinations resulted in a payment of a monthly survivor benefit to Martha Toy in the amount of $460.90. This amount is based on payment in the form of a 50% Joint and Survivor Annuity, the normal form of payment for a married participant under the Pension Plan. The March 15, 2002 request for review followed. This most recent request asks for payment in the form of an 80% Joint and Survivor Annuity, payment of interest on retroactive disability payments, and entitlement to health insurance coverage and life insurance proceeds for Martha Toy.

John M. Stull, Esq.
July 1, 2002
Page 3

## DISCUSSION

The rules for a Disability Pension include an application requirement and Section 4.06(g) of the Local 74 Pension Plan which provides as follows:

> (g) The Annuity Starting Date of a Disability Pension shall be determined in accordance with the provisions of Section 1.05, provided that, in no event shall it be earlier than the first of the month following the date of application or, if later, the date of disability, as determined by the Trustees.

The term "Annuity Starting Date" is defined in Section 1.05 of the Plan as:

> **1.05 Annuity Starting Date** means the day of the first period for which an amount is payable as an annuity or, in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitle the Participant to such benefit. The Annuity Starting Date shall not be later than the Participant's Required Beginning Date as defined in Section 1.31.

A complete application is a condition for disability benefits. The information needed to show eligibility here was not received before 2001.

The normal form of payment for a married participant who retires is set forth in Section 6.02 of the Plan as follows:

> **6.02 Husband-and-Wife Pension**
>
> (a) Notwithstanding any other plan provision to the contrary, the pension of a Participant who is married on his Annuity Starting Date shall be paid in the form of a Husband-and-Wife Pension, unless the Participant has filed with the Trustees in writing a timely election to waive this form of pension, subject to all of the conditions of Section 6.05 hereof. The Husband-and-Wife Pension provides a lifetime pension for a married Participant plus a lifetime pension for his surviving spouse starting after the death of the Participant. The monthly amount to be paid to the surviving spouse is one-half the monthly amount paid to the Participant. When a Husband-and-Wife Pension is in effect, the monthly amount of the Participant's pension is the Actuarial Equivalent of the normal form of pension.

Section 6.04 states as follows with regard to payment in an Optional Form:

> **6.04 Optional Forms of Pension**
>
> (a) Any Participant who becomes entitled to a pension benefit may elect to receive an Actuarial Equivalent benefit payable to him for his lifetime and continuing in whole or in part for the life of or for

John M. Stull, Esq.
July 1, 2002
Page 4

          a guaranteed period to his surviving spouse or designated Beneficiary in accordance with the provisions of this Section 6.04.

(b)     The Participant must elect his option in writing prior to his Annuity Starting Date and may cancel or change his election any time prior to such Date, provided, however, that the Participant's spouse, if any, consents in writing to such cancellation or change, pursuant to the provisions of Section 6.05 hereof.

(c)     The available options are:

    (1)     Life Annuity with a Period Certain. This form of pension provides monthly payment for life with a minimum number of one hundred twenty (120) payments guaranteed. If the Participant dies before receiving the guaranteed number of payments, the named Beneficiary will receive the remainder of benefits.

    (2)     Joint & Survivor Option. This form guarantees that monthly payments will continue for the lifetime of a Participant and, after his death, for the lifetime of his spouse. A Participant may elect that payments to his surviving spouse continue at either 100%, 75%, 66 2/3%, or 50%.

(d)     A Participant retiring on a Disability Retirement Pension shall have the same right to elect an optional form of payment as any other Participant.

(e)     Except as provided under Section 6.03 hereof, once a Participant has elected one of the options provided in this Article VI, such election cannot be revoked or changed after the Annuity Starting Date of the benefit.

(f)     Should a Beneficiary who is receiving or who is entitled to receive payments under Section 6.04(c)(1) die before he has received all of the payments due, the Trustees shall pay in a lump sum to the Spouse, dependent children or heirs under a valid will or the intestate succession laws of the State of the Beneficiary's residence an amount equal to the present value of the remaining payments.

In the event of death before the Annuity Starting Date, a Qualified Pre-retirement Survivor Annuity ("QPSA") is payable to an Eligible Surviving Spouse under the Plan. Pre-Retirement death benefits are outlined in Article VIII of the Plan document as follows:

    **8.01     Death Prior to Retirement – Vested Employee**

        (a)     Upon the death of a Participant who is Vested in any portion of his Accrued Benefit, there shall be payable to the Eligible Surviving

    Spouse, if any, of such Participant, a monthly benefit for the remainder of said Spouse's life.

