# EXHIBIT C

## Westlaw.

Slip Copy

Slip Copy, 2005 WL 2782547 (E.D.Pa.)

(Cite as: 2005 WL 2782547 (E.D.Pa.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Thomas J. **CROSLEY**
v.
**COMPOSITION** ROOFERS UNION LOCAL 30
EMPLOYEES' PENSION PLAN et al.
No. Civ.A. 04-5954.

Oct. 21, 2005.

Andrew S. Abramson, Law Offices of Andrew S. Abramson, Jenkintown, PA, for Thomas J. Crosley.

Eric B. Meyer, Dilworth Paxson LLP, Richard B. Sigmond, Jennings Sigmond, Philadelphia, PA, for Composition Roofers Union Local 30 Employees' Pension Plan et al.

*ORDER*

DALZELL, J.

*1 AND NOW, this 20th day of October, 2005, upon consideration of defendants' motion for reconsideration (docket entry # 29) and plaintiff's response (docket entry # 31), and the Court finding that:

(a) On September 29, 2005, we granted summary judgment on all counts to Local 30's Employees' Pension Plan (the "Plan") and on all but one count to the Plan's Board of Trustees (the "Board");

(b) Before us is the Board's motion seeking that we reconsider our denial of its motion for summary judgment on that sole remaining count--count two--which alleges breach of fiduciary duty under §

502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3);

(c) We will grant a motion for reconsideration only if "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [rendered its decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice," *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999);

(d) Although the Board here raises two entirely new arguments, both never raised in its motion for summary judgment, we nonetheless hold that permitting this case to go to trial would cause manifest injustice because, no matter what, plaintiff would ultimately lose;

(e) The first reason plaintiff would ultimately lose is that he lacks standing to pursue count two;

(f) Under § 502(a)(3), 28 U.S.C. § 1132(a)(3), to sue for fiduciary breach, one must be a "participant," "fiduciary," or "beneficiary;"

(g) As Crosley is indisputably not a beneficiary or fiduciary, he may sue only as a participant;

(h) 29 U.S.C. § 1002(7) defines participant:
[A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
*Id.;*

(i) Crosley, a "former employee" of an "employer," Local 30, claims that he "may become eligible" to receive Plan benefits;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 2782547 (E.D.Pa.)

(Cite as: 2005 WL 2782547 (E.D.Pa.))

Page 2

(j) For a former employee to fit within the phrase "may become eligible," he must have either (1) " 'a reasonable expectation of returning to covered employment" ' or (2) " 'a colorable claim to vested benefits," ' *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (quoting *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.1986) (*per curiam* ), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986));

(k) Here, Crosley does not claim that he wants to resume working for Local 30;

(l) Thus, he has standing only if he has a "colorable claim to vested benefits," which our Court of Appeals has interpreted to mean a "likelihood of success in a suit for benefits," *Shawley v. Bethlehem Steel Corp.,* 989 F.2d 652, 657 (3d Cir.1993); *see Shawley,* 989 F.2d at 657 (holding that non-vested, credited service gave rise only to a forfeitable benefit and that such a "contingent claim for future benefits does not satisfy the dictates of *Firestone.*" ); *Agathos v. Starlite Motel,* 60 F.3d 143 n. 10 (3d Cir.1995) ("We have previously held that a claim for credited service does not give rise to a 'colorable claim' to vested benefits."); *Becker v. Mack Trucks, Inc.,* 281 F.3d 372, 379 (3d Cir.2002) ("It is the *nonforfeitable* right to benefits, not the *contingent,* albeit nonforfeitable, right to credited service that is the relevant standard under *Firestone.*" ); *cf. Berger v. Edgewater Steel Co.,* 911 F.2d 911, 921-22 (3d Cir.1990) (holding that former employees who had been participants in a plan at one time but had already received all of their payments lacked standing because they had no desire to return to work or colorable claim for benefits);

*2 (m) Having already concluded that Crosley's suit for benefits fails, however, we must *a fortiori* conclude that he has demonstrated no likelihood of prevailing;

(n) Because Crosley lacks standing, we shall dismiss count two, *see Miller v. Rite Aid Corp.,* 334 F.3d 335, 345 (3d Cir.2003) (holding that the correct way for district courts to dispose of ERISA cases for lack of standing is to dismiss them for want of jurisdiction, rather than enter judgment in favor of the movant);

(o) Even if Crosley had standing, count two would still founder because he seeks a legal remedy, while § 502(a)(3) permits only equitable remedies, *see Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (holding that the phrase "equitable relief" in § 502(a)(3) "must refer to 'those categories of relief that were *typically* available in equity." ') (*quoting Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993));

(p) § 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," *id.;*

(q) In *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255-56, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court held that the term "equitable relief" in § 502(a)(3) embodies only those types of relief that were typically available in equity such as injunction, mandamus, and restitution, but not compensatory or punitive damages;

(r) Writing for the majority, Justice Scalia reasoned that "equitable relief" must mean something less than *all* relief because a contrary construction would "limit the relief *not at all*" and "render the modifier ['equitable'] superfluous," *id.* at 257-58;

(s) In *Knudson,* the Court further limited ERISA recovery by narrowly construing "equitable relief" in § 502(a)(3): "Almost invariably, .... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty," *id.* at 210 (quoting *Bowen v. Mass.,* 487 U.S. 879, 918-19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting); [FN1]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2005 WL 2782547 (E.D.Pa.)

(Cite as: 2005 WL 2782547 (E.D.Pa.))

FN1. In *Knudson*, an insurance company paid the defendants under the terms of an employee benefit plan, of which the defendants Janette and Eric Knudson were beneficiaries, to cover medical expenses arising from a car accident in which Janette was paralyzed. *Id.* at 207. The Knudsons then recovered payments through a settlement in a state tort suit from the manufacturer of the car they drove at the time of the accident. *Id.* at 207-08. The plan included a reimbursement provision holding beneficiaries liable to the plan for any third-party benefit payments they received, and the plan had an agreement with the insurance company assigning its rights to litigate any claim under that reimbursement provision. *Id.* Under this agreement, the insurance company sued the Knudsons pursuant to § 502(a)(3) for reimbursement of the payments that the insurance company had made under the plan. *Id.* The Court held that because the insurance company sought legal relief--the imposition of personal liability on the Knudsons for a contractual obligation to pay money-- § 502(a)(3) barred its lawsuit. *Id.* at 210.

(t) In stating this general rule, the Court carved out a few instances in which a judicial remedy requiring one party to pay money to another could qualify as equitable relief;

(u) First, while "[t]ypically, ... specific performance of a contract to pay money was not available in equity," in "rare cases," a court of equity could award specific performance of such a contract if it was sought to "prevent future losses that either were incalculable or would be greater than the sum awarded," *id.* at 211;

*3 (v) Second, a court of equity could award restitution, ordinarily in the form of a constructive trust or an equitable lien, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds

or property in the defendant's possession," *id.* at 213;

(w) Thus, for restitution to lie in equity, "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession," *id.* at 214;

(x) In the wake of *Mertens* and *Knudson*, it is clear that, to determine whether relief sought under § 502(a)(3) is legal or equitable, a court must examine the basis for the plaintiff's claim and the nature of the underlying remedies sought;

(y) Here, in count two of Crosley's complaint, he requests that we enter an order "(1) clarifying plaintiff's rights to all past, present and future pension benefits, 2) [*sic* ] awarding plaintiff past and present pension benefits, (3) reinstating plaintiff's eligibility to future pension benefits, [and] (4) awarding plaintiff reasonable attorneys' fees, costs and whatever other legal and equitable relief this Court deems appropriate," Compl. Count Two;

(z) We have already clarified Crosley's lack of a right to pension benefits, and absent a request from Crosley for a particular type, we deem no other legal and equitable relief appropriate;

(aa) This leaves Crosley's requests that we (1) award him past and present pension benefits, (2) reinstate his eligibility to future pension benefits, and (3) grant reasonable attorneys' fees and costs;

(bb) Beginning with the first and second requests, it is important to understand that it is *impossible* for us to award him actual benefits because he unquestionably falls outside the Plan's plain terms;

(cc) Instead, and this is crucial, for his alleged detrimental reliance, Crosley really asks us to award him (1) an amount of monetary damages *equal* to the amount of benefits he would have received by now (had he qualified for benefits); and (2) an injunction requiring the Board to pay him, at fixed intervals in the future, the same amount he would receive (again, if he actually qualified for benefits);

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 2782547 (E.D.Pa.)

(Cite as: 2005 WL 2782547 (E.D.Pa.))

Page 4

(dd) Regardless of how he characterizes it, the relief Crosley requests fits squarely within the scope of legal money damages the Supreme Court defined as "compensation for loss resulting from the defendant's breach of legal duty," *Knudson*, 534 U.S. at 210 (citing *Bowen*, 487 U.S. at 918-19), *cf. Kollman v. Hewitt Assocs., LLC*, Civ. No. 03-2944, 2005 WL 1941658, at *12 (E.D.Pa. Aug.11, 2005) (Baylson, J.) (holding that a request for front pay was a legal remedy under § 502(a)(3) and *Knudson* ); *Young v. Reconstructive Orthopaedic Assocs.*, Civ. No. 03-2034, 2005 WL 627796, at *16 (E.D.Pa. Mar.16, 2005) (Rueter, J.) (holding that request for monetary damages was a legal remedy under § 502(a)(3) and *Knudson* ); *Ranke v. Sanofi-Synthelabo, Inc.*, Civ. No. 04-1618, 2004 WL 2473282, at *7 (E.D.Pa. Nov.3, 2004) (Joyner, J.) (holding that request for reinstatement of benefits was a legal remedy under § 502(a)(3) and *Knudson* ); *Tannenbaum, M.D. v. Unum Life Ins. Co.*, Civ. No. 03-1410, 2004 WL 1084658, at *5 (E.D.Pa. May 6, 2004) (Surrick, J.) (holding that a claim for benefits the plaintiff would have received, even if framed as claim for restitution, was a legal remedy under § 502(a)(3) and *Knudson* );

*4 (ee) Turning to Crosley's request for attorney's fees and costs, this relief also falls outside the category of "equitable restitution" that § 502(a)(3) permits, *see Michaels v. Breedlove*, App. No. 03-4891, 2004 WL 2809996, at *1-*2 (3d Cir. Dec.8, 2004);

(ff) Further, no relief Crosley requests in count two falls within the few exceptions *Knudson* enunciated, *see supra* ¶¶ (u)-(w); [FN2]

> FN2. Because *Knudson* modified *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255 (3d Cir.1995) , our decision is consistent with it. In *Unisys*, in explaining that § 502(a)(3) allows a private cause of action for breach of fiduciary duty, our Court of Appeals had to opine on "the form of equitable relief available under section 502(a)(3)," *id.* at 1269, the exact issue the Supreme Court faced in *Knudson*. The Court of

Appeals found that, while money damages were unavailable under *Mertens*, the district court could grant an "injunction ordering specific performance of the assurances Unisys made, restitutionary reimbursement for back benefits, and restoration of the *status quo ante* for [a class of] early retirees by rescinding their retirement agreements." *Id.* The Court reasoned that these remedies were "restitutionary in nature and thus equitable," *id.* (citing *Curcio v. John Hancock Life Mut. Life Ins. Co.*, 33 F.3d 226, 238-39 (3d Cir.1994)).

To the extent that *Unisys* permitted an injunction ordering specific performance of assurances Unisys made, *Knudson* appears to have modified it. As we noted earlier, in *Knudson*, the Supreme Court limited specific performance under § 502(a)(3) to "prevent future losses that either were incalculable or would be greater than the sum awarded." *Knudson*, 534 U.S. at 211.

And, to the extent that *Unisys* permitted "restitutionary reimbursement for back benefits," *Knudson* appears to have modified it by limiting restitution under § 502(a)(3) to situations "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213; *see also Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 457 n. 3 (3d Cir.2003) (predicting that a plaintiff's § 502(a)(3) claims for restitution and disgorgement "are likely barred by the Supreme Court's decision in *Great-West*. ... [because] there are no funds readily traceable to [the plaintiff] over which a constructive trust or other equitable remedy may be imposed."). Consequently, while *Unisys* would have been helpful to Crosley pre-*Knudson*, it is of limited (if any) value to him after it.

(gg) The only counter-argument Crosley advances to support his position is that in a post-*Knudson*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 5

Slip Copy, 2005 WL 2782547 (E.D.Pa.)

**(Cite as: 2005 WL 2782547 (E.D.Pa.))**

case, *Burnstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. & Res. Found.,* 334 F.3d 365 (3d Cir.2003), our Court of Appeals (according to Crosley) "permitted a breach of fiduciary duty action to go forward, implicitly implying [FN3] that it still considered the relief being sought as equitable in nature," Pl.'s Mem., at (unnumbered) 2;

    FN3. As opposed to explicitly implying?

(hh) While Crosley's representation is true, he points to nothing in *Burnstein* suggesting that either party raised the *Knudson* issue on appeal (otherwise, the court presumably would have addressed it); [FN4]

    FN4. In a footnote in *Burnstein,* our Court of Appeals noted the Supreme Court's "recent decision" in *Knudson* but refrained from opining on the decision's ramifications. *Id.* at 373 n. 12.

(ii) As the Seventh Circuit noted about unspecified contentions, it is not the job of appellate judges to, "like pigs, hunt[ ] for truffles buried in briefs," *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (*per curiam* );

(jj) Consequently, even if Crosley had standing, we would nonetheless have to grant summary judgment to the Board; and

(kk) Accordingly, we shall grant the Board's motion for reconsideration and close this case;

It is hereby ORDERED that:

1. Defendants' motion for reconsideration is GRANTED;

2. Count two is DISMISSED against the Board of Trustees of Composition Roofers Union Local 30 Employees' Pension Plan; and

3. The Clerk shall CLOSE this matter statistically.

Slip Copy, 2005 WL 2782547 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2849215 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Response to the September 23, 2005 Order of this Court (Sep. 27, 2005)

• 2005 WL 2849213 (Trial Motion, Memorandum and Affidavit) Plaintiff Thomas J. Crosler's Second Supplemental Brief (Sep. 26, 2005)

• 2005 WL 2684585 (Trial Motion, Memorandum and Affidavit) Plaintiff Thomas J. Crosley'S Opposition to Defendants' Motion for Summary Judgment (Aug. 19, 2005)

• 2005 WL 2684588 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Response to Plaintiff Thomas J. Crosley's Motion for Summary Judgment (Aug. 19, 2005)

• 2005 WL 2150511 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Judgment Against Plaintiff Thomas J. Crosley (Jul. 29, 2005)

• 2005 WL 2150512 (Trial Motion, Memorandum and Affidavit) Order (Jul. 28, 2005)

• 2:04cv05954 (Docket) (Dec. 21, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 7 of 46

2002 U.S. Dist. LEXIS 4723, *; 27 Employee Benefits Cas. (BNA) 2181

CAROLYN B. HIDY, Plaintiff, v. TIAA GROUP LONG TERM DISABILITY
BENEFITS INSURANCE POLICY, an employee benefit plan, TEACHERS
INSURANCE AND ANNUITY ASSOCIATION, claims Administrator of LTD Plan,
and BUCKMAN AND VAN BUREN, Plan Administrator of LTD plan, Defendants.

Civil Action No. 01-450-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 4723; 27 Employee Benefits Cas. (BNA) 2181

March 19, 2002, Decided

**DISPOSITION:** [*1] Defendants' motions to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee filed an action under the Employee Retirement Income Security Act (ERISA), specifically, 29 U.S.C.S. § 1132, claiming defendants, a long term disability claims processor, a plan, and a plan administrator, improperly denied her long term disability benefits. The defendants moved to dismiss the complaint based on the statute of limitations of Del. Code Ann. tit. 10, § 8111 (2001), and for failure to state a claim.

**OVERVIEW:** The court found the one-year statute of limitations in § 8111, was to be applied. The employee was notified of the final appeal decision by letter dated June 16, 2000. Her action was filed on June 29, 2001, more than one year from the completion of the administrative process. She admitted she had exhausted her administrative remedies. Under the policy limitations, she had four years to file suit from the time she was disabled. That period resulted from the sum of the one year period to prove disability and three years to file suit. The period was calculated and expressly stated for her, she was told the expiration date of that period was June 16, 2001. She knew or should have known of the expiration date of the policy limitations. The policy's period operated differently from the legal one-year statute of limitations period. The policy's period began when she suffered the injury; the one-year legal limitations period began when disability benefits were denied. The complaint was filed more than one year from the decision to terminate her benefits (Oct. 14, 1999), and more than one year from the appeal decision reaffirming the decision to terminate her.

**OUTCOME:** The defendants' motions to dismiss were granted.

**CORE TERMS:** statute of limitations, disability benefits, one-year, limitations period, motions to dismiss, nonmoving party, moving party, wage, fraudulent concealment, summary judgment, expiration date, long term, disability, exhausted, statute of limitations period, administrative remedies, decision to terminate, entitled to judgment, burden of proof, reasons stated, genuine issue, material fact, matter of law, file suit, one year, qualify, salary, letter addressed, disabled

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] Where the parties have referred to matters outside the pleadings, a defendant's motion to dismiss will be treated as a motion for summary judgment. Fed. R. Civ. P. 12(b)(6).

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] A court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN3] On a motion for summary judgment, the moving party bears the burden of proving that no genuine issue of material fact exists. Facts that could alter the outcome are "material," and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. If the moving party has demon-

Case 1:05-cv-00760-JJF     Document 42-4     Filed 12/05/2005     Page 8 of 46

2002 U.S. Dist. LEXIS 4723, *; 27 Employee Benefits Cas. (BNA) 2181

strated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial. The court will view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures*
[HN4] The Employee Retirement Income Security Act (ERISA) does not provide for a statute of limitations for suits brought under § 502(a)(1)(B) of ERISA, codified at 29 U.S.C.S. § 1132. The general federal statute of limitations as provided in 28 U.S.C.S. § 1658 does not apply because the prescribed four-year period of limitations only applies to claims arising under acts of Congress enacted after December 1, 1990. In such situations it is generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law. The applicable statute of limitations to a 29 U.S.C.S. § 1132 claim is that for a state contract action.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN5] Delaware has two statutes of limitation that concern contract claims. Del. Code Ann. tit. 10, § 8106 (2001), establishes a three-year statute of limitations for general contract actions. Del. Code Ann. tit. 10, § 8111 (2001), establishes a one-year statute of limitations for employment disputes including claims based on wages, salary, labor, and personal service performed, as well as any benefits that may arise from such work or labor.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Procedures*
[HN6] While the one-year limitations period of Del. Code Ann. tit. 10, § 8111 (2001), is not optimal, it is the most analogous Delaware statute of limitations for suits brought under § 502(a)(1)(B) of the Employee Retire-

ment Income Security Act, codified at 29 U.S.C.S. § 1132, and is to be applied in such cases.

COUNSEL: John M. Stull, Esquire, Wilmington, Delaware, for Plaintiff.

Richard G. Elliott, Jr., Esquire and Jennifer C. Bebko, Esquire, Richards, Layton & Finger, Wilmington, Delaware, for TIAA Group Long Term Disability Benefits Insurance Policy and Teachers Insurance and Annuity Association, Defendants.

Robert K. Beste, Jr., Esquire, Biggs & Battaglia, Wilmington, Delaware, for Buckman & Van Buren, Defendant.

Marc B. Zingarini, Esquire, Of counsel, Weber Goldstein Greenberg & Gallagher, Philadelphia, Pennsylvania.

JUDGES: ROBINSON, Chief Judge.

OPINIONBY: ROBINSON

OPINION:

### MEMORANDUM OPINION

Dated: March 19, 2002
Wilmington, Delaware

**ROBINSON, Chief Judge**

### I. INTRODUCTION

Plaintiff Carolyn Hidy filed this action on June 29, 2001 under the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132. Plaintiff claims that defendants TIAA Group Long Term Disability Benefits Insurance Policy, Teachers Insurance and Annuity Association, and Buckman and Van Buren improperly denied her long term disability benefits. (D.I. 1) Currently before the court are defendants' [*2] motions to dismiss the complaint based on the statute of limitations codified in 10 Del. C. § 8111 and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 9, 10; D.I. 11, 12) For the reasons stated below, defendants' motions to dismiss are granted.

### II. BACKGROUND

Plaintiff is a former employee of the Wilmington Friends School in Wilmington, Delaware. ( D.I. 1 P 4) Defendant Teachers Insurance Annuity Association ("TIAA") is a Delaware corporation that processes long term disability claims for Wilmington Friends School. ( Id. at P 6) TIAA Group Long Term Disability Benefits Insurance Policy ("LTD Plan") is a plan or program of

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 9 of 46

2002 U.S. Dist. LEXIS 4723, *; 27 Employee Benefits Cas. (BNA) 2181

Wilmington Friends School relating to benefits described in ERISA. n1 ( Id. at P 5) Defendant Buckman and Van Buren is the plan administrator for the LTD Plan. ( Id. at P 7)

> n1 There is argument whether the LTD Plan is in fact a plan of the Wilmington Friends School ( D.I. 1 P 5) or if it is only the name of the policy held between Wilmington Friends School and TIAA. (D.I. 10 at 3)

[*3]

Plaintiff was a former full-time employee of Wilmington Friends School. ( D.I. 1 P 8) Plaintiff suffered a heel injury in August 1996 that resulted in a disabling condition requiring continuous medical care. ( Id. at P 9) Plaintiff was terminated from employment on July 2, 1997. ( Id. at P 8) At the time of her termination, plaintiff was eligible to participate and did qualify for long term disability benefits under the LTD Plan. (Id.) Plaintiff paid plaintiff long term disability benefits for a two year period, from January 1998, through December 1999. ( Id. at P 10)

Plaintiff believed that she still qualified for continued benefits beyond December 1999, and made a claim for such. ( Id. at P 13) Plaintiff's claim was denied. n2 (Id.; D.I. 10 at Ex. A) In March 2000, plaintiff appealed TIAA's decision to deny long term benefits beyond December 1999. ( D.I. 1 P 13) After reconsideration, plaintiff's appeal was again denied. n3 (Id.; D.I. 10 at Ex. B)

> n2 TIAA spells out the reasons for the denial of plaintiff's claim in a letter addressed to the plaintiff and dated October 14, 1999. (D.I. 10 Ex. A)

[*4]

> n3 TIAA provides the reasons for the denial of plaintiff's appeal in a letter addressed to plaintiff's counsel and dated June 16, 2000. (D.I. 10 Ex. B)

Plaintiff alleges that she is disabled under the terms of the LTD Plan and qualifies for continued benefits. (D.I. 1 PP 14-17) Consequently, plaintiff filed this action on June 29, 2001. (D.I. 1)

## III. STANDARD OF REVIEW

[HN1] Because the parties have referred to matters outside the pleadings, defendants' motions to dismiss

shall be treated as motions for summary judgment. See Fed. R. Civ. P. 12(b)(6). [HN2] A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). [HN3] The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). [*5] "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). [*6] If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## IV. DISCUSSION

The paramount issue in this case concerns the statute of limitations that is applicable to plaintiff's claim for benefits under ERISA § 502(a)(1)(B). [HN4] The ERISA statute does not provide for a statute of limitations for suits brought under § 502(a)(1)(B). Syed v. Hercules Inc., 214 F.3d 155 (3d Cir. 2000), cert. denied, 531 U.S. 1148, 148 L. Ed. 2d 963, 121 S. Ct. 1088 (2001), and appeal filed 531 U.S. 1148, 148 L. Ed. 2d 963, 121 S. Ct. 1088, 2001 U.S. App. LEXIS 24653 (3d Cir. Del. 2001). The general federal statute of limitations as provided in 28 U.S.C. § 1658 does not apply because the prescribed four-year period of limitations only applies to "claims arising under acts of Congress enacted after December 1, 1990." n4 Id. at 159 n.3. In such situations it is "generally concluded that Congress intended

that the courts [*7] apply the most closely analogous statute of limitations under state law." DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 158, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983). Courts have decided that the applicable statute of limitations to a ERISA § 502(a)(1)(B) claim is that for a state contract action. See, e.g., Dameron v. Sinai Hosp., 815 F.2d 975, 981 (4th Cir. 1987); Hogan v. Kraft Foods, 969 F.2d 142, 145 (5th Cir. 1992). [HN5] Delaware, however, has two statutes of limitation that concern contract claims. See 10 Del. C. § 8106 (2001) (establishing a three-year statute of limitations for general contract actions); 10 Del. C. § 8111 (2001) (establishing a one-year statute of limitations for employment disputes including claims based on wages, salary, labor, and personal service performed, as well as any benefits that may arise from such work or labor).

> n4 ERISA was enacted in 1974. See 29 U.S.C. § 1132.

The Court in Syed [*8] opined that 10 Del. C. § 8111 is more analogous because it applies to claims by employees for wages and benefits. 214 F.3d at 160 (quoting Sorensen v. Overland Corp., 142 F. Supp. 354, 360 (D. Del. 1956) ("The one year statute . . . was intended to bar all claims arising out of the employer-employee relationship. The Act bars claims for 'wages', 'salary' . . . 'overtime' and . . . any other 'benefits' arising from the corporate-officer employment relationship. The word 'benefits' . . . covers all advantages growing out of the employment.")). The Third Circuit also noted that "ERISA benefits are often termed 'fringe benefits'". 214 F.3d at 161 (citing Bricklayers and Allied Craftsmen Int'l Union Local 33 Benefit Funds v. America's Marble Source, Inc., 950 F.2d 114, 118 (3d Cir. 1991)). See also Wage Payment and Collection Act, 19 Del. C. § § 1101 - 1115 (2001) (defining "benefits" as "compensation for employment other than wages, including, but not limited to, reimbursement for expenses, health, welfare or retirement benefits." § 1109(b)). The Third Circuit concluded that [HN6] while "the one-year limitations period of [10 Del. C.] § 8111 [*9] is not optimal," it is "the most analogous Delaware statute of limitations" and is to be applied in ERISA § 502(a)(1)(B) cases. Syed, 214 F.3d at 161.

Plaintiff argues that application of the statute of limitations should be tolled until "the federal common law proposition of exhaustion of remedies" has been met or, in other words, until the claim's appeal process has been exhausted. (D.I. 13 at 5) However, plaintiff was notified of the final appeal decision by letter dated June 16, 2000. (D.I. 10 Ex. B) This action was filed on June 29, 2001, more than one year from the completion of the

administrative process. Furthermore, plaintiff states in her complaint that she "has followed claims procedures of LTD Plan and otherwise has exhausted her administrative remedies as to her rights to benefits under LTD plan and related welfare plans." ( D.I. 30 Kan. 25. 1 P 25) Thus, plaintiff has admitted that she has exhausted her administrative remedies.

Plaintiff further argues, relying on Kahn v. Seaboard Corp., 625 A.2d 269 (Del. Ch. 1993), that fraud or fraudulent concealment can result in the tolling of the start of a period of limitations. [*10] n5 (D.I. 13 at 7) Plaintiff alleges that the statement "no suit for benefits under this policy can be brought more than four years after the disability commenced" is a misstatement that may constitute fraud or fraudulent concealment when contrasted with TIAA's position that a one-year statute of limitations period applies. (Id.) The court concludes that the policy statement is not inaccurate. Under the policy limitations, the plaintiff has four years to file suit from the time she is disabled. This period results from the sum of the one year period to prove disability and three years to file suit. (D.I. 13 Ex. A at 7.1 - 7.2) This period was calculated and expressly stated for plaintiff. "The expiration date of this period is June 16, 2001." (D.I. 15 Ex. B at 4) Plaintiff filed this action on June 29, 2001, clearly past the expiration date of the policy limitations. The court finds that plaintiff knew or should have known of the expiration date of the policy limitations.

> n5 Neither fraud nor fraudulent concealment was pled in the complaint and are only raised in plaintiff's answering brief in response to defendants' TIAA Insurance Policy and Teachers Insurance and Annuity Association's opening brief in support of their motion to dismiss. (D.I. 13)

[*11]

The policy's limitations period operates differently from the legal one-year statute of limitations period. Whereas the policy's limitations period begins when the plaintiff suffers injury (D.I. 13 Ex. A at 7.1), the one-year legal limitations period begins to run on the date that disability benefits are denied. See 10 Del. C. § 8111. Plaintiff's complaint, filed on June 29, 2001, was filed more than one year from the decision to terminate her disability benefits (Oct. 14, 1999), and more than one year from the appeal decision reaffirming the decision to terminate her disability benefits (June 16, 2000). As such, both the policy's period of limitations and the legal one-year statute of limitations applying to ERISA § 502(a)(1)(B) cases work to bar plaintiff's claim.

2002 U.S. Dist. LEXIS 4723, *; 27 Employee Benefits Cas. (BNA) 2181

Having concluded that plaintiff's claims against defendants are time barred, the court need not address the remaining arguments offered by the defendants.

## V. CONCLUSION

For the reasons stated, defendants' motions to dismiss (D.I. 9, 11) are granted.

An order shall issue.

LEXSEE 2002 US DIST LEXIS 1771

**DEREK J. OATWAY, Plaintiff, v. AMERICAN INT'L GROUP, INC., Plan Administrator of Stock Option Plan, AMERICAN INT'L GROUP, INC., a Delaware Corporation, and 1987 EMPLOYEE STOCK OPTION PLAN, an Employee Welfare Benefit Plan, Defendants.**

**C.A. No. 01-033-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 1771; 27 Employee Benefits Cas. (BNA) 2404*

**February 5, 2002, Decided**

**SUBSEQUENT HISTORY:** *Affirmed by Oatway v. Am. Int'l Group, 2003 U.S. App. LEXIS 7051* (3d Cir. Del., Apr. 14, 2003)

**DISPOSITION:** [*1] Defendants' Motion to Dismiss GRANTED; and Plaintiff's Motion for Summary Judgment declared MOOT.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to dismiss plaintiff's amended complaint on the ground that the complaint failed to state a claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act. Plaintiff moved for summary judgment.

**OVERVIEW:** Plaintiff was given stock options as performance incentives. The stock options were good for 10 years. Plaintiff resigned and was told that the stock options had to be exercised by a certain date, well before the 10 year period. Plaintiff failed to exercise the stock option by the new deadline, but attempted to exercise within the 10 year period. However, defendants declined to honor the stock option, so plaintiff brought suit under § 502(a)(1)(B) of the Employee Retirement Income Security Act. Defendants moved to dismiss and plaintiff moved for summary judgment. The court granted defendants' motion to dismiss because under the plain language of the plan, the purpose of the stock plan was not to provide severance, retirement, death or disability benefits. Instead, its purpose was to provide a financial incentive for plaintiff to remain with defendants and to improve his work performance. Furthermore, the express purpose of the stock plan was a bonus plan. While plaintiff may have been individually permitted to exercise his options subsequent to retirement, the primary purpose of the stock plan was to provide additional benefits during the course of employment.

**OUTCOME:** Defendants' motion to dismiss was granted. Plaintiff's motion for summary judgment was declared moot.

**CORE TERMS:** retirement, motion to dismiss, employee welfare benefit plan, disability, stock option, employee pension benefit plan, purpose of providing, summary judgment, pension, retirement income, subject matter jurisdiction, employee benefit plan, fiduciary duties, state law, stock, bonus, per share, termination, subsidiary, training, supplemental jurisdiction, method of calculating, statutory definition, method of calculating, statutory definition, breach of contract, covered employment, express purpose, welfare benefit, systematically, administrator, incidentally

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] A motion to dismiss pursuant to the provisions of *Fed. R. Civ. P. 12(b)(6)* should not be granted unless, accepting all allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the court rules that the plaintiff is not entitled to relief as a matter of law. A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 13 of 46

Page 2
2002 U.S. Dist. LEXIS 1771, *; 27 Employee Benefits Cas. (BNA) 2404

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN2] The Employee Retirement Income Security Act (ERISA) gives federal courts subject matter jurisdiction over claims brought pursuant to *29 U.S.C.S. § 1132*(a)(1)(B). This section authorizes a cause of action for benefits due under an employee benefit plan. Because an ERISA plan is necessary before ERISA's provisions apply, the court must first determine whether an employer's plan is, in fact, an ERISA employee welfare benefit plan. If the answer to this threshold question is no, then the court may dismiss the plaintiff's claims that he is entitled to benefits under ERISA.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Accrual, Vesting & Forfeitures*
[HN3] See *29 U.S.C.S. § 1002*(1).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN4] *29 U.S.C.S. § 186*(c) includes within the definition of "employee welfare plan" those plans which provide holiday and severance benefits, and benefits which are similar. *29 C.F.R. § 2510.3-1(a)(3).*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN5] To constitute an employee welfare plan, a plan must be designed specifically to provide employees with medical, unemployment, disability, death, vacation, or other specified benefits or to provide income following retirement in order to come within the purview of the Employee Retirement Income Security Act. The statutory definition does not embrace plans that may incidentally result in payment of benefits after retirement, death or disability. Thus, merely because a plan may in some circumstances continue to pay proceeds after an employee's death or disability does not make it a welfare benefit plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN6] The Employee Retirement Income Security Act applies only to an employee welfare benefit plan or to an employee pension benefit plan or a plan which is both.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN7] Plans that might incidentally result in payment of benefits after retirement, death or disability only fall under the Employee Retirement Income Security Act if they were established or maintained for the express purpose of doing so.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN8] The Employee Retirement Income Security Act pension plans include any plan established or maintained by an employer that, by its express terms results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. *29 U.S.C.S. § 1002*(2)(A)(ii).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
[HN9] The Employee Retirement Income Security Act pension plans exclude bonuses for work performed, unless such bonuses are systematically deferred to termination of covered employment or beyond, or so as to provide retirement income to employees. *29 C.F.R. § 2510.3-2(c).*

COUNSEL: For DEREK J. OATWAY, plaintiff: Richard R. Wier, Jr., Law Offices of Richard R. Wier, Jr., Wilmington, DE.

For AMERICAN INTERNATIONAL GROUP, INC., AMERICAN INTERNATIONAL GROUP, INC., 1987 EMPLOYEE STOCK OPTION PLAN, defendants: Regina A. Iorii, Stephen E. Jenkins, Carolyn Shelly Hake, Ashby & Geddes, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION:

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On January 17, 2001, the plaintiff, Derek J. Oatway ("Oatway"), filed a complaint in the above-captioned action. He amended his complaint on February 13, 2001. In his amended complaint, he alleges that American In-

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 14 of 46

Page 3

2002 U.S. Dist. LEXIS 1771, *; 27 Employee Benefits Cas. (BNA) 2404

ternational Group, Inc. ("AIG") wrongfully denied him benefits under the 1987 Employee Stock Option Plan (the "Plan"). He now seeks to recover those benefits pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See 29 U.S.C. § 1132*(a)(1)(B). He further claims that AIG, as the Plan administrator, breached its fiduciary duties by failing to [*2] properly administer the Plan in violation of *29 U.S.C. § 1133*. Finally, Oatway asserts state law claims against AIG based on breach of contract and estoppel.

Presently before the court are the defendants' motion to dismiss Oatway's amended complaint on the grounds that it fails to state a claim under ERISA and Oatway's motion for summary judgment. For the following reasons, the court will grant the defendants' motion to dismiss.

## II. BACKGROUND

Oatway was employed by AIG until approximately August 26, 1992. On various occasions from 1983 through 1990, AIG and Oatway entered into written Incentive Stock Option Agreements (the "Agreements"). These Agreements granted Oatway the right to purchase certain numbers of shares of AIG common stock at set exercise prices per share. Specifically, on January 18, 1990, AIG granted Oatway an Incentive Stock Option to purchase 200 shares at S 96 per share. On October 11, 1990, AIG granted Oatway an Incentive Stock Option to purchase 200 shares at S 58.625 per share. n1 These options were granted under the AIG Plan in consideration of Oatway's performance as an employee of AIG.

> n1 Oatway refers to the terms of the January 18, 1990 and October 11, 1990 Incentive Stock Option Agreements and the 1987 Employee Stock Option Plan throughout his Amended Complaint. He has therefore incorporated these documents by reference into his pleading. The court may rely on such documents in deciding a motion to dismiss. *See In re Rockefeller Ctr. Properties, Inc. Securities Litig., 184 F.3d 280, 287 (3d Cir. 1999)* (noting that, on a motion to dismiss, "a court can consider a document integral to or explicitly relied upon in the complaint."). Neither party objects to the court relying on these documents.

[*3]

AIG's Plan provides selected employees of AIG, including its parent or subsidiary corporations, with the options to purchase shares of AIG common stock. The purpose of the Plan is:

> To advance the interests of American International Group, Inc. ("AIG") by providing certain of the key employees of AIG and of any parent or subsidiary corporation of AIG, upon whose judgment, initiative and efforts the successful conduct of the business of AIG largely depends, with an additional incentive to continue their efforts on behalf of such corporations, as well as to attract to such corporations people of training, experience and ability.

Options granted under the Plan may normally be exercised beginning one year after they are granted, in set installments. AIG's board of directors determine the amount of the installments at the time of the grant. To the extent that an optionee does not purchase the maximum number of shares permitted under an option in any one year, he or she may purchase such shares in a subsequent year during the term of the option. Each of the option grants at issue provided that it expired ten years from the date of its issuance. Each of the option grants further [*4] specified that, in the event of termination of employment prior to the normal retirement age, the option must be exercised within three months after such termination.

On or about August 26, 1992, Oatway retired from AIG. Since he retired prior to the normal retirement age, AIG advised him that he was required to exercise all his remaining stock options by November 1992. Oatway alleges that after he complained about being denied the ten-year period to exercise his options, AIG agreed to allow him to exercise the options over the ten-year period, rather than within three months of his retirement.

On or about January 25, 2000, Oatway discovered that the option exercise date under the January 18, 1990 Incentive Stock Agreement had already expired. He claims that he immediately notified AIG via facsimile of his "intention and desire" to exercise this grant. AIG refused to allow him to do so.

On October 1, 2000, Oatway finally "exercised" the options under both the January 18, 1990 and October 11, 1990 Incentive Stock Option Agreements, but AIG refused to accept either exercise. He asserts that he appealed the denial to AIG as the "Plan Administrator." AIG rejected his appeal.

Oatway [*5] subsequently filed this complaint on January 17, 2001. On March 13, 2001, the defendants filed a motion to dismiss Oatway's Amended Complaint. On April 10, 2001, Oatway filed a motion for summary judgment.

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 15 of 46

Page 4

2002 U.S. Dist. LEXIS 1771, *; 27 Employee Benefits Cas. (BNA) 2404

## III. STANDARD OF REVIEW: MOTION TO DISMISS

[HN1] A motion to dismiss pursuant to the provisions of Rule 12(b)(6) should not be granted unless, accepting all allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the court rules that the plaintiff is not entitled to relief as a matter of law. *In re Fruehauf Trailer Corp., 250 B.R. 168, 183 (D. Del 2000)* (citing *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997); see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)* ("A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."). "The issue is not whether a plaintiff will ultimately prevail but whether [*6] the claimant is entitled to offer evidence to support the claims." *In re Burlington, 114 F.3d at 1420.*

## IV. DISCUSSION

[HN2] ERISA gives federal courts subject matter jurisdiction over claims brought pursuant to *29 U.S.C. § 1132*(a)(1)(B). This section authorizes a cause of action for benefits due under an employee benefit plan. *See 29 U.S.C. § 1132*(a)(1)(B). Because an ERISA "plan" is necessary before ERISA's provisions apply, the court must first determine whether AIG's 1987 Plan is, in fact, an ERISA "employee welfare benefit plan." *See Long v. Excel Telecommunications Corp., 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *2 (N.D. Tex. Oct. 18, 2000). If the answer to this threshold question is no, then the court may dismiss the plaintiff's claims that he is entitled to benefits under ERISA. *See Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 395 (3d Cir. 1992)* (noting that a plaintiff's failure to prove the existence of an employee benefit plan, though it results in the dismissal of the claim, does not deprive the district court of subject matter jurisdiction [*7] to enter a judgment on the merits.")

### A. Is the 1987 Plan an Employee Welfare Benefit Plan Under ERISA?

Oatway contends that the 1987 Plan is an "employee welfare benefit plan" under which he is entitled to benefits pursuant to *29 U.S.C. § 1132*(a)(1)(B). The court disagrees.

[HN3] ERISA defines an "employee welfare benefit plan" as:

Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care, or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). n2

n2 [HN4] Section 186(c) includes within the definition of "employee welfare plan" those plans which provide holiday and severance benefits, and benefits which are similar. *See 29 C.F.R. § 2510.3-1(a)(3).*

[*8]

*See 29 U.S.C. § 1002*(1).

[HN5] To constitute an employee welfare plan, a plan "must be designed specifically to provide employees with medical, unemployment, disability, death, vacation, or other specified benefits or to provide income following retirement in order to come within the purview of ERISA." *Long. 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *4; *see also 29 U.S.C. § 1002*(1) (requiring that an ERISA plan be "established or maintained . . . for the purpose of providing" the benefits listed in the statute.). The statutory definition does not embrace plans that may incidentally result in payment of benefits after retirement, death or disability. *See Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *2; *Hagel v. United Land Co., 759 F. Supp. 1199, 1203 (E.D. Va. 1991).* Thus, merely because a plan "may in some circumstances continue to pay . . . proceeds after an employee's death or disability does not make it a welfare benefit plan." *Murphy v. Inexco Oil Co., 611 F.2d 570, 574 (5th Cir. 1980).*

Furthermore, these holdings are consistent with congressional findings and the declaration of policy that supported [*9] ERISA's enactment. In enacting ERISA, Congress did not intend "to control every aspect of the employer-employee relationship or every promise made to employees." *Murphy, 611 F.2d at 574.* Rather, Con-

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 16 of 46

Page 5

2002 U.S. Dist. LEXIS 1771, *; 27 Employee Benefits Cas. (BNA) 2404

gress "intended to protect employees with many years of service who were losing anticipated retirement benefits because of inadequate vesting provisions, lack of funding, or other problems." *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* *2. Because Congress "sought only to deal with those types of plans that had created the problems it sought to remedy . . . by its terms, [HN6] ERISA applies only to "an employee welfare benefit plan or to an employee pension benefit plan or a plan which is both." *See Murphy, 611 F.2d at 574* (quoting *29 U.S.C. § 1002(3)*).

Although the Third Circuit has not addressed the issue of whether an incentive stock option plan is an employee benefit plan within the meaning of ERISA, other courts that have considered the question have uniformly held that it is not. *See Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *3-4; *Hahn v. National Westminster Bank, N.A., 99 F. Supp. 2d 275, 279-280 (E.D.N.Y. 2000);* [*10] *Goodrich v. CML Fiberoptics, Inc., 990 F. Supp. 48, 49-50 (D. Mass. 1998).* In *Long,* a former employee claimed that his employer terminated him for the purpose of depriving him of benefits under the company's stock option plan in violation of ERISA. *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *2. The court granted the former employer's motion for summary judgment, holding that the company's stock plan was not a benefit plan under ERISA. *See 2000 U.S. Dist. LEXIS 15479,* [WL] at *3-4. In its holding, the court examined the purpose of the company's stock option plan, which was:

> to provide a means by which selected Employees of and Consultants to the Company and its Affiliates may be given an opportunity to purchase stock of the Company. The Company, by means of the Plan, seeks to retain the services of the persons who are now Employees of or Consultants to the Company and its Affiliates, to secure and retain the services of new Employees and Consultants, and to provide incentives for such persons to exert maximum efforts for the success of the Company and its Affiliates.

*See 2000 U.S. Dist. LEXIS 15479,* *9 [WL] at *3. The court further noted that, "nowhere does [the company's] Stock Option Plan indicate that its [*11] purpose is to defer compensation. In fact, the plan itself indicated that it was intended to operate as an incentive and bonus program. *See id.*

Finally, the Department of Labor, which is the agency charged with interpreting and enforcing ERISA, has also recognized that stock option plans are not necessarily employee welfare benefit plans. *See U.S. Dep't of Labor Opinion Letter 79-80 A, 1979* WL 7016 (Nov. 13, 1979) (stating that stock option plans were not employee welfare benefit plans within the meaning of ERISA § 3(1) because they were not established or maintained for the purpose of providing any of the benefits listed in § 3(1) or 302(c) of the Labor Management Relations Act, 1947).

The court finds that the Plan at issue here does not meet the statutory definition of an employee welfare plan. The Plan was not created for the purpose of providing retirement income. Rather, the stated purpose of the 1987 Plan is:

> to advance the interests of American International Group, Inc. ("AIG") by providing certain of the key employees of AIG and of any parent or subsidiary corporation of AIG, upon whose judgment, initiative and efforts the successful conduct [*12] of the business of AIG largely depends, with an additional incentive to continue their efforts on behalf of such corporations, as well as to attract to such corporations people of training, experience and ability.

Therefore, under the plain language of the Plan, its purpose is not to provide severance, retirement, death or disability benefits. Instead, its purpose is to provide a financial incentive for employees to remain with AIG and to improve their performance at AIG. Although the Plan provided that upon retirement, death, or disability, the option could still be exercised, subject to time restrictions, any payment of benefits at that time were merely incidental. Furthermore, it is clear that "[HN7] plans that might incidentally result in payment of benefits after retirement, death or disability . . . only fall under ERISA if they were established or maintained for the express purpose of doing so." *Long, 2000 U.S. Dist. LEXIS 15479, 2000 WL 1562808,* at *2 (citing *Murphy, 611 F.2d at 574-75).*

Accordingly, because the Plan itself is clearly an incentive plan, it is not an employee welfare benefit plan within the meaning of ERISA.

**B. Is the 1987 Plan an Employee Pension Benefit [*13] Plan Under ERISA?**

Oatway suggests that the Plan "can also be characterized under ERISA as a pension plan or an employee pension benefit plan." [HN8] ERISA pension plans in-

Case 1:05-cv-00760-JJF    Document 42-4    Filed 12/05/2005    Page 17 of 46

Page 6

2002 U.S. Dist. LEXIS 1771, *; 27 Employee Benefits Cas. (BNA) 2404

clude any plan established or maintained by an employer that, by its express terms "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." *29 U.S.C. § 1002*(2)(A)(ii).

The Department of Labor has interpreted [HN9] ERISA pension plans to exclude bonuses for work performed, unless such bonuses are "systematically deferred to termination of covered employment or beyond, or so as to provide retirement income to employees." *29 C.F.R. § 2510.3-2(c)*. By the express purpose of the Plan itself, it is clear that this is a bonus plan. Although Oatway alleges that his ability to exercise his options continued after his retirement from AIG, this does not transform the bonus plan into "one whose payments are systematically deferred to the termination [*14] of employment or one whose purpose is to provide retirement income." *See Hahn v. National Westminster Bank, N.A., 99 F. Supp. 2d 275, 276 (E.D.N.Y. 2000)*. Rather, this is a plan were "post-retirement payments [are] only incidental to the goal of providing current compensation." *See Hahn, 99 F. Supp. 2d at 279*. Thus, the court recognizes that, while Oatway may have been individually permitted to exercise his options subsequent to retirement, the primary purpose of the Plan as a whole was to provide additional benefits to employees during the course of their employment. *See Lafian v. Electronic Data Systems Corp., 856 F. Supp. 339, 345 (E.D. Mich. 1994)*.

Accordingly, the court finds that the Plan at issue here is not an employee pension benefit plan within the meaning of ERISA.

### C. Does the Plan Administrator Owe Oatway a Fiduciary Duty Under ERISA?

Oatway next alleges that AIG, as the Plan's administrator, breached its fiduciary duties under ERISA § 503. *See 29 U.S.C. § 1133*. The basis for this claim is that AIG failed to set forth adequate factual reasons why it denied his benefits appeal. Oatway [*15] further claims

that AIG failed to advise him of what further information he needed to meet options pay status requirements under the Plan.

As the court discussed at some length above, the Plan does not fall within the definition of a qualified ERISA plan. Therefore, the court finds that AIG could not owe Oatway any ERISA fiduciary duties under the Plan.

### D. State Law Claims

Oatway next asserts state law claims for breach of contract and estoppel. He notes that, "if the court were to determine that there is an ERISA plan, then this court's supplemental jurisdiction over Count III is appropriate." However, because this Plan is not covered by ERISA, there is no federal question jurisdiction under ERISA. Moreover, the court has merely focused on the jurisdictional issues presented by these claims, and has not devoted any resources to the merits of the claims. *See Voege v. The Magnavox, Co., 439 F. Supp. 935, 943 (D. Del. 1977)*. The court, therefore, declines to exercise supplemental jurisdiction over Oatway's remaining state law claims. *See 28 U.S.C. § 1367(c)(3)*. Accordingly, the court will dismiss them for lack of subject matter jurisdiction. [*16]

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

> 1. The Defendants' Motion to Dismiss (D.I. 7) is GRANTED; and

> 2. Oatway's Motion for Summary Judgment (D.I. 10) is declared MOOT.

Date: February 5, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

## G. JAMES PIAZZA, Plaintiff, -vs- CORNING INCORPORATED AND THE CORNING INCORPORATED BENEFITS COMMITTEE, Defendants.

### 02-CV-6412-CJS(F)

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

### 2005 U.S. Dist. LEXIS 30113

### November 18, 2005, Decided

**COUNSEL:** [*1] For plaintiff: William J. Leberman, Esq., Syracuse, NY.

For defendants: Michael R. Wolford, Esq., Laurie A. Giordano, Esq., Wolford & Leclair LLP, Rochester, NY.

**JUDGES:** CHARLES J. SIRAGUSA, United States District Judge.

**OPINIONBY:** CHARLES J. SIRAGUSA

**OPINION:**

DECISION AND ORDER

### INTRODUCTION

This case involves the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001, et seq.* Before the Court are defendants' motion for summary judgment seeking dismissal of the case, and plaintiff's cross-motion to amend the complaint. For the reasons stated below, plaintiff's motion is denied and defendants' motion is granted.

### FACTUAL BACKGROUND

Plaintiff filed an amended complaint in this Court on August 27, 2003, alleging a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001, et seq,* pursuant to *29 U.S.C. § 1132*(e) (the civil enforcement provisions of ERISA). Plaintiff

contends that defendant the Corning Incorporated Benefits Committee ("Benefits Committee"), acting as administrator for the Corning Incorporated Investment Plan ("Plan"), violated its [*2] fiduciary duties under ERISA when it delayed distribution of his Corning common stock, held in his individual Plan account. Plaintiff claims that the distribution was delayed for 52 days following his last day of work on January 15, 2000, and that this delay caused him to lose over $ 350,000, since the market value of Corning stock was rapidly decreasing during that time.

Defendants, in their summary judgment application n1, argue that, based on Supreme Court authority, ERISA does not authorize a lawsuit for private damages, such as plaintiff's. *Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985).* Plaintiff has responded by denying that his claim for money damages is not authorized by ERISA and by cross-moving to amend his complaint to add a request for what he characterizes as equitable relief. (See Leberman Aff. (Apr. 21, 2005) n2 PP23-25.)

> n1 In addition to defendants' arguments for judgment for defendant Benefits Committee, defendant Corning Incorporated correctly points out, in its Reply Memorandum of Law (Docket # 47),

that since it is not the Plan Administrator, and no claim is made out against it as the settlor of the Plan, all claims against it should be dismissed. *See Crowley v. Corning, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002).*

[*3]

n2 Attached to plaintiff's Notice of Cross-Motion for Leave to Amend Complaint (Docket # 43).

## STANDARDS OF LAW

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *FED. R. CIV. P. 56(c).* A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).* "The movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 *MOORE'S FEDERAL PRACTICE, § 56.11*[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley, 274 F.3d 677 (2d Cir. 2001);* [*4] *Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.1987) (en banc).* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of

proof at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).*

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. *FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).* A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden, 140 F.3d 91, 93 (2d Cir. 1998).* A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248.* In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, [*5] attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).* Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy, 988 F.2d 303, 308 (2d Cir.1993); Anderson, 477 U.S. at 248-49; Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160 (2003); International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946 (3d Cir. 1990).* However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); Knight v. United States Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986).* Rather, evidentiary proof in admissible form is required. *FED. R. CIV.P. 56(e)* [*6] . Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New*

*York City, Department of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).*

## Motion to Amend

The Federal Rules of Civil Procedure provide that leave to file an amended complaint "shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)*. However, leave to amend may be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." *Foman v. Davis, 371 U.S. 178, 182 (1962); see also United States v. Continental Illinois Nat. Bank And Trust Co., 889 F.2d 1248, 1254 (2d Cir. 1989).*

## DISCUSSION

First, ERISA Section 409(a), *29 U.S.C. § 1109*(a), does not authorize a private action for [*7] money damages. As the Supreme Court wrote in *Massachusetts Mut. Life Ins. Co., 473 U.S. at 146,* "the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims."

Turning next to plaintiff's cross-motion seeking to amend his complaint to add a request for equitable relief and restitution, the Court notes at the outset that such application was brought well after expiration of the amended scheduling order date of January 24, 2003. In his cross-motion, plaintiff proposes n3 to add a claim under ERISA Section 502(a)(1)(B), *29 U.S.C. § 1132*(a)(1)(B), which states in relevant part:

(a) Persons empowered to bring a civil action

A civil action may be brought--

(1) by a participant or beneficiary--

...

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the [*8] plan...

*29 U.S.C. § 1132*(a)(1)(B). Though *Massachusetts Mut. Life Ins. Co.* clearly would not permit a claim for interest on the delay in distribution of his Corning stock, plaintiff is seeking restitution for what he characterizes as equitable relief for the diminution in value of his Corning stock, during the time between his departure from employment on September 15, 2000 and the date of stock distribution, November 6, 2000. Defendants assert there is no legal basis for an award of extra contractual damages, citing to *Massachusetts Mut. Life Ins. Co.* (Def.s' Mem. in Support at 19; Def.s' Reply Mem. at 5.) The Court determines that even if it were to allow such an amendment, the claim would be futile.

> n3 No proposed second amended complaint was included with the motion papers.

Defendants have submitted proof, and plaintiff has not contradicted it, that on October 11, 2000, plaintiff's broker, Michael Mustico ("Mustico"), asked the Benefits Committee, through the Corning [*9] Benefits Network ("CBN"), to distribute plaintiff's shares of stock "in kind." (Ex. N, at 100 n4.) In a follow-up telephone call on October 16, 2000, Mustico

again stated to a CBN employee that he wanted the stock "in kind." (Ex. N, at 104.) In a separate recorded telephone call to the CBN on October 16, plaintiff asked a question about his insurance coverage and learned that his termination date, because of accrued vacation time, was actually October 6, 2000 n5 and not September 15, 2000. (Ex. N., at 108.) Evidently plaintiff did not inform Mustico of this fact. Rather on October 23, 2000, Mustico learned from a CBN employee that plaintiff's termination date was October 3, 2000 n6, and that he had to wait until thirty days after his termination date "to do anything." (Ex. N., at 114.) Further, that CBN employee indicated to Mustico that plaintiff's investment in the Corning Common Stock Fund could not be transferred until November 6, 2000, because plaintiff was under age 55. (Id.) Mustico confirmed in the call on October 23 that plaintiff wanted his stock "in kind" and the CBN employee informed both that the stock shares would be sent to plaintiff about six weeks *after* November 6, 2000. However, [*10] in response to a further inquiry from Mustico, the CBN employee stated that plaintiff could elect, before 4:00 p.m. on November 6, to received his shares half "in kind" and half in cash, or any other percentage, but that the sale of stock would not take place until November 6. (Id.) On the distribution date of November 6, 2000, plaintiff's Corning Common Stock Fund distribution amounted to $ 884,775. (Ex. O, at 175.)

n4 Page number references for Exhibits N and O refer to bates numbers.

n5 The transcript of the telephone call on October 16, 2000 indicates a termination date of October 6, 2000 while the transcript of the telephone call on October 23, 2000 indicates a termination date of October 3, 2000.

n6 See footnote number 5.

On October 19, 2001, plaintiff through his counsel made a claim to the Benefits Committee challenging its interpretation of "termination date," which he stated was not defined in the Corning Benefits Handbook. (Ex. U, at 1-2.) Plaintiff claimed that, "The Plan Administrator [*11] and Trustee did not comply with the terms of the Plan by failing to process Mr. Piazza's request for distribution effective as of the date of his termination on September 15, 2000, or at the latest, October 15, 2000." (Ex. U, at 3-4.) The Benefits Committee denied his claim in a detailed letter dated December 18, 2001 (Ex. V.) On February 15, 2002, plaintiff appealed the Benefits Committee's decision, and on April 10, 2002, the Benefits Committee denied the appeal. (Exs. W & X.)

The Plan document gives the Benefits Committee sole discretion in interpreting Plan provisions and distributing benefits. (Plan Section 7.3, Ex. F.) ERISA restricts a court's ability to review the decisions of a plan administrator where the plan gives the administrator discretionary authority to construe and interpret the terms of the plan. In such a situation, a court is limited to the "arbitrary and capricious" standard of review. *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).* In this regard, since the plan undoubtedly grants the Retirement Committee discretionary authority to determine eligibility, the Court must review the Retirement Committee's determination to deny benefits [*12] using the deferential arbitrary and capricious standard of review. *Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)* ("Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'") (quoting *Firestone, 489 U.S. at 115).* Under this standard, a court "may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 442 (citations and internal quotation marks omitted). "[A] district

court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995).*

The Plan here states that a participant who terminates employment before he is entitled to receive a distribution because of retirement, disability, or death, is entitled to receive the entire amount credited to his tax-deferred contribution account, voluntary contribution account, employer mandatory contribution account and roll over [*13] account plus any amount in his vested employer matching contribution account. It further states, "for purposes of this section 5.3, 'termination of employment' means a severance from service with all Affiliated Companies for any reason, whether voluntary or involuntary...." (Plan Section 5.3, Ex. F.) The Plans Article V also contains a detailed discussion of the payment of benefits. It directs the Committee to pay benefits as the participant directs and in accordance with the terms of that section and rules adopted by the Committee. (Plan Section 5.6, Ex. F.) That section also states, "the value of benefit payment shall be determined as of the distribution processing date fixed by the Committee following the event that triggers entitlement to benefits (termination of employment, etc.). The Committee shall direct the Trustee to make actual distribution as soon as administratively practicable following the distribution processing date." (Plan Section 5.6(a), Ex. F.)

As the Benefits Committee explained in its initial letter denying the claim, "termination of employment is important only because it is a triggering event, the same as retirement, death or disability are triggering events [*14] that entitle a participant to receive benefits." (Ex. V, at 2.) Also revealing is the telephone conversation between Mustico and CBN on October 23, 2000 in which the CBN employee stated, "we are only going by the information was sent to us from Human Resources and they listed his last day as the 3rd of October." (Exhibit N, at 115.)

The Benefits Committee also relied on page 190 of the employee handbook containing the summary plan description. That page states that the CBN "cannot process final distribution requests until 30 days after your termination or retirement date." In the supplemental appendix of exhibits, defendants have provided the Court with what is entitled, "Your Benefits at Retirement, a Summary of Corning Advantages Plans in Retirement." (Exhibit Y.) That document, at p. 225, states "after you retire, you may call the Corning Benefits Network to request a distribution of your Investment Plan account. The Corning Benefits Network will process your request as early as 30 days after you retire, provided your termination from the Corning payroll system is processed on time." The Court finds that based on the above, the Benefits Committee's detailed decision on plaintiffs [*15] claim is neither arbitrary, nor capricious, and under the standard of review applicable in this case, the Benefits Committee's decision was reasoned, supported by substantial evidence and not erroneous as a matter of law.

In view of the Court's determination, granting plaintiff's cross-motion to amend the complaint to add an extra contractual damages claim masquerading an equitable claim would be futile. Therefore, the Court may, and does, deny plaintiff's cross-motion to amend, notwithstanding the normally liberal interpretation of *Federal Rule of Civil Procedure 15. See Foman v. Davis, 371 U.S. 178, 182 (1962)* (recognizing futility of amendment as a valid ground for denying a motion to amend the complaint). Further, in this particular case, plaintiff has not articulated the "good cause" necessary to grant an extension to the scheduling order. Therefore, plaintiff's cross-motion to amend must be, and hereby is, denied.

**CONCLUSION**

2005 U.S. Dist. LEXIS 30113, *

Accordingly, plaintiff's cross-motion to amend the complaint (# 43) is denied and defendants' motion for summary judgment (# 34) is granted. The case is dismissed.

IT IS SO ORDERED.

Dated: **[*16]** November 18, 2005

Rochester, NY

CHARLES J. SIRAGUSA

United States District Judge

2001 U.S. Dist. LEXIS 18452, *

DANNY M. SKINNER, Plaintiff, v. E.I. DUPONT DE NEMOURS AND
COMPANY, INC.; E.I. DUPONT DE NEMOURS AND COMPANY Plan
Administrator; PENSION AND RETIREMENT PLAN; HOSPITAL AND
MEDICAL-SURGICAL PLAN; DENTAL ASSISTANCE PLAN;
NONCONTRIBUTORY GROUP LIFE INSURANCE PLAN; CONTRIBUTORY
GROUP LIFE INSURANCE PLAN; TOTAL AND PERMANENT DISABILITY
INCOME PLAN; SAVINGS AND INVESTMENT PLAN; TAX REFORM ACT
STOCK OWNERSHIP PLAN, Defendants.

Civil Action No. 92-147-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2001 U.S. Dist. LEXIS 18452

October 29, 2001, Decided

**PRIOR HISTORY:** Skinner v. E.I. DuPont de Nemours
& Co., 2000 U.S. Dist. LEXIS 4882 (D. Del. Mar. 27,
2000)

**DISPOSITION:** [*1] Judgment was entered in favor of
defendants and against plaintiff.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee
sued defendants, employer and several of its benefit
plans, claiming generally that defendants violated the
Employee Retirement Income Security Act of 1974
(ERISA), 29 U.S.C.S. § 1001 et seq., by denying his
application for disability benefits. After a bench trial, the
district court issued findings of fact and conclusions of
law.

**OVERVIEW:** The employee had worked as a tow cut
operator, operating a machine that cut nylon yarn. The
employee twice experienced herniated discs in his back
and had surgery. After the second time, the employee
applied for long term disability and disability retirement
benefits under the employer's ERISA plans. His
application was ultimately refused. The court found that
the medical evidence demonstrated that the employee
was permanently incapable of performing the duties of
the tow cut operator position with the degree of
efficiency required by the employer, and that the denial
of benefits was without reason or unsupported by
substantial evidence. However, the court further found
that the suit was time barred by the one-year statute of
limitations applicable to plaintiff's claim for benefits
under ERISA § 502(a)(1)(B), codified at 29 U.S.C.S. §
1132(a)(1)(B).

**OUTCOME:** The district court entered judgment in
favor of the employer and benefit plans and against the
employee.

**CORE TERMS:** surgery, tow, performing, cutter, duty,
pain, permanently, incapable, opined, pound, plant,
pension, lawsuit, termination, impairment, sedentary,
yarn, disability benefits, eligible, delegate, chronic,
nylon, twice, unable to perform, medical evidence,
complication, herniated, relieve, bending, package

**LexisNexis(R) Headnotes**

*Pensions & Benefits Law > Employee Retirement
Income Security Act (ERISA) > Civil Claims &
Remedies*
*Pensions & Benefits Law > Employee Retirement
Income Security Act (ERISA) > Fiduciary
Responsibilities*
[HN1] A court reviewing the denial of pension benefits
under the Employee Retirement Income Security Act of
1974, 29 U.S.C.S. § 1001 et seq., must employ the
arbitrary and capricious standard when the pension plan
commits discretion to the plan administrator or fiduciary.
Under that standard, the court must defer to the plan
administrator unless the administrator's decision was
without reason, unsupported by substantial evidence, or
erroneous as a matter of law.

**COUNSEL:** John M. Stull, Esquire, Wilmington,
Delaware, for plaintiff.

Gretchen Ann Bender, Esquire, Morris, James, Hitchens
& Williams, Wilmington, Delaware, for defendants.

Evelyn H. Brantley, Esquire, Of counsel, E.I. DuPont De Nemours & Co., Inc., Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:** Dated: October 29, 2001
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

Plaintiff Danny M. Skinner filed the above captioned lawsuit on February 21, 1992 against defendants E.I. DuPont de Nemours and Company, Inc. ("DuPont") and various of its employee benefit plans, claiming generally that defendants violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § § 1001 et seq., ("ERISA"), by denying his application for disability benefits. Over the course of the next eight years, the case was removed to this court from the state court, remanded twice to DuPont's Board of Benefits and Pensions (the "Board"), and survived three rounds of summary judgment proceedings before three different judges. A bench [*2] trial ultimately was conducted on September 11, 12 and 20, 2000. The court's findings of fact and conclusions of law follow.

Jurisdiction vests in this court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Venue is proper pursuant to 29 U.S.C. § 1132(e)(1), all parties either residing in or being found in Delaware.

## II. FINDINGS OF FACT

1. Plaintiff was employed by DuPont at its nylon plant in Seaford, Delaware from June 1973 to March 1989.

2. In 1981, plaintiff underwent surgery to have a herniated disc removed. (Ex. 2)

3. Plaintiff suffered an on-the-job injury on September 13, 1988. He was given six months of benefits under DuPont's short term disability plan, amounting to continuation of his pay, from September 13, 1988 until March 31, 1989, the date of his termination.

4. In December 1988, it was determined that plaintiff had a herniated disc or scarring at the L4-5 level, and a herniated disc at the L5-S1 level. (Exs. 9, 16, 17) Plaintiff was "not enthusiastic about undergoing another surgery;" therefore, physical therapy and

analgesics were the only treatment prescribed. (Ex. 4) [*3]

5. On or about February 14, 1989, plaintiff applied for long term benefits under DuPont's Pension and Retirement Plan ("Incapability Retirement") and under the Total and Permanent Disability Income Plan ("T&P Plan").

6. An employee is eligible for incapability retirement benefits if the Board "finds that he has become, for any reason, permanently incapable of performing the duties of his position with the degree of efficiency required by the Company, and he has at least 15 years of service." (Ex. 52)

7. An employee is eligible for benefits under the T&P Plan if "his service is terminated because of total and permanent disability." (Ex. 53) Under the T&P Plan, the employee must be permanently incapable of working at any gainful employment at the time of his termination. (D.I. 175 at 8)

8. The application procedure for both plans is described as follows:

a. An employee submits an application, along with any supporting medical information, to his site benefits administrator. The application package is then assembled by the site, which is required to submit its recommendation.

b. The application is then forwarded to the corporate pension group for a pension calculation, and then [*4] to the medical group for a medical recommendation.

c. The entire package from the employee is submitted to a delegate of the Board (in plaintiff's case, the delegate was called the Case Determination Committee ("CDC")), for review and determination.

d. The delegate renders a written decision to the employee, who has the opportunity to appeal the decision to the Board.

e. On appeal, the Board reviews the package submitted to the delegate, as well as any additional materials submitted by the employee.

f. If the Board denies benefits, it renders a written decision to the employee, who can thereafter file a lawsuit challenging the Board's denial decision. (D.I. 175 at 9-10; D.I. 178 at 7-11; D.I. 169 at 3-4)

9. On February 3, 1989, plaintiff was examined by the plant physician, Dr. Jensen. Dr. Jensen opined that, even with surgery, plaintiff "will have a degree of impairment which will restrict him from any jobs he is qualified by training and experience to hold on this plant site." Dr Hay of DuPont's medical division disagreed,

opining that plaintiff's prognosis "for performing activities of work is good, avoiding repetitive bending or lifting activities and permitting employee to [*5] sit, stand or walk as comfort dictates." (Ex. 10)

10. On February 14, 1989, the plant manager, W.P. Wilke, opined that plaintiff could not perform his job as tow cut operator, or any other job at the plant, with an acceptable level of safety and efficiency, based on his medical history, his present medical problems, and his level of education, skills and training. (Ex. 12)

11. On March 2, 1989, Dr. Hay advised that, although plaintiff could not currently perform his regular job as a tow cut operator, "there is no credible objective evidence to support a conclusion that he is permanently disabled from performing the activities of a tow cut operator." (Ex. 14)

12. On March 10, 1989, plaintiff underwent surgery. (Exs. 18, 19)

13. On March 13, 1989, the CDC met and concluded, based on evidence submitted by the medical group, that plaintiff was currently incapable of performing his job, but that his condition should improve with surgery. The CDC, therefore, recommended that plaintiff's request for benefits under the incapability retirement pension plan be denied: "There is no objective medical evidence that he is permanently unable to perform the job of tow cut operator with the degree [*6] of efficiency required by the Company; therefore, he is not eligible to an Incapability Pension." (Exs. 20, 21)

14. The CDC shared its decision with plaintiff by letter dated March 23, 1989, noting in explanation that plaintiff's "recent surgery should relieve the symptoms and impairment" of his chronic back pain. (Ex. 23)

15. By letter dated May 5, 1989 from Dr. Hay to the Compensation and Benefits Division, Dr. Hay reiterated his opinion that "surgical intervention ... could reasonably be anticipated to relieve the signs and symptoms of nerve root compression that was disabling" plaintiff. Absent evidence provided by his physicians "to indicate that their surgery failed to relieve the pressure on the affected nerves or that there was a complication to the surgery," there is no evidence to suggest that plaintiff "is permanently incapable of performing activities of available work at the time of termination." (Ex. 26)

16. Plaintiff appealed the CDC's determination. (Exs. 27, 28)

17. By letter dated June 19, 1989, the Board denied plaintiff's appeal:

> The Board found that you have been bothered by chronic back pain for a considerable period of time. However,

you had appropriate [*7] surgery in March 1989 and the medical data submitted by you indicates no complications and that everything is progressing as it should. Therefore, it is the Board's opinion that while you are unable to work while recovering from surgery, there was no information presented that supports a conclusion that you are permanently incapable of performing the duties of a tow cut operator with the degree of efficiency required by the Company.

(Ex. 30)

18. By letters dated June 23, 1989 and July 19, 1989, plaintiff's treating physicians opined that plaintiff was limited to light duty work, that is, work that does not involve kneeling, bending, pushing, pulling or lifting anything heavier than 25 pounds. (Exs. 31, 32)

19. In June 1990, Dr. DuShuttle opined that plaintiff had a 20% permanent partial impairment of the whole person, which computed to a 34% impairment of the spine. (Ex. 33)

20. By November 1990, plaintiff was described by Dr. Arminio as having pain that radiates into the lower extremities and a 30% impairment to his low back. (Ex. 34)

21. A May 21, 1992 examination by plaintiff's treating physician, Dr. DuShuttle, notes back pain radiating down the right leg. Dr. DuShuttle [*8] opined that plaintiff was disabled and unable to work "for an undetermined amount of time." (Ex. 36)

22. An April 23, 1993 report from a vocational specialist noted that the duties of a tow cut operator included light to medium level tasks. Therefore, if plaintiff were limited to sedentary work, he could not perform his past job. (Ex. 37)

23. By September 1993, Dr. DuShuttle opined that plaintiff had a permanency rating of 30%. (Ex. 38)

24. By letter dated September 21, 1993, Dr. DuShuttle opined that plaintiff would never "be able to return to his regular occupation. He is capable of performing sedentary work only. . . ." (Ex. 39)

25. An October 7, 1993 evaluation by the State of Delaware, Department of Labor, Division of Vocational Rehabilitation, suggested that plaintiff's ability to engage in sedentary occupations is compromised by chronic pain, chronic depression, and a learning disability. (Ex. 40)

26. In January 1994, plaintiff was admitted to the emergency room at Kent Memorial Hospital complaining of constant pain. Medication was prescribed. (Ex. 41)

27. In 1994, upon remand from this court, the Board again reviewed plaintiff's application for disability benefits and [*9] again denied plaintiff's application. (D.I. 78; Exs. 44, 51)

28. In April 1998, Dr, DuShuttle reiterated his opinion that plaintiff was incapable of performing the duties of a tow cut operator and was capable only of performing sedentary work. (Ex. 47) Dr. Arminio evaluated plaintiff as having no ability to lift anything above 10 pounds, reach or work above the shoulder, stoop, kneel, bend repeatedly, or climb. (Ex. 49)

29. According to a May 1998 report by Dr. Arminio, plaintiff was on a pain management program which consisted of the use of heat; alternate use of Paxil, Ultram and Elavil for sleep, and occasionally use of Percocet for pain relief; and aqua therapy. Plaintiff reported that he had learned how to maneuver his body when performing activities in order to avoid certain movements which aggravate pain. (Ex. 50)

30. In 1998, upon remand by this court, the Board once again reviewed plaintiff's application for disability benefits and once again denied plaintiff's application. (D.I. 143; Ex. 51)

31. The Board considered plaintiff's application for long term disability benefits three times and concluded each time that plaintiff was not eligible: "At the time of his termination, [*10] [plaintiff] had had surgery, and there was every expectation that the surgery would be successful, to the extent that he would be permitted to perform his job," that of tow cut operator, a light-duty type job. The Board based its conclusion "on Dr. Hay's analysis and his experience with this type of surgery and his expectation that the surgery would be successful, to the extent that [plaintiff] would be able to perform the tow cut operator job." (D.I. 178 at 19-22, 35)

32. The job of tow cut operator includes the following responsibilities and duties, in addition to the general duty of operating the machine (the "cutter") that cuts nylon yarn into lengths as specified by a customer:

a. Inspect the yarn as it goes into the cutter. This is considered a sedentary activity.

b. String up the cutter. This occurs on average once a week and requires some ergometric force to accomplish.

c. Removing knots. This occurs on every shift, although the frequency varies from once per shift to as often as 25/50 per shift, and involves repetitive action.

d. Changing knife blades. This occurs on average three times per week and involves standing on a stool, working at chest height, rotating the [*11] cutter reel, and using some force to free the knife blade from the retainer ring.

e. Removing yarn jams at the cutter chute. This occurs on average twice per shift, involves an awkward position (on hands and knees or stooped over) and can take up to 30 minutes to complete.

f. Removing wraps. This occurs on average twice per shift. Whenever a wrap occurs, the operator must remove the wrap by shutting down the cutter, locking out and cleaning up the equipment. This may require walking up and down steps.

g. Clean cutter and yarn chute. This occurs several times a week (as products change), involves awkward positions (on hands and knees, bending, stooping, flexing and twisting of one's back to get into some places), and can take as long as 30 to 45 minutes.

h. Obtaining and checking samples. This occurs on average 80 times per shift and involves reaching into the cutter housing from a stooped over position to obtain the sample.

i. Emptying the waste container. This occurs on average once per shift and involves carrying the 25 to 30 pound container a maximum distance of 30 yards. Alternatively, the operator can take the waste off the machine and hand carry it to the chute.

j. Pick [*12] up bales from conveyor. This occurs infrequently (estimate of only three times per year) and involves picking up yarn (30 to 40 pounds at a time) until a 725 pound bale has been removed from the conveyor.

k. Removing 2.5 gallon waste finish buckets from the cutter level. This occurs no more frequently than once every 24 hours and involves carrying a 20 pound bucket down three flights of stairs for disposal.

l. On average, an operator goes up and down three flights of stairs 10 times per shift. (D.I. 172 at 70-81; Exs. 1-A, 1-B, 45)

33. DuPont has a policy of approving a team approach to work; i.e., a team of people work to accomplish a range of responsibilities, allowing employees who are unable to perform all aspects of a job to continue working on those portions they are able to perform. (D.I. 172 at 82)

34. There were no such team arrangements, however, at the Seaford nylon plant. (Ex. 12)

35. The tow cut operator job is a light-duty type job.

36. Prior to his September 1988 injury, plaintiff was marginally performing his responsibilities as a tow cut operator.

37. Upon his termination from employment on March 31, 1989, plaintiff lost all of his benefits in the other DuPont [*13] welfare plans, significantly, under the medical plan. Plaintiff paid health insurance from April 1989 through approximately August 1992. (D.I. 172 at 58-66; Plaintiff's Ex. A)

III. CONCLUSIONS OF LAW

1. [HN1] A court reviewing the denial of pension benefits under ERISA must employ the "arbitrary and capricious" standard when the pension plan commits discretion to the plan administrator or fiduciary. Under that standard, the court "must defer to the plan administrator unless the administrator's decision was 'without reason, unsupported by substantial evidence, or erroneous as a matter of law.'" Skretvedt v. E.I. duPont de Nemours and Company, Inc., 268 F.3d 167, 2001 U.S. App. LEXIS 21610, 2001 WL 1185796, at *4 (3d Cir. 2001) (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).

2. Consistent with the parties' agreement, the court will restrict its review to plaintiff's challenge of the Board's November 16, 1998 denial. (D.I. 169 at 2)

3. Despite when the review occurred, the standard has remained whether, at the time of plaintiff's termination, he was permanently unable to perform the job of tow cut operator.

4. The Board's 1998 decision [*14] was based on the opinion of Dr. Hay that surgery without complications would enable plaintiff to perform the tow cut operator job. n1

> n1 Indeed, Dr. Hay's analysis formed the basis for each of the Board's decisions.

5. The undisputed medical evidence n2 demonstrates that plaintiff is permanently incapable of performing the duties of the tow cut operator position with the degree of efficiency required by DuPont. n3

> n2 Defendants contend that physician opinions, absent treatment notes and test results, are not compelling. The court agrees that such evidence is less compelling than treatment notes and test results, but certainly such opinions are entitled to some weight, especially in the absence of any other medical evidence.

> n3 This conclusion is supported by the evidence of record that plaintiff was marginally performing his duties before his 1988 surgery.

[*15]

6. Defendants' contention that plaintiff could perform the duties of the tow cut operator position with the assistance of others is not persuasive, given the evidence that the Seaford nylon plant does not accommodate employees with physical limitations. More significantly, the language of the Incapability Retirement pension plan does not except from eligibility those employees who can perform the duties of their position "with the help of others."

7. Therefore, it is the court's conclusion that the Board's 1998 decision to deny plaintiff's application for benefits under DuPont's Pension and Retirement Plan was without reason or unsupported by substantial evidence.

8. Nevertheless, the court further concludes that plaintiff's lawsuit is time barred by the one-year statute of limitations applicable to plaintiff's claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). n4 See Syed v. Hercules, Inc., 214 F.3d 155, 160-61 (3d Cir. 2000).

> n4 The court notes that defendants raised the statute of limitations as an affirmative defense in their answer to both the complaint and the amended complaint. The issue apparently was not raised (or at least not addressed), however, in any of the prior summary judgment proceedings, resulting in this protracted proceeding.

[*16]

a. The Board issued its first denial by letter dated June 19, 1989.

b. Plaintiff filed his lawsuit in state court on or about February 21, 1992, more than one year after the Board's decision.

IV. CONCLUSION

Because plaintiff's lawsuit is barred by the statute of limitations, judgment shall be entered in favor of defendants and against plaintiff. An appropriate order shall issue.

ORDER

At Wilmington this 29th day of October, 2001, consistent with the opinion issued this same day;

IT IS ORDERED that the Clerk of Court shall enter judgment in favor of defendants and against plaintiff.

Sue L. Robinson

United States District Judge

27 Fed. Appx. 137, *; 2002 U.S. App. LEXIS 1039, **;
27 Employee Benefits Cas. (BNA) 1582

STEVEN C. STAFFORD, Appellant v. EI DUPONT DE NEMOURS, Plan
Administrator; Appellee; HOSPITAL AND MEDICAL-SURGICAL PLAN;
DENTAL ASSISTANCE PLAN; NONCONTRIBUTORY GROUP LIFE
INSURANCE PLAN; CONTRIBUTORY GROUP LIFE INSURANCE PLAN;
TOTAL AND PERMANENT DISABILITY INCOME PLAN; SHORT TERM
DISABILITY PLAN

No. 01-1289

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

27 Fed. Appx. 137; 2002 U.S. App. LEXIS 1039; 27 Employee Benefits Cas.
(BNA) 1582

January 18, 2002, Argued, Submitted Under Third Circuit LAR 34.1(a)
January 24, 2002, Filed

NOTICE: [**1] RULES OF THE THIRD CIRCUIT
COURT OF APPEALS MAY LIMIT CITATION TO
UNPUBLISHED OPINIONS. PLEASE REFER TO
THE RULES OF THE UNITED STATES COURT OF
APPEALS FOR THIS CIRCUIT.

SUBSEQUENT HISTORY: Writ of certiorari denied:
Stafford v. E. I. DuPont de Nemours & Co., 2002 U.S.
LEXIS 7356 (U.S. Oct. 7, 2002).

PRIOR HISTORY: Appeal from the United States
District Court For the District of Delaware. D.C. No.: 98-
cv-00086. District Judge: Honorable Roderick R.
McKelvie.

DISPOSITION: The plaintiff's February 1998 suit was
untimely and the District Court committed no error in
granting summary judgment in favor of defendant. The
District Court's judgment was affirmed by the Court of
Appeals.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff employee sued
defendant employer in the United States District Court
For the District of Delaware, alleging a claim under the
Employee Retirement Income Security Act (ERISA).
The employee appealed the district court's grant of
summary judgment in favor of the employer.

OVERVIEW: The employee argued that the employer
denied him disability benefits under a disability income
plan. The employee argued that the employer did not
possess a statute of limitations defense until after formal
briefing of the summary judgment motion, and that the
employer therefore waived that defense. The employee
also argued that, because the employer's procedure

allowed employees to attempt to reopen their cases, the
employee's administrative remedies were never
exhausted and the statute of limitations had not begun to
run. The employee finally argued that a three-year, not
one-year, statute of limitations applied to his case. As to
the first argument, the instant court found that the
employee already had full and fair opportunity to present
his arguments, and the court would not now be heard to
raise an objection. The court found that the second
argument defied all logic; if the court adopted the
employee's theory, there would never be repose for an
employer that procedurally allowed for reopening of a
case. As to the final argument, the court found that the
instant action was still untimely under a three-year
limitations period.

OUTCOME: The grant of summary judgment was
affirmed.

CORE TERMS: statute of limitations, reopen,
reopening, granting summary judgment, exhausted,
medical evidence, termination, one-year, untimely,
statute of limitations defense, administrative process,
disability benefits, summary judgment, three-year,
triggered, tolling, waived, medical information, right to
appeal, new information, original claim, terminated,
discourage, impairment, informing, disabled, pursuing,
accrued, looked

LexisNexis(R) Headnotes

*Civil Procedure > Appeals > Standards of Review > De
Novo Review*
[HN1] The court of appeals exercises de novo review
over the district court's granting summary judgment.

27 Fed. Appx. 137, *; 2002 U.S. App. LEXIS 1039, **;
27 Employee Benefits Cas. (BNA) 1582

*Civil Procedure > Summary Judgment > Summary Judgment Standard*

[HN2] Summary judgment is proper when no material facts are in dispute and judgment can be entered as a matter of law.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*

[HN3] The applicability of a statute of limitations is a legal question and is reviewed de novo.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Waiver & Preservation*

[HN4] Affirmative defenses, which include the statute of limitations, are not waived if raised at a pragmatically sufficient time with no prejudice to the plaintiff.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*

[HN5] Issues tried by the express or implied consent of the parties are treated in all respects as if they had been raised in the pleadings.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Administrative Provisions*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN6] If an Employee Retirement Income Security Act plan's time bar is not triggered, administrative review is not exhausted and the statute of limitations does not begin to run.

**JUDGES:** Before: SCIRICA, ROSENN, Circuit Judge, and KANE, District Judge.

**OPINIONBY:** Max Rosenn

**OPINION:** [*138]

MEMORANDUM OPINION

ROSENN, Circuit Judge.

Steven Stafford (Stafford) was employed by E.I. Du Pont De Nemours and Company (Du Pont) from January 1984 through September 1993. Stafford sued in the United States District Court for the District of Delaware under the Employee Retirement Income Security Act (ERISA) § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), alleging that Du Pont denied him disability benefits due him under Du Pont's Total and Permanent Disability Income Plan (T&P plan). The District Court granted summary judgment in favor of Du Pont. Stafford timely appealed. We affirm.

I.

Because the parties are fully familiar with the facts, we briefly summarize only the most pertinent. [**2] Since we are reviewing a grant of summary judgment, we view those facts in the light most favorable to Stafford. Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Du Pont terminated Stafford's employment in September 1993. In July 1994, Stafford submitted an application for T&P plan benefits. Generally, an employee is eligible for Du Pont's T&P plan benefits if that person is, while a Du Pont employee, "totally disabled by injuries or disease and presumably will be totally and permanently prevented from pursuing any gainful occupation." In support of his application, [*139] Stafford submitted medical records revealing that he suffered from hypertension (i.e., high blood pressure) which was being treated by medication. Nothing in the July 1994 application suggested that Stafford had been disabled in September 1993, when he was terminated.

Following an extensive review by Du Pont's Board of Benefits and Pensions (Board), Du Pont denied Stafford's application and so informed him by a letter dated October 13, 1994. The letter informed Stafford that none of the medical evidence he provided showed that he "had a total and permanent impairment at the time of [] termination. [**3] " The letter also informed Stafford of his "right to appeal the decision to the Board" pursuant to a procedure attached to the letter. It further informed Stafford that to appeal successfully, he had to provide additional objective medical evidence of a total impairment of function. The letter also enumerated some examples of such evidence. On October 19, 1994, Stafford requested an appeal to the Board.

In due course, the Board's secretary wrote Stafford, informing him that the Board would review the previously submitted information and inviting him to submit any additional information helpful to his application. Stafford submitted no new information. In December 1994, the Board denied Stafford's appeal and informed him of the decision by letter dated December 27, 1994.

Approximately two and a half years later, on June 5, 1997, Stafford informed Du Pont that the Social Security Administration had determined that he had been disabled at the time of his termination in September 1993 and had

27 Fed. Appx. 137, *; 2002 U.S. App. LEXIS 1039, **;
27 Employee Benefits Cas. (BNA) 1582

awarded him Social Security disability benefits. Du Pont informed Stafford that a Social Security disability award does not ipso facto qualify a person for T&P plan benefits. Du Pont also advised [**4] him to submit new medical information in support of his claim, which would be reviewed to determine if it warranted reopening Stafford's case before the Board. Stafford submitted new medical records, but none suggested that he had been permanently disabled from working at the time of his termination in September 1993. Therefore, in January 1998, Du Pont advised Stafford that it would not reopen his T&P plan application. On February 23, 1998, Stafford filed this suit.

II.

[HN1] We exercise de novo review over the District Court's granting summary judgment. Id. [HN2] Summary judgment is proper when no material facts are in dispute and judgment can be entered as a matter of law. Edelman v. Comm'r of Soc. Sec., 83 F.3d 68, 70 (3d Cir. 1996). [HN3] The applicability of a statute of limitations is a legal question and is likewise reviewed de novo. Syed v. Hercules Inc., 214 F.3d 155, 159 n.2 (3d Cir. 2000).

The District Court had two bases for granting summary judgment. First, it looked at Du Pont's rejection of Stafford's original 1994 application. The Court ruled that there was a one-year statute of limitations vis-a-vis Stafford's 1994 application, and that Stafford's challenge [**5] was therefore untimely. The Court then separately looked at Du Pont's January 1998 rejection of Stafford's attempt to reopen his case, and ruled that such denial was not arbitrary and capricious. Stafford, egregiously misapprehending the Court's ruling, believes that the District Court relied on the statute of limitations to reject both his original 1994 claim and his later attempt to reopen it. Because the statute of limitations ruling is the only issue briefed by Stafford, it is the only issue this Court will address.

[*140] Stafford first argues that Du Pont did not assert a statute of limitations defense until after the formal briefing of the summary judgment motion and that Du Pont therefore waived the defense. We first note that [HN4] affirmative defenses, which include the statute of limitations, are not waived if raised at a "pragmatically sufficient time" with no prejudice to the plaintiff. Eddy v. VI Water & Power Authority, 256 F.3d 204, 209 (3d Cir. 2001) (internal quotations omitted). Moreover, [HN5] "issues tried by the express or implied consent of the parties are 'treated in all respects as if they had been raised in the pleadings.'" Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991) [**6] (quoting Prinz v. Greate Bay Casino Corp., 705 F.2d 692, 694 (3d Cir. 1983)). Here, Stafford met Du

Pont's statute of limitations defense head-on in the District Court, without objection. He had a full and fair opportunity to present his arguments, and he will not now be heard to raise an objection.

Stafford further appears to argue that since Du Pont's procedure allows employees to attempt to reopen their cases, his administrative remedies were never exhausted and the statute of limitations has not begun to run. Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) (noting that federal courts normally will not hear an ERISA claim until the plaintiff has exhausted all remedies available under the plan). Stafford's position defies all logic. If this Court adopted Stafford's theory, there would never be repose for an employer that procedurally allows for the reopening of a case. A decade-old finding of non-disability could then be judicially challenged simply by a plaintiff seeking to reopen the administrative process. Allowing this would in turn create incentives for an employer not to allow any reopening of the administrative process, lest it face a perpetual [**7] risk of litigation. See generally Martin v. Constr. Laborer's Pension Trust, 947 F.2d 1381, 1386-87 (9th Cir. 1991) (noting that tolling the statute of limitations under similar circumstances penalizes employers for giving employees' cases further consideration).

ERISA does not demand that an employer allow for reopening of closed cases. In providing such a procedure, Du Pont acts benevolently, and we do not intend to discourage such benevolence. Stafford's original claim accrued when the Board denied his appeal in December 1994. Du Pont's unwillingness to reexamine Stafford's case in the event of new medical information in support of his claim has no effect on the applicable statute of limitations. The statute of limitations began running in December 1994, when the Board rejected Stafford's appeal.

Stafford cites Doe v. Blue Cross & Blue Shield United, 112 F.3d 869 (7th Cir. 1997), as support for tolling the statute of limitations. The citation is inapposite. Doe involved a defendant who asked the plaintiff to delay filing a suit in order to continue negotiations. Id. at 876-77. Nothing like that occurred here. Du Pont merely encouraged Stafford [**8] to submit additional information beneficial to his claim, and informed him that his claim would be reevaluated if new information came to light. Du Pont did nothing expressly or implicitly to discourage Stafford from timely seeking judicial redress. Doe is therefore unavailing to Stafford.

Finally, Stafford cites Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335 (3d Cir. 1996), for the proposition that when a letter denying benefits does not explain the proper steps for pursuing review of

the denial, the plan's time bar for review is not triggered. Id. at 342. Of course, [HN6] if the plan's time bar is not triggered, administrative review is not exhausted and the statute of limitations does not begin to run. Weldon, 896 F.2d at 800. Here, however, Du Pont [*141] provided Stafford all necessary information. In the October 13, 1994, letter informing Stafford of the denial of his claim, Du Pont also advised him of his right to appeal to the Board, the proper procedure for taking such an appeal, and informed him that to successfully appeal, he had to submit additional objective medical evidence. Du Pont explained to Stafford the proper steps [**9] for reviewing its denial of Stafford's application, and thus Epright is of no benefit to him.

Stafford also argues that a three-year statute of limitations is applicable to his claim, rather than the one-year statute applied by the District Court. This case is on all fours with Sved v. Hercules Inc. 214 F.3d 155 (3d Cir. 2000), which held that Delaware's one-year statute is applicable under these circumstances. Assuming arguendo that the three-year statute is applicable, Stafford's suit is still untimely. Stafford's claim accrued in December 1994. Stafford filed suit on February 23, 1998, more than three years later. Thus, under either statute of limitations, Stafford's efforts to reopen his 1994 claim is barred.

III.

In summary, Stafford's February 1998 suit was untimely and the District Court committed no error in granting summary judgment in favor of Du Pont. Accordingly, the District Court's judgment is affirmed. Each side to bear its own costs.

/S/ Max Rosenn

Circuit Judge

2005 U.S. Dist. LEXIS 28104, *

## CAROL ZARYCKI, Plaintiff, -against- MOUNT SINAI/NYU HEALTH, Defendant.

## 02 Civ. 6236 (LAP) (HBP)

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## *2005 U.S. Dist. LEXIS 28104*

## November 4, 2005, Decided
## November 4, 2005, Filed

**COUNSEL:** [*1] CArol A. Zarycki, Plaintiff, Pro se, New York, NY.

For CArol A. Zarycki, Plaintiff: Charles Joseph, Joseph & Herzfeld, L.L.P., New York, NY.

For Mount Sinai/NYU Health, Defendant: Rory J. McEvoy, Kirkpatrick & Lockhart LLP, New York, NY.

**JUDGES:** HENRY PITMAN, United States Magistrate Judge.

**OPINIONBY:** HENRY PITMAN

**OPINION:**

MEMORANDUM OPINION AND ORDER

PITMAN, United States Magistrate Judge:

I. Introduction

Plaintiff moves, pursuant to *Fed.R.Civ.P. 15(a)*, to amend her complaint to add claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), n1 as amended *29 U.S.C. § § 1001, et seq.*, the New York State Human Rights Law ("NYSHRL"), *N.Y. Exec. Law § § 290 et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code *§ § 8-102 et seq.*, and to recover attorney's fees and costs. Plaintiff also seeks to add as defendants UnumProvident Corporation ("Unum") and the Mount Sinai Medical Center Long Term Disability Plan (the "Plan") and to substitute defendant Mount Sinai/NYU Health with its member organizations, The Mount Sinai Medical Center and The Mount [*2] Sinai Hospital. n2 For the reasons set forth below, the motion is granted in part and denied in part.

n1 Plaintiff brings two claims under ERISA § 510, *29 U.S.C. § 1140*, for interference and retaliation (Proposed Amended Complaint annexed to Memorandum of Law in Support of Plaintiff's Reply to Defendants' Opposition to Her Motion for Leave to Amend the Complaint ("Prop. Amend. Compl."), Docket Item 26, PP127-33, 140-43). Although *§ 510* protects employees exercising their rights under an employee benefit plan from interference and retaliation, plaintiff here does not appear to be alleging any conduct that is expressly prohibited by the statute. However, since defendants raise no issue concerning these claims, I do not address them.

n2 The original complaint named only Mount Sinai/NYU Health as a defendant. Defendants' memorandum of

law opposing this motion answers for The Mount Sinai Hospital, The Mount Sinai Medical Center and The Mount Sinai Medical Center Long Term Disability Plan, but not Unum (Memorandum of Law in Support of Mount Sinai's Opposition to Plaintiff's Motion for Leave to Amend the Complaint ("Def. Memo."), Docket Item 22, at 3 n.1). For simplicity, The Mount Sinai Hospital, The Mount Sinai Medical Center and The Mount Sinai Medical Center Long Term Disability Plan will collectively be referred to as "defendants."

**[\*3]**

II. Facts

The Proposed Amended Complaint alleges the following facts; I assume the allegations to be true for purposes of this motion. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994); Da Cruz v. Towmasters of N.J., Inc., 217 F.R.D. 126, 128 n.1 (E.D.N.Y. 2003); Binder v. Nat'l Life, 2003 U.S. Dist. LEXIS 8431, 02 Civ. 6411 (GEL), 2003 WL 21180417 at \*2 (S.D.N.Y. May 20, 2003).*

Plaintiff was employed by Mount Sinai and was a participant in the Plan (Prop. Amend. Compl. PP5, 10). Unum is an insurance company that "exercised discretionary authority and responsibility in the administration and management of the Plan" and is also a fiduciary with respect to the Plan (Prop. Amend. Compl. P13, 14). In 1997, plaintiff was diagnosed with breast cancer and underwent a mastectomy (Prop. Amend. Compl. P20). In July 1999, plaintiff took a short term leave of absence because she was experiencing "chronic and disabling symptoms due to medical complications from breast cancer" (Prop. Amend. Compl. PP21, 22). Plaintiff returned to work September 20, 1999 but her "breast cancer impairments worsened" (Prop. Amend. Compl. [\*4] P23).

In September 1999 and from June through September 2000, plaintiff requested that defendants grant her an accommodation such as working part-time, working from home or taking FMLA leave (Prop. Amend. Compl. PP24-26, 30, 32, 35-39). Specifically, plaintiff made such a request during a July 2000 meeting with Caryn Tiger from the defendants' Labor Relations department and Michael Pastier, plaintiff's supervisor (Prop. Amend. Compl. PP19, 32-33, 36). At that meeting, plaintiff noted to Pastier that two younger employees had been granted similar accommodations (Prop. Amend. Compl. P34). However, she was not granted any accommodation, and Pastier suggested she apply for disability (Prop. Amend. Compl. PP26, 34).

In September 2000, while waiting for defendants' approval for FMLA leave, plaintiff's condition further worsened and she was unable to work (Prop. Amend. Compl. P37). On September 19, 2000 plaintiff submitted a "FMLA health certification" and a claim for Short Term Disability ("STD") benefits (Prop. Amend. Compl. PP38, 39). On September 20, 2000, plaintiff received a letter stating that her position was being eliminated and that plaintiff's employment was being terminated [\*5] (Prop. Amend. Compl. P41). Accordingly, September 20, 2000 was plaintiff's last date of "active employment" under the Plan (Prop. Amend. Compl. P42).

After the September 20, 2000 termination, Tiger told plaintiff that her termination had been a "mistake" and that she would look into plaintiff's employment status and eligibility for STD and Long Term Disability ("LTD") benefits (Prop. Amend. Compl. P43). Defendants did not respond to plaintiff's inquiries regarding these matters (Prop. Amend. Compl. P45).

On May, 21, 2001, plaintiff submitted an application for LTD benefits to defendants (Prop. Amend. Compl. P46). Defendants refused to process the LTD claim throughout the period from May 2001 through May 2003 (Prop. Amend. Compl. P47). During this two

year span, defendants were uncooperative and provided conflicting information to plaintiff and Unum including the following: (1) on November 13, 2001, defendants sent a fax to plaintiff representing that defendants still employed plaintiff; (2) in November 2001 defendants stated they were not processing plaintiff's LTD claim because defendants had decided that plaintiff had been terminated as of July 24, 2001, retroactively and, therefore, [*6] they no longer had any obligation to process the LTD claim; (3) on December 24, 2001, defendants sent a fax to plaintiff stating that plaintiff's retroactive date of termination was July 24, 2001 (Prop. Amend. Compl. PP49-50, 53). As a result of these inconsistent actions by defendants, plaintiff submitted her LTD claim directly to Unum on December 18, 2001 (Prop. Amend. Compl. P52).

In May 2003, defendants finally agreed to process plaintiff's LTD claims because they "believed [they] had successfully coerced plaintiff into agreeing to a small settlement for her pending employment claims" (Prop. Amend. Compl. P56). However, defendants then provided Unum with an incorrect date -- July 25, 1999 instead of September 20, 2000 -- for plaintiff's last date of active employment (Prop. Amend. Compl. P57). On August 19, 2003, plaintiff received Unum's denial of her LTD claim; the denial incorrectly noted that July 25, 1999 was the date of last active employment instead of September 20, 2000, and that plaintiff had submitted her LTD claim on December 18, 2001 instead of May 21, 2001 (Prop. Amend. Compl. PP58, 59). Despite plaintiff's requests, defendants did not provide the correct last date [*7] of plaintiff's employment to Unum until October 2003, and this issue was not completely corrected until January 2004 (Prop. Amend. Compl. PP63, 64, 70, 72-73). On November 11, 2003, plaintiff appealed the August 19, 2003 denial of her claim (Prop. Amend. Compl. P66). On February 13, 2004, Unum notified plaintiff that her LTD claim was again denied (Prop. Amend. Compl. P75).

Plaintiff also alleges that defendants wronged her in other ways. First, plaintiff claims that defendants failed to inform her about her rights to continued health insurance coverage after she was terminated (Prop. Amend. Compl. P54). Second, plaintiff claims that on September 24, 2003, plaintiff requested a copy of the Plan document and Summary Plan Description ("SPD") from Mount Sinai, the "named Plan Fiduciary and Plan Administrator" (Prop. Amend. Compl. P62). Defendants produced the SPD, but, according to the plaintiff, have not, to date, produced the Plan document (Prop. Amend. Compl. P62).

Plaintiff filed her EEOC Charge on or about March 19, 2002 (Prop. Amend. Compl. P15). This EEOC Charge, which included an attached narrative, was later attached to the original complaint (see EEOC Charge annexed to [*8] Complaint, Docket Item 2).

III. Motion to Amend Complaint

A. Applicable Standards

The standards applicable to a motion to amend a pleading are well settled and require only brief review. Leave to amend a pleading should be freely granted when justice so requires. *Fed.R.Civ.P.* 15(a); *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*; *Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 69 (2d Cir. 1998)*; *Gumer v. Shearson, Hammill & Co., 516 F.2d 283, 287 (2d Cir. 1974)*; *Aniero Concrete Co. v. New York City Constr. Auth., 1998 U.S. Dist. LEXIS 3938, 94 Civ. 9111 (CSH), 1998 WL 148324 at *7 (S.D.N.Y. Mar. 30, 1998)*, aff'd sub nom., *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566 (2d Cir. 2005)*. "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." *Lee v. Regal Cruises, Ltd. 916 F. Supp. 300, 303 (S.D.N.Y. 1996)*, aff'd, *116 F.3d 465 (2d Cir. 1997)*; see

*Ellis v. Chao*, 336 F.3d 114, 126-27 (2d Cir. 2003); [*9] *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 2003 U.S. Dist. LEXIS 7986, 00 Civ. 3235 (LTS), 2003 WL 21108261 at *1 (S.D.N.Y. May 14, 2003); *Am. Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.*, 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997).

A proposed amended complaint is futile when it fails to state a claim. See *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Although *Fed.R.Civ.P. 15(a)* provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."); *Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 257 (S.D.N.Y. 1999); *Parker v. Sony Pictures Ent-m't, Inc.*, 19 F. Supp.2d 141, 156 (S.D.N.Y. 1998), aff'd in pertinent part, vacated in part on other grounds sub nom., *Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000); *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 274 (S.D.N.Y 1996); *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y. 1987) ("Although leave to amend [*10] should be freely given, it is inappropriate to grant leave when the amendment would not survive a motion to dismiss.") (internal quotation marks and citation omitted). "The Proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under *Fed.R.Civ.P 12(b)(6)*." *Journal Publ'g Co. v. Am. Home Assurance Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991).

The Court of Appeals has repeatedly noted that the trial court has "broad" discretion in ruling on a motion to amend. *Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998); *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998).

B. Addition and Substitution of Parties

Plaintiff's motion seeks to add Unum and the Plan as defendants and substitute The Mount Sinai Hospital and The Mount Sinai Medical Center for the original defendant, Mount Sinai/NYU Health. "Although *Rule 21*, and not *Rule 15(a)* normally governs the addition of new parties to an action, the same standard of liberality applies under either rule." *FTD Corp. v. Banker's Trust Co.*, 954 F. Supp. 106, 109 (S.D.N.Y. 1997) [*11] (internal quotation marks and citations omitted); see *Banco Cent. del Para. v. Para. Humanitarian Found., Inc*, 2003 U.S. Dist. LEXIS 11584, 01 Civ. 9649 (JFK) (FM), 2003 WL 21543543 at *2 (S.D.N.Y. July 8, 2003). The proposed addition of Unum and the Plan and substitution of other Mount Sinai entities is not unduly delayed or prejudicial, and has not been shown to be made in bad faith or futile. Accordingly, the motion to add Unum and the Plan as defendants and substitute The Mount Sinai Hospital and The Mount Sinai Medical Center for the original defendant is granted.

C. Defendants' Arguments Disputing Facts Alleged in the Proposed Amended Complaint

Defendants challenge several of plaintiff's proposed claims -- namely, plaintiff's claims alleging ADA retaliation, denial of FMLA benefits, failure to provide plaintiff notice of her COBRA benefits and violation of ERISA based on breach of fiduciary duty, failure to pay benefits, interference with ERISA rights, failure to provide the ERISA summary plan description and plan document and retaliation - - as futile by claiming that at least one of the allegations necessary to support the claim are untrue.

Defendants' argument is deficient [*12] as a matter of law. "A proposition . . . that is of universal acceptance . . . is that for purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the

pleader." 5B Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 417 (3d ed. 2004); see *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (stating that on motion to dismiss, court must accept the allegations in the complaint as true); *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) (same). Because I must accept the allegations in the complaint as true, defendants' attempts to establish futility by simply arguing that the allegations are untrue must fail.

Defendants also argue that both retaliation claims are insufficient because, in essence, plaintiff failed to plead them with the required specificity (Def. Memo. at 9-10 ("A plaintiff alleging retaliation must establish a causal connection between the protected activity and the adverse employment [*13] action in order to establish a prima facie case."), 19 (stating that the claim "alleging retaliation under ERISA should be dismissed for failure to state a cause of action since the Plaintiff has not plead this claim with the required specificity")).

*Fed.R.Civ.P. Rule 8(a)(2)* requires simply "a short and plain statement of the claim showing that the pleader is entitled to relief." "*Rule 8(a)*'s simplified pleading standard applies to all civil actions, with limited exceptions. *Rule 9(b)*, for example, provides for greater particularity in all averments of fraud or mistake." *Swierkiewicz v. Sorema N.A.*, supra, 534 U.S. at 513 (emphasis added). A retaliation claim is not an exception to this rule and does not need to be alleged with specificity. *Timothy v. Our Lady of Mercy Med. Ctr.*, 2004 U.S. Dist. LEXIS 3970, 03 Civ. 3556 (RCC), 2004 WL 503760 at *5 (S.D.N.Y. Mar. 12, 2004) (holding that plaintiff's discrimination retaliation claim does not have to meet a "'rigid pleading standard'" to withstand a motion to dismiss), quoting *Swierkiewicz v. Sorema N.A.*, supra, 534 U.S. at 512; see also Racker v. St. Bonaventure Univ., 04-CV-00125C (JTC),

2005 WL 1522797 at *3-4 (W.D.N.Y. June 28, 2005) [*14] (applying same analysis and conclusion as Timothy); 5 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1217, at 241, 245 (3d ed. 2004) ("The short and plain requirement applies to all cases; consequently, suggestions that more detailed pleadings should be required in certain classes of cases are inappropriate . . . .") (citations omitted). Thus, defendants' contention that plaintiff must plead her retaliation claims with specificity is erroneous, and plaintiff's motion add these claims to the complaint is granted.

Defendants make no other argument concerning plaintiff's claims alleging denial of FMLA benefits, failure to provide plaintiff notice of her COBRA benefits and violation of ERISA based on failure to pay benefits, interference with ERISA rights, failure to provide the ERISA summary plan description and plan document and retaliation. Plaintiff's motion is, therefore, granted to the extent it seeks to assert these claims. With respect to plaintiff's claims alleging ADA retaliation and violation of ERISA based on breach of fiduciary duty, defendants do make [*15] additional arguments that are discussed below.

D. ADA Claim: Failure to Accommodate, Denial of Equal Terms and Conditions of Employment and Wrongful Termination n3

> n3 Defendants oppose, on the grounds of futility, all thirteen claims found in the Prop. Amend. Compl. (Def. Memo). At least two of these thirteen causes of action (ADA and ADEA claims) are plead in the original complaint and thus are not "proposed amendments." However, I will consider all arguments contained in defendants' opposition because it would be inefficient for the Court to require defendants to file a separate *Rule 12(b)(6)* motion addressed to those claims contained in

the original complaint given that a *Rule 15(a)* futility argument is governed by the same standard as *Rule 12(b)(6)*.

Plaintiff claims that defendants "intentionally discriminated against Plaintiff on account of her disability in violation of the Americans with Disabilities Act ("ADA") by failing to accommodate her, denying to her equal terms of employment and conditions [*16] of employment and ultimately terminating her employment" (Prop. Amend. Compl. P78). Defendants oppose this claim on the grounds of futility and argue that it is (1) time barred because the complaint was not filed within ninety days of plaintiff's receipt of her "right to sue letter" from the EEOC, (2) time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts and (3) exceeds the scope of the allegations made in the EEOC charge (Def. Memo at 3-9). As explained below, plaintiff's ADA claim is time barred because the alleged discriminatory actions did not take place within the 300-day period preceding the filing of the EEOC charge; I do not address the other arguments made by defendants.

"As a pre-requisite to filing a civil action, Title VII requires an individual seeking relief for employment discrimination to file a charge with the EEOC. In jurisdictions, such as [New York,] the statute provides a 300 day limitations period for filing such charge." *Payne v. MTA New York City Transit Auth., 349 F. Supp.2d 619, 624 (E.D.N.Y. 2004)*, citing *42 U.S.C. § 2000e-5(e)(1)*. n4 "A party, therefore, [*17] must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *AMTRAK v. Morgan, 536 U.S. 101, 110 (2002)*.

n4 Cases interpreting *42 U.S.C. § 2000e-5* are directly relevant to plaintiff's ADA claim because the ADA's enforce-

ment provisions expressly incorporate the provisions of *§ 2000e-5. 42 U.S.C. § 12117(a)*; *Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 76-79 (2d Cir. 2003)* (applying *§ § 2000e-5* and *12117(a)* interchangeably).

Plaintiff filed her EEOC charge on March 19, 2002 (Prop. Amend. Compl. P15). In the narrative attached to her EEOC charge, plaintiff alleges: (1) defendants failed to accommodate her disability after her request to her supervisor sometime in 1999 or 2000; (2) defendants were unwilling to allow a reasonable work accommodation after discussing the subject in a meeting with Labor Relations in the summer of 2000 and (3) plaintiff [*18] officially filed her request for FMLA leave on September 19, 2000 and was terminated on September 20, 2000 "due to medical complications from breast cancer, and my request to take a Family Medical Leave of Absence" (EEOC Charge annexed to Complaint). Defendants argue that because this alleged conduct occurred before May 23, 2001, i.e. more than 300 days before March 19, 2002, plaintiff's ADA claim is time barred (Def. Memo at 5). Plaintiff responds by arguing that this pre-May 23, 2001 conduct is, nevertheless, actionable under the "continuing violation" theory (Memorandum of Law in Support of Plaintiff's Reply to Defendants' Opposition to Her Motion for Leave to Amend the Complaint ("Pl. Reply"), Docket Item 26, at 3-4).

The continuing violation-doctrine delays the commencement of the statute of limitations period if the discriminatory conduct was part of a continuous "practice or policy" of discrimination. See *Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)*; see also *Branch v. Guilderland Cent. Sch. Dist., 239 F. Supp.2d 242, 253 (N.D.N.Y. 2003)*; *Stalter v. Bd. of Coop. Educ. Servs., 235 F. Supp.2d 323, 332 (S.D.N.Y. 2002)*; [*19] *Figueroa v. City of New York, 198 F. Supp.2d 555, 564 (S.D.N.Y. 2002)*,

reconsideration granted on other grounds, *2002 U.S. Dist. LEXIS 18340, 00 Civ. 7559 (SAS), 2002 WL 31163880.*

The scope of the continuing violation doctrine was substantially restricted by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan, supra, 536 U.S. 101.* In that case the Supreme Court unanimously held that "each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 113.* The Court went on to identify "termination, failure to promote, denial of transfer, or refusal to rehire" as examples of conduct that constituted a "discrete discriminatory act." *536 U.S. at 114.* The only exception identified by the Court -- a hostile work environment, *Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 115* -- is inapplicable here because plaintiff alleges only discrete discriminatory acts.

As described above, plaintiff alleges that defendants failed to accommodate her disability, denied her equal terms and conditions of employment and terminated [*20] her based on events prior to May 23, 2001. Pursuant to the plain language of Morgan, plaintiff's termination constituted a "discrete discriminatory act." *Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 113.* Similarly, a denial of equal terms and conditions of employment is a discrete discriminatory act, *Norris v. New York City Hous. Auth., 2004 U.S. Dist. LEXIS 8619, 02 Civ. 6933 (RJH), 2004 WL 1087600 at *5 n.6 (S.D.N.Y. May 14, 2004),* citing *Bailey v. Synthes, 295 F. Supp.2d 344, 354 (S.D.N.Y. 2003),* as is a failure to accommodate, *Fleming v. Verizon N.Y., Inc., 2005 U.S. Dist. LEXIS 12315, 03 Civ. 5639 (WHP), 2005 WL 1492395 at *8 (S.D.N.Y. June 24, 2005),* citing *Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134-35 (2d Cir. 2003).*

Accordingly, plaintiff is precluded from asserting any pre-May 23, 2001 conduct by defendants as specific, compensable acts of discrimination. Thus, plaintiff's claims regarding failure to accommodate, disparate treatment and termination pursuant to the ADA are time barred, and, therefore, cannot be asserted in the amended complaint.

E. ADA Retaliation Claim

Plaintiff claims that, because she sought [*21] disability accommodations protected by the ADA, Mount Sinai retaliated against her by terminating her employment and refusing to process her STD and LTD claims (Prop. Amend. Compl. P82). Defendants oppose this claim on the grounds of futility and argue that it (1) is time barred because the complaint was not filed within ninety days of plaintiff's receipt of her "right to sue letter," (2) is time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts, and (3) fails to state a claim because plaintiff cannot show a causal relationship between the protected activity and the adverse employment action (Def. Memo at 3-6, 9-10).

Defendants first argue that plaintiff did not file her complaint within ninety days of receiving her right to sue letter from the EEOC, and therefore her action is time barred. Plaintiff alleges that she received this letter on April 25, 2002 (Prop. Amend. Compl. P16). Thus, for her action to be timely, plaintiff would have had to commence this action by July 24, 2002. Defendants claim that because her suit was stamped "filed" on August 6, 2002, the claim is untimely. Although it is true that the complaint was not [*22] stamped "filed" until August 6, 2002, defendants rely on the wrong standard in calculating the statute of limitations. Because plaintiff was pro se when she commenced this action and her complaint was accompanied by an application, that was later granted, to proceed in forma pauperis, the complaint is considered "filed" on the date the Court's Pro Se Office received her complaint and in forma pauperis application, not the date it was accepted for filing by the Clerk of the Court. *Toliver v. Sullivan County, 841 F.2d 41, 42 (2d*

*Cir. 1988)* (per curiam) (holding pro se litigant's complaint was considered retroactively "filed" the date it is was received by the Pro Se Office, once the in forma pauperis application was granted and the complaint was stamped "filed"). Because the complaint was stamped "received" by the Pro Se Office on July 22, 2002 and the application to proceed in forma pauperis was eventually granted, the action was filed within the ninety-day period and is timely.

Defendants' second argument, that the claim lacks the necessary causal connection between protected activity and adverse action, is meritless because, **[*23]** as already discussed, it merely disputes a fact alleged by plaintiff. See Section III(C), above.

Defendants' third argument is that the ADA retaliation claim is time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts. The analysis regarding this argument is discussed in Section III(D), above, and applies with equal force here. Plaintiff was terminated on September 20, 2000; she filed her charge with the EEOC on March 19, 2002. For the reasons discussed above, plaintiff's termination was a discrete act that was not timely raised with the EEOC. Thus, to the extent the ADA retaliation claim is based on plaintiff's termination, it is time barred.

Plaintiff also alleges that defendants' retaliatory actions included "refusing to process her STD and LTD claims" (Prop. Amend. Compl. P82). In the narrative attached to her EEOC Charge, plaintiff alleged that defendants (1) provided conflicting information or were unresponsive and (2) changed her termination date retroactively, effectively nullifying her eligibility for benefits, in late 2001 (EEOC Charge annexed to Complaint). Since both of these allegations relate to events that **[*24]** occurred after May 23, 2001, they are within the 300-day limitations period. Accordingly, to the extent the ADA retaliation claim is based on these allegations, it is not time barred. n5

n5 However, it is unclear if these allegations are in fact the basis of the retaliation claim regarding STD and LTD benefits. It seems likely that any retaliation by defendants regarding STD benefits would have followed soon after her September 19, 2000 filing and before May 23, 2001. If this were true, then a retaliation claim based on such events would be time barred. Similarly, it is unclear if the current retaliation claim regarding refusal to process STD and LTD benefits is "within the scope of the EEOC Charge." Although defendants raised this argument in opposition to the first ADA claim, they do not raise it with respect to the ADA retaliation claim.

Thus, plaintiff's motion to add an ADA retaliation claim is granted to the extent it alleges that defendants retaliated against plaintiff by failing to process for STD and **[*25]** LTD claims. In all other respects, plaintiff's motion to add an ADA retaliation claim is denied.

## F. ADEA Claim

Plaintiff also claims that defendants discriminated against her because of her age by "denying to her equal terms and conditions of employment and ultimately terminating her employment" (Prop. Amend. Compl. P88). Defendants raise the same opposition here as they did against plaintiff's first ADA claim, namely, that the claim is (1) time barred because the complaint was not filed within ninety days of plaintiff's receipt of her "right to sue letter," (2) time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts and (3) beyond the scope of the allegations made in the EEOC charge (Def. Memo at 3-9). Plaintiff's claim is time barred because the allegedly discriminatory actions did not take place within the 300-day period preceding the filing of the EEOC charge, and

again, I need not address the two other arguments made by defendants.

Defendants again argue that plaintiff's claim is time barred because plaintiff failed to file her EEOC charge within 300 days of the alleged discriminatory acts. Because the ADEA also requires [*26] a plaintiff to file a charge with the EEOC within 300 days, the analysis discussed Section III(D), above, applies here. *29 U.S.C. § 626(d)(2)*; see *Brodsky v. City Univ., 56 F.3d 8, 10 (2d Cir. 1995)* ("Before filing a civil action, ADEA plaintiffs in deferral jurisdictions [such as New York] must file with the EEOC within 300 days . . . before expiration of the statute of limitations."). Accordingly, any claim based on plaintiff's termination is time barred. See Section III(D), above.

Similarly, plaintiff alleges that two younger employees had been allowed to a work a modified schedule and that she raised this issue to no avail in a Summer 2000 meeting with Labor Relations (Prop. Amend. Compl. PP32, 34, 36-37, 40). Again, assuming plaintiff's allegation are true, she alleges only a discrete act of disparate treatment that does not constitute a continuing violation. See *Fleming v. Verizon N.Y., Inc., supra, 2005 U.S. Dist. LEXIS 12315, 2005 WL 1492395 at *8*, citing *Elmenayer v. ABF Freight Sys., Inc., supra, 318 F.3d at 134-35*. Since this discrete act occurred outside the 300-day period preceding the filing of the EEOC charge on March 19, 2002, it [*27] is also time barred.

Thus, plaintiff's claims regarding unequal terms and conditions of employment and termination pursuant to the ADEA are time barred and cannot be asserted in the Amended Complaint.

### G. NYSHRL and NYCHRL Claims

Defendants' only argument concerning plaintiff's proposed NYSHRL and NYCHRL claims is that the Court lacks supplemental jurisdiction of these state law claims because all of plaintiff's federal claims should be dismissed (Def. Memo. at 24). Since plaintiff's federal claims are not being dismissed in their entirety, plaintiff can amend her complaint to assert claims under the NYSHRL and the NYCHRL to the extent such claims parallel surviving federal claims.

### H. ERISA Breach of Fiduciary Duty

Plaintiff claims that defendants breached their fiduciary duty to plaintiff by "failing to properly administer benefits under the terms of the Plan" (Prop. Amend. Compl. P107). Specifically, plaintiff alleges that defendants (1) refused to process her LTD claim for nearly two years, (2) "altered Plaintiff's purported last date of employment three times," (3) provided Unum with an incorrect last date of active employment and took unreasonably long to correct this [*28] error and (4) only agreed to process plaintiff's LTD claim after "it believed it had successfully coerced Plaintiff into agreeing to a small settlement of her employment law claims against Mount Sinai" (Prop. Amend. Compl. P108). Defendants oppose this claim on the grounds of futility, arguing that: (1) plaintiff failed to exhaust her administrative remedies, (2) plaintiff fails to seek equitable relief, (3) defendants are not fiduciaries under the meaning of ERISA and (4) plaintiff relies on inadmissable evidence from settlement conferences (Def. Memo. at 13-17). Since defendants' first and third arguments are based on their disagreement with plaintiff's factual allegations, these arguments are rejected for the reasons set forth in Section III(C), above. My discussion here is, therefore, limited to plaintiff's second and fourth argument.

Defendants' second argument is that plaintiff's breach of fiduciary duty claim is futile because it does not seek equitable relief. Plaintiff claims that she is "entitled to 'equitable relief'" under ERISA § 502(a)(3)(B), *29 U.S.C. § 1132(a)(3)(B)*, "amounting to the LTD benefits of which Defendant [sic] have deprived [*29] Plaintiff to date" (Prop. Amend. Compl. P121).

*Section 502(a)(3)(B) of ERISA* states that a plan participant, beneficiary or fiduciary may bring a civil action "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." (Emphasis added). "Equitable relief" in *§ 502(a)(3)* does not make available any type of relief. Instead, it is limited to "'those categories of relief that were typically available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-10, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)* (emphasis in original), quoting *Mertens v. Hewitt Assocs., 508 U.S. 248, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993).* "Determining whether a cause of action is 'legal or equitable in a particular case (and hence whether it is authorized by *§ 502(a)(3)*) remains dependent on the nature of the relief sought.'" *Mead v. Arthur Andersen, LLP, 309 F. Supp.2d 596, 599 (S.D.N.Y. 2004),* quoting *Great-West Life & Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 215.* Where a plaintiff is "seeking legal relief -- the imposition of personal liability on [a defendant] for [*30] a contractual obligation to pay money -- *§ 502(a)(3)* does not authorize [the] action." *Great-West Life & Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 221;* see *Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103-04 (2d Cir. 2005)* (affirming dismissal of *§ 502(a)(3)* claim because the "requested relief [was] nakedly contractual"); *Klecher v. Metro. Life Ins. Co., 331 F. Supp.2d 279, 286-89 (S.D.N.Y. 2004)* (denying motion to amend complaint to add claim under *§ 502(a)(3)* because plaintiff was merely seeking an "'ordinary' denial of benefits claim for which § *[502](a)(1)(B)* provides a remedy" and plaintiff's only equitable claim to "remand" to the insurance company to determine whether plaintiff was disabled was futile because her action already sought a determination by the court of whether she was disabled) (citations omitted).

Here, plaintiff does not elaborate on the type of equitable relief she is seeking. The crux of plaintiff's claim is the recovery of disability

benefits, i.e. money, denied to her under the Plan. The plaintiff appears to seek "legal relief -- the imposition of personal liability on [defendants] [*31] for a contractual obligation to pay money." *Great-West Life & Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 221.* The only "equitable relief," as the Supreme Court defined it in Great-West, she could even remotely claim on these pleadings is for equitable restitution. Equitable restitution, however, requires a specifically identifiable res. Interpreting Great-West, the Court of Appeals for the Second Circuit recently stated that permissible forms of equitable restitution, as opposed to legal restitution, available under *§ 502(a)(3)* include constructive trusts or equitable liens. "[A] constructive trust or equitable lien is imposed when, 'in the eyes of equity,' a plaintiff is 'the true owner' of funds or property, and the 'money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced back to particular funds or property in the defendant's possession.'" *Nechis v. Oxford Health Plans, Inc., supra, 421 F.3d at 103* (second alteration in original), quoting *Great-West Life & Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 213.* Even though the plaintiff in Nechis sought restitution, [*32] the Second Circuit affirmed the district court's decision to dismiss the claim because the plaintiff could not show that the defendant was under an obligation to segregate or that it did in fact segregate the funds he was seeking into a separate account. *Nechis v. Oxford Health Plans, Inc., supra, 421 F.3d at 103-04.* Likewise, plaintiff here does not claim that she is the true owner of segregated, identifiable funds in defendants' possession. Furthermore, besides claiming she is entitled to "equitable relief," plaintiff does not appear to be seeking a remedy that is truly restitutionary in nature because she does not claim that a constructive trust or lien should be imposed on defendants. Thus, as it stands her claim appears to be one for a legal remedy, not for "equitable relief" under *§ 502(a)(3)(B).* n6 See *Nechis v. Oxford Health Plans, Inc., supra,*

*421 F.3d at 104* ("We decline this invitation to perceive equitable clothing where the requested relief is nakedly contractual.").

n6 To support her § 502(a)(3) claim, plaintiff in her reply relies on *In re Enron Corp. Securities, Derivative & ERISA Litigation, 284 F. Supp.2d 511 (S.D. Tex. 2003)*. The plaintiffs in Enron did not assert a § 502(a)(1) claim for denied plan benefits "because they agreed that the plan is clear and unambiguous, they [were] not contending that Defendants did not interpret it properly, and they [were] not seeking to recover benefits under the terms of the plan." *In re Enron, supra, 284 F. Supp.2d at 678*. Instead, plaintiffs were "seeking 'monetary make-whole relief from Committee Members' personal assets." *In re Enron, supra, 284 F. Supp.2d at 679*. The plaintiffs purposefully dismissed the plan, the "normal[] defendant in a suit for payable benefits under the terms of a plan," and "consciously framed their claim under *§ 502(a)(3)* as a breach of fiduciary duty." *In re Enron, supra, 284 F. Supp.2d at 678* (citations omitted). The court did not dismiss their claim, but noted, in dicta, that their equitable relief would be limited to restitution as it is defined in Great-West and that were they to proceed on the merits, the plaintiffs faced a "daunting task." *In re Enron, supra, 284 F. Supp.2d at 679*. Plaintiffs claim here is distinguishable because she seeks to add the Plan as a defendant and is attempting to recover plan benefits.

[*33]

Furthermore, the relief plaintiff seeks under *§ 502(a)(3)(B)* appears nearly identical to the relief she seeks in her claim under *§ 502(a)(1)(B)* (Prop. Amend. Compl. P126). Since Great-West, some courts in this District

have found that when a § 502(a)(3) claim is duplicative of a § 502(a)(1) claim, the § 502(a)(3) claim should be dismissed, while others have allowed the two claims to go forward. Compare *Klecher v. Metro. Life Ins. Co., supra, 331 F. Supp.2d at 288* (dismissing as futile plaintiff's § 502(a)(3) claim because it merely constituted an effort to repackage her unsuccessful § § 502(a)(1)(B) and 502(a)(2) claims), *Mead v. Arthur Anderen, LLP, supra, 309 F. Supp.2d at 598* ("It is 'appropriate' to allow plaintiffs to include a § 502(a)(3) claim which may provide distinct relief from a § 502(a)(1) claim; it is inappropriate to include a § 502(a)(3) claim which, as here, merely duplicates the § 502(a)(1) claim.") (citation omitted) and *Rubio v. Chock Full O'Nuts Corp., 254 F. Supp.2d 413, 432 (S.D.N.Y. 2003)* (granting summary judgment dismissing § 502(a)(3) claim as duplicative of § 502(a)(1) claim); with *Chapro v. SSR Realty Advisors, Inc. Severance Plan, 351 F. Supp.2d 152, 156 (S.D.N.Y. 2004)* [*34] (refusing to dismiss § 502(a)(3) claim duplicative of § 502(a)(1) claim "at [motion to dismiss] stage of the case"), *Am. Med. Assoc. v. United Healthcare Corp., 2002 U.S. Dist. LEXIS 20309, 00 Civ. 2800 (LMM) (GWG), 2002 WL 31413668 at *7 (S.D.N.Y. Oct. 23, 2002)* ("It is not clear that by asserting the ERISA claims under *§ § 502(a)(3)* and *502(a)(1)(B)* that plaintiffs are seeking the same relief.") (citation omitted) and *Suozzo v. Bergreen, 2002 U.S. Dist. LEXIS 11726, 00 Civ. 9649 (JGK), 2002 WL 1402316 at *5 (S.D.N.Y. June 27, 2002)* (denying motion to dismiss § 502(a)(3) claim for "appropriate equitable relief" and allowing it and § 502(a)(1)(B) claims to "proceed in tandem at this stage") (citation omitted). The only substantive difference between the relief sought in the two claims in this case is that the § 502(a)(3) claim seeks only past payments while the § 502(a)(1)(B) claim seeks past and future payments (Prop. Amend. Compl. PP121, 126). This makes the § 502(a)(1)(B) claim broader than the § 502(a)(3) claim because it seeks the

relief sought under § 502(a)(3) and additional relief. Although this is an early stage of this proceeding, plaintiff has not shown in any way that her § 502(a)(3) [*35] claim is not duplicative of her § 502(a)(1)(B) claim. n7

> n7 Plaintiff contends that her "request for relief encompassed equitable relief" and cites to *De Pace v. Matsushita Electric Corp. of America, 257 F. Supp.2d 543 (E.D.N.Y. 2003)* (Pl. Reply at 10). In De Pace, plaintiffs alleged that their former employer fraudulently induced them to resign by giving them misleading information concerning the pension benefits they would expect. *De Pace v. Matsushita Elec. Corp. of Am., supra, 257 F. Supp.2d at 546-47.* After a discussion of the impact of Great-West on § 502(a)(3)(B) claims, the court in De Pace found that "plaintiffs' request for 'other' relief" was broad enough to encompass equitable relief for front pay and reformation, despite dismissing their § 502(a)(3) claim for compensatory and punitive damages. *De Pace v. Matsushita Elec. Corp. of Am., supra, 257 F. Supp.2d at 565.* The equitable relief was available because the plaintiffs could only recover if they were reinstated or if the agreement they entered into with their former employer when they resigned was reformed. Thus, they were not seeking a legal remedy. The plaintiffs even conceded that they could not bring a claim under § 502(a)(1)(B) because they were not entitled to any additional benefits since they resigned. Thus, they argued that § 502(a)(3)(B) was their only avenue of relief. The court agreed and denied the motion to dismiss. *De Pace v. Matsushita Elec. Corp. of Am., supra, 257 F. Supp.2d at 565-67.* Unlike the plaintiffs in *De Pace*, plaintiff here has alternative means of relief through §

502(a)(1)(B) because she is seeking money damages and does not appear to have similar claims for front pay or reformation.

[*36]

Because plaintiff does not appear to be entitled to any equitable relief and has an alternative means of relief through a duplicative § 502(a)(1)(B), her claim is futile and I deny her motion to add a claim for breach of fiduciary duty under ERISA to her complaint without prejudice. n8

> n8 I note that *Fed.R.Civ.P. Rule 54(c)* states "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Because a party will be granted the relief to which they are entitled regardless of their demand, assuming there is no default judgment, I fail to see the necessity of this amendment for relief.

Although I need not address defendants' further arguments regarding plaintiff's breach of fiduciary duty claim, defendants assert their fourth argument -- that plaintiff improperly derived several allegations [*37] in the Proposed Amended Complaint from settlement conference discussions (Def. Memo. at 21) -- with respect to several claims, and I shall address it here. The Proposed Amended Complaint does not, and need not, specifically state the bases for plaintiff's factual allegations. Since I am generally not permitted to go beyond the pleadings at this stage and the Proposed Amended Complaint itself does not state the source for plaintiff's factual allegations, defendants' argument, which is really addressed to the admissibility of evidence, is not a basis to deny plain-

tiff's motion to amend. Whether plaintiff can muster admissible evidence to support the claim is simply not material at this time.

### I. Attorney's Fees

Plaintiff's final claim is for attorney's fees pursuant to ERISA § 502(g)(1), *29 U.S.C. § 1132(g)* (Prop. Amend. Compl. PP150-51). Although defendants' preliminary statement in their Memorandum of Law contends that all of plaintiff's proposed amended claims are futile, defendants fail to address the claim for attorney's fees specifically (Def. Memo. at 2). Since defendants have not stated a reason why I should deny plaintiff's motion to add a claim [*38] for attorney's fees, I decline to raise any arguments sua sponte. Therefore, plaintiff's motion to add a claim for attorney's fees is granted.

## IV. Conclusion

Accordingly, for the forgoing reasons, I grant plaintiff leave to amend her complaint to add defendants Unum and the Plan and substitute defendants The Mount Sinai Medical Center and The Mount Sinai Hospital for the original defendant, Mount Sinai/NYU Health, and to add claims for: 1) denial of FMLA benefits; 2) ADA retaliation to the extent it alleges that defendants retaliated against plaintiff by failing to process her STD and LTD claims; 3) failure to provide plaintiff notice of her COBRA benefits; 4) failure to pay benefits under ERISA; 5) interference with ERISA rights; 6) failure to provide the ERISA summary plan description and plan document; 7) retaliation for exercising rights under ERISA; 8) violation of NYSHRL; 9) violation of NYCHRL and 10) attorney's fees. I deny plaintiff's motion with respect to adding claims for 1) ADA employment discrimination, 2) ADEA employment discrimination and 3) breach of fiduciary duties under ERISA. To the extent the ADA and ADEA claims were raised in the original complaint, [*39] they are hereby dismissed for the same reasons they cannot be added.

Plaintiff is directed to serve her amended complaint within ten (10) days of the date of this Order.

Dated: New York, New York

November 4, 2005

SO ORDERED

HENRY PITMAN

United States Magistrate Judge