# EXHIBIT A

LEXSEE

**In re: TCW/CAMIL HOLDING L.L.C., Debtor. TCW/CAMIL HOLDING L.L.C., Plaintiff, v. FOX HARON & CAMERINI L.L.P., Defendant.**

**Civ. No. 03-1154-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2004 U.S. Dist. LEXIS 9659**

**May 12, 2004, Decided**

**SUBSEQUENT HISTORY:** Findings of fact/conclusions of law at TCW/Camil Holding L.L.C. v. Fox Horan & Camerini L.L.P. (In re TCW/Camil Holding L.L.C.), 2005 U.S. Dist. LEXIS 18033 (D. Del., Aug. 24, 2005)

**PRIOR HISTORY:** [*1] Chapter 11, Bankr. No. 03-10717, Adv. No. 03-53929.

 TCW/Camil Holding L.L.C. v. Fox Haron & Camerini LLP (In re TCW/Camil Holding L.L.C.), 2004 U.S. Dist. LEXIS 7994 (D. Del., Apr. 30, 2004)

**DISPOSITION:** Plaintiff's motion for judgment on pleadings denied. Defendant's motion to dismiss denied in part and granted in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff limited liability company (LLC) filed an adversary complaint against defendant former legal counsel in the United States Bankruptcy Court for the District of Delaware. The LLC alleged that counsel committed legal malpractice. Counsel's motion to withdraw the reference of the adversary proceeding from bankruptcy court was granted. The LLC moved for judgment on the pleadings. Counsel moved to dismiss.

**OVERVIEW:** A corporation and a company entered into a joint venture to acquire control of the largest Brazilian producer of rice. The corporation and the company acquired ownership in the LLC as part of the joint venture. In exchange for its capital contribution, the corporation received "New Camil Units." When the parties failed to obtain control of the rice producer, the corporation initiated an arbitration to secure the LLC's repurchase of its "New Camil Units" in the LLC. Counsel framed the "Terms of Reference" for the parties to submit to the arbitral tribunal. The arbitral tribunal entered judgment against the LLC for $ 10 million. The LLC filed for Chapter 11 bankruptcy. The court denied the LLC's motion for judgment on the pleadings on its legal malpractice claim because questions of fact existed as to whether counsel failed to exercise the degree of care, skill, and diligence that another member of the legal community would have exercised in assembling the "Terms of Reference" for the arbitral tribunal, and it was equally unclear whether the LLC would have prevailed in avoiding joint and several liability but for counsel's alleged negligence in framing the "Terms of References."

**OUTCOME:** The LLC's motion for judgment on the pleadings was denied. Counsel's motion to dismiss for failure to state a claim was denied, in part, as to the legal malpractice claim and granted, in part, as to the conflict of interest claim.

**CORE TERMS:** repurchase, arbitral, legal malpractice, motion to dismiss, joint venture agreement, tribunal, conflict of interest, arbitration, summary judgment, joint venture, jointly, failure to state a claim, final award, clarification, nonmoving party, matter of law, moving party, skill, joint and several liability, obligated, entitled to judgment, underlying action, burden of proof, matters outside, diligence, favorable, withdraw, duty, arbitration proceeding, capital contribution

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*
*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is treated under the same

standard as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The difference between the two rules is purely procedural. That is, a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) must be made before further pleading if further pleading is permitted. Fed. R. Civ. P. 12(b)(6). In other words, a motion to dismiss for failure to state a claim must be brought before, and in lieu of, filing an answer. In contrast, a Fed. R. Civ. P.12(c) motion may be made after the pleadings are closed but within such time as not to delay the trial. Notably, either motion must be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56 if matters outside the pleadings are presented to and not excluded by the court.

***Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings***
[HN2] When deciding a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law.

***Civil Procedure > Summary Judgment > Summary Judgment Standard***
[HN3] A court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof***
***Civil Procedure > Summary Judgment > Summary Judgment Standard***
[HN4] On a motion for summary judgment, if the moving party has demonstrated an absence of material fact, then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The court will view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a

motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.

***Civil Procedure > Pleading & Practice > Pleadings > Interpretation***
[HN5] Under Fed. R. Civ. P. 8(b), a defendant has three choices when answering an allegation made in a complaint: (1) admit the allegation; (2) deny the allegation; or (3) state that it is without knowledge or information sufficient to form a belief as to the truth of the allegation. When the defendant avails the third option, the Federal Rules of Civil Procedure consider that response to have the effect of a denial. Fed. R. Civ. P. 8(b). Besides those three choices, a defendant also may deny a part or a qualification of an allegation. A defendant in such case should specify so much of the allegation as is true and material and deny the remainder. However, a defendant may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An allegation will be deemed admitted when the matter is obviously one as to which defendant has knowledge or information.

***Torts > Causation > Proximate Cause***
***Torts > Malpractice Liability > Attorneys***
[HN6] Legal malpractice is a specific form of negligence. To prevail on a legal malpractice claim under New York law, a plaintiff must establish the failure of an attorney to exercise the degree of skill commonly exercised by an ordinary member of the legal community, proximately resulting in damages to the client. The four elements of a legal malpractice claim are: (1) the duty of the attorney to use such skill, prudence, and diligence as other members of his profession commonly exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual damage resulting from the attorney's negligence. To establish proximate cause, the plaintiff must show that but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages. Put differently, if there is no showing that the outcome of the underlying action would have been different but for the defendant's alleged negligence, then the plaintiff cannot establish a prima facie case of legal malpractice.

*Legal Ethics > Client Relations > Conflicts of Interest*
*Torts > Malpractice Liability > Attorneys*
[HN7] A claim for legal malpractice premised on a conflict of interest is not permissible under New York law.

**COUNSEL:** Stuart M. Grant, Esquire, Grant & Eisenhofer, P.A., Wilmington, Delaware. Counsel for Plaintiff.

Ian Connor Bifferato, Esquire, Megan N. Haper, Esquire, Bifferato, Bifferato & Gentilotti, Wilmington, Delaware. Thomas W. Hyland, Esquire, Joseph L. Francoeur, Esquire, Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., New York, New York. Counsel for Defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

On June 17, 2003, plaintiff TCW/Camil Holding L.L.C. filed an adversary complaint against defendant Fox Haron & Camerini L.L.P. in the United States Bankruptcy Court for the District of Delaware. Plaintiff alleges that defendant, who served as its former legal counsel, committed legal malpractice [*2] in the course of providing legal representation and advice during an arbitration proceeding arising from a failed joint venture to acquire control of Josapar S.A., the largest Brazilian producer of rice. (D.I. 24, Complaint at P 1; Adv. No. 03-53929) On August 8, 2003, defendant answered the complaint denying all legal malpractice allegations. (Id., Answer at P 1)

On September 3, 2003, defendant filed a motion to dismiss the adversary proceeding for failure to state a claim. (D.I. 18; Adv. No. 03-53929) Plaintiff filed a motion for judgment on the pleadings on September 26, 2003. (D.I. 23; Adv. No. 03-53929) On December 19, 2003, defendant moved to withdraw the reference of the adversary proceeding from bankruptcy court. (D.I. 39; Adv. No. 03-53929) The court granted this motion on January 21, 2004. (D.I. 6) On March 26, 2004, defendant moved to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York. (D.I. 18) The court denied this motion on April 29, 2004. (D.I. 25)

Plaintiff is a limited liability company organized under the laws of the State of Delaware with its principal place of business [*3] in New York. Defendant is a limited liability partnership registered in the State of New York with offices in New York City. The court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331.

Presently before the court are plaintiff's motion for judgment on the pleadings and defendant's motion to dismiss. n1 For the reasons that follow, the court denies plaintiff's motion for judgment on the pleadings and denies defendant's motion to dismiss in part as to count I of the complaint and grants said motion in part as to count II of the complaint.

> n1 Plaintiff's motion for judgment on the pleadings and defendant's motion to dismiss were not decided by the bankruptcy court at the time this court granted defendant's motion to remove the reference. Consequently, these motions were transferred to this court, but not added to this court's docket. As a result, the court shall reference these motions using docket items numbers assigned by the bankruptcy court.

## II. BACKGROUND

Plaintiff, [*4] IRHE Holdings, Inc. ("IRHE"), and Garial S.A. ("Garial") entered into an agreement dated December 8, 1999 and an amendment dated April 17, 2000 to form a joint venture and acquire a direct or an indirect controlling interest in Josapar S.A. ("Josapar") ("Joint Venture Agreement"). n2 (Id. at P 16) Plaintiff, IRHE, and Garial acquired ownership in Camil Holdings LLC ("Camil") n3 as part of the joint venture. Plaintiff contributed $ 58.75 million to Camil under the Joint Venture Agreement to purchase these shares. (Id.) In exchange for this capital contribution, plaintiff received "New Camil Units" n4 representing a corresponding percentage of Camil's total issued and outstanding units. (Id. at P 18) IRHE also made a capital contribution of $ 10.4 million in return for an equity interest in the form of "New Camil Units." (Id. at P 19)

> n2 IRHE is a member of the Perez Companc Group, a multinational group of companies based in Argentina with investments in a large number of economic sectors in numerous countries. (D.I. 21, Complaint at P 10; Adv. No. 03-53929) Garial is a Panamanian investment company with interests in the food industry. (Id. at P 8)

[*5]

n3 Camil is equally owned by plaintiff and Garial. (Id. at P 9) Camil owns Camil Alimentos S.A., a major Brazilian producer and distributor of rice. (Id.)

n4 Since Camil formed as a limited liability company, units were issued instead of shares.

Pursuant to the Joint Venture Agreement, plaintiff, IRHE, and Garial made a series of offers through Camil to purchase shares of Josapar from various shareholders, totaling in the aggregate not less than fifty-one percent of Josapar's issued and outstanding capital stock. (Id. at P 17) When Camil failed to obtain control of Josapar by March 31, 2001, IRHE requested in writing that plaintiff, Garial, and Camil enter into good faith negotiations to adjust IRHE's interest in Camil. (Id. at P 21) Such negotiations were provided for under Section 2(C) of the Joint Venture Agreement. n5 The parties failed to agree to IRHE's adjustment as of mid-June 2001. (D.I. 21, Complaint at P 22; Adv. No. 03-53929) IRHE, therefore, claimed that Camil was obligated to repurchase all of its "New Camil Units" in an amount equal to that portion of IRHE's [*6] capital contribution up to $ 10 million pursuant to Section 2(C) of the Joint Venture Agreement. n6 (D.I. 21, Complaint at P 22; Adv. No. 03-53929) On or about January 28, 2002, IRHE initiated an arbitration before the International Court of Arbitration to secure this repurchase. (Id. at P 23)

n5 Section 2(C) of the Joint Venture Agreement provides in pertinent part:

It is further understood and agreed by the Investor that in the event that Camil fails to acquire, through one or a series of Acquisition Offers, during the 12-month period from the date hereof (the "Acquisition Period"), the Control Right ..., the Investor may, within 5 business days immediately following the end of the Acquisition Period, request [plaintiff], Garial[,] and Camil Holdings to enter into good faith negotiations with the Investor to adjust the Investor's interest in Camil Holdings, ... based on the total value of Camil Holdings (the "Camil Holding Value") on the first day after the end of the Acquisition Period (the "Calculation Date").

(D.I. 24, ex. A; Adv. No. 03-53929)

n6 Section 2(C) of the Joint Venture Agreement provides in pertinent part:

[Plaintiff] and Garial agree to cause Camil Holdings LLC to repurchase all of the then fully subscribed and paid-in Investor's New Camil Units for a price equal to the portion of the Investor's Contribution that has actually been disbursed by the Investor pursuant to this Section 2 (the 'Repurchase Price'), provided however, that Camil Holdings shall not be obligated to make any such repurchase if the Repurchase Price for any such repurchase would be greater than $ [10] million. The Repurchase Price shall be payable, in cash and in immediately available funds, in one installment falling due on the day which is 180 days after the end of the Negotiation Period.

(D.I. 24, ex. A; Adv. No. 03-53929)

[*7]

In accordance with the rules of the International Court of Arbitration, the parties to an arbitration jointly must prepare a "Terms of Reference" setting forth a "Statement of Agreed Facts" and "Issues Raised by Both Parties." Defendant participated in drafting the "Terms of Reference" for plaintiff, Camil, and Garial. The "Statement of Agreed Facts" included the following: "Pursuant to Section 2(C) of the Agreement, in the event that [IRHE] and [plaintiff, Camil, and Garial] fail to agree on the value of Camil Holdings with a minority interest in Josapar within the Negotiation Period, **[plaintiff, Camil, and Garial] agree to repurchase [IRHE's] New Camil Units."** (D.I. 25, ex. E; Adv. No. 03-53929)(emphasis in original) The "Issues Raised by Both Parties" identified two issues for the arbitral tribunal's consideration: (1) "Did [plaintiff, Camil, and Garial] breach Section 2(C) of the [Joint Venture] Agreement by failing to repurchase [IRHE's] New Camil Units?"; and (2) "Is [IRHE] entitled to an order requiring [plaintiff, Camil, and Garial] to repurchase [IRHE's] New Camil Units in the amount of $ 10 million or, in the alternative, to pay [IRHE] $ 10 million [*8] in exchange for [IRHE] releasing its New Camil Units?" (D.I. 21, Complaint at P 31; Adv. No. 03-53929) The arbitral tribunal conducted a hearing in September 2001 to address the "Terms of Reference." (Id. at P 32) On November 12, 2002, the arbitral tribunal issued a final award imposing joint and several liability for the full extent of monetary damages against plaintiff, Camil, and Garial. (Id. at P 33) The arbitral tribunal found that "the evidence clearly demonstrates a failure by the parties to agree on reevaluation of IRHE's interest in Camil

Holdings, and thus establishes, in accordance with the plain language of the [Joint Venture] Agreement, IRHE's right to require repurchase of this interest." (D.I. 25 at 8; Adv. No. 03-53929) The arbitral tribunal also determined that "[plaintiff, Camil, and Garial] breached Section 2(C) of the Agreement by failing to repurchase [IRHE's] New Camil Unit" and that "[IRHE] is entitled to an order requiring [plaintiff, Camil, and Garial] to repurchase [IRHE's] New Camil Units in the amount of US $ 10 million or, in the alternative, to pay [IRHE] US $ 10 million in exchange for [IRHE] releasing its New Camil Units." [*9]

On December 16, 2002, defendant requested clarification of the final award to the extent that Camil alone was required to pay the full amount of $ 10 million. (D.I. 21, Complaint at P 35; Adv. No. 03-53929) On December 23, 2002, IRHE filed a petition to confirm the arbitral award and to enter judgment in its favor in the United States District Court for the Southern District of New York. (D.I. 21, Complaint at P 36; Adv. No. 03-53929) On January 17, 2003, defendant filed a motion to dismiss or, in the alternative, to stay proceedings on IRHE's petition pending clarification from the arbitral tribunal. (Id. at P 37) On January 29, 2003, the arbitral tribunal denied defendant's request for clarification. The arbitral tribunal commented:

> [Plaintiff, Camil, and Garial], acting through their common counsel, collectively executed the Terms of Reference dated July 3, 2002. As [IRHE] properly points out, that document contained in its Section 5.15 the following Statement of Agreed Fact[s] accepted by all parties: Pursuant to Section 2(C) of the [Joint Venture] Agreement, in the event that [IRHE] and [plaintiff, Camil, and Garial] fail to agree on the value of Camil [*10] Holdings with a minority interest in Josapar within the Negotiation Period, **[plaintiff, Camil, and Garial] agree to repurchase [IRHE's] New Camil Units.**

(D.I. 25, ex. E; Adv. No. 03-53929) (emphasis in original)

Shortly after this denial, defendant stipulated to withdraw the motion to dismiss IRHE's petition. (D.I. 21, Complaint at P 41; Adv. No. 03-53929) On February 13, 2003, the United States District Court for the Southern District of New York entered an order confirming the final award against plaintiff, Camil, and Garial. (Id. at P 44) The Southern District of New York also entered judgment against plaintiff, Camil, and Garial jointly and severally in the amount of $ 11, 261, 726.46 plus interest. (Id.) Upon receiving this judgment, IRHE immediately sought collection in full exclusively from plaintiff. (Id. at P 45) Plaintiff claims that it is unable to satisfy the

judgment without selling its assets in a distressed sale. Consequently, to preserve the value of its assets, plaintiff filed for Chapter 11 bankruptcy in the United States District Court for the District of Delaware. (Id. at P 46)

## III. STANDARD OF REVIEW

[HN1] A motion for judgment [*11] on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is treated under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988). The difference between the two rules is purely procedural. That is, a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) must be "made before further pleading if further pleading is permitted." Fed. R. Civ. P. 12(b)(6). In other words, a motion to dismiss for failure to state a claim must be brought before, and in lieu of, filing an answer. Id. In contrast, a Rule 12(c) motion may be made "after the pleadings are closed but within such time as not to delay the trial." Notably, either motion must be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56 if matters outside the pleadings are presented to and not excluded by the court. In the case at bar, plaintiff has not referred [*12] to any matters outside the pleadings in its Rule 12(c) motion. Defendant, however, has referred to matters outside the pleadings in its Rule 12(b)(6) motion. The court, therefore, will treat plaintiff's motion as one for judgment on the pleadings, but will evaluate defendant's motion under the standard applicable to a motion for summary judgment.

### A. Motion for Judgment on the Pleadings

[HN2] When deciding a Rule 12(c) motion, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993). Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Jablonski, 863 F.2d at 290.

### B. Motion for Summary Judgment

[HN3] A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show [*13] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine

issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

[HN4] If the moving party has demonstrated an absence of material fact, then the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. [*14] " Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Omnipoint Comm. Enters., L.P. v. Newtown Township, 219 F.3d 240, 242 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 323).

## IV. DISCUSSION

### A. Sufficiency of the Pleadings

Plaintiff argues that defendant admitted that [*15] it had insufficient knowledge about the facts and legal issues underlying the Joint Venture Agreement, arbitration, and post-arbitrations proceedings to adequately represent it because defendant: (1) denied possessing knowledge and information sufficient to form a belief as to the truth of some of the allegations set forth in the complaint; and (2) failed to offer any reasonable excuse for this lack of knowledge and information. In rebuttal, defendant contends that its answers to plaintiff's complaint did not constitute any form of an admission. Rather, defendant avers that it denied allegations of the complaint due to insufficient information and knowledge to avoid conceding to plaintiff's characterization of the facts underlying the action at bar.

[HN5] Under Fed. R. Civ. P. 8(b), a defendant has three choices when answering an allegation made in a complaint: (1) admit the allegation; (2) deny the allegation; or (3) state that it is without knowledge or information sufficient to form a belief as to the truth of the allegation. When the defendant avails the third option, the Federal Rules consider this response to have the effect of a denial. Fed. R. Civ. P. 8(b) [*16] . Besides these three choices, a defendant also may deny a part or a qualification of an allegation. A defendant in such case should specify so much of the allegation as is true and material and deny the remainder. Id. However, a defendant "may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading ... An allegation will be deemed admitted when the matter is obviously one as to which defendant has knowledge or information." David v. Crompton & Knowles Corp., 58 F.R.D. 444, 446 (E.D. Pa. 1973)(citations omitted); see also Fidelity and Guaranty Ins. Co. v. Keystone Contractors, Inc., 2002 U.S. Dist. LEXIS 15403, 2002 WL 1870476, *3 (E.D. Pa. 2002)(finding the defendant's attempts to deny sufficient knowledge or information on matters clearly within the scope of its knowledge to be so blatantly evasive as to be ineffective denials).

The court construes defendant's statements that it lacks knowledge and information sufficient to form a belief as to the truth of some of plaintiff's allegations as denials only for certain allegations. The court finds that defendant must have had the knowledge and information to either [*17] deny or admit various other allegations, at the very least in part. For example, the court is hard pressed to believe that defendant lacked sufficient knowledge or information about the "Terms of Reference" of the arbitration, the dates for the arbitration hearing, or the arbitral tribunals final award, since defendant admitted to representing plaintiff in connection with the contractual dispute at issue in the arbitration before the International Court of Arbitration. (See D.I. 24, Answer at PP 31, 32, 33; Adv. Pro. 03-53929) Similarly, the court is unpersuaded that defendant lacked sufficient knowledge or information about whether it filed a motion to dismiss IRHE's petition to confirm the arbitral award and to enter judgment in its favor, the arbitral tribunal denied a request for clarification of the final award, and the United States District Court for the Southern District of New York entered an order confirming the final award. (See id. at PP 36, 36, 44) The court, thus, concludes defendant's failure to comply in good faith with the basic federal pleading rules belies the existence of meritorious denials. Accordingly, the court shall treat the above denials as admissions [*18] for purposes of deciding the motions at bar.

### B. Legal Malpractice Under New York Law n7

n7 The parties agree that New York law applies to plaintiff's legal malpractice allegations, given that the events underlying this action transpired in the State of New York.

[HN6] Legal malpractice is a specific form of negligence. Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 393 (S.D.N.Y. 2000). To prevail on this claim under New York law, a plaintiff must establish the failure of an attorney to exercise the degree of skill commonly exercised by an ordinary member of the legal community, proximately resulting in damages to the client. Id. The four elements of a legal malpractice claim are: (1) the duty of the attorney to use such skill, prudence, and diligence as other members of his profession commonly exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual damage resulting from the attorney's negligence. Id. (citations [*19] omitted). To establish proximate cause, the plaintiff must show that "but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages." Nobile v. Schwartz, 265 F. Supp. 2d 282, 289 (S.D.N.Y. 2003) (citations omitted). Put differently, if there is no showing that the outcome of the underlying action would have been different but for the defendant's alleged negligence, then the plaintiff cannot establish a prima facie case of legal malpractice. N. A. Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine, 45 N.Y.2d 730, 730 (N.Y. 1978).

### C. Count I of Plaintiff's Complaint

As to count I of the complaint, plaintiff claims that defendant committed legal malpractice by failing to exercise reasonable care, skill, and diligence in clearly distinguishing between the respective rights and obligations of plaintiff, Camil, and Garial when drafting, revising, and agreeing to the "Terms of Reference" submitted to the arbitral tribunal. (D.I. 21, Complaint at P 48; Adv. No. 03-53929) In particular, plaintiff argues that defendant failed to recognize that the structure of the Joint Venture Agreement [*20] limited the liability of the participants if the joint venture failed. That is, Section 2(C) of the Joint Venture Agreement imposed the direct obligation to make payment for the New Camil Units on Camil alone; plaintiff and Garial were merely required "to cause" Camil to do so, not make payment themselves. Plaintiff contends that if defendant had properly drafted the "Terms of Reference" to reflect Section 2(C), then the arbitral tribunal would have enforced liability pursuant to terms of the Joint Venture Agreement rather than assign joint and several liability.

Defendant responds by alleging that count I fails as to the second, third, and fourth elements requisite to a

legal malpractice cause of action. n8 In this regard, defendant claims that plaintiff cannot show that: (1) defendant breached its duty of care; (2) defendant's actions were the proximate cause of its loss; and (3) it suffered actual damages.

n8 Defendant appears not to contest the first element, namely, that it owed a duty to plaintiff.

The [*21] court finds that questions of fact exist regarding the second and third elements of plaintiff's legal malpractice claim with respect to count I. n9 It is unclear from the record whether defendant failed to exercise the degree of care, skill, and diligence that another member of the legal community would have exercised in assembling the "Terms of Reference." n10 It is equally unclear whether plaintiff would have prevailed in avoiding joint and several liability but for defendant's alleged negligence in framing the "Terms of References." While the arbitral tribunal implied in its original decision that it considered the plain language of the Joint Venture Agreement in deciding the repurchase issue, thereby suggesting that it did not reach its decision solely based upon the "Terms of Reference," the court notes that the arbitral tribunal focused on the specific "Statement of Agreed Fact" that stated "[plaintiff, Camil, and Garial] agreed to repurchase [IRHE's] New Camil Units" when responding to plaintiff's request for clarification. The court, therefore, finds that discovery is necessary to more fully address the aforementioned elements. Consequently, the court concludes that it [*22] is not possible to grant judgment as a matter of law at this stage in favor of either side. The court denies plaintiff's motion for judgment on the pleadings and denies defendant's motion to dismiss in part as to count I of the complaint.

n9 The court does not find any questions of fact as to the fourth element (i.e., whether plaintiff suffered actual damages). Under the court's reading of Section 2(C) of the Joint Venture Agreement, plaintiff was not directly obligated to repurchase the New Camil Units from IRHE. Plaintiff was only obligated "to cause" Camil to repurchase these units. By holding plaintiff liable for more than $ 11.2 million, plaintiff necessarily suffers actual damages.

n10 Defendant did not participate in drafting the joint venture agreement.

### D. Count II of Plaintiff's Complaint

As to count II of the complaint, plaintiff claims that

when defendant negligently stipulated to joint and several liability during the arbitration proceeding, it created a conflict of interest between plaintiff, [*23] Camil, and Garial. Plaintiff argues that despite this conflict, defendant stipulated to withdraw plaintiff's, Camil's, and Garial's motion to dismiss IRHE's petition to confirm the arbitral award without plaintiff's consent before advising plaintiff to obtain separate legal representation. In response, defendant argues that conflict of interest claims are not actionable under New York law and constitute, at most, a violation of an attorney's ethical responsibilities.

At the outset, the court must evaluate whether a conflict of interest actually existed at the time of the district court proceeding before determining whether count II presents a cognizable cause of action. Plaintiff's interest arose from its individual obligation to repurchase IHRE's New Camil Units, since it was held jointly and severally liable pursuant to the arbitration proceeding. Camil and Garial each had this same interest as they were also held jointly and severally liable. To this extent, plaintiff's, Camil's, and Garial's individual interests conflicted; none of the three entities wanted to be burdened with the obligation of repurchasing IHRE's New Camil Units. Accordingly, the court finds that defendant operated [*24] under a conflict of interest in jointly representing plaintiff, Camil, and Garial in the district court proceedings.

Having determined that a conflict of interest existed, the court agrees with defendant that [HN7] a claim for legal malpractice premised on such conflict is not permissible under New York law. n11 In Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C., 278 A.D.2d 169, 719 N.Y.S.2d 223 (N.Y. App. Div. 1st Dep't 2000), plaintiff commenced a legal malpractice action against his attorneys based upon a conflict of interest. Plaintiff claimed that his attorneys should have advised him of the conflict of interest posed by jointly representing him and his insurance carrier in the underlying action involving a car accident and of his right to independent counsel. The district court granted the defendant's motion for summary judgment dismissing plaintiff's third amended complaint and plaintiff appealed. The appellate court stated: "The cited conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action." Id. The appellate court, therefore, concluded that the plaintiff's [*25] malpractice claims were properly dismissed.

n11 Plaintiff cites Rejohn v. Serpe, 125 Misc. 2d 148, 478 N.Y.S.2d 799 (N.Y. Dist. Ct. 1984),

to support its argument that a legal malpractice claim premised on a conflict of interest is cognizable. In this case, the court implies that such claim is permissible and simply requires plaintiff to prove the same elements required for any other legal malpractice claim. While favorable to plaintiff's position, this district court decision predates the appellate decision cited herein and, therefore, is not controlling.

The court finds the facts in Sumo analogous to those at bar. Like the plaintiff in Sumo whose interest conflicted with that of his co-plaintiff at the time of the joint representation, plaintiff, Camil, and Garial also had conflicting interests when defendant jointly represented them in the district court proceeding. Applying the ruling from Sumo to the instant case, the court concludes that plaintiff's legal malpractice claim based [*26] on said conflict of interest is not a justiciable ground for legal malpractice liability. Consequently, the court denies plaintiff's motion for judgment on the pleadings and grants defendant's motion to dismiss in part as to count II of plaintiff's complaint.

## V. CONCLUSION

For the reasons stated herein, the court denies plaintiff's motion for judgment on the pleadings. The court denies defendant's motion to dismiss for failure to state a claim in part as to count I of plaintiff's complaint and grants said motion in part as to count II of plaintiff's complaint. An order shall issue.

### ORDER

At Wilmington this 12th day of May, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. The court denies plaintiff's motion for judgment on the pleadings. (D.I. 23; Adv. No. 03-53929)

2. The court denies defendant's motion to dismiss for failure to state a claim in part as to count I of plaintiff's complaint and grants said motion in part as to count II of plaintiff's complaint. (D.I. 18; Adv. No. 03-53929)

Sue L. Robinson

United States District Judge

LEXSEE 2005 U.S. DIST. LEXIS 21568

**MARTHA JANE TOY, individually and as Executrix and Personal Representative of the Estate of Russell B. Toy, deceased, Plaintiff, v. PLUMBERS & PIPEFITTERS LOCAL UNION NO. 74 PENSION PLAN, et al., Defendants.**

CIVIL ACTION No. 05-1814

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2005 U.S. Dist. LEXIS 21568*

**September 27, 2005, Decided**

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue Generally*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN1] Under *Fed. R. Civ. P. 12(b)(3)*, a defendant may bring a motion to dismiss for improper venue. The defendant bears the burden of proving that venue is improper. The court is to accept as true the allegations in the complaint. Although a plaintiff cannot rely solely on the allegations in the complaint, the court must view the facts in a light most favorable to the plaintiff.

*Civil Procedure > Venue > General Venue*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN2] See *29 U.S.C.S. § 1132*(e)(2).

*Civil Procedure > Venue > General Venue*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN3] Congress has clearly expressed that the policy underlying the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., is to provide ready access to the federal courts. *29 U.S.C.S. § 1001*(b). Therefore, courts approach the issue of venue mindful of the Congressional intent to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants. Despite this Congressional policy of open access to the federal courts, a litigant is not free to bring an ERISA action in any district court. At a minimum, a plaintiff must satisfy at least one of the four bases for venue expressed in *29 U.S.C.S. § 1132*(e)(2).

*Civil Procedure > Venue > General Venue*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*

[HN4] Venue is proper in a district where a plan under the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., is administered. An ERISA plan is administered where the plan is managed.

*Civil Procedure > Venue > General Venue*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN5] Venue is proper in a district where an alleged breach of a plan under the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., occurred. Most courts addressing this question have determined that the alleged breach occurred in the district where the beneficiary receives, or should have received, benefits. These courts view ERISA benefit plans as contracts and rely on the proposition that a cause of action for breach of contract lies where the contract is to be performed. Other courts look to the location where the defendant made the decision not to pay the benefits.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Venue > General Venue*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN6] In Varsic, the United States Court of Appeals for the Ninth Circuit interpreted the "may be found" terminology in *29 U.S.C.S. § 1132*(e)(2), the venue provision of the Employee Retirement Income Security Act (ERISA)., *29 U.S.C.S. § 1001* et seq. The Varsic court concluded that the term "found" should be given the same broad reading in the ERISA venue provision as courts have applied to the term in the antitrust and copyright venue provisions. Accordingly, the Varsic court determined that a defendant "may be found" in

any district where the defendant's contacts would be sufficient to support personal jurisdiction over the defendant in that district. To determine whether a defendant's contacts would be sufficient to assert personal jurisdiction in a particular district, the Varsic court applied the familiar "minimum contacts" test articulated in International Shoe.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN7] Under the minimum contacts test, a non-resident defendant must have purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Furthermore, personal jurisdiction may be exercised under either a general jurisdiction theory or a specific jurisdiction theory. If general jurisdiction exists, the defendant must defend against any suit in the relevant forum, regardless of whether the subject matter of the litigation has any connection to that forum. To establish general jurisdiction, the non-resident defendant's contacts with the forum must be continuous and substantial. Specific jurisdiction exists only when the defendant has purposely directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or are related to those activities. This requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Furthermore, in addition to the required minimum contacts necessary to exercise jurisdiction, a court must determine that such an exercise comports with traditional notions of fair play and substantial justice.

*Civil Procedure > Venue > General Venue*

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN8] The mere fact that a small number of plan participants reside in the district is insufficient for the court to determine that the plan is "found" in that district under *29 U.S.C.S. § 1132*(e)(2), the venue provision of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Venue > General Venue*
*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN9] A defendant is not "found" in a district under *29 U.S.C.S. § 1132*(e)(2), the venue provision of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., merely because contributing employers and retirees, other than the plaintiff, received benefits in the district. The mere fact that there are or were contributing employers and retirees receiving benefits in the district, other than the plaintiffs, is not sufficient to satisfy the minimum contacts test.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Evidence > Procedural Considerations > Burdens of Proof*
[HN10] The law in the United States Court of Appeals for the Third Circuit is clear that the exercise of general jurisdiction over a defendant requires that the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN11] See *28 U.S.C.S. § 1406*(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN12] The language of *28 U.S.C.S. § 1406*(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.

**COUNSEL:** [*1] For MARTHA JANE TOY, INDIVIDUALLY AND AS EXECUTRIX AND PERSONAL REPRESENTATIVE OF THE ESTATE OF RUSSELL B. TOY, DECEASED, Plaintiff: WILLIAM B. HILDEBRAND, LAW OFFICES OF WILLIAM B. HILDEBRAND, L.L.C., CHERRY HILL, NJ.

For PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 74 PENSION PLAN, TRUSTEES OF PLUMBERS & PIPEFITTERS LOCAL UNION 74 PENSION PLAN, HEALTH AND WELFARE PLAN, LOCAL 74, WELFARE BENEFIT PLAN, LIFE INSURANCE PLAN, LOCAL 74, WELFARE BENEFIT PLAN, ADMINISTRATORS OF PENSION AND WELFARE PLANS, TRUSTEES OF PLUMBERS & PIPEFITTERS LOCAL UNION NO. 74 WELFARE PLAN, PLAN ADMINISTRATOR OF PENSION & WELFARE PLANS, INSURANCE PLANS, AND HEALTH AND WELFARE BENEFIT PLAN, LIFE INSURANCE PLAN, LOCAL 74, INSURANCE PLAN, Defendants: D. FON MUTTAMARA-WALKER, YOUNG CONAWAY STARGATT & TAYLOR LLP, WILMINGTON, DE; TIMOTHY J. SNYDER, YOUNG, CONAWAY, STARGATT AND TAYLOR, WILMINGTON, DE; CURTIS J. CROWTHER, YOUNG CONAWAY

STARGATT & TAYLOR, WILMINGTON, DE.

**JUDGES:** Berle M. Schiller, J.

**OPINIONBY:** Berle M. Schiller

**OPINION:**

### MEMORANDUM AND ORDER

**Schiller, J.**

Plaintiff, Martha Jane Toy, brings this lawsuit pursuant to the Employment Retirement Income Security Act ("ERISA"), individually, and as the [*2] personal representative of the Estate of her late husband, Russell B. Toy, against numerous Defendants, including the Plumbers & Pipefitters Local Union No. 74 Pension Plan and the Plumbers and Pipefitters Local Union No. 74 Welfare Plan (collectively "the Plans"). The Complaint alleges the denial of pension, welfare, and insurance benefits and the breach of Defendants' fiduciary duties. Presently before the Court is Defendants' renewed motion to dismiss based on improper venue. n1 Defendants also seek to dismiss the individual Trustees for lack of personal jurisdiction and to dismiss certain other named Defendants because those entities do not exist. The Court also has before it Plaintiff's motion for sanctions. For the reasons that follow, the Court holds that venue is improper in this District. However, rather than dismiss this action, the Court will transfer this matter to the District of Delaware. The remaining requests for relief are denied as moot.

n1 On July 5, 2005, Defendants filed a motion to dismiss or transfer, in part based on improper venue. Thereafter, the Court ordered limited discovery on the venue issue and allowed Defendants to later refile their motion. Defendants' original motion also sought to dismiss

Plaintiff's claims as filed outside the statute of limitations and to dismiss Plaintiff's fiduciary duty claim under *Federal Rule of Civil Procedure 12(b)(6)*. The Court's disposition of the venue issue obviates the need to address these other contentions.

[*3]

## I. BACKGROUND

Russell Toy was a member of the Plumbers & Pipefitters Local Union No. 74 ("the Union") in Delaware. (Defs.' Br. in Supp. of Mot. to Dismiss Ex. A P 20 [hereinafter "Ernsberger Aff."].) Both Russell and Martha Toy have resided in Delaware at all times relevant to this litigation. (*Id.* P 24.) Russell became disabled at the time he stopped working. (Compl. P 9.) Although it was originally determined that Russell was not eligible for disability pension benefits, he was eventually awarded pension benefits. (*Id.*) According to the Complaint, however, Plaintiff continues to be denied certain benefits to which she and her late husband are both entitled. (*Id.* PP 12-14.) Plaintiff also claims that Defendants have rebuffed her attempts to recover medical benefits to which she is entitled. (*Id.* PP 17-19.) Finally, Plaintiff has also unsuccessfully attempted to recover life insurance benefits to which she is entitled. (*Id.* PP 21-23.)

The Plans at issue in this case were established pursuant to a collective bargaining agreement between the Union and the Delaware Mechanical Contractors Association ("the Association"). (Ernsberger Aff. P 5.) Both the [*4] Union and the Association appoint an equal number of Trustees, who serve as plan sponsors. (*Id.* P 6.) Currently, all of the Trustees reside in Delaware. (*Id.* P 7.) For over twenty years, the Plans have been managed by GEMGroup, which has an office in Pittsburgh, Pennsylvania, where it maintains bank accounts in the name of the Plans. (*Id.* PP 8-9.) The

Plans are administered by GEMGroup at its office in Claymont, Delaware, which is also where GEMGroup maintains the physical records pertaining to the Plans. (*Id.* PP 10-11.) All meetings relating to the business of the Plans are conducted by the Trustees in Delaware, and "all decisions regarding the eligibility and qualification requirements of participants to receive Fund benefits, including all appeals to the Trustees regarding those decisions" occur in Delaware. (*Id.* P 12.) Furthermore, all decisions regarding the Toys' eligibility to receive benefits were made in Delaware. (*Id.* PP 13, 23.) The Plans and Trustees are represented in part by a law firm with a Pennsylvania office and a number of pensioners and participants in the Plans have Pennsylvania addresses. (*Id.* PP 14-16.)

## II. STANDARD OF REVIEW [*5]

[HN1] Under *Federal Rule of Civil Procedure 12(b)(3)*, a defendant may bring a motion to dismiss for improper venue. *FED. R. CIV. P. 12(b)(3)*. Defendant bears the burden of proving that venue is improper. *Myers v. Am. Dental Assocs., 695 F.2d 716, 724-25 (3d Cir. 1982).* The court is to accept as true the allegations in the complaint. *Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Myers, 695 F.2d at 724.* Although a plaintiff cannot rely solely on the allegations in the complaint, the court must view the facts in a light most favorable to the plaintiff. *Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 & n.1 (3d Cir. 1992); Myers, 695 F.2d at 724.*

## III. DISCUSSION

### A. Proper Venue in ERISA Actions

Defendants contend that this lawsuit should have been brought in Delaware, where venue clearly would be proper. Defendants have asked this Court to dismiss the action because venue in the Eastern District of Pennsylvania is improper under ERISA's statutory venue provision. Venue in this case is predicated [*6]

upon *29 U.S.C. § 1132(e)(2)*, ERISA's statutory venue provision. That venue provision provides that:

> [HN2] Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, or the breach took place, or where a defendant resides or may be found and process may be served in any other district where a defendant resides or may be found.

*29 U.S.C. § 1132(e)(2) (2005).*

[HN3] Congress has clearly expressed that the policy underlying ERISA is to provide "ready access to the Federal Courts." *Keating v. The Whitmore Mfg., 981 F. Supp. 890, 891 (E.D. Pa. 1997) (citing 29 U.S.C. § 1001(b)).* Therefore, this Court will approach the issue of venue mindful of the Congressional intent "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants." *Id. at 892 (citing H.R. REP. NO. 93-533, at 17 (1973), as reprinted in, 1974 U.S.C.C.A.N. 4639, 4655).* [*7] Despite this Congressional policy of open access to the federal courts, a litigant is not free to bring an ERISA action in any district court. At a minimum, a plaintiff must satisfy at least one of the four bases for venue expressed in *29 U.S.C. § 1132(e)(2).*

### 1. An ERISA Action May Be Brought Where the Plan is Administered

[HN4] Venue is proper in a district where the plan is administered. An ERISA plan is administered where the plan is managed. *Sprinzen v. Sup. Ct. of N.J., 478 F. Supp. 722, 723 (S.D.N.Y. 1979); see also Wallace v. Am.*

*Petrofina, Inc., 659 F. Supp. 829, 830 (E.D. Tex. 1987)* ("The court must look to the place where the plan is managed to determine where proper venue lies."); *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan, 517 F. Supp. 627, 631-32 (S.D. W. Va. 1981)* (adopting definition of "administer" found in *Sprinze*).

As Plaintiff has not argued that the Plans are administered anywhere other than Delaware, the Court need not belabor the point. n2 Defendants' affidavit makes clear that the Plans are managed in Delaware. The Trustees meet in Delaware, all decisions regarding **[*8]** plan eligibility are made in Delaware, the physical records relating to the Plans are located in Delaware, and the day-to-day management of the Plans is conducted in Delaware. (Ernsberger Aff. PP 10-13.)

n2 The Court also need not address whether the Plans "reside" in this District because Plaintiff has not denied Defendants' contention that the Plans reside in Delaware.

### 2. An ERISA Action May Be Brought Where the Alleged Breach Occurred

[HN5] Venue is also proper where the alleged breach occurred. Most courts addressing this question have determined that the alleged breach occurred in the district where the beneficiary receives, or should have received, benefits. *See Keating, 981 F. Supp. at 892* (citations omitted); *see also Cross v. Fleet Reserve Ass'n Pension Plan, Civ. A. No. 05-0001, 2005 U.S. Dist. LEXIS 17777, at *9 (D. Md. Aug. 23, 2005)*. These courts view ERISA benefit plans as contracts and rely on the proposition that a cause of action for breach of contract lies **[*9]** where the contract is to be performed. *See Cross, 2005 U.S. Dist. LEXIS 17777, at *8-*9.* Other courts, however, have looked to the location where the defendant made the decision not to pay the benefits. *See Turner v. CF&I Steel*

*Corp., 510 F. Supp. 537, 541 (E.D. Pa. 1981)*; *see also Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan, 481 F. Supp. 454, 459 (N.D. Ga. 1979)* (finding that breach occurred where defendant ordered trustee to stop payment on plaintiff's check). The Court need not settle this dispute because any decision Defendants made regarding benefit payments to Plaintiff was made in Delaware and any benefits Plaintiff was entitled to receive would have been received in Delaware.

### 3. An ERISA Action May Be Brought Where the Plan May Be Found

Because the Plans are not administered in this District, the alleged breach did not occur here, and Defendants do not reside here, venue is proper in the Eastern District of Pennsylvania only if Defendants "may be found" here. [HN6] In *Varsic v. United States District Court for the Central District of California, 607 F.2d 245 (9th Cir. 1979)*, the Ninth Circuit interpreted **[*10]** the "may be found" terminology in ERISA's venue provision. The *Varsic* court concluded that the term "found" should be given the same broad reading in the ERISA venue provision as courts had applied to the term in the antitrust and copyright venue provisions. *Id. at 248.* Accordingly, the *Varsic* court determined that a defendant "may be found" in any district where the defendant's contacts would be sufficient to support personal jurisdiction over the defendant in that *district. See id. at 248-49; see also DiGiovannino v. Local 153 Pension Fund, Civ. A. No. 91-7172, 1992 U.S. Dist. LEXIS 8331, at *5 (E.D. Pa. June 11, 1992)* ("For the purposes of [the ERISA venue provision], a defendant is 'found' in any district in which personal jurisdiction may be obtained over the defendant."); *Turner, 510 F. Supp. at 542.* To determine whether a defendant's contacts would be sufficient to assert personal jurisdiction in a particular district, the *Varsic* court applied the familiar "minimum contacts" test articulated in *International Shoe v. Wash-*

*ington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945). Varsic, 607 F.2d at 248-49.* [*11]

[HN7] Under the minimum contacts test, the non-resident defendant must have purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).* Furthermore, personal jurisdiction may be exercised under either a general jurisdiction theory or a specific jurisdiction theory. *See id.* If general jurisdiction exists, the defendant must defend against any suit in the relevant forum, regardless of whether the subject matter of the litigation has any connection to that forum. *See Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998).* To establish general jurisdiction, the non-resident defendant's contacts with the forum must be "continuous and substantial." *Provident Nat'l Bank v. Cal. Fed. Savs. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)* (citations omitted). Specific jurisdiction exists only when the defendant has "purposely directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or [are] related to' those activities." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000)* [*12] *(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)).* This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King, 471 U.S. at 475* (citations omitted). Furthermore, in addition to the required "minimum contacts" necessary to exercise jurisdiction, a court must determine that such an exercise comports with "traditional notions of fair play and substantial justice." *IMO Indus. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)* (citing *Int'l Shoe, 326 U.S. at 316*).

This litigation involves the alleged improper denial of benefits and breach of fiduciary duty resulting from decisions made solely in Delaware regarding Delaware residents. Therefore, this Court is faced only with the question of whether it may exercise general personal jurisdiction over the Plans. *See Toys 'R' Us, Inc. v. Two Step, S.A., 318 F.3d 446, 451 (3d Cir. 2003)* (specific personal jurisdiction requires that plaintiff's claims relate to or arise out of defendant's forum activities). According to Plaintiff, [*13] Defendants have sufficient contacts with this forum to support personal jurisdiction over Defendants, and therefore venue is proper in this District. First, of the 130 employers that contribute to the Plans, forty-eight have Pennsylvania addresses. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss Ex. B [hereinafter "Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs."].) A number of these forty-eight employers are located in this district. (Ex. A to Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs.) Furthermore, since 1997, Pennsylvania employers have contributed over $ 5.6 million to the Pension Plan and over $ 5.8 million to the Welfare Plan. (Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs.) Since 2000, the Pension Plan also has paid over three quarters of a million dollars to the eleven persons that Defendants identified as current Pennsylvania residents. (Ex. F to Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs.; Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss Ex. E at 27 [hereinafter "Aug. 29, 2005 Ernsberger Dep."].) In addition, a claim summary for Pennsylvania participants lists a number of prescription drug benefits paid [*14] to Pennsylvania residents from January 1, 2002 through August 14, 2005. (Ex. H to Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs.) Defendants, through the third party fund manager, GEM-Group LP, also have paid medical benefits to eighty-eight Pennsylvania health care providers on behalf of pensioners and beneficiaries, totaling $ 46,276.97. (Ex. I to Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs.)

These contacts do not confer upon this Court personal jurisdiction over Defendants.

Although this Court recognizes that ERISA's venue provision is to be liberally construed, it is certainly not without limits. In *Waeltz v. Delta Pilots Retirement Plan*, the Seventh Circuit affirmed the district court's dismissal for improper venue, concluding that [HN8] the mere fact that a small number of plan participants resided in the district was insufficient for the court to determine the plan was "found" in that district under the ERISA venue provision. *301 F.3d 804, 811 (7th Cir. 2002)*. The *Waeltz* court reasoned that *Varsic's* reading of the phrase "may be found" depended not on whether personal jurisdiction exists for any reason whatsoever, but "on [*15] whether the defendant has sufficient contacts with the particular *district* to support a conclusion that the defendant 'may be found' there." *Id. at 809-10* (citations omitted) (emphasis added); *see also Laurent v. PriceWaterhouseCoopers LLP, Civ. A. No. 04-809, 2005 U.S. Dist. LEXIS 10156, at *4 (S.D. Ill. May 20, 2005)* (interpreting *Waeltz* as requiring fund to have "minimum contacts" with district to support exercise of personal jurisdiction before fund "may be found" in district under *29 U.S.C. 1132(e)(2)*). Additionally, in *Seitz v. Bd. of Trustees of the Pension Plan of the N.Y. State Teamsters Conference Pension & Retirement Fund, 953 F. Supp. 100 (S.D. N.Y. 1997)*, the court held that [HN9] a defendant is not "found" in a district under ERISA's statutory venue provision merely because contributing employers and retirees, other than the plaintiff, received benefits in the district. *Seitz, 953 F. Supp. at 102*. These holdings directly contradict Plaintiff's assertion that "the key issue is whether Defendants receive any contributions from employers or pay any benefits to employees who reside [*16] in this district." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 7.) The mere fact that "there are or were contributing employers and retirees receiving benefits in this district, other than the Plaintiffs, is not sufficient to satisfy the minimum contacts test . . . ." *Seitz, 953 F. Supp. at 102; see also Cross, 2005 U.S. Dist. LEXIS 17777, at *7-*8;*

*see also Waeltz, 301 F.3d at 810-11* (mere residence of plan participants in the district insufficient contact to determine that plan "may be found" in district). The Court also finds it important that the Collective Bargaining Agreement between the Union and the Association allows employers to contribute to the Plans only for work performed in Delaware and that participation in the Plans is limited to those individuals who are members of the Union in Delaware and otherwise qualify for participation. (Aug. 29, 2005 Ernsberger Dep. at 26-27; Defs.' Br. in Supp. of Mot. to Dismiss at 23-24; Ernsberger Aff. P 5.)

*Varsic* itself was limited to the conclusion that a fund's choice to participate with a union in a particular forum and to "undertake the fiduciary duty of receiving contributions [*17] and making payments *based upon work performed there*," is enough to support personal jurisdiction in that forum. *Varsic, 607 F.2d at 250* (emphasis added). Because the particular litigation in *Varsic* concerned the defendant's activities in the district, the court explicitly declined to decide exactly the issue presented in this case - whether the fund's contacts with the district were continuous and substantial enough to afford jurisdiction over litigation unrelated to the fund's activities within the forum. *Id. at 249*.

The Court is also unpersuaded by Plaintiff's reliance on *Cap v. Local 897 Labor-Management Health Fund, Civ. A. No. 86-3271, 1986 U.S. Dist. LEXIS 18531 (E.D. Pa. Oct. 27, 1986)*. Plaintiff relies on *Cap* for the proposition that "regularly receiving money from businesses and paying benefits to pensioners in the Eastern District of Pennsylvania, and negotiating with health care providers for covered medical care in this district" supports a finding that personal jurisdiction over Defendants is appropriate. (Pl.'s Br. in Opp'n to Mot. to Dismiss at 6.) However, when quoting from that decision, Plaintiff left [*18] out a key component of the court's decision, namely that

"permitting defendants to be sued in this district, *at least in litigation concerning care given in this district*, does no violence to the probable expectations of the parties." *Cap, 1986 U.S. Dist. LEXIS 18531, at *3*. Plaintiff's overly broad reading of *Cap* neglects to acknowledge that *Cap* involved litigation which arose from care provided in the district where the lawsuit was filed. In contrast, this case is entirely premised on activity that occurred outside of this District. Furthermore, unlike in *Cap*, neither of the Plans have negotiated contracts with Pennsylvania health care providers. (Ernsberger Aff. P 18.) Rather, prescription coverage is provided by a Missouri company and medical benefits are provided by BlueCross BlueShield of Delaware; these entities, and not the Plans, make payments to health care providers. (*Id.* PP 18-19; Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss Ex. D at 52-53 [Aug. 19, 2005 Ernsberger Dep.].)

Finally, Plaintiff argues that personal jurisdiction over Defendants exists here because Defendants have retained the services of an attorney who practices in the **[*19]** Eastern District of Pennsylvania as well as an actuarial firm located in this district. (*See* Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs. & Exs. L & M to Defs.' Am. Objections & Resps. to Pl.'s First Set of Interrogs.) Virtually no limits would exist on where a particular defendant could be forced to defend a lawsuit if merely hiring service providers was sufficient to confer general personal jurisdiction over a defendant. [HN10] The law in this Circuit is clear that the exercise of general jurisdiction over a defendant requires that "the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction." *Provident Nat'l Bank, 819 F.2d at 437* (citations omitted); *see also Hurley v. Cancun Playa Oasis Int'l Hotels, Civ. A. No. 99-574, 1999 U.S. Dist. LEXIS 13716, at *4 (E.D. Pa. Aug. 31, 1999)* (noting that standard for general jurisdiction is difficult to meet).

Here, Plaintiff resides in Delaware, any benefits received were to be received in Delaware and all decisions regarding this particular Plaintiff occurred in Delaware. The record before the Court also fails to demonstrate that Defendants have **[*20]** purposefully directed their business activities to this forum such that exercising general personal jurisdiction over the Defendants in this litigation is reasonable and consistent with traditional notions of fair play and substantial justice. Accordingly, Defendants have met their burden and demonstrated that venue is improper in the Eastern District of Pennsylvania. n3

> n3 Because this Court rules that venue is not proper in this District, the Court will not address the additional issues raised in Defendants' motion.

## B. Transfer Under 1406(a)

Defendants seek to dismiss this action because venue is improper; Plaintiff requests that should the Court determine that venue in this district is not proper, the case be transferred to the District of Delaware rather than dismissed.

Under *28 U.S.C § 1406(a)*, [HN11] "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case **[*21]** to any district or division in which it could have been brought." Although the Court's decision that venue is not proper in this district rests in part upon its ruling that it does not have personal jurisdiction over the Plans, this ruling does not prevent this Court from transferring the matter. *See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466, 8 L. Ed. 2d 39, 82 S. Ct. 913 (1962)* [HN12] ("The language of *§ 1406(a)* is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in

which it was filed had personal jurisdiction over the defendants or not.").

Clearly venue is proper in the District of Delaware since the alleged breach occurred in Delaware, the Plans are administered in Delaware and certainly the Plans may be found in Delaware. *See 29 U.S.C. § 1132(e)(2)*. Furthermore, as the individual Trustees all reside and work in Delaware, a federal court in Delaware can assert jurisdiction over the individual Trustees. Defendants have not asserted any reason to dismiss rather than transfer this case. Finally, as the statute of limitations appears to be an issue that will arise **[*22]** in this matter, the Court will exercise its discretion and in the interests of justice transfer this case to the District of Delaware pursuant to *28 U.S.C. § 1406(a). See Borel v. Pavichevich, Civ. A. No. 01-1395, 2001 U.S. Dist. LEXIS 20097, at *11 (E.D. Pa. Dec. 4, 2001)* (using discretionary powers to transfer when statute of limitations problems would arise from dismissal); *Feinzig v. Doyon Servs., Civ. A. No. 97-4638, 1998 U.S. Dist. LEXIS 5419, at *13 (E.D. Pa. Apr. 17, 1998)* (same); *Peek v. Golden Nugget Hotel & Casino, 806 F. Supp. 555, 560 (E.D. Pa. 1992)* (same); *Wims v. Beach Terrace Motor Inn, Inc., 759 F. Supp. 264, 270 (E.D. Pa. 1991)* (same).

## III. CONCLUSION

For the reasons set forth above, the Court denies Defendants' motion to dismiss based on improper venue but instead transfers this action to the District of Delaware under *28 U.S.C § 1406(a)*. Defendants' motions to dismiss the individual Trustees and dismiss certain named Defendant are denied as moot. Defendants' motion for leave to file a reply brief is denied as moot. Plaintiff's motion for **[*23]** sanctions is also denied as moot. An appropriate Order follows.

## ORDER

**AND NOW**, this **27th** day of **September, 2005**, upon consideration of Defendants' Motion to: [1] Dismiss Action Against Non-Existent Defendants, [2] Dismiss Action for Improper Venue, and [3] Dismiss Action Against Individual Trustees, Plaintiff's response thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendants' motion to dismiss for improper venue (Document No. 22) is **DENIED**.

2. Defendants' motion to dismiss the individual Trustees and dismiss certain named Defendants is **DENIED as moot**.

3. Plaintiff's motion for sanctions (Document No. 25) is **DENIED as moot**.

4. Defendants' motion for leave to file a reply brief (Document No. 29) is **DENIED as moot**.

5. This action is **TRANSFERRED** to the United States District Court for the District of Delaware.

**BY THE COURT:**

**Berle M. Schiller, J.**

LEXSEE

**In re: U.S. WIRELESS CORPORATION, INC., WIRELESS LOCATION
TECHNOLOGIES, INC., and WIRELESS LOCATION SERVICES, INC. Debtors.
THE LIQUIDATING TRUST OF U.S. WIRELESS CORPORATION, INC.,
WIRELESS LOCATION TECHNOLOGIES, INC., and WIRELESS LOCATION
SERVICES, INC., Plaintiff, v. NEERAJ BHATNAGAR, Defendant.**

**Chapter 11, Case Nos. 01-10262 through 01-10264 (PJW), Jointly Administered,
Adv. Proc. No. 03-55654 (PJW),**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
DELAWARE**

**2005 Bankr. LEXIS 2261**

**November 23, 2005, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff liquidating trust
sued defendant, a former participant in the debtors'
incentive program. The former participant realized
taxable income by exercising some options, but debtors
failed to properly deduct withholding taxes, and the trust
sought recovery of the tax amount. The participant
moved for judgment on the pleadings to dismiss the
trust's claims for breach of contract and unjust
enrichment.

**OVERVIEW:** Debtors were in the business of
developing a technology to locate mobile telephone
subscribers by recognizing patterns of radio waves. In the
bankruptcy, all causes of action of the debtors were
transferred to the liquidating trust. The participant refused
to reimburse the debtors for their payment of his tax
obligations. Much of the evidence referred to by the
parties was not relevant to the payment of income taxes.
The court found that the liquidating trust's claims did not
fail as a matter of law. The property in issue, withheld
taxes, belonged to the debtors and was, therefore,
potentially recoverable. The liquidating trust alleged
sufficient grounds to avoid and recover the transfer under
state and federal fraudulent transfer laws in addition to its
claims in contract or for unjust enrichment.

**OUTCOME:** The motion for judgment on the pleadings
was denied.

**CORE TERMS:** issuance, withholding taxes, stock,
unjust enrichment, collected, certificate, breach of
contract, matter of law, withheld, common stock, able to
prove, withholding, fraudulent transfer, optionee,

preempts, failure to state a claim, allegations contained,
entitled to judgment, ultimately prevail, transferred,
quotations, belonged, adversary proceeding, income tax,
tax law, registration, subscribers, credited, withhold,
taxing

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses,
Objections & Demurrers > Failure to State a Cause of
Action*
*Civil Procedure > Early Pretrial Judgments > Judgment
on the Pleadings*
[HN1] After the pleadings are closed, a party may move
for judgment on the pleadings under Fed. R. Civ. P.
12(c). At that stage a party may still move under Fed. R.
Civ. P. 12(b)(6) for failure to state a claim.

*Civil Procedure > Pleading & Practice > Defenses,
Objections & Demurrers > Failure to State a Cause of
Action*
*Civil Procedure > Early Pretrial Judgments > Judgment
on the Pleadings*
[HN2] Under Fed. R. Civ. P. 12(h)(2), a defense of
failure to state a claim may be made by a motion for
judgment on the pleadings. Thus, whether the motion is
before the court as a Fed. R. Civ. P. 12(b)(6) motion or a
Fed. R. Civ. P. 12(c) motion, the same standards apply
regardless of which type of motion is used.

*Civil Procedure > Pleading & Practice > Defenses,
Objections & Demurrers > Failure to State a Cause of
Action*

2005 Bankr. LEXIS 2261, *

*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*
[HN3] Under Fed. R. Civ. P 12(c), as under Fed. R. Civ. P. 12(b)(6), the trial court must view the facts in the pleadings in the light most favorable to the plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Further, the court should not grant the motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle that party to relief.

*Bankruptcy Law > Taxation > Claims Reserves & Creditor Trusts*
[HN4] See 26 U.S.C.S. § 7501.

**COUNSEL:** [*1] Counsel to Defendant: Frederick B. Rosner, Jaspan Schlesinger Hoffman LLP, Wilmington, DE.

Counsel to The Liquidating Trust of U.S. Wireless Corporation, et al.: Joanne B. Wills, Jennifer L. Scoliard, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Wilmington, DE.

**JUDGES:** Peter J. Walsh, United States Bankruptcy Judge.

**OPINIONBY:** Peter J. Walsh

**OPINION:**

### MEMORANDUM OPINION

**Walsh, J.**

In this adversary proceeding, defendant Neeraj Bhatnagar's ("Bhatnagar") motion (Adv. Doc. # 17) seeks judgment on the pleadings dismissing plaintiff Liquidating Trust of U.S. Wireless Corporation, Inc.'s ("Liquidating Trust") complaint. For the reasons set forth below, the defendant's motion for judgment on the pleadings will be denied.

### BACKGROUND

On August 29, 2001, U.S. Wireless Corporation, Inc., Wireless Location Technologies, Inc., and Wireless Location Services, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). n1 On April 9, 2003, the Debtors filed their Second Amended Consolidated Chapter 11

Plan of Liquidation (the "Plan"). On [*2] June 10, 2003, this Court confirmed the Plan and it became effective on June 25, 2003. Under the Plan, the estates of U.S. Wireless Corporation, Wireless Location Services, Inc., and Wireless Location Technologies, Inc. were substantively consolidated and pursuant to the Plan all causes of action of the Debtors were transferred to the Liquidating Trust.

> n1 Individual sections of the Bankruptcy Code will be cited herein as "§    ".

Prior to the petition, the Debtors were in the business of developing a technology to locate mobile telephone subscribers by recognizing patterns of radio waves radiating from a subscriber's handset. (Adv. Doc. # 1 P 6). To further this business and to provide an incentive to key employees, the Debtors entered into agreements with various employees affording them an opportunity to purchase a proprietary interest in the Debtors. (Adv. Doc. # 1 P 13). Specifically, these proprietary interests included stock options or restricted stock or both. Bhatnagar [*3] participated in this program and signed an incentive agreement, which granted him certain stock options. (Adv. Doc. # 1 P 13). During fiscal year 1999, Bhatnagar exercised those stock options. (Adv. Doc. # 1 P 17).

According to the complaint, Bhatnagar realized taxable income by exercising the options, but the Debtors failed to properly deduct withholding taxes from that income. (Adv. Doc. # 1 P 18). On August 28, 2001, realizing their apparent mistake, the Debtors paid on behalf of Bhatnagar withholding taxes in the amount of $ 80,474.29. (Adv. Doc. # 1 P 18, 28).

In October or November of 2001, the Debtors wrote a letter to Bhatnagar stating that a recent audit of the Debtors revealed that the companies had failed to withhold taxes in connection with his option transactions. (Adv. Doc. # 1 P 18). The letter also indicated that as a result of this failure, the Debtors had amended Bhatnagar's Form W-2 for the years 1999 or 2000 or both. (Adv. Doc. # 30 Kan. 1, 1 P 19). The letter further relayed that the Debtors had remitted the withholding taxes due but that Bhatnagar was the person responsible for the tax obligations. [*4] (Adv. Doc. # 1 PP 20, 21).

Bhatnagar did not reimburse the Debtors for Debtors' payment of his tax obligations. (Adv. Doc. # 30 Kan. 30, 1 P 27). As a result, on August 28, 2003, the Liquidating Trust filed this adversary proceeding alleging claims of unjust enrichment, breach of contract, and fraudulent transfer under federal and state law.

## DISCUSSION

### Standard Of Review

[HN1] After the pleadings are closed, a party may move for judgment on the pleadings under Rule 12(c). FED. R. CIV. P. 12(c). n2 At this stage, however, a party may still move under Rule 12(b)(6) for failure to state a claim. [HN2] FED. R. CIV. P. 12(h) (2) ("[a] defense of failure to state a claim . . . may be made . . . by a motion for judgment on the pleadings. . . ."). Thus, "whether the motion is before the court as a [Rule] 12 (b) (6) motion or a [Rule] 12 (c) motion, the same standards will apply to the resolution . . . regardless of which type of motion is used." Finch v. Hercules, Inc., 809 F. Supp. 309, 310 (D. Del. 1992) (quotations and citation omitted). "In fact, any distinction between them is [*5] merely semantic because the same standard applies to motions made under either subsection." 2-12 MOORE'S FEDERAL PRACTICE § 12.38 (Matthew Bender 3d ed.) (citations omitted); see, e.g., Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (applying the same standard as Rule 12(b)(6)).

> n2 Federal Rule of Civil Procedure 12 is applicable to matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7012.

[HN3] "Under Fed. R. Civ. P 12 (c), as under Rule 12(b) (6), the trial court must view the facts in the pleadings in the light most favorable to the plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986) (citation omitted). "The issue [*6] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (quotations and citation omitted). Further, the court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L.Ed.2d 80, 84, 78 S.Ct. 99, 102 (1957).

As discussed below, Bhatnagar has not shown that the Liquidating Trust's claims fail as a matter of law. The Liquidating Trust has pleaded sufficient facts to state a claim for unjust enrichment, breach of contract, and fraudulent transfer under both state and federal law. (Adv. Doc. # 1 PP 32-70). The issue here is not whether the Liquidating Trust will ultimately prevail on these claims, but only whether the plaintiff may put on evidence to support them. Maio v. Aetna, Inc., 221 F.3d

at 482.

### Unjust Enrichment

Bhatnagar argues that the Liquidating Trust cannot prove unjust enrichment because: first, the Liquidating Trust will not be able to prove that [*7] it made the transfer to the taxing authorities, (Adv. Doc. # 18, p. 3), second, the receipt of the transfer and "its application for the benefit of the Defendant is belied by the IRS Notice of Overpayment," (Adv. Doc. # 21, p. 6), third, the defendant paid his own taxes, (Adv. Doc. # 18, p. 3), and fourth, the Bankruptcy Code preempts the Liquidating Trust's claim of unjust enrichment, (Adv. Doc. # 18, p. 10).

The first contention states that the Liquidating Trust will ultimately not be able to prove that it made the transfer to the taxing authorities. Whether the Liquidating Trust will ultimately be able to prove this is a factual question not properly resolved on a motion for judgment on the pleadings. At this stage, this Court must accept the factual allegations contained in the complaint as true. Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 65, 104 S. Ct. 2229, 2232 (1994). The complaint alleges that on August 28, 2001 "the Debtors paid on behalf of the Defendant, the Withholding Taxes. . . ." (Adv. Doc. # 1 P 28). As such, the Liquidating Trust is entitled to put on evidence to prove this fact. Bhatnagar's assertion that such evidence [*8] will not, in the end, convince the fact finder is insufficient at this stage of the case.

The second contention, similarly, is not an appropriate means for resolving a motion for judgment on the pleadings. That contention asserts that a Notice of Overpayment issued by the IRS would tend to contradict the Liquidating Trust's allegation that the IRS received the transfer and that it applied the transfer to Bhatnagar's obligations. (Adv. Doc. # 18, p. 9). However, the Notice of Overpayment does not even reference Bhatnagar. (Adv. Doc. # 18, Exh. C). Thus, the notice cannot foreclose the Liquidating Trust's claim because the supposed overpayment could be with respect to withholding obligations of other employees. This, again, goes to the weight of the evidence and is insufficient to warrant a judgment on the pleadings.

In addition, Bhatnagar states that "the Internal Revenue Service has no record of that the alleged $ 80,474.29 ever was paid to the IRS or, more significantly, that it was received on behalf of and credited to Defendant." (Adv. Doc. # 18, pp. 7-8). Bhatnagar furnishes no documentation in support of that assertion. On a motion for judgment on the pleadings, this naked assertion [*9] cannot be given any weight.

The third contention is that Bhatnagar paid his own tax obligations. In support of this position, Bhatnagar has produced copies of his tax returns showing the computation and payment of taxes based upon his sale of the stock that he purchased pursuant to the options. As noted below, this information raises a tax law question not addressed by either party. In any event, contrary to this assertion, the complaint states that "at no time did Defendant pay directly to the IRS, appropriate state agency or the Debtors, the Withholding Taxes. . . ." (Adv. Doc. # 30 Kan. 30, 1 P 27). As stated, the Liquidating Trust's allegations must, at this stage, be accepted as true.

Finally, Bhatnagar's fourth contention asserts that § 546(e) of the Bankruptcy Code preempts the Liquidating Trust's unjust enrichment claim. On its face, that section has no application to the instant matter. See 11 U.S.C. § 546(e). Thus, Bhatnagar is not entitled to judgment as a matter of law on the claim of unjust enrichment.

Breach Of Contract

The Liquidating Trust also alleges sufficient grounds to support a claim of breach of contract. [*10] In an attempt to rebut this, Bhatnagar repeats many of the contentions rejected above. Bhatnagar, however, also raises an additional argument specific to the breach of contract claim.

That argument asserts that the Option Agreement requires the Debtors, and not the employee, to pay all taxes associated with the issuance of the option. Bhatnagar claims that this would include all income tax obligations. (Adv. Doc. # 18, pp. 10-11). To support this, Bhatnagar points to Paragraph 4 of the Option Agreement, which provides as follows:

> Issuance of Certificates. Upon the exercise of the Option, the issuance of certificates for the Common Stock shall be made forthwith (and in any even within three (3) business days thereafter) without charge to the Optionee including, without limitation, any tax which may be payable in respect of the issuance thereof; however, the Company shall not be required to pay any tax which may be payable in respect of any transfer involved in the issuance and delivery of any such certificates in a name other than that of the Optionee and the Company shall not be required to issue of deliver such certificates unless or until the person or persons requesting [*11] the issuance thereof shall have paid to the Company the amount of such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(Adv. Doc. # 18, Exh. E, pp. 1-5). In response, the

Liquidating Trust argues that the Option Certificate (rather than the Option Agreement) requires the Debtors to pay all charges relating to the transfer of the Option Certificate, except taxes. (Adv. Doc. # 23, Exh. A, p. 5). The Option Certificate reads as follows:

> Upon due presentment for registration of transfer of this Option certificate at any office or agency of the Company, a new Option Certificate of Option Certificates of like tenor and evidencing in the aggregate a like number of shares of Common Stock underlying the Option shall be issued to the transferee(s) in exchange for this Option Certificate, subject to the limitations provided herein and in the Option Agreement, without any charge except for any tax or other governmental charge imposed in connection with such transfer.

(Adv. Doc. # 18, Exh. E, pp. 6-7). From the above cited provisions, the Liquidating Trust concludes that the Option Agreement and the Option Certificate conflict [*12] and that there is a genuine issue of material fact in dispute, which is not properly resolved on this motion. (Adv. Doc. # 23, Exh. A, p. 5).

This Court respectfully disagrees with both the Liquidating Trust's and Bhatnagar's interpretations. The provision in the Option Agreement relates to the initial issuance of stock upon the exercise of the option, whereas the provision in the Option Certificate talks about the registration of a transfer of the Option Certificate. In other words, the Option Agreement discusses the issuance of stock certificates, while the Option Certificate relates to a transfer of the option itself. The complaint does not allege any tax liability arising out of the transfer of the option; thus, contrary to the Liquidating Trust's assertion, the above provision in the Option Certificate does not apply.

Similarly, the Court refuses to accept Bhatnagar's interpretation of the Option Agreement. Although the provision in the Option Agreement applies to the issuance of common stock, it cannot be read to apply to income tax obligations arising out of that issuance. The Option Agreement states that the issuance of the certificates of common stock will be made free of [*13] charge to the optionee. The provision includes taxes which "may be payable in respect of the issuance thereof." It seems clear that this clause does not contemplate income tax liabilities. Rather, the Court reads both the Option Agreement and Option Certificate to simply refer to federal, and perhaps state, stock transfer taxes.

Avoidance And Recovery Actions

In addition, the Liquidating Trust alleges sufficient grounds to avoid and recover the transfer under state and

Page 4

federal fraudulent transfer laws. Bhatnagar argues that the Liquidating Trust's avoidance and recovery actions must fail as a matter of law because of the reasons rejected above. Also, Bhatnagar adds that the Liquidating Trust cannot recover the transfer because the property transferred does not constitute property of the estate. (Adv. Doc. # 18, pp. 11-12).

Bhatnagar cites to Begier v. United States IRS, 878 F.2d 762 (3d Cir. 1989) aff'd 496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990), for the proposition that the Liquidating Trust's claims must fail because the funds transferred were not the property of the Debtors. Bhatnagar reasons that withholding taxes are necessarily [*14] trust fund taxes. As such, the property belonged to Bhatnagar or the IRS, and not the Debtors. (Adv. Doc. # 18, pp. 11-12).

Although Begier is similar to the instant matter in that it involves the payment of withholding taxes, the two are quite different. In Begier, the debtor had already collected the money from the employee. In contrast, the Debtors, in this case, allegedly never collected any funds from Bhatnagar. (Adv. Doc. # 30 Kan. 30, 1 P 27). Nonetheless, Bhatnagar suggests that it is the act of paying the withholding taxes that makes the obligation a trust fund tax obligation; the fact that the employer never collected the payment is supposedly irrelevant. (Adv. Doc. # 21, p. 2). Begier does not support such an interpretation, however. "Assume that a debtor owes an employee $ 100 for salary on which there is required withholding of $ 20. If the debtor paid the employee $ 80, there has been $ 20 withheld. If, instead, the debtor paid the employee $ 85, there has been withholding of $ 15 (which is not property of the debtor's estate in bankruptcy)." Begier, 496 U.S. at 61 (quoting S. REP. No. 95-1106, at 33 (1978). It follows that if the debtor [*15] paid the employee $ 100, there has been no withholding (or a balance of $ 0, which is not property of the debtor's estate in bankruptcy).

Moreover, the Internal Revenue Code provision that would create the applicable trust reads as follows:

> [HN4] Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.

26 U.S.C. § 7501 (emphasis added). Thus, the statute's own terms limit the trust to the amount so "collected or withheld." Since the Debtors never collected or withheld any money from Bhatnagar, no such trust could have been created. The property belonged to the Debtors and is, therefore, potentially recoverable.

## CONCLUSION

Bhatnagar's naked assertions that the allegations contained in the complaint are wrong as a matter of fact cannot be credited. Likewise, Bhatnagar's argument that the Liquidating Trust will ultimately not be able to prove the allegations is premature. The Liquidating Trust has set forth facts sufficient to support its claims. [*16] Bhatnagar's contention that the withholding taxes were not property of the estate is rejected. Similarly, Bhatnagar's defense that the § 546(e) somehow preempts the unjust enrichment claim is without merit.

Before concluding, it is worth noting that some of the disputed issues may arise from a misunderstanding as to when the taxable events occurred. Neither party addresses this tax law issue. The complaint takes the position that the taxable events occurred in 1999, when Bhatnagar exercised the options. (Adv. Doc. # 1 P 22). In contrast, Bhatnagar implicitly takes the position that the taxable events occurred only when he sold the stock, and not at the time he exercised the options. (Adv. Doc. # 18, p.7). A yet to be presented analysis of the underlying tax laws may sharpen the issues. At present, however, Bhatnagar has failed to rebut the factual allegations of the complaint. Thus, the Court will deny Bhatnagar's motion for judgment on the pleadings.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the defendant Neeraj Bhatnagar's motion (Adv. Doc. # 17) for judgment on the pleadings is DENIED.

Peter J. Walsh

United States Bankruptcy [*17] Judge

Dated: November 23, 2005

LEXSEE

**Barbara Young, etc., Plaintiff, v. Clantech, Inc., Defendant**

**Civil No. 87-4752**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**1988 U.S. Dist. LEXIS 4877**

**May 17, 1988; May 17, 1988, Filed**

**NOTICE:** [*1] NOT FOR PUBLICATION

**CORE TERMS:** statute of limitations, personal jurisdiction, civil action, venue, forum state, toll, prejudiced, decedent, western district, subject matter, reasons stated, choice-of-law, commencement, transferred, expiration, instituted, incorrect, answers to interrogatories, pursuit, expired

**OPINIONBY:**

FISHER

**OPINION:** FISHER, District Judge

Before the court is the motion of defendant, Clantech, Inc. ("Clantech"), to dismiss the complaint of Barbara Young, personal representative of James Young, deceased ("Young"), due to expiration of the appropriate statute of limitations, N.J.S.A. 2A:14-2. For the reasons stated herein, the motion is granted and the complaint dismissed with prejudice.

The facts of the matter are as follows. Plaintiff's decedent James Young was killed in an accident in Ontario, Canada, on August 29, 1983. At the time of the accident, the decedent was using a "phasing detector" manufactured by the defendant, a New Jersey corporation. Both decedent and plaintiff were residents of Ontario at the time of the accident.

In 1985 the plaintiff filed an action in the Circuit

Court of Wayne County, Michigan, in which Clantech was named as a defendant. n1 On August 28, 1985, the two-year statutes of limitations of both New Jersey and Ontario expired. On October 14, 1986, the Michigan state court dismissed plaintiff's complaint for lack of personal jurisdiction.

n1 There seems to be a dispute as to the date on which plaintiff filed her action in the Michigan state court system. The parties list various dates between 6/16/85 and 8/19/85, inclusive. It is not necessary for the court to determine the exact date of filing to resolve this motion.

[*2]

Prior to the dismissal of the Michigan complaint, on August 14, 1986, plaintiff had instituted a civil action in the United States District Court for the Western District of Washington. n2 On December 2, 1987, the Honorable Robert J. Bryan, United States District Judge, transferred the matter to this district under 28 U.S.C. § 1406(a). n3

n2 The State of Washington has a three-year statute of limitations.

n3 Title 28 U.S.C. § 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Although the statute addresses only cases in which venue is incorrect, the statute has been utilized where there is an obstacle in the original forum -- be it incorrect venue and/or an absence of personal jurisdiction -- to a prompt adjudication on the merits. Manly v. Enoram, 755 F.2d 1463, 1467 n.6 (11th Cir. 1985) (citing Dubin v. United States, 380 F.2d 813 (5th Cir. 1967).

Plaintiff's brief alleges that "defendant's lack of contacts in Michigan and Washington were obvious only

[*3] to defendant at the time of the service of process in Michigan and Washington, yet defendant led plaintiff to believe that it did have the required contacts in Michigan and Washington, to the detriment of plaintiff . . . ." The plaintiff laments that Clantech did not raise the defense of lack of personal jurisdiction when answering the Michigan complaint and did not do so for an additional seven months. For the purposes of this motion, however, this argument is irrelevant, as the pertinent statute of limitations had expired in August of 1985, several months before the original answer to the complaint was filed. Plaintiff states that she learned for the first time on July 30, 1986, when defendant returned answers to interrogatories, that there was no personal jurisdiction over the defendant in the Michigan court. The plaintiff had had almost two years, however, from the time of the accident to the filing of the complaint, during which to obtain information so vital to the pursuit of a civil action. From an examination of plaintiff's Michigan complaint, attached to defendant's reply brief as Exhibit A, it is evident that the plaintiff knew that she could have brought the action in New [*4] Jersey. Paragraph 2 of the complaint states that

at all times pertinent to those events giving rise to your plaintiff's cause of action, defendant was registered to do business in the State of New Jersey, such business was a manufacturing of electrical products for use around the country, including those in the State of Michigan and in the County of Wayne.

This rationale, however, did not entitle plaintiff to presuppose that the Manufacturer was subject to the personal jurisdiction of the forum state. See, generally, World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286 (1980). Any delay by defendant in asserting the defense of lack of personal jurisdiction was therefore not prejudicial to plaintiff. The requirement of minimum contacts with the forum state, first espoused in International Shoe Co. v. Washington, 326 U.S. 310 (1945), performs "two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." World-Wide Volkswagen, [*5] 444 U.S. at 291-92.

Nor was plaintiff prejudiced prior to her institution of her second civil action in the Western District of Washington. Once defendant had answered plaintiff's interrogatories during the course of the Michigan action, plaintiff should have known that defendant did not do business in the State of Washington. Defendant listed New Jersey as the only state "in which the corporation is qualified to do business," and defendant listed no states "in which the corporation under its present name or any

other name, operates or conducts business in any form whatsoever or has any agents or employees." The State of Washington was listed New Jersey as one of about 30 states "which has, or has ever had, any Clantech, Inc., products in use within that state." Defendant thus never informed plaintiff that it did business in the State of Washington. No representation made by defendant in its answers to interrogatories prejudiced plaintiff in any fashion.

When a 1406(a) transfer is granted, no matter the purpose behind the transfer or the party requesting it, the court to which the action is being transferred must apply the choice-of-law rules of the forum state. Ellis v. Great [*6] Southwestern Corp., 646 F.2d 1099, 1110 (5th Cir. 1981). "[W]here venue or jurisdiction is improper in the original forum, there is no sound reason for the choice-of-law rules of that forum to govern the controversy and its adjudication by the transferee court." 755 F.2d at 1467. The law of New Jersey now applies to this action. In Kaczmarek v. New Jersey Turnpike Authority, 77 N.J. 329 (1978), the New Jersey Supreme Court noted that "[o]rdinarily, the commencement of an action in a court which lacks jurisdiction of the subject matter will not toll the statute of limitations." Id. at 343 (citation omitted). As exception to this holding was once noted in this district:

The commencement of an action in a court which lacks jurisdiction over the subject matter will toll the statute of limitations if the court has the authority under the law to transfer the action to a court of competent jurisdiction.

Ellis v. Lynch, 106 F. Supp. 100, 102 (D.N.J. 1952) (citing Herb v. Pitcairn, 324 U.S. 117 (1945) and 325 U.S. 77 (1945)). See also Covington v. United States Dep't of Air Firce, 303 F. Supp. 1145, 1148 (N.D. Miss. 1969); Schafer v. Wegner, 78 Wis. 2d 127, 254 [*7] N.W.2d. 193, 197 (1977). In the case at bar, only the action brought in the Michigan state court system was filed before the expiration of the New Jersey statute of limitations, and that court did not have the authority to transfer the action to the proper court. Accordingly, the filing of the Michigan action within two years of the accident did not toll the statute.

For the reasons stated above, plaintiff has failed to show how the pursuit of her civil action was prejudiced. Since at least the time that the Michigan action was instituted, plaintiff knew that New Jersey was a proper and obvious forum in which to bring the action, yet failed to do so. Twice she has brought actions in courts lacking personal jurisdiction. Under these facts, the court concludes that plaintiff has been given enough chances. Defendant's motion to dismiss is therefore granted. An order accompanies this opinion. May 17, 1988.