## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Martha Jane Toy, individually, and as Executrix and Personal Representative of the Estate of Russell B. Toy, deceased, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 05-00760 (JJF) |
| Plumbers & Pipefitters Local Union No. 74 Pension Plan, Trustees of Plumbers & Pipefitters Local Union No. 74 Pension Plan, Health and Welfare Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74, Welfare Benefit Plan, Life Insurance Plan, Local 74, Insurance Plan, Administrators of Pension and Welfare Plans, Trustees of Plumbers & Pipefitters Local Union No. 74 Welfare Plan, Plan Administrator of Pension & Welfare Plans, Insurance Plans, and Health and Welfare Benefit Plan, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR
## ATTORNEY'S FEES UNDER 29 U.S.C. § 1132 (g)(1) AND/OR 28 U.S.C. § 1927

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Timothy J. Snyder (No. 2408)
Curtis J. Crowther (No. 3238)
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
(302) 571-1253/fax

*Attorneys for Defendants*

Dated: August 3, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

SUMMARY OF THE ARGUMENT ......................................................................... 6

STATEMENT OF FACTS ........................................................................................ 7

ARGUMENT ........................................................................................................... 11

I.     ATTORNEY'S FEES SHOULD BE AWARDED TO DEFENDANTS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO ERISA § 502(g)(1)..... 11

     A.     The offending party's culpability or bad faith. ........................................ 13

     B.     The ability of the offending parties to satisfy an award of attorney's fees. ........................................................................................ 16

     C.     The deterrent effect of an award of attorney's fees. ................................ 18

     D.     The benefit conferred upon members of the pension plan as a whole. ...... 19

     E.     The relative merits of the parties positions. ............................................. 20

II.     ATTORNEY'S FEES SHOULD BE AWARDED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. § 1927 ................................................................... 22

CONCLUSION ........................................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Anthuis v. Colt Indus. Operating Corp.,*
  971 F.2d 999 (3d Cir. 1992) ................................................................................. 12

*Gorin v. AMP, Inc.,*
  No. 03-2053, 2004 U.S. App. LEXIS 25228 (3d Cir. Dec. 8, 2004)....................................... 12

*Great West Life and Annuity Insurance Co. v. Knudson,*
  534 U.S. 204 (2002)............................................................................................. 20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  278 F.3d 175 (3d Cir. 2002) ........................................................................... 22, 23, 24

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*
  No. 01-2320, 2002 U.S. App. LEXIS 18062 (3d Cir. Sept. 3, 2002) ...................................... 12

*Loving v. Pirelli Cable Corporation,*
  11 F. Supp. 2d 480 (D. Del. 1998)................................................................... passim

*Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare and Pension
   Fund, et al.,*
  404 F.3d 797 (3d Cir. 2005) ............................................................... 12, 13, 17, 18

*McNaboe v. NVF Co.,*
  C.A. No. 97-558-SLR, 2002 U.S. Dist. LEXIS 21287 (D. Del. Oct. 31, 2002)............... passim

*McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc.,*
  33 F.3d 253 (3d Cir. 1994) ................................................................. 12, 13, 14, 19

*Monkelis v. Mobay Chemical,*
  827 F.2d 935 (3d Cir. 1987) ................................................................................ 14

*Murphy v. Hous. Auth. and Urban Redevelopment Agency of the City of Atlantic City,*
  2002 U.S. App. LEXIS 21626 (3d Cir. Oct. 16, 2002)................................................. 22, 23, 24

*Ryan v. Asbestos Workers Union
   Local 42 Pension Fund,*
  C.A. No. 97-604 GMS, 2002 U.S. Dist. LEXIS 5440 (D. Del. Jan. 31, 2002) ...................... 12

*Skretvedt v. EI DuPont de Nemours,*
  No. 03-2805, 2004 U.S. App. LEXIS 8158 (3d Cir. Apr. 23, 2004)......................................... 12

*Syed v. Hercules, Inc.,*
  214 F.3d 155 (3d Cir. 2000) ................................................................................ passim

iii

061011.1008

*Ursic v. Bethlehem Mines,*
  719 F.2d 670 (3d Cir. 1983) ........................................................ 12, 13, 14, 20

**Statutes**

28 U.S.C. § 1404 ........................................................................ 3, 4, 5, 16, 24

28 U.S.C. § 1406 .................................................................................. passim

28 U.S.C. § 1927 ............................................................................ 5, 6, 10, 22

29 U.S. C. § 1132(a)(3) ................................................................... 3, 20, 21

29 U.S.C. § 1132(g)(1) ....................................................................... passim

29 U.S.C. § 1132(g)(2) .................................................................................. 11

Fed. R. Civ. P. 30(b)(6) ................................................................................. 8

**Other Authorities**

*Blacks Law Dictionary* 952 (7th ed. 1999) .......................................... 12, 13

DB02:5443597.9

061011.1008

## NATURE AND STAGE OF THE PROCEEDINGS

This was an action arising out of the Employment Retirement Income Security Act of 1974 ("ERISA"). The instant action was originally commenced on April 20, 2005 when Martha Jane Toy, individually, and as Executrix and Personal Representative of the Estate of Russell B. Toy, deceased (collectively "Plaintiff"), filed a four count complaint in the Eastern District of Pennsylvania against Plumbers & Pipefitters Local Union No. 74 Pension Plan ("Pension Plan"), and Plumbers and Pipefitters Local Union No. 74 Welfare Plan ("Welfare Plan") (jointly "Funds") and the Trustees and Plan Administrators of the Funds (collectively "Trustees")[1] (the Funds and Trustees collectively referred to as "Defendants") alleging (1) wrongful denial of pension benefits under the Pension Fund; (2) wrongful denial of medical benefits under the Welfare Fund; (3) wrongful denial of life insurance benefits under the Welfare Fund; and (4) breach of fiduciary duty. (Complaint ¶¶ 8-25.)

This present action relates to another case that was brought before and dismissed by the Eastern District of Pennsylvania ("Related Complaint"). The Related Complaint was filed September 10, 2004 and included Richard Sigmond, Esquire ("Mr. Sigmond") as a named defendant. In an attempt to create venue where none existed, the Related Complaint claimed that Mr. Sigmond was the plan administrator even though counsel for Plaintiff knew that Mr. Sigmond was merely the attorney for the Funds. Mr. Sigmond is an attorney with an office located in Philadelphia, Pennsylvania. The Related Complaint was dismissed, with prejudice, by the Eastern District of Pennsylvania during a status conference on November 1, 2004. The only defendant that Plaintiff had actually served with the Complaint was Mr. Sigmond. Plaintiff appealed the dismissal of the Related Complaint to the Third Circuit Court of Appeals. Through

---

[1] The Trustees are designated as the Plan Administrator. (Complaint ¶ 7.)

the mediation program established by the Third Circuit, the parties agreed that Plaintiff would

dismiss the appeal.  In exchange, the Defendants agreed to toll the statute of limitations from the

date the Related Complaint was filed, September 10, 2004, and not raise the doctrine of res

judicata as a defense to any subsequent complaint.  Thereafter, the Plaintiff filed the instant

action in the Eastern District of Pennsylvania.

        Defendants filed a motion to dismiss the action because the Eastern District of

Pennsylvania lacked personal jurisdiction over the Defendants and venue was otherwise

improper in the Eastern District under ERISA.  In this first motion to dismiss, Defendants raised,

as an alternative to dismissal, the issue of a transfer under § 1406 and argued that Delaware law

would apply to the action since the Plaintiff's claims were brought in an improper venue.

Plaintiff requested that the Court permit discovery relating to the venue issue and the court

thereafter denied the motion to dismiss, without prejudice.

        Plaintiff then commenced and undertook extensive discovery of Defendants

relating to venue.  At the conclusion of the discovery period set by the court, Defendants filed a

new motion to dismiss for improper venue under ERISA.  Plaintiff, in response to the motion to

dismiss, requested that the court not dismiss, but transfer venue to Delaware.

        On September 28, 2005, the case was transferred under 28 U.S.C. § 1406(a) to the

District of Delaware because the District Court for the Eastern District of Pennsylvania

determined that it lacked personal jurisdiction over the Defendants and venue was, in fact,

improper in the Eastern District of Pennsylvania.

        On October 6, 2005, Defendants' counsel sent Plaintiff's counsel a letter

requesting that Plaintiff voluntarily dismiss the action since the Delaware statute of limitations

barred the action.  (Letter from Curtis J. Crowther, Esquire to William B. Hildebrand, Esquire

2

dated October 6, 2005, attached hereto as Exhibit A.) The October 6, 2005 letter was sent to

William B. Hildebrand, Esquire ("Mr. Hildebrand") via facsimile and regular mail and was also

sent to John M. Stull, Esquire ("Mr. Stull", jointly with Mr. Hildebrand "Plaintiff's Counsel")

via facsimile. Plaintiff's Counsel did not dismiss the action.

Thereafter, on November 7, 2005, Defendants filed an Answer to the Complaint,

denying the material allegations set forth in the Complaint as well as raising certain affirmative

defenses including failure to state a claim upon which relief may be granted and the statute of

limitations. (D.I. 38.)

Defendants then filed a Motion to Dismiss and for Partial Summary Judgment

("Motion to Dismiss") on December 5, 2005 on the grounds that (a) certain named defendants

simply did not exist, (b) the Delaware statute of limitations for the denial of benefits in an

ERISA action barred Counts I, II, and III of the Complaint, and (c) ERISA § 502(a)(3) did not

allow for monetary relief and therefore, Count IV of the Complaint failed to state a claim upon

which relief may be granted. (D.I. 41.) On December 12, 2005, Defendants filed a Motion to

Stay Discovery pending the resolution of the case dispositive Motion to Dismiss. (D.I. 43.)

On December 16, 2005, Plaintiff filed a Motion for Rule 16 Scheduling Order

Pursuant to Order of November 16, 2005, Response to Defendants' Motion to Stay Discovery,

and Response to Defendants' Motion to Dismiss and for Partial Summary Judgment. (D.I. 45.)

Plaintiff's December 16, 2005 filing never addressed any of the relevant or pertinent issues,

including the distinction between a transfer under § 1404 and § 1406. Instead, Plaintiff's

Counsel incorrectly stated that the District Court for the Eastern District of Pennsylvania "denied

[Defendants'] motions to dismiss [filed in the Eastern District of Pennsylvania] and instead,

retained jurisdiction and transferred the action to [the District of Delaware] pursuant to 28 U.S.C.

3

§ 1406(a)." (Plaintiff's Motion for Rule 16 Scheduling Order Pursuant to Order of November 16, 2005, Response to Defendants' Motion to Stay Discovery, and Response to Defendants' Motion to Dismiss and for Partial Summary Judgment at 4.) In reality, as established by well settled law as presented to the Court by Defendants, a transfer under § 1406 makes applicable the laws of the transferee state. Despite all of the case law and analysis on the distinction between a transfer under § 1404 and § 1406 put forth by Defendants in their Opening Brief in Support of their Motion to Dismiss (and which had previously been addressed in the first motion to dismiss filed when the case was pending in the Eastern District of Pennsylvania), Plaintiff's Counsel never once addressed the importance of the distinction, but rather stated in a conclusory manner: "To transfer an action under 28 U.S.C. Sec. 1406(a) the Court assumed jurisdiction over these proceedings by its exercise of discretion to so transfer. By exercise of jurisdiction and act of transfer, the statute of limitations for Pennsylvania in ERISA actions was implicated by such jurisdictional acts." (*Id.* at 11-12.) In support of this position, Plaintiff's Counsel cited two U.S. Supreme Court cases, both of which clearly discussed transfer under § 1404 and not § 1406. Plaintiff's Counsel's refusal and utter failure to properly investigate or understand the relevant distinction in federal procedural law forced repetitious litigation and unnecessary attorney's fees to be incurred by Defendants.

Plaintiff's Counsel also demanded discovery concerning non-existent defendants despite the fact that Defendants conceded that the Pension Plan and Welfare Plan would be the only parties responsible for any monetary judgment for Plaintiff. The only reason for Plaintiff's Counsel's failure to voluntarily dismiss the action against the non-existent defendants was to force further litigation and unnecessary expenses upon Defendants and to otherwise attempt to cure Plaintiff's Counsel's failure to timely commence an action in Delaware.

4

On December 22, 2005, Defendants filed a reply brief in support of the Motion to Dismiss. (D.I. 46.) Defendants again explained the distinction between a transfer under §1404 and §1406. Plaintiff's Counsel still did not voluntarily dismiss the action.

On July 21, 2006, this Honorable Court issued a Memorandum Opinion (D.I. 47) and Order (D.I. 48) entering summary judgment in favor of Defendants and against Plaintiff on Counts I, II and III of the Complaint as being barred by the statute of limitations in Delaware and dismissing Count IV for failure to state a claim upon which relief may be granted (the "Dismissal Order"). In essence, the Dismissal Order agreed with each substantive position advanced by the Defendant's in support of the Motion to Dismiss. Also on July 21, 2006, after the entry of the Court's Dismissal Order, Plaintiff's counsel wrote a letter to the Court requesting a scheduling order be entered. On July 26, 2006, this Honorable Court issued a Final Judgment in favor of Defendants and against Plaintiff on all of Plaintiff's claims. (D.I. 50.)

This is the opening brief of the Defendants in support of their motion for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) (ERISA § 502(g)(1)) and 28 U.S.C. § 1927 based on the conduct of Plaintiff's counsel.

5

## SUMMARY OF THE ARGUMENT

This Honorable Court should award attorney's fees in favor of Defendants and against John M. Stull, Esquire, Law Offices of John M. Stull, Esquire, William B. Hildebrand, Esquire, and Law Offices of William B. Hildebrand, L.L.C. because their conduct throughout this litigation as well as the failure to voluntarily dismiss this action despite notice and knowledge that the applicable statute of limitations barred this action satisfy the requirements for an award of attorney's fees pursuant to ERISA § 502(g)(1) and 28 U.S.C. § 1927.

DB02:5443597.9                                        061011.1008

## STATEMENT OF FACTS

Individual plaintiff, Martha J. Toy ("Toy"), is the widow of Russell B. Toy ("Russell"). (Complaint ¶ 3.) Russell was a resident of Delaware, was employed in Delaware and a member of the Plumbers & Pipefitters Local Union No. 74 ("Union") in Delaware. Toy continues to receive fifty percent (50%) of Russell's disability pension benefits on a monthly basis at her home in Hartley, Delaware. Mr. Stull is a Delaware attorney with an office in Wilmington, Delaware. Mr. Stull represented Russell during the entire benefits application and appeals process. Mr. Stull also, through his then office-mate who was a member of the Pennsylvania bar, brought the Related Complaint in the Eastern District of Pennsylvania on September 10, 2004 on behalf of the Plaintiff. The Pension Plan, the Welfare Plan and the Union are all found in Delaware. The Plan Administrator, GemGroup, the third party administrator of the Pension Plan and Welfare Plan maintain an office in Claymont, Delaware. The individual Trustees all reside in Delaware. Mr. Sigmond, counsel to the Funds, is an attorney with an office located in Philadelphia, Pennsylvania. Mr. Stull knew that Mr. Sigmond was counsel to the Funds because Mr. Stull had been corresponding with Mr. Sigmond during the denial of benefits process and subsequent administrative appeal.

The question that begs to be answered in this case is: Why would a Delaware attorney bring suit on behalf of a Delaware plaintiff against Delaware Defendants in Pennsylvania? The answer is simple and two fold: (a) Mr. Stull was the attorney of record in the Third Circuit action that established the one-year Delaware statute of limitations for ERISA benefits actions[2]; and (b) Mr. Stull was likely aware that he had missed the deadline for filing an action under the applicable statute of limitations when he filed the Related Complaint in the

---

[2] *Syed v. Hercules, Inc.*, 214 F.3d 155 (3d Cir. 2000).

Eastern District of Pennsylvania trying to capitalize on the longer statute of limitations in Pennsylvania. By claiming that Mr. Sigmond was the administrator of the Funds and naming Mr. Sigmond as a defendant, Mr. Stull had attempted to fabricate venue in Pennsylvania.

After the Related Complaint was originally dismissed for bringing a claim against the wrong party (Mr. Sigmond) and failure to serve any other defendants, Mr. Stull associated himself with Mr. Hildebrand. Together[3], Mr. Stull and Mr. Hildebrand re-filed the Complaint in April 2005 in the Eastern District of Pennsylvania, alleging substantially the same grievances as was alleged in the Related Complaint. Accordingly, the Defendant was forced to defend against a case brought in a fabricated venue in a thinly-veiled attempt to capitalize on Pennsylvania's longer statute of limitations.

Extensive litigation ensued as a result of the April 2005 Complaint. Defendants filed a Motion to Dismiss for improper venue, and, *inter alia*, requested a transfer pursuant to §1406 since venue was improper in the Eastern District of Pennsylvania. Defendants specifically discussed the applicability of the Delaware statute of limitations. Plaintiff's Counsel demanded discovery on the venue issue. The District Court for the Eastern District of Pennsylvania permitted Plaintiff to conduct discovery on the venue issue, and Plaintiff's Counsel was permitted to conduct, not one, but two depositions pursuant to Fed. R. Civ. P. 30(b)(6). Defendants also had to collate and provide to Plaintiff substantial amounts of information and data, including, *inter alia*, Pension Plan and Welfare Plan participant lists and contact information for employer contributors to the Pension Plan and Welfare Plan along with other

---

[3] Although Mr. Hildebrand was the only attorney of record in the April 2005 action in the Eastern District of Pennsylvania, Mr. Stull was an active participant, attending depositions and advocating and arguing for the Plaintiff at such depositions.

8

benefit and payment information relating to the Pension Plan and Welfare Plan spanning a number of years.

Thereafter, Defendants were forced to file a second Motion to Dismiss the action for improper venue. The District Court for the Eastern District of Pennsylvania agreed with Defendants' position that venue did not exist in Pennsylvania, and, as a result, transferred the action to the District of Delaware.[4] The court made it clear in the transfer Order that such transfer was pursuant to 28 U.S.C. § 1406 since Plaintiff had brought suit in an improper venue.

Once the action was transferred to the District of Delaware, Defendants' counsel again asked Plaintiff's Counsel to voluntarily dismiss the case. Through a letter sent to both Mr. Stull and Mr. Hildebrand, Defendants' counsel again requested a voluntary dismissal because (a) Pennsylvania was an improper venue, (b) a transfer under § 1406 applies the transferee court's laws, and (c) the statute of limitations in Delaware (as the transferee jurisdiction) for ERISA benefits actions barred Plaintiff's claims. Even through Plaintiff was directly confronted with the facts and law once again, Plaintiff's Counsel still did not voluntarily dismiss the case. Forced to continue defending against the meritless litigation, Defendants' filed the Motion to Dismiss.

Defendants' Opening and Reply Briefs in Support of the Motion to Dismiss and for Partial Summary Judgment again outlined the relevant facts and law: this was an action brought by a Delaware lawyer for a Delaware plaintiff against Delaware defendants, and the Delaware statute of limitations, as the law that applies pursuant to a transfer under § 1406, barred Plaintiff's claims. Astonishingly, Plaintiff's Counsel still did not voluntarily dismiss the case

---

[4] Plaintiff had requested that the case not be dismissed, but rather transferred to Delaware in the event that it was determined that venue was improper in Pennsylvania. In light of Plaintiff's argument that Pennsylvania law still applied in response to the Motion to Dismiss filed by the Defendant in the Delaware action, it is abundantly clear that counsel's purpose in bringing the

9

and failed to address the actual provision (§ 1406) stated as the reason for transfer in the Eastern District of Pennsylvania's transfer Order, instead simply concluding that Pennsylvania law should still apply.[5] In addition, Plaintiff's Counsel never actually substantively responded to Defendants' contention that Count IV of the Complaint stated a claim for monetary relief that was prohibited by ERISA and therefore failed to state a claim upon which relief may be granted as a matter of law.

Defendants have expended a total of $63,128.20 on attorneys' fees in connection with defending the Pennsylvania action including two motions to dismiss for lack of venue and responding to extensive fact discovery undertaken by Plaintiff. Defendants' counsel billed a total of 368.50 hours on the Pennsylvania action for an average billable rate of $171.31 per hour. In addition, Defendants have expended a total of $21,643.10 on attorneys' fees in the Delaware action including the filing and briefing of the Motion to Dismiss. Defendants' counsel billed a total of 135 hours on the Delaware action for an average billage rate of $160.32 per hour.[6] Pursuant to ERISA § 502(g)(1) and/or 28 U.S.C. § 1927, this Honorable Court should award $84,771.30 for Defendants and against Plaintiff's Counsel for the vexatious and protracted litigation that was a direct result of Plaintiff's Counsel's actions (or inactions) and caused

---

action in Pennsylvania was solely to attempt to take advantage of Pennsylvania's longer statute of limitations.
[5] Once again, the real motive for forcing Defendants to defend against the case brought in an improper venue in Pennsylvania, and for the continued protracted litigation in Delaware becomes evident: Plaintiff was attempting to bootstrap Pennsylvania law into this clearly Delaware matter.
[6] All of the attorney's fees data is as of July 21, 2006 (the date the Court issued the Memorandum and Order). In the event the Court determines that an award of attorney's fees is warranted in this case, Defendants will submit copies of invoices (with necessary redactions) together with an appropriate affidavit for review by Plaintiff's Counsel and the Court to the extent there are any issues as to the reasonableness of any of the attorney's fees.

10

Defendants to expend unnecessary resources due to Plaintiff's Counsel's failure to timely bring

an action within the one-year statute of limitations in Delaware.

## ARGUMENT

### I. ATTORNEY'S FEES SHOULD BE AWARDED TO DEFENDANTS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO ERISA § 502(g)(1)

Under ERISA, the district court has discretion to award attorney's fees and costs

to either party in the action.  ERISA § 502(g)(1) (29 U.S.C. § 1132(g)(1)) states: "[i]n any action

under this subchapter (other than an action described in paragraph (2)) [7] by a participant,

beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and

costs of action to either party."  The District Court for the District of Delaware and the Third

Circuit Court of Appeals have consistently upheld the ability of a district court to apply §

---

[7] ERISA § 502(g)(2) does not apply in the present action because it does not involve an action by a fiduciary.  §502(g)(2) states:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

11

502(g)(1) to award attorney's fees to a prevailing party.[8]  The purpose of § 502(g) "is to uphold

the general purpose of ERISA by protecting pension benefits" and "intended to deter conduct

that does not fulfill the purpose of ERISA." *Loving v. Pirelli Cable Corporation*, 11 F. Supp. 2d

480, 498 (D. Del. 1998).

        In determining whether a party should be awarded attorney's fees under ERISA §

502(g)(1), courts have applied the five factor *Ursic* test. *Ursic v. Bethlehem Mines*, 719 F.2d 670

(3d Cir. 1983). The five *Ursic* factors are: 1) the offending party's culpability or bad faith; 2) the

ability of the offending parties to satisfy an award of attorney's fees; 3) the deterrent effect of an

award of attorney's fees; 4) the benefit conferred upon members of the pension plan as a whole;

and 5) the relative merits of the parties' positions. The lodestar[9] method will usually be used to

determine the total amount of attorney's fees.[10]  Once the Court determines an award of

---

[8] *See e.g. Martorana v. Bd. of Trs. of Steamfitters Local Union 420 Health, Welfare and Pension Fund, et al.*, 404 F.3d 797 (3d Cir. 2005); *Gorin v. AMP, Inc.*, No. 03-2053, 2004 U.S. App. LEXIS 25228 (3d Cir. Dec. 8, 2004); *Skretvedt v. EI DuPont de Nemours*, No. 03-2805, 2004 U.S. App. LEXIS 8158 (3d Cir. Apr. 23, 2004); *McNaboe v. NVF Co.*, C.A. No. 97-558-SLR, 2002 U.S. Dist. LEXIS 21287 (D. Del. Oct. 31, 2002); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, No. 01-2320, 2002 U.S. App. LEXIS 18062 (3d Cir. Sept. 3, 2002); *Ryan v. Asbestos Workers Union Local 42 Pension Fund*, C.A. No. 97-604 GMS, 2002 U.S. Dist. LEXIS 5440 (D. Del. Jan. 31, 2002); *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480 (D. Del. 1998) (granting attorney's fees under ERISA § 502(g)(1) charged to party's counsel); *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc.*, 33 F.3d 253 (3d Cir. 1994) (reversing district court's order denying attorney's fees and remanding for further proceedings on the issue); *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999 (3d Cir. 1992) (reversing district court's order denying attorney's fees and remanding for further proceedings on the issue); *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983).

[9] A lodestar is defined as "[a] reasonable amount of attorney's fees in a given case, usu. [sic] calculated by multiplying a reasonable number of hours worked by the prevailing hourly rate in the community for similar work, and often considering such additional factors as the degree of skill and difficulty involved in the case, the degree of its urgency, its novelty, and the like." *Blacks Law Dictionary* 952 (7th ed. 1999).

[10] "When determining the amount of reasonable attorney's fees to award under § 502(g), the Third Circuit has stated that a 'twin inquiry into reasonableness' is required. The court must look into both a 'reasonable hourly rate and a determination of whether it was reasonable to expend the number of hours in a particular case.'" *Loving*, 11 F. Supp. 2d at 498.

attorney's fees is appropriate, and determines the lodestar amount to award, the court is required

to explain the basis of that award of attorney's fees. *Ursic*, 719 F.2d 670 at 675.[11] The district

court must articulate its decision to award attorneys fees based on each of the five *Ursic* factors.

*McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 254 (3d Cir. 1994);

*Martorana*, 404 F.3d 797 at 805. All five factors are met in this case and an award of attorney's

fees is warranted.

### A.     The offending party's culpability or bad faith.

In determining the offending party's culpability or bad faith in bringing or

sustaining a claim, courts have looked at all aspects of the claim and not just ulterior motives.

The Third Circuit has held that

> The first Ursic factor favors an award to the prevailing party not
> only in cases involving 'bad faith' but in other cases as well …
> [B]ad faith normally connotes an ulterior motive or sinister
> purpose. A losing party may be culpable, however, without having
> acted with an ulterior motive. In a civil context, culpable conduct
> is commonly understood to mean conduct that is "blameable;
> censurable; … at fault; involving the breach of a legal duty or the
> commission of a fault … Such conduct normally involves
> something more than simple negligence … [On the other hand, it]
> implies that the act or conduct spoken of is reprehensible or wrong,
> but not that it involves malice or a guilty purpose.

*McPherson*, 33 F.3d 256-57 *citing Black's Law Dictionary* (6th ed. 1990).

In *McPerherson*, the Third Circuit held that the district court properly weighed

the first *Ursic* factor in favor of an award of attorney's fees against the defendants and properly

weighed the second *Ursic* factor against plaintiff. However, the Third Circuit held that the

district court committed an error in determining that the first, third and fifth *Ursic* factors

weighed against an award. This is because an offending party need not have a sinister or ulterior

---

[11] "We require that district courts, in applying the proper standards, set forth the specific reasons underlying the award – what the Supreme Court has described as the need to 'provide a concise

motive in order to have acted in bad faith. In reaching this conclusion, the court noted that "it

will further the objectives of ERISA if fee awards are employed to deter behavior that falls short

of bad faith conduct. Even if the [defendants] did not act in bad faith, the district court should

have considered whether it would serve the objectives of ERISA to award counsel fees in an

effort to deter conduct of the kind in which the [defendants] engaged." *Id.* at 258.

Similarly, this Court has found that a plaintiff satisfied this *Ursic* element even

when there was no bad faith. *McNaboe*, 2002 U.S. District LEXIS 21287 at *11-12. The Court

in *McNaboe* held that "while perhaps not rising to the level of bad faith, [plaintiff's conduct] is

certainly culpable. Plaintiff adhered to his virtually untenable ERISA claim until trial and

required NVF to expend resources defending against it." *Id.* at *12.

Most notably, the court in *Loving* found that this first factor weighed against Mr.

Stull where he brought a claim that was barred by res judicata. *Loving v. Pirelli Cable*

*Corporation*, 11 F. Supp. 2d 480 (D. Del. 1998). "[T]he court concludes that although Stull did

not have an 'ulterior motive or sinister purpose,' his conduct is 'blameable,' and 'reprehensible.'

Accordingly, the first factor weighs in favor of an award of attorney's fees against Stull." *Id.* at

496. At least one other court has granted an award of attorney's fees where the claim was time

barred. *Monkelis v. Mobay Chemical*, 827 F.2d 935 (3d Cir. 1987). The court in *Monkelis* held:

> The evidence demonstrates that Monkelis' ERISA claim was time
> barred and substantively without merit. Monkelis has failed to set
> forth any specific factors to support his claim that he was
> terminated to prevent his pension from vesting. This failure is
> particularly egregious since it was established that, at the time of
> his termination, Monkelis had only been employed by Mobay
> Chemical for approximately four years and had five years
> remaining before his pension would vest.

*Id.* at 936.

---

but clear explanation of its reasons for the fee award.'" *Ursic*, 719 F.2d 670 at 675.

It is clear that Plaintiff's Counsel's actions arise to the requisite level of culpability in this case. This case was originally filed in Pennsylvania for no reason other than the fact that Plaintiff's Counsel missed the Delaware statute of limitations deadline. Mr. Stull was the attorney of record in the case that determined the one-year statute of limitations applies to ERISA actions in Delaware. Interestingly, against that backdrop, Plaintiff's Counsel then filed an action in the Eastern District of Pennsylvania on behalf of a Delaware resident against Delaware Plans and Delaware Trustees. In order to fabricate venue, Mr. Stull named Mr. Sigmond, counsel to the Funds, as a defendant in the Related Complaint, with full knowledge that Mr. Sigmond was not, in fact, the plan administrator. After receiving a motion to dismiss for improper venue in the re-filed Pennsylvania action, Plaintiffs requested discovery on the venue issue. Accordingly, Defendants were forced to undertake expensive discovery proceedings.

Thereafter, Defendants had to file a new motion to dismiss for improper venue incorporating all the information and data provided in discovery. All of this effort was necessitated solely because Plaintiff's Counsel both failed to meet the Delaware statute of limitations and failed to recognize that there was no basis to commence an action in the Eastern District of Pennsylvania in a case involving only a Delaware plaintiff and Delaware defendants. Plaintiff's Counsel had ample time and opportunity to research the case law and their refusal to do so rises to the level of culpability envisioned by the statute to establish bad faith. Moreover, it appears the true motivating factor for the commencement of the action in the Eastern District of Pennsylvania, as evidenced by the continued assertions by Plaintiff's Counsel that Pennsylvania law applied to the case even after the transfer to Delaware under § 1406, was a convoluted attempt to cure the failure of Plaintiff's Counsel to timely file an ERISA action in Delaware.

15

Mr. Stull was on notice that Plaintiff's claims were time barred by the applicable statute of limitations in Delaware. Mr. Stull was the attorney of record in the case establishing that statute of limitations. *Syed v. Hercules, Inc.*, 214 F.3d 155 (3d Cir. 2000). The law is equally clear that a transfer under § 1406(a) makes applicable the law of the transferee state (Delaware), not the transferor state's law (Pennsylvania) as would have applied if the transfer was made pursuant to 28 U.S.C. § 1404. It is also settled law that the statute of limitations for Plaintiff's claims in Delaware bars the action, even with a relation back date to the date of the original complaint in the Eastern District of Pennsylvania.[12] Thus, this factor weighs in favor of an award of attorney's fees.

**B.    The ability of the offending parties to satisfy an award of attorney's fees.**

The Court must also determine whether the offending party has the ability to satisfy an award of attorney's fees. In *McNaboe*, this Court found that the plaintiff had the ability to satisfy the award of attorney's fees based on the plaintiff's salary while he was at the defendant company and based on evidence of his subsequent salary at his next job. *McNaboe*, 2002 U.S. District LEXIS 21287 at *12. The court in *Loving* gave no weight to this second factor since neither party presented any evidence on whether the offending party had the ability to satisfy the award of fees. *Loving*, 11 F. Supp. 2d 480 at 496.

A court, in its discretion, may impose the award of attorney's fees on the offending party's attorney, instead of the party itself. In this case, Defendants are specifically requesting an award of fees against Plaintiff's counsel. In *Loving*, the court granted defendants' motion for attorney's fees and costs against Mr. Stull. 11 F. Supp. 2d 480. In doing so, the court stated, "[a]n award of attorney's fees and costs under § 502(g) can be assessed against either a

---

[12] The original complaint was filed on September 10, 2004. The parties agreed to dismiss the appeal of the case and allow Plaintiff to re-file against correct defendants and maintain the

16

party **or an attorney**." *Id.* at 495 (emphasis added). The *Loving* court looked to other cases to

support the assessment of fees against the attorney, noting that

> One court assessed fees pursuant to § 502(g) against both the
> attorney and the plaintiff. The court assessed the majority of the
> fees against the attorney, and stated that
>
>> counsel's responsibility is clear. He
>> had the responsibility to assess the
>> facts in light of the law. Counsel
>> presumably has been trained to make
>> this legal analysis and to reach an
>> emotional, rational conclusion about
>> the merits of plaintiff's claims. After
>> doing so, if there were no reasonable
>> basis for believing that plaintiff was
>> unlawfully denied employee welfare
>> benefits, counsel should have used
>> his best effort to convince plaintiff to
>> conclude the case.
>
> Accordingly, the court will evaluate whether to award attorney's
> fees and costs against either [plaintiff] or Stull, or both.

*Id.* (internal citations omitted).

The Third Circuit reversed an award of attorney's fees in a case where the district

court did not give enough weight to whether the plaintiff had the ability to satisfy the award of

fees. *Martorana*, 404 F.3d 797 at 804-5. In *Martorana*, the district court awarded fees to the

pension plan and allowed the pension plan to recoup those fees through equitable set-off of the

plaintiff's pension benefits. The Third Circuit held that the district court failed to analyze

whether the plaintiff had any other means to pay the fees, except for the equitable set-off. The

Third Circuit reversed the fee award and remanded the issue back to the district court to

determine whether the plaintiff had the ability to pay the award. The *Martorana* case is

distinguishable in that Defendants are asking this Honorable Court to assess the fees against

---

original date of filing. The venue of the case was not discussed.

17

Plaintiff's Counsel directly as well as their respective law firms, and not against Mrs. Toy. Defendants submit that Plaintiff's Counsel, as employed and practicing attorneys, have the financial resources to pay an award of attorney's fees in this case. [13]   Thus, this factor would weigh in favor of an award of attorney's fees.

### C.   The deterrent effect of an award of attorney's fees.

An award of attorney's fees, alone, would serve as a deterrent against any other baseless claims. The Third Circuit has noted in dicta that "[t]he fact that ERISA allows for the award of attorney's fees to the prevailing party at the discretion of the court...is generally sufficient...to prevent plaintiffs from bringing suits which they know or strongly suspect to be without merit." *Martorana*, 404 F.3d 797 at 804. In *McNaboe*, this Court discussed the Third Circuit's reasoning that ERISA is meant to protect pension benefits and the award of attorney's fees would have that protective effect. 2002 U.S. District LEXIS 21287 at *12-3. The *McNaboe* court held that "[a]warding reasonable attorneys' fees would act as a deterrent against parties bringing meritless ERISA claims for purposes of obtaining federal jurisdiction." *Id.* at *13.

Although finding that an award of attorney's fees against the plaintiff in *Loving* would not be a deterrent since it was unlikely that the plaintiff would bring this type of lawsuit in the future, the court did find that the award of fees would be a deterrent to Mr. Stull, plaintiff's attorney. "The court believes that an award of attorney's fees against Stull will sufficiently impress and impact Stull, and deter him from filing meritless complaints in the future. Accordingly, the court concludes that this factor weighs in favor of an award of attorney's fees against Stull." *Loving*, 11 F. Supp. 2d 480 at 496-97.

---

[13] In the event Plaintiff's Counsel denies financial resources to satisfy an award of attorney's fees in this case, Defendants respectfully request that the Court permit discovery on the issue of the

18

As the court stated in *Loving*, an award of attorney's fees would act as a deterrent to Plaintiff's Counsel for filing meritless complaints in the future. Plaintiff's Counsel was put on notice that Plaintiff's action would be barred by the applicable statute of limitations, however, Plaintiff's Counsel continued to sustain the action despite this knowledge. Thus, this factor should weigh in favor of an award of attorney's fees.

      D.     **The benefit conferred upon members of the pension plan as a whole.**

This Court must also consider what benefit an award of attorney's fees would have upon members of the pension plan as a whole. "This factor 'requires consideration of the benefit, if any, that is conferred on others by the court's judgment.'" *Loving*, 11 F. Supp. 2d 480 at 497 *citing McPherson*, 33 F.3d 253 at 254. Although this Court must way this factor in determining whether to award attorney's fees, this Court may still award attorney's fees if this factor has no bearing on the case but other factors support an award of fees. *See generally*, *Loving*, 11 F. Supp. 2d 480 at 497; *McNaboe*, 2002 U.S. District LEXIS 21287 at *13.

Although no other members of the pension plan would benefit directly from an award of attorney's fees, the members of the Pension Plan and the Welfare Plan would indirectly benefit from an award of fees. An award of attorney's fees in this case would deter any other plan members (or their counsel) from filing meritlesss suits against the Pension Plan and the Welfare Plan or forcing the Pension Plan and Welfare Plan to defend against cases brought in clearly improper venues, thus limiting exposure to the Pension Plan and the Welfare Plan and limiting the unnecessary depletion of finite Pension Plan and Welfare Plan resources.

The Pension Plan and the Welfare Plan have been forced to unnecessarily expend a large amount of resources to defend this meritless Complaint both in Pennsylvania and in Delaware. Accordingly, this factor weighs in favor of an award of attorney's fees in this case.

---

financial status of Plaintiff's Counsel.

                                                  

However, even if this factor does not weigh in favor of either party, the weight of the other *Ursic* factors would still justify an award of attorney's fees.

### E.    The relative merits of the parties positions.

This Court must also consider the relative merits of Plaintiff's claim. In *McNaboe*, the court held that plaintiff had a meritless claim based on the fact that he sustained the claim through discovery and up to trial. 2002 U.S. District LEXIS 21287 at *13. By ultimately withdrawing his claim after so much litigation had already ensued, the court found that the plaintiff had no merit to his claim. *Id.* Similarly, the court in *Loving* held that plaintiff's claim was without merit since it was duplicative of a former claim and was barred by res judicata. *Loving*, 11 F. Supp. 2d 480 at 497. In *Loving*, the court found that Mr. Stull was culpable for bringing and sustaining the meritless case despite not acting in bad faith. *Id.*

Based on the United States' Supreme Court precedent set in *Great West Life and Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002)[14], a participant may not seek "equitable relief" based on ERISA § 502(a)(3) where the actual relief constitutes money damages. The provision Plaintiff relies on is not designed to allow for private actions, such as this, for monetary relief relating to a denial of benefits. Plaintiff's Counsel, as an attorney supposedly practicing in this specific area of law, should be aware of Supreme Court precedent. Even if Plaintiff's Counsel was somehow not initially aware of such law, an entire section was devoted to this issue in Defendants' Opening Brief in Support of Defendants' Motion to Dismiss and for Partial Summary Judgment. Plaintiff's Counsel, in their response to the Motion to Dismiss, did not address or attack Defendants' legal position or Defendants' case law on this issue. Plaintiff's Counsel merely tried to assert the existence of a procedural deficiency that ultimately had no

20

bearing on the result or outcome in the case.[15]  In essence, Plaintiff's Counsel wanted to further

delay the proceedings so that Defendants would be forced to continue to expend significant sums

defending against a meritless claim.  Plaintiff's Counsel, when confronted with such binding

precedent, should have voluntarily dismissed Count IV of the Complaint.

It is also clear that Plaintiff's claim for denial of benefits was meritless in light of

the applicable one year statute of limitations in Delaware.  The *Syed* case clearly establishes the

statute of limitations on denial of benefits claims under ERISA.  214 F.3d 155.  Even if,

assuming *arguendo*, the date of the final denial of pension benefits was August 2003,[16]

Plaintiff's claims are still barred by the statute of limitations.  Furthermore, based on the fact that

virtually no contacts existed between either Plaintiff or Defendants and Pennsylvania,[17] it is clear

that Plaintiff's Counsel brought suit in Pennsylvania in order to attempt to sidestep the Delaware

statute of limitations.

---

[14] For further discussion on this case and the issue that ERISA bars a claim of money damages under § 502(a)(3), *see* Defendants' Motion to Dismiss and for Partial Summary Judgment, Argument II, filed December 5, 2005.  (D.I. 41.)

[15] Plaintiff's Counsel's position was that this Court should deny Defendants' Motion to Dismiss based on the fact that it was filed after the Answer.  However, as fully briefed in Defendants' Reply Brief in support of the Motion to Dismiss filed on December 22, 2005, Plaintiff's Counsel's position, and not Defendants' Motion to Dismiss, is deficient in that a Motion to Dismiss may be summarily converted into a Motion for Judgment on the Pleadings and the same legal standard applies to each motion.  This Honorable Court ruled in Defendants' favor on this issue in the Memorandum Opinion issued on July 21, 2006.

[16] The Final Determination Letter was sent on July 1, 2002.  Applying the Delaware one year statute of limitations, Plaintiff had until July 1, 2003 to file her complaint.  Plaintiff's complaint incorrectly states that the final denial of benefits occurred in August 2003.  Even if that were true, Plaintiff had until August 2004 to file her claims.  Plaintiff did not file the action until September 10, 2005.

[17] Plaintiff and Defendants are all Delaware residents.  Defendants' primary place of business is in Delaware.  Mr. Stull is a Delaware attorney and is not admitted in the Eastern District of Pennsylvania.  Mr. Hildebrand's office is located in New Jersey but he is admitted to practice in the Eastern District of Pennsylvania.  There is no other reason for Plaintiff's Counsel to have filed the action in Pennsylvania, other than a blatant attempt to manipulate the system in an attempt to cure their own failure to timely commence an action in Delaware.

21

This factor clearly weighs in favor of an award of attorney's fees in this case.

## II.   ATTORNEY'S FEES SHOULD BE AWARDED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. § 1927

A district court may also award attorneys fees pursuant to 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The district courts have "the authority and discretion to levy expenses, costs and fees against any attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously.'" *Murphy v. Hous. Auth. and Urban Redevelopment Agency of the City of Atlantic City*, 2002 U.S. App. LEXIS 21626, **3-4 (3d Cir. Oct. 16, 2002). "[T]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002). In order to award attorney's fees under § 1927, the court must find that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Id.* at **31-32.

There must be a finding of willful bad faith, whether explicit or inferred from the record, in order for a district court to use its discretion to award attorney's fees under § 1927. *In re Prudential*, 278 F.3d at 181 ("an award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith."). In order to find willful bad faith on the part of the offending attorney, the court may look to evidence "that the

22

claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *In re Prudential*, 278 F.3d at 188.[18] The finding of willful bad faith need not be explicit. "An implicit finding of bad faith will support sanctions just as well so long as it is not an abuse of discretion, not based upon clearly erroneous factual finds, and not based upon an error of law." *In re Prudential*, 278 F.3d at 189-190.

In *Murphy*, the Third Circuit upheld the district court's award of attorney's fees under § 1927 based on the attorney's "pursuit of baseless claims, the frivolous nature of which he should have been aware by, at the latest, the Defendants' filing of their motion for summary judgment" and the attorney's "assertion of [plaintiff's] per quod claim under the [applicable state statute] when both federal and New Jersey state courts had already held that per quod claims were not cognizable under either of those sources of law." *Murphy*, 2002 U.S. App. LEXIS 946 at *4.

---

[18] A district court's discretion to award costs and expenses (not fees) are limited to "costs and expenses that result from the particular misconduct" and the "costs and expenses are limited to those that could be taxed under 28 U.S.C. § 1920," which allows for

> A judge or clerk of any court of the United States may tax as costs the following:
>   (1) Fees of the clerk and marshal;
>   (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>   (3) Fees and disbursements for printing and witnesses;
>   (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>   (5) Docket fees under section 1923 of this title;
>   (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

23

The court in *In re Prudential* levied sanctions against the offending attorney "based on [the court's] finding of the requisite bad faith and vexatious conduct on the totality of the campaign [the offending attorney] waged during the course of [the] litigation, not upon any single maneuver." 278 F.3d at 189. The court further held that the offending attorney "multiplied the proceedings at nearly every turn, and increased the cost of [the] litigation accordingly." *Id.* By filing various motions, the offending attorney forced the other attorneys to respond to the motions and forced the court to examine and analyze the claims.

Like the plaintiffs in *Murphy*, Plaintiff's Counsel should have known that Plaintiff's denial of benefits claims were barred by the Delaware statute of limitations even before the case was transferred to Delaware. In addition, Mr. Stull was the attorney of record in the case that established the statute of limitations in Delaware, and he should have been aware of the timing issues facing his client. *See Syed*, 214 F.3d 155. In fact, under the circumstances of this case, it appears that the attempt by Plaintiff's Counsel to obtain venue in Pennsylvania was merely Plaintiff's Counsel trying to circumvent the Delaware statute of limitations that Plaintiff's Counsel failed to meet. Mr. Stull even went so far as to engineer venue by wrongly naming Mr. Sigmond as a plan administrator, despite his knowledge that Mr. Sigmond was counsel to the Funds. Moreover, Defendants informed Plaintiff's Counsel that the case was barred by the Delaware statute of limitations and requested that Plaintiff's Counsel voluntarily dismiss the case. Plaintiff's Counsel simply ignored the facts and the law and instead continued with litigation trying to argue that Pennsylvania law somehow applied without citing any authority under § 1406 but only discussing § 1404 even though the Pennsylvania decision clearly ruled that the transfer was being done under § 1406.

24

Furthermore, Plaintiff's Counsel were, or should have been, on notice that United States' Supreme Court precedent barred Plaintiff's breach of fiduciary duty claim seeking monetary damages. Plaintiff's Counsel had an opportunity to research and respond to the Motion to Dismiss but failed to do so competently or, in certain respects, failed to even address the substance of the legal arguments advanced.

Likewise, as discussed above, Plaintiff's Counsel had no good faith basis to file the action in Pennsylvania. Plaintiff's Counsel purposefully sought out a foreign jurisdiction because they knew that they had missed the Delaware statute of limitations. There is no other explanation for their actions. Virtually no contacts exist between any party and Pennsylvania— including both Mr. Stull (as primary counsel) and his client (a Delaware resident). Thus, it is clear that Plaintiff's Counsel acted in bad faith when they decided to bring suit in Pennsylvania.

Mr. Stull was on notice of the statute of limitations by virtue of his participation in the *Syed* case. Likewise, Plaintiff's Counsel was also on notice of the statute of limitations by virtue of Defendants' counsel's letter of October 6, 2005. Similarly, Plaintiff's Counsel cannot attempt to defend their actions by claiming that they believed the Pennsylvania statute of limitations applied to this case, because Defendants explained to Plaintiff's Counsel in their letter of October 6, 2006 and numerous briefs in this case that a transfer under § 1406(a) attaches the transferee court's law. Plaintiff's Counsel has been unable to provide any case law or statute that contradicts the legal positions advanced by the Pension Plan and Welfare Plan in this case.

25

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court award attorney's fees in favor of Defendants and against John M. Stull, Esquire, Law Offices of John M. Stull, Esquire, William B. Hildebrand, Esquire, Law Offices of William B. Hildebrand, L.L.C.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Timothy J. Snyder (No. 2408)
Curtis J. Crowther (No. 3238)
D. Fon Muttamara-Walker (No. 4646)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
(302) 571-1253/fax

*Attorneys for Defendants*

Dated: August 3, 2006

26

## CERTIFICATE OF SERVICE

I, D. Fon Muttamara-Walker, Esquire hereby certify that on this 3rd day of

August, 2006, I caused to be electronically filed a true and correct copy of the foregoing

document with the Clerk of the Court using CM/ECF, which will send notification that such

filing is available for viewing and downloading to the following counsel of record:

> John M. Stull, Esq.
> 1300 North Market Street, Suite 700
> Wilmington, DE 19899

I further certify that on this 3rd day of August, 2006, I caused a copy of the

foregoing document to be served by hand delivery on the above listed counsel of record and on

the following non-registered participant in the manner indicated below:

### BY FEDERAL EXPRESS

> William B. Hildebrand, Esq.
> The Law Offices of William B. Hildebrand, LLC
> 1040 N. Kings Hwy, Suite 601
> Cherry Hill, NJ 08034

> D. Fon Muttamara-Walker (No. 4646)
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391
> (302) 571-6600
> fmuttamara-walker@ycst.com

> *Attorneys for Defendants*