 (b) The payment to the Eligible Surviving Spouse shall be the amount which would be payable as a survivor annuity under the Husband-and-Wife Pension pursuant to Article VI of this Plan provided:

  (1) in the case of a Participant who dies after attaining the earliest retirement age under the Plan, such Participant had Retired with an immediate Husband-and-Wife Pension pursuant to Article VI on the day before the Participant's date of death; or

  (2) in the case of a Participant who dies on or before the date on which he would have attained the earliest retirement age under the Plan, such Participant had:

   (A) separated from service on the date of death;

   (B) survived to the earliest retirement age under the Plan;

   (C) Retired with an immediate Husband-and-Wife Pension pursuant to Article VI at the earliest retirement age under the Plan; and

   (D) died on the day after the day on which such Participant would have attained the earliest retirement age under the Plan.

  In the case of an individual who separated from service before his date of death, subparagraph (A) shall not apply.

 (c) At the option of the Eligible Surviving Spouse, he shall be entitled to receive, in lieu of the benefit described in paragraph (b) herein, a single lump sum payment in an amount which is Actuarially Equivalent to such benefit or, if greater, the aggregate contributions made for work by the Participant. Aggregate contributions for work by a Participant shall not include contributions made prior to any Permanent Break in Service.

 These provisions are consistent with requirements on the form of benefit payment for a married participant in 29 U.S.C. §1105. The normal form of spouse benefits is a 50% survivor annuity in the event of death, before or after retirement. The Plan does provide options at

99946-2 – CONFIDENTIAL & PRIVILEGED

John M. Stull, Esq.
July 1, 2002
Page 6

retirement (but not before). There is nothing in Mr. Toy's application to request an optional form and the Plan simply does not provide the Joint and 80% Survivor Annuity you request.

### Interest On Retroactive Payments

The Plan is governed by federal law under ERISA and is not required to pay interest on benefits originally denied, but subsequently granted on appeal. Your request for interest on retroactive disability payments is based on unspecified case law. We have looked and found no precedent that requires such an award here. The only cases we have found suggest that a cause of action for interest on delayed benefits may exist as appropriate equitable relief under section 502(a)(3)(B) of ERISA when benefits have been *unjustifiably* delayed. *Fotto v. United Mine Workers of America Health and Welfare Fund of 1994*, 165 F.3d 209; 1998 U.S. App. LEXIS 31646 (3d Cir. 1998); *Clair v. Harris Trust and Savings Bank*, 190 F.3d 495; 1999 U.S. App. LEXIS 18468 (7th Cir. 1991). However, *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Fund*, 850 F.2d 1028, 1037 (3d Cir. 1988) suggests that ERISA prohibits interest.

The difference in theories does not appear to matter as an unjustifiable delay is not present. Russell Toy's eligibility for a disability pension was not established until new information was supplied in 2001. The Plan cannot pay benefits until it is shown that a participant meets the requirements for payment. Delaying benefits until such time is not unjustifiable, but rather necessary for the proper administration and operation of the Plan. Your request for interest on retroactive disability payments is denied.

### Health Insurance

Eligibility for benefits under the Health and Welfare Plan is outlined in the Eligibility section of the Summary Plan Description (see enclosed copy this section). Russell Toy ceased working in 1986 and was not eligible for disability benefits in any sense before 1998. Mr. Toy last had health and welfare eligibility based on hours in the quarter ending 1988. Even with an eight quarter extension for disability, eligibility expired by no later than 1990. His eligibility to make "Direct Payment" to the Health and Welfare Plan (under a disability extension or COBRA) to maintain coverage thus expired well before retirement. He was not eligible for subsequent reinstatement of coverage.

Since Russell Toy was not an eligible participant under the Health and Welfare Plan immediately prior to his disability retirement, he would not have been able to maintain coverage as a retiree until he applied for disability benefits in 1998. As a result, Martha Toy is not eligible to maintain coverage as a surviving spouse receiving a monthly payment under the Pension Plan.

### Life Insurance

With regard to life insurance, this benefit is subject to the general eligibility rules of the Health and Welfare Plan. Life insurance eligibility is described in the Summary Plan Description

John M. Stull, Esq.
July 1, 2002
Page 7

under the section entitled Life Insurance and Accidental Death and Dismemberment (see enclosed copy of this section). These provisions and the Plan's booklets provide life insurance for disabled employees (during the temporary extension) and those who retire on disability without a loss of eligibility. Russell Toy was not eligible for health coverage under the provisions of the Health and Welfare Plan and correspondingly was not covered for life insurance benefits.

You have exhausted your available remedies under the Plan. The Plan has no further or voluntary appeal procedures. A claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. A claimant who disagrees with the Plan's decision or lack thereof may file suit in Federal court under Section 502(a) of ERISA, 29 U.S.C. §1132(a), following an adverse benefit determination on appeal or the lack of a timely response.

Sincerely,

RICHARD B. SIGMOND

RBS:aw
cc:   Board of Trustees
      Timothy J. Snyder, Esq.
      Scott Ernsberger