# Tab 1

LEXSEE 2006 U.S. DIST. LEXIS 1896

**CORNING INCORPORATED, et al., Plaintiffs, v. SRU BIOSYSTEMS, et al., Defendants.**

**Civil Action No. 03-633-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 1896*

**January 20, 2006, Decided**

**SUBSEQUENT HISTORY:** Findings of fact/conclusions of law at *Corning Inc. v. SRU Biosystems, 418 F. Supp. 2d 596, 2006 U.S. Dist. LEXIS 9197 (D. Del., Mar. 7, 2006)*

**PRIOR HISTORY:** *Corning Inc. v. SRU Biosystems, 400 F. Supp. 2d 653, 2005 U.S. Dist. LEXIS 27752 (D. Del., 2005)*

**COUNSEL:** [*1] Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Larry L. Shatzer, Esquire, Andrew E. Rawlins, Esquire, Kenneth E. Krosin, Esquire, and George C. Best, Esquire, of FOLEY & LARDNER, Washington, D.C. Attorneys for Plaintiffs.

Steven J. Balick, Esquire, and John G. Day, Esquire, of ASHBY & GEDDES, Wilmington, Delaware. Of Counsel: John J. McDonnell, Esquire, Daniel A. Boehnen, Esquire, Matthew J. Sampson, Esquire, Richard A. Machonkin, Esquire, Patrick G. Gattari, Esquire, of McDONNELL BOEHNEN HULBERT & BERGHOFF LLP, Chicago, Illinois. Attorneys for Defendants.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

**MEMORANDUM OPINION**

**Farnan, District Judge.**

Pending before the Court is a Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order (D.I. 299) filed by Defendants, SRU Biosystems, LLC, SRU Biosystems, Inc. and SRU Biosystems Holdings, LLC (collectively, "SRU"). Corning Incorporated and Artificial Sensing Instruments ASI AG (collectively, "Corning") have filed an Opposition to SRU's request. For the reasons discussed, the [*2] Court will deny SRU's Request For Reconsideration.

**I. THE PARTIES' CONTENTIONS**

By its Motion, SRU requests the Court to reconsider its November 15, 2005 decision on three grounds. Specifically, SRU contends that (1) the Court overlooked testimony of Corning's own witness in concluding that the *'843 patent* was not invalid for lack of written description; (2) the Court erroneously excluded

the *'248 patent* which SRU maintains is relevant to this action; and (3) the Court should consider whether the *'843 patent* is invalid as indefinite as a result of an intervening development in the law, i.e. the Federal Circuit's recent decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377 (Fed. Cir. 2005)*.

In response, Corning contends that the Court should deny reargument, because SRU restates arguments that have already been made by SRU in its prior submissions and rejected by the Court. Corning also contends SRU's request to reconsider the Court's exclusion of the *'248 patent* is untimely. As for the Federal Circuit's recent decision in IPXL, Corning contends that SRU waived any argument related to indefiniteness by failing to raise an indefinite argument **[*3]** at any point prior to the instant Request For Reconsideration.

## II. STANDARD OF REVIEW

A motion for reconsideration under Delaware Local Rule 7.1.5 which is timely filed and challenges the correctness of a previously entered ordered is considered the "functional equivalent" of a motion to alter or amend judgment pursuant to *Federal Rule of Civil Procedure 59(e)*. n1 *In re DaimlerChrysler AG Securities Litigation, 200 F. Supp. 2d 439, 441 (D. Del. 2002)* (citations omitted). The purpose of a motion for reconsideration filed pursuant to *Rule 59(e)* is "to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)*. Motions for reargument or reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court. *Karr v. Castle, 768 F. Supp. 1087, 1090 (D. Del. 1991)*; *Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)*. Thus, a court may only grant reconsideration if there **[*4]** is: (1) a change in the controlling law; (2) newly available evidence; or (3) the need to

correct a clear error of law or fact to prevent manifest injustice. *Max's Seafood, 176 F.3d at 677*. With this standard in mind, the Court will address SRU's Request For Reconsideration.

n1 Because SRU's motion is made under Del. L.R. 7.1.5, Corning couches its discussion of the standard of review solely in terms of that which is required for reargument. Reargument, like reconsideration, is granted sparingly, but the grounds justifying reargument differ slightly from that which is required for reconsideration. Specifically, reargument is only appropriate where: (1) the court has patently misunderstood a party, (2) the court has made an error not of reasoning, but of apprehension, and (3) the court has made a decision outside the scope of the issues presented to the court by the parties.

Though brought under Del. L.R. 7.1.5, the Court believes SRU is seeking reconsideration as evidenced both by the relief it requests and its use of the term "reconsideration" throughout its briefing. However, under either the standard for reargument or the standard for reconsideration, the Court concludes that SRU is not entitled to relief.

**[*5]**

## III. DISCUSSION

A. Whether SRU Is Entitled To Reconsideration Of The Court's Decision To Exclude The '*248 Patent*

SRU requests the Court to reconsider its decision excluding from evidence the *'248 patent*. SRU contends that the *'248 patent* is a continuation of the *'843 patent*, and thus, relevant to demonstrate that the *'843 patent* fails to satisfy the written description requirement.

SRU raised these arguments previously, and they have already been considered by the Court. In addition, the Court's decision excluding the *'248 patent* from evidence was issued on September 27, 2005, with a Memorandum Opinion explaining the Court's decision on October 5, 2005. Thus, SRU was required to raise any motion to reconsider or reargue that decision by October 20, 2005, at the latest. Accordingly, the Court declines to grant reconsideration of its decision to exclude the *'248 patent*.

B. Whether SRU Is Entitled To Reconsideration Of The Court's Decision That SRU Failed To Establish Invalidity Of The '843 Patent Based On Lack Of Written Description

SRU also requests reconsideration of the Court's decision regarding the invalidity of the *'843 patent* based on the lack of written [*6] description. SRU contends that one of ordinary skill in the art would know that the evanescent field can actually extend into the sample more than one wavelength. SRU contends that the testimony of Corning's Dr. Pollock supports its position, and therefore, the Court erred in concluding that the specification teaches that the evanescent wave penetrates less than one wavelength into the sample and that the chemoresponsive layer within the evanescent field must therefore be less than one wavelength thick.

SRU's arguments concerning the written description requirement have already been raised in its previous briefing and considered by the Court. SRU has not demonstrated that reconsideration of these arguments is warranted.

In a letter requesting oral argument on its request for reconsideration, SRU contends that Corning has changed its position regarding what the *'843 patent* discloses. Specifically, SRU contends that Corning has "now admitted that the *'843 patent* discloses that 'the thickness of the chemo-responsive layer can be more than the evanescent filed.'" (D.I. 312) (citing D.I. 306 at 9). However, it appears to the Court that

Corning has always recognized that the *'843 patent* [*7] describes other sensors, such as sensors that work on absorption principles, and that in those types of sensors the thickness of the chemo-responsive layer can be more than the thickness of the evanescent field. D.I. 279 at 25-26; D.I. 275 at PFF 436. However, Corning has also argued that in sensors using adsorption principles, the chemo-responsive layer must be less than the evanescent field, and the Court's discussion of this issue is in the context of an adsorption layer. As such, the Court is not persuaded that it overlooked SRU's arguments or the testimony of Dr. Pollock as it pertains to this issue, and therefore, the Court is not persuaded that reconsideration of the Court's written description decision is warranted.

C. Whether SRU Is Entitled To Reconsideration In Light Of The Federal Circuit's Decision In IPXL Holdings, L.L.C. Relating To Indefiniteness

SRU also contends that reconsideration is appropriate so that the Court can consider whether the *'843 patent* is invalid for indefiniteness in light of the Federal Circuit's recent decision in *IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377 (Fed. Cir. 2005)*. In IPXL, the Federal Circuit concluded [*8] that an invention is invalid for indefiniteness if it is a combination of two statutory classes of the invention. However, SRU did not raise an indefiniteness defense in response to Corning's Interrogatories requesting SRU's defenses, in the Joint Proposed Pretrial Order, at trial or in any of its original post-trial submissions. Although SRU contends that the IPXL decision was reached by the Federal Circuit as a matter of first impression, the Court notes that this type of indefiniteness argument was available to SRU well before the trial in this case, despite the lack of available Federal Circuit precedent on point. Specifically, the U.S. Patent & Trademark Office concluded in a published decision fifteen years ago that a patent claim is invalid if it is a combination of two statutory

classes of invention. See *Ex parte Lyell, 17 U.S.P.Q.2d 1548, 1552 (Bd. Pat. App. & Inter. 1990)*. Further, the United States District Court for the Eastern District of Virginia reached the same conclusion in the IPXL case more than a year ago and before the trial in this case. In addition, SRU has not offered any reasons for its failure to pursue this argument earlier. Accordingly, **[*9]** the Court concludes that SRU's argument related to indefiniteness has been waived, and therefore, it is not the proper subject of a motion for reargument. See e.g., *Davis v. Mountaire Farms. Inc., 2005 U.S. Dist. LEXIS 15375, 2005 WL 180054, *1 (D. Del. Jul. 29, 2005)* (declining to address newly raised argument and recognizing that such an argument is "not properly the subject of a motion for reargument").

**CONCLUSION**

For the reasons discussed, the Court will deny SRU's Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 20 day of January 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that SRU's Request For Reconsideration Of November 15, 2005 Memorandum Opinion And Order (D.I. 299) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# Tab 2

LEXSEE 2005 U.S. DIST. LEXIS 40012

**CHARLES DYCHE, Plaintiff v. LINDA BONNEY, et al., Defendants**

**CIVIL NO. 1:04-CV-1833**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

*2005 U.S. Dist. LEXIS 40012*

**December 21, 2005, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Dyche v. Bonney, 2006 U.S. Dist. LEXIS 14000 (M.D. Pa., Mar. 13, 2006)*

**PRIOR HISTORY:** *Dyche v. Bonney, 2005 U.S. Dist. LEXIS 31362 (M.D. Pa., Nov. 22, 2005)*

**COUNSEL:** [*1] For Charles Dyche, Plaintiff: Don Bailey, Bailey & Ostrowski, Harrisburg, PA; Andrew J. Ostrowski, Bailey Stretton & Ostrowski, Harrisburg, PA; Samuel C. Stretton, The Law Office of Samuel C. Stretton, West Chester, PA.

For Linda Bonney, Defendant: Lisa W. Basial, Office of the Attorney General of Pennsylvania, Civil Litigation Section, Harrisburg, PA.

**JUDGES:** SYLVIA H. RAMBO, United States District Judge.

**OPINIONBY:** SYLVIA H. RAMBO

**OPINION:**

### MEMORANDUM

Before the Court is Plaintiff's Motion for Reconsideration (Doc. 36). For the following reasons, the court will deny the motion.

### I. Background

Because the court previously recited the facts of this case in detail in its Memorandum of November 22, 2005, the court will not repeat them here. Plaintiff filed a complaint on August 18, 2005. Plaintiff filed a Motion for Leave to File an Amended Complaint on July 11, 2005 (Doc. 25-1), which the court granted in part and denied in part in its Memorandum and Order of November 22, 2005 (Doc. 33).

Plaintiff filed the instant motion on December 6, 2005, seeking reconsideration of the November 22, 2005 decision with respect to Plaintiff's request to add breach of contract claims [*2] against the Pennsylvania State Police (PSP) and all individual Defendants. Specifically, Plaintiff requests that the court alter its ruling to allow him to make a detrimental reliance/promissory estoppel claim, as well as a due process claim, which would also require the court to amend its ruling that Plaintiff has no property or liberty interest in employment that would afford him due process rights.

### II. Legal Standard -- Motion for Reconsideration

A motion for reconsideration is governed by Federal *Rule 59(e)*, which allows a party to move to alter or amend a judgment within ten days of its entry. n1 *McDowell Oil Serv., Inc. v.*

*Interstate Fire & Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993)*. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)*. Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court **[*3]** granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)* (citing *North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)*). "'A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.'" *Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)* (quoting *Abu-Jamal v. Horn, 2001 U.S. Dist. LEXIS 20813, No. CIV. A. 99-5089, 2001 WL 1609761, at *9 (E.D. Pa. Dec. 18, 2001)* (citations and internal quotation marks omitted)). Likewise, reconsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment. *McDowell Oil Serv. Inc., 817 F. Supp. at 541*. Finally, reconsideration of judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)*. **[*4]**

n1 When a Plaintiff files a motion for reconsideration without further specification, the court will examine the motion as a *Rule 59(e)* motion. *See Amatangelo v. Borough of Donora, 212 F.3d 776, 779-80 (3d Cir. 2000)*; *Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir.*

*1986)* ("We view a motion characterized only as a motion for reconsideration as the 'functional equivalent' of a *Rule 59(e)* motion to alter or amend a judgment.").

## III. Discussion

### A. Breach of Contract Claims

Plaintiff argues that the court should reconsider its prior ruling and allow Plaintiff to amend the complaint to raise breach of contract claims because the court erroneously concluded that probationary employees of the PSP, such as Plaintiff, have no contract rights. A court may alter a prior judgment in order to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe, 176 F.3d at 677*. However, Plaintiff fails to cite **[*5]** any legal authority either establishing that Plaintiff had an employment contract with the PSP or controverting the legal authority upon which the court relied in determining that Plaintiff, as a probationary employee, was presumed to be an at-will employee without a legitimate expectation of continued employment with the PSP. Plaintiff merely relies on Plaintiff's own allegations in the complaint. A plaintiff's statement, in a complaint or other legal document, that he cannot be dismissed except for cause, does not on its own constitute binding legal authority. n2 Thus, Plaintiff fails to establish a clear error of law justifying reconsideration of the court's ruling regarding the breach of contract claims.

n2 Plaintiff attempts to bolster his assertion that probationary employees can only be dismissed for cause by arguing that neither the PSP nor other proposed Defendants have denied Plaintiff's statement that probationary employees could only be dismissed for cause, which Plaintiff says is included in paragraph one of the complaint. However, the court notes

that, because it granted in part and denied in part Plaintiff's motion to amend the complaint, it rejected Plaintiff's proposed amended complaint (Doc. 25-2) and required Plaintiff to submit an amended complaint that complied with the court's ruling. Plaintiff submitted the docketed amended complaint on November 30, 2005 (Doc. 34). The language "even though probationary employees can only be dismissed for cause" was not included in the complaint (Doc. 1) or the proposed amended complaint (Doc. 25-2) but only appeared for the first time in the November 30, 2005 amended complaint (Doc. 34). Although Plaintiff's argument for a "legal principle by agreement of the parties" is insufficient to alter the court's finding that a party's unsupported statement does not constitute legal authority, the court is compelled to add that it patently rejects such disingenuous attempts to establish waiver on the part of an opposing party.

[*6]

To the extent that Plaintiff argues that his claim that he could only be dismissed for cause reflects an express agreement, Plaintiff again fails to provide legal support to establish clear error. First, Plaintiff bases his argument on the same legal principle stated by the court in its November 22, 2005 memorandum: "The plaintiff must demonstrate entitlement to a property interest created expressly by state statute or regulation or arising from government policy or a mutually explicit understanding between a government employer and an employee." *Carter v. City of Philadelphia, 989 F.2d 117, 120 (3d Cir. 1993)*; *see also Blanding v. Pennsylvania State Police, 12 F.3d 1303, 1307 (3d Cir. 1993)*. Second, Plaintiff alleges no new facts to alter the court's interpretation, within the confines of existing law, that none of the facts alleged in Plaintiff's proposed amended complaint amount to an express agreement between the PSP and Plaintiff. n3 Accordingly, the Plaintiff is simply attempting to impermissibly reargue "matters already argued and disposed of. . . ." *Ogden, 226 F. Supp. 2d at 606*.

n3 Plaintiff's proposed amended complaint, upon which the court based its November 22, 2005 ruling, alleged in relevant part that "plaintiff, relying in good faith on the defendants [sic] representations that such disclosures were required but not dispositive, or injurious to, his chances for admission to the PSP program, disclosed this information" (Doc 25-2 P22) and that "the PSP accepted the plaintiff into their program and the plaintiff justifiably assumed that ... he was accepted to attend the Academy,..." (Doc 25-2 P26). Neither of these statements, even when taken as true, amount to an express agreement between the parties.

[*7]

**B. Promissory Estoppel Detrimental Reliance Claim**

Plaintiff argues that the court erroneously interpreted his estoppel claim as one for equitable estoppel rather than for promissory estoppel, or detrimental reliance. Plaintiff's argument fails for several reasons. First, Plaintiff's own phrasing of the proposed claim fails to clearly convey that Plaintiff sought relief grounded in the doctrine of promissory rather than equitable estoppel. Plaintiff's claim that "the PSP is estopped from denying Dyche reinstatement because the PSP waived any objection to Dyche's employment when he was admitted to their program," (Doc. 25-2 P9) although ambiguously drafted, speaks only in terms of equitable relief (i.e. reinstatement). The claim is devoid of any language that would convey that Plaintiff was claiming promissory estoppel as a separate cause of action at law.

Second, even if the court were to somehow extrapolate from the language that Plaintiff intended to make a promissory estoppel claim, Plaintiff fails to establish that the court has made a mistake of fact or law to justify reconsideration of the court's judgment. Plaintiff alleges no new facts but argues that the court [*8] misinterpreted the facts and claims alleged. However, the proposed amended complaint fails to allege any facts to support a promissory estoppel claim. Plaintiff appears to rely solely upon the fact that he was accepted into the PSP academy as proof of a promise or improper inducement. Again, this premise is couched as an assumption made by Plaintiff rather than as any kind of alleged affirmative act of the PSP. Essentially, Plaintiff is attempting to impermissibly raise an argument that he could have made before, *see McDowell Oil Serv. Inc., 817 F. Supp. at 541*, and fails to show new facts or law that would warrant reconsideration of the court's judgment.

Finally, insofar as Plaintiff attempts to establish a mistake of law by arguing that the court should consider *Rinehimer v. Luzerne County Community College, 372 Pa. Super. 480, 539 A.2d 1298 (Pa. 1988)* and *Travers v. Cameron County School District, 117 Pa. Commw. 606, 544 A.2d 547 (Pa. Commw. Ct. 1988)*, Plaintiff fails because these cases are inapposite to the instant case. *Rinehimer* discusses a public policy exception to the "at-will" employment doctrine. Plaintiff made [*9] no mention of a public policy exception in the proposed amended complaint and may not do so here. n4 *Travers* is factually distinct because it involved a concrete temporary employment contract and raised an estoppel claim based on statements conveying the defendants' promise to take certain action with respect to that con-tract. Accordingly, Plaintiff fails to establish any mistake of law or fact other legal or factual basis for reconsideration of the court's November 22, 2005 judgment with respect to Plaintiff's estoppel claim.

> n4 To the extent that Plaintiff relies upon *Rinehimer,* references it as a public policy exception case, and states "and so is this case" the court construes it as an attempt to make such an argument for the first time in the instant motion.

## IV. Conclusion

For the foregoing reasons, the court will deny Plaintiff's motion for reconsideration of the court's November 22, 2005 Memorandum and Order with respect to the Plaintiff's proposed breach of contract claims. An [*10] appropriate order will issue.

SYLVIA H. RAMBO

United States District Judge

Dated: December 21, 2005.

**ORDER**

For the reasons stated in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for Reconsideration (Doc. 36) is **DENIED.**

SYLVIA H. RAMBO

United States District Judge

Dated: December 21, 2005.

# Tab 3

000000.0

1 of 1 DOCUMENT

**IN RE: ORION REFINING CORP., Debtor. MICHAEL G. SYRACUSE d/b/a INTERSTATE SUPPLY CO., and TEXAS ICO, INC., Plaintiffs, v. ORION REFINING CORP., Defendant.**

**Chapter 11, Case No. 03-11483 (MFW), Adv. Proc. No. 03-53939**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

*2006 Bankr. LEXIS 1657*

**August 8, 2006, Decided**

**PRIOR HISTORY:** *Syracuse v. Orion Ref. Corp. (In re Orion Ref. Corp.), 341 B.R. 470, 2006 Bankr. LEXIS 615 (Bankr. D. Del., 2006)*

**COUNSEL:** **[*1]** For Orion Refining Corporation, Debtor: Adam G. Landis, Landis Rath & Cobb LLP, Wilmington, DE; Daniel B. Butz, Donna L. Culver, Gilbert R. Saydah, Jr., Gregory Thomas Donilon, Gregory Thomas Donilon, Gregory W. Werkheiser, Sean P. Haney, Thomas W. Briggs, William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Robert J. Dehney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

David L. Buchbinder, U.S. Trustee, Office of the U.S. Trustee, Wilmington, DE.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Creditor Committee: Jeremy W. Ryan, Mark Minuti, Saul Ewing LLp, Wilmington, DE.

**JUDGES:** Mary F. Walrath, United States Bankruptcy Judge.

**OPINIONBY:** Mary F. Walrath

**OPINION:**

**MEMORANDUM OPINION** n1

> n1 This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to *Federal Rule of Bankruptcy Procedure 7052*.

Before the Court is the Motion of Michael G. Syracuse ("Syracuse") for Reconsideration of the Court's April 17, 2006, ruling **[*2]** that he did not have title to certain moveable property (the "Surplus Materials") located at the Norco, Louisiana, facility of Orion Refining Corporation (the "Debtor"), which became property of the Debtor's estate as of the petition date. For the reasons stated herein, the Court will deny the Motion.

I. BACKGROUND

The factual background of this case is recited in the Court's Memorandum Opinion dated April 17, 2006, and will not be repeated here. *Syracuse v. Orion Ref. Corp. (In re Orion Ref. Corp.), 341 B.R. 470 (Bankr. D. Del. 2006)*. On April 27, 2006, Syracuse filed his Motion for Reconsideration. Oral argument on the Motion was initially heard on June 6, 2006,

at which time the Court granted the Motion in part and directed that proceeds from the sale of the Surplus Materials remain in escrow until a final decision on the merits is rendered. n2 The Court continued the hearing to June 28, 2006, to consider the remainder of the arguments raised by the Motion for Reconsideration. At the oral argument held on that date, the Court granted the parties' request for additional briefing. Post-argument briefs were filed on July 11 and 21, 2006. The matter is **[*3]** now ripe for decision.

    n2 At the time of the sale of the Debtor's assets to Valero Energy Corporation and Valero Refining-New Orleans, LLC (collectively "Valero"), the parties had stipulated to the escrow of $ 1.5 million in sale proceeds related to the Surplus Materials. That Stipulation provided that the funds would not be released until:

> [A] determination by a final order of this Court . . . that (i) [Syracuse] owned some or all of the Surplus Materials at the time of the Sale and some or all of the Surplus Materials did not become property of the Debtor's bankruptcy estate pursuant to *section 541 of the Bankruptcy Code* upon the commencement of the Debtor's bankruptcy case; . . . then [Syracuse's] ownership Interest in such Surplus Materials shall be deemed to have attached to the Escrow Amount. . . .

(Docket No. 336, P 57, in Case No. 03-11483) (emphasis added).

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to **[*4]** *28 U.S.C. § 157(b) (2) (B), (E), (N), & (O)*.

## III. DISCUSSION

### A. Standard of Review

A motion for reconsideration is not specifically addressed in the Federal Rules of Civil Procedure; rather, such motions generally fall within the parameters of *Rule 59(e)*, which allows a party to file a motion to alter or amend a judgment. *Fed. R. Bankr. P. 9023*; *12 Moore's Federal Practice -- Civil § 59.30 [2] [a]* (3d ed. 2005) ("[A] *Rule 59(e)* motion involves the reconsideration of matters properly encompassed in a decision on the merits."). A motion for reconsideration is an extraordinary means of relief in which the movant must do more than simply reargue the facts or law of the case. See *North River Ins. Co v. Cigna Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)* (concluding that motion to alter or amend judgment "must rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice'.") (citations **[*5]** omitted); *Harsco Corp. v. Zlotnicki, 779 F.2d 906, 908 (3d Cir. 1985)* ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."); *Stanziale v. Nachtomi, 2004 U.S. Dist. LEXIS 15664, No. 01-403, 2004 WL 1812705, at *2-3 (D. Del. Aug. 6, 2004)* (stating that a court may grant a motion for reconsideration "if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial is-

sues presented by the parties, or has made an error not of reasoning, but of apprehension."); *Dentsply Int'l, Inc. v. Kerr Mfg. Co., 42 F. Supp. 2d 385, 417 (D. Del. 1999)* ("[motions for re-argument] should be granted sparingly and should not be used to rehash arguments already briefed or allow a 'never-ending' polemic between the litigants and the Court").

### B. Grounds for Reconsideration

In his Motion, Syracuse argues that the Court misapprehended the issue that the parties submitted to the Court for decision, that the Court made decisions outside the adversarial issues presented by the parties, and that the Court made clear errors of law.

### 1. Misapprehension of the Issue [*6]

Syracuse contends that the Court addressed the wrong issue, as indicated by the Court's statement that title to the Surplus Materials had passed to the purchaser of the Debtor's Norco facility, Valero Energy Corporation and Valero Refining-New Orleans, LLC (collectively "Valero"). Syracuse agrees that Valero currently has title to the Surplus Materials, but states that the proper issue was whether Syracuse "owned some or all of the Surplus Materials at the time of the Sale and [whether] some or all of the Surplus Materials did not become property of the Debtor's bankruptcy estate."

Syracuse is incorrect. In the Opinion, the Court correctly identified the issue as follows:

> Syracuse argues that the Agreement was a contract of sale. Consequently, he asserts that title to the surplus materials passed to him at the time of execution. As a result, he contends that the items were not property of the Debtor's bankruptcy estate and could not be sold to Valero.

> The Debtor argues that the Agreement was for services. Consequently, the Debtor contends that

it retained title to surplus materials that were not timely removed by Syracuse.

*341 B.R. at 473-74*. The Court [*7] resolved that issue as follows:

> The Court concludes that Syracuse's performance of his clean-up services was a suspensive condition to his obtaining title to the surplus materials in the designated areas. *Rowley Co., 350 So. 2d at 192-93*. Until Syracuse removed an item from a designated area and cleaned that area, title to that item did not pass from the Debtor to Syracuse. Consequently, the Court finds that title to the items remaining at the Debtor's facility had not passed to Syracuse at the time of the Debtor's bankruptcy filing.

*Id. at 474*.

Therefore, the Court did not misapprehend the issue presented by the parties, but did in fact address and decide the very issue the parties identified: did title to the property pass to Syracuse before the Debtor filed its bankruptcy petition.

### 2. Making Decisions Outside the Adversarial

Issues Presented

In his Motion, Syracuse argues that the Court erred in determining that his contract with the Debtor was a sale subject to a suspensive condition inasmuch as the contract did not contain the term "suspensive condition" and the Debtor had not raised that classification as a defense. Moreover, Syracuse [*8] contends that neither he nor the Debtor intended a suspensive condition to apply to the contract, and

if there was any ambiguity, it should have been construed against the Debtor.

Syracuse argued that the parties' contract was one of sale; the Debtor argued that it was one for services. *Id. at 473-74.* Contrary to Syracuse's assertion, the Court did not conclude in its Opinion that the contract was a sale contract. Instead, the Court found that it was unnecessary to classify the parties' contract as one of sale or one for services, "because even if classified as a contract of sale, it was a contract subject to a suspensive condition that - until fulfilled - prevented title to the surplus materials from passing to Syracuse." *Id. at 474.*

Because the parties' contract is governed by civilian principles, the classification of the contract is determined by reference to the Civil Code. n3 In classifying a contract in the absence of a controlling Civil Code article, "the process is a creative one, since the judge ultimately has the power to accept or reject the analogies, or chose between them." Clarence J. Morrow, Louisiana Blueprint: Civilian Codification and Legal Method for [*9] State and Nation, 17 Tul. L. Rev. 351, 553-54 (1943).

> n3 *La. Civ. Code art. 1916* ("Nominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title [conventional obligations or contracts].").

No controlling Civil Code title exists that specifically classifies a conventional obligation that calls for both a sale of a moveable and a performance of a service when the sale and the service are both integral to the fulfillment of the object of the contract. Consequently, the Court followed the lead of the Louisiana Fourth Circuit Court of Appeals in *Jefferson Parish School Bd. v. Rowley Co., 350 So. 2d 187, 192-93 (La. Ct. App. 1977)*, which held that when a contract calls for both a sale and an act of per-

formance, the performance is a suspensive condition to the act of sale. *341 B.R. at 474.*

Because the parties put at issue what the contract was (one of sale or one for services), [*10] it was proper for the Court to determine, after considering Louisiana law, what the effect would be if the contract was a sale contract. Consequently, the Court finds no reason to reconsider its decision on this point.

3. Clear Error of Law

a. Suspensive Condition to Sale of Movables

Syracuse argues that the Court made a clear error of law because it is a legal impossibility to have a suspensive condition to the sale of a moveable. This argument is without merit.

It is true that, in principle, Louisiana does not recognize the common law doctrine of conditional sales of moveables. *Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 LA. 152, 46 So. 193, 196 (La. 1908)* ("[T]o suppose a sale without a transfer of the property in the thing which forms the object of the sale is simply to suppose an impossibility.").

Nonetheless, Louisiana law does recognize that title to moveables does not always pass at the time of contract. n4 In particular, Louisiana law recognizes a sale of moveables subject to a suspensive condition - which postpones the transfer of title. *Barber Asphalt Paving, 46 So. at 197* ("The reason why a sale under a suspensive condition [*11] does not transfer the ownership is that it is not a sale. . . . When a sale is made under a suspensive condition, there is no sale until the condition has been fulfilled."); *Rowley, 350 So. 2d at 192-93* (holding that the sale of uninstalled cabinets - moveables - was subject to a suspensive condition).

> n4 For example, when goods in stock are sold, title does not pass until the particular items of stock are individualized.

La. Civ. Code art. 2547. Similarly, when moveables are sold by weight, tale, or measure, ownership does not pass until the seller, with the buyer's consent, weighs, counts, or measures the things. *La. Civ. Code art. 2458.* In Syracuse's post-hearing brief, he suggests that title passes at the execution of a contract despite the existence of a condition that would otherwise postpone the transfer of title. The case cited by Syracuse for that proposition, however, interpreted a prior version of article 2458. See *Louisiana State Rice Milling Co. v. McCowan, 180 LA. 174, 156 So. 213, 214 (La. 1934).*

[*12]

Therefore, the Court concludes that there was no clear error of law in its conclusion that, even if the contract was a sale, it was subject to a suspensive condition.

b. Implied Suspensive Condition

In his post-argument brief, Syracuse argues that the Court's conclusion was erroneous because there is no mention of the term "suspensive condition" in the parties' contract. This is not necessary, however, when that is the effect of the contract's classification under the Civil Code. The contract at issue in Rowley did not contain the term either, yet the Rowley Court concluded that the sale at issue was subject to a suspensive condition. *350 So. 2d at 189-92.*

The cases cited by Syracuse are not to the contrary, but merely stand for the unremarkable proposition that courts must look to the contract as a whole to determine if a suspensive condition exists. See *Southern States Masonry, Inc. v. J.A. Jones Constr. Co., 507 So. 2d 198, 201-02 (La. 1987)* (holding that a "pay when paid" clause in a contract between a general and a subcontractor would not be construed as a suspensive condition when the parties did not contemplate that the subcontractor [*13] would be the insurer of the owner's solvency); *Schexnay-*

*der v. Capital Riverside Acres, Inc., 170 LA. 714, 129 So. 139, 143 (La. 1930)* (declining to construe a stipulation to a contract as a condition precedent when the language of the contract did not compel that result); *Hampton v. Hampton, Inc., 713 So. 2d 1185, 1190-91 (La. Ct. App. 1998)* (inferring the existence of a suspensive condition after reading the contract as a whole); *Tilley v. Lowery, 511 So. 2d 1245, 1247 (La. Ct. App. 1987)* (holding that an affirmative predial servitude of use was created by the parties' agreement and that the identification of its exact location was not a suspensive condition that delayed the creation of the servitude).

Syracuse also argues that the Court's ruling on this point is in error because the parties never intended the result reached by the Court. This also is not necessary. See, e.g., *Thomas v. Philip Werlein Ltd., 181 LA. 104, 158 So. 635, 637 (La. 1935)* ("Where all the essential elements and conditions for an absolute sale are present in a contract between parties, the effects flowing legally from that particular contract follow, whether the [*14] parties foresaw and intended them or not, and though they may refer to the contract as an agreement to sell or as a conditional sale.").

In his post-argument brief, Syracuse fails to distinguish the law on which the Court relied. n5 Therefore, the Court will not reconsider its conclusion (that even if the parties' contract was a sale, it was a sale subject to a suspensive condition) because it is well-founded in Louisiana law.

n5 It was on this issue specifically that Syracuse asked permission to submit a brief.

c. Removal as Suspensive Condition

In his post-argument brief, Syracuse also argues that in its Opinion the Court found that

the suspensive condition to the contract was the requirement that Syracuse clean the designated areas. Syracuse asserts that at oral argument the Court, for the first time, suggested that the suspensive condition was the removal of the equipment.

This is inaccurate. In the Opinion, the Court expressly found that "[t]he Agreement, however, also required [Syracuse] to remove **[*15]** the materials and clean those areas. . . . Until Syracuse removed an item from a designated area and cleaned that area, title to that item did not pass from the Debtor to Syracuse." *341 B.R. at 474.*

d. Retroactive Fulfillment of Suspensive Condition

Syracuse asserts that the Court also erred by not addressing Syracuse's argument that it was legally deemed to have obtained title to the Surplus Materials before the Debtor's bankruptcy filing based on the Debtor's alleged bad acts. He argues that under Louisiana law his title would be retroactive to the date of the Debtor's bad acts, which was before the Debtor's bankruptcy filing. See *La. Civ. Code art. 1772* ("A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.").

In fact, the Court did address this issue in its Opinion and concluded that, as a matter of law, Syracuse could not establish title to the Surplus Materials even if he succeeded in proving that the Debtor interfered with his performance. *341 B.R. at 475-76.* That ruling was premised on Louisiana law which protects the intervening rights of third parties. **[*16]** *Id. at 475* (stating that article 1775 of the Louisiana Civil Code "protects 'the rights of third persons against retroactive effects of the fulfillment of a condition'.") citing *Wampler v. Wampler, 239 LA. 315, 118 So. 2d 423, 426 (La. 1960)* ("There is nothing in the language of the Article [dealing with suspensive conditions] which

lends support to the contention that, when the suspensive conditions are performed, title to the property contracted for vests retrospectively in the grantee to the date the engagement was contracted.") and *Ober v. Williams, 213 LA. 568, 35 So. 2d 219, 223 (La. 1948)* (holding that article 1775 does not have the effect of vesting title retrospectively to the date of the agreement).

In his post-argument brief, Syracuse ignores the cases referenced by the Court in its Opinion and the effect of article 1775, while continuing to assert that article 1772 controls. Even the comments to article 1772, however, acknowledge that title may not pass retroactively: "the party not at fault may have to content himself with damages rather than specific performance if the latter has become impossible because of the nonfulfillment of the condition. **[*17]** " *La. Civ. Code art. 1772*, cmt. c. That is exactly what the Court determined in its Opinion; Syracuse has at most a claim for damages for breach of contract. *341 B.R. at 476.*

e. Wrong Third Party

In his post-argument brief, Syracuse argues that the Court, in its Opinion, determined that the third party whose rights prevented the retroactive fulfillment of the suspensive condition was Valero. This is erroneous, Syracuse contends, because the parties stipulated that the sale to Valero would not affect their respective claims of title to the Surplus Materials and that their interests would attach to the proceeds of the sale of that property. He asserts that the Court changed its ruling and suggested, for the first time at the oral argument, that the third party was the Debtor's estate.

Syracuse's premise is erroneous. The Court determined in its Opinion that the third party that cut off Syracuse's rights was the Debtor's bankruptcy estate. *Id. at 476.* The Court concluded that the Debtor's bankruptcy estate acquired property rights in the Surplus Materials pursuant to *section 541(a) (1) of the Bank-*

*ruptcy Code* as of the commencement [*18] of the case thereby preventing any retroactive fulfillment of the suspensive condition. Id. ("When the Debtor filed its bankruptcy case, the estate obtained an interest in the surplus materials. This occurred before the suspensive condition could be regarded as fulfilled.").

f. Improvement of Position

In his post-argument brief, Syracuse also argues that the Debtor's bankruptcy estate cannot receive any better title in the Surplus Materials than the Debtor had and that, because the suspensive condition was deemed fulfilled as to the Debtor, it must be as to the estate as well. To hold otherwise, argues Syracuse, would allow the Debtor to improve its position simply because it filed bankruptcy. See, e.g., *In re Squyres, 172 B.R. 592, 594 (Bankr. C.D. Ill. 1994)* (" [The debtor's interests in an asset or his rights against others are not expanded by the filing of a bankruptcy proceeding.").

The Court disagrees. The filing of a petition in bankruptcy creates a new legal entity, the bankruptcy estate. The estate succeeds to the debtor's rights in most respects but possesses property rights and legal attributes in addition to those of the pre-petition debtor. [*19] For example, property of the estate includes recoveries for transfers avoidable under chapter 5 of the Bankruptcy Code. *11 U.S.C. § § 541(a)(7), 544, 547, 548 & 549.* In particular, the estate has the power to avoid interests of third parties in property of the debtor that were unperfected as of the petition date. Id. at *§ 544.* Any improvement in position that the estate may have over the position of the debtor absent a bankruptcy filing does not inure to the benefit of the debtor; it is for the benefit of creditors. The creation of a bankruptcy estate is to fulfill the purposes of the Bankruptcy Code, which "aims, in the main, to secure equal distribution among creditors." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 126 S. Ct. 2105, 2109, 165 L. Ed. 2d 110 (2006).*

Because in this case the bankruptcy estate came into existence and obtained title to the Surplus Materials before Syracuse's rights were adjudicated, Syracuse cannot obtain title to the Surplus Materials under Louisiana law. Once a person n6 obtains an interest in property, Louisiana law protects that person's [*20] rights against the retroactive effects of the fulfillment of a suspensive condition. *La. Civ. Code art. 1775,* cmt. (b) (stating that article 1775 protects "the rights of third persons against retroactive effects of the fulfillment of a condition.").

> n6 Under Louisiana law, "[t]he right of ownership may exist only in favor of a natural person or a juridical entity." *La. Civ. Code art. 479.* The Debtor's estate is a legal entity that can hold property, and the trustee (or debtor in possession) is its representative and has the capacity to sue and be sued on behalf of the estate. *11 U.S.C. § § 101(15), 323 & 1107(a).* Thus, the bankruptcy estate has attributes of a personality and is, therefore, a juridical person under Louisiana law. *La. Civ. Code art. 24* (defining a "juridical person" as an entity to which the law attributes personality. . . .").

*Section 541(d) of the Bankruptcy Code* does make property of the estate subject [*21] to a constructive trust claim. This is of no help to Syracuse, however, because constructive trust claims are not recognized under Louisiana law. See, e.g., *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management), 4 F.3d 1329, 1336 (5th Cir. 1993).*

Consequently, there is no provision in the Bankruptcy Code or Louisiana law that establishes Syracuse's rights in the Surplus Materials are superior to the title acquired by the Debtor's estate on the filing of the petition. See *Rine & Rine Auctioneers v. Douglas County Bank & Trust Co. (In re Rine & Rine Auctioneers, Inc.),*

*74 F.3d 854, 858 (8th Cir. 1996)* (providing that state law controls questions concerning the nature and extent of a debtor's interest in property, but federal bankruptcy law determines the extent to which that interest is property of the estate).

Thus, while Syracuse may have been able to use article 1772 to obtain title to the Surplus Materials in the absence of the Debtor's bankruptcy filing, once the Surplus Materials became property of the estate, Syracuse lost his right to obtain title to those items. Syracuse merely has a "claim" against the Debtor's estate. **[\*22]** See *11 U.S.C. § 101(5)* (defining a "claim" to be a "(A) right to payment . . . or (B) right to an equitable remedy for breach of performance. . . .").

g. Waiver

Syracuse also argues that the contract cannot be classified as a sale subject to a suspensive condition because Syracuse sold some of the Surplus Materials without ever moving them before the Debtor filed bankruptcy, even selling some of the Surplus Materials back to the Debtor. These actions, Syracuse contends, demonstrate that title to certain items passed before removal and clean-up services required by the Agreement could be performed.

In its Opinion, the Court stated that "[r]emoval of the surplus materials could not be accomplished unless Syracuse was also concomitantly cleaning up the designated areas. Without the satisfaction of the suspensive condition - the clean up of the designated areas - title to the Surplus Materials could not have passed from him to the Debtor." *341 B.R. at 475.* The fact that the Debtor may have agreed that Syracuse did not have to remove some of the Surplus Materials that it purchased from him does not invalidate the Court's classification of **[\*23]** the Agreement as a sale subject to a suspensive condition.

Syracuse argues, however, that if the Debtor waived the requirement that Syracuse

remove some items from the Norco facility, it was a waiver of the suspensive condition itself. The Defendant responds in its post-argument brief that "the parties' contract expressly provides that "[a] waiver . . . of any term, provision, or condition of this contract shall not constitute a precedent or bind either party hereto to a waiver of any succeeding breach of the same or any other terms, provision, or condition of this contract." (Contract, Exh. A, Item 18.) Consequently, the Court concludes that, if the Debtor did waive the suspensive condition as to some of the sales, it did not constitute a waiver of the suspensive condition as to all sales.

IV. CONCLUSION

For the above-stated reasons, the Court will deny Syracuse's motion for reconsideration.

An appropriate order is attached.

By the Court,

Mary F. Walrath

United States Bankruptcy Judge

Dated: August 8, 2006

ORDER

**AND NOW**, this **8th** day of **AUGUST, 2006**, upon consideration of the Motion for Reconsideration filed by Michael G. Syracuse, and **[\*24]** the Debtor's response thereto, and after oral argument, it is hereby

**ORDERED** that the Motion for Reconsideration filed by Michael G. Syracuse is **DENIED.**

BY THE COURT:

Mary F. Walrath

United States Bankruptcy Judge

cc: Christopher M. Winter, Esquire n1

n1 Counsel shall serve a copy of this Opinion and Order on all interested par-

2006 Bankr. LEXIS 1657, *

ties and file a Certificate of Service with
the Court.

Tab 4

000000.0

LEXSEE 2003 U.S. APP. LEXIS 5756

**WILLIE J. MCCOY, Appellant in No. 02-1854/ Cross Appellee in No. 02-1987 v. BOARD OF TRUSTEES OF THE LABORERS' INTERNATIONAL UNION, LOCAL NO. 222 PENSION PLAN; LABORERS' INTERNATIONAL UNION, LOCAL NO. 222 PENSION PLAN; LABORERS' INTERNATIONAL UNION LOCAL NO. 222; EDWARD HARRIS; OLIVER G. GLASS; X, Y, Z CORPORATIONS (1-10), INDIVIDUALS; A, B, C (1-10), (ALL FICTITIOUS NAMES WHO ARE PLAN SPONSORS and/OR ADMINISTRATORS OR OTHER FIDUCIARIES, WHO SHOULD BE IDENTIFIED THROUGH DISCOVERY); NEW JERSEY BUILDING LABORERS' STATEWIDE PENSION FUND, Appellees in No. 02-1854/ Cross Appellants in No. 02-1987**

**Nos. 02-1854 and 02-1987**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*60 Fed. Appx. 396; 2003 U.S. App. LEXIS 5756*

**January 17, 2003, Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 25, 2003, Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court for the District of New Jersey. (No. 00-cv-01481). District Judge: The Honorable Stephen M. Orlofsky. *McCoy v. Bd. of Trs. of the Laborers' Int'l Union Local # 222 Pension Plan, 188 F. Supp. 2d 461, 2002 U.S. Dist. LEXIS 3039 (D.N.J., 2002)*

**DISPOSITION:** Affirmed.

**COUNSEL:** For Willie J. Mccoy, Appellant (02-1854), Appellee (02-1987): William B. Hildebrand, Feldman & Hildebrand, Cherry Hill, NJ.

For Board of Trustees of The Laborers' International Union, Local No. 222 Pension Plan, Local 222 Pension, Laborers International Union Local 222 Fringe Benefit Funds, Edward Harris, Oliver Glass, New Jersey Building Laborers Statewide Pension Fund, Appellees (02-1854), Appellants (02-1987): Mark E. Belland, Tomar, O'Brien, Kaplan, Jacoby & Graziano, Cherry Hill, NJ.

**JUDGES:** Before: ROTH, FUENTES and ALDISERT, Circuit Judges.

**OPINIONBY:** Julio M. Fuentes

**OPINION:**

[*396] OPINION OF THE COURT

FUENTES, Circuit Judge:

Plaintiff Willie J. McCoy appeals the District Court's order granting in part and denying in part the parties' cross-motions for summary judgment and the District Court's order denying his motion for reconsideration. Defendants, the [**2] Board of Trustees of the Laborers' International [*397] Union, Local No. 222 Pension Plan (the "Plan") and various persons and entities associated with the Plan, cross appeal the same orders, both of which concern McCoy's entitlement to disability retirement benefits under the Plan. Because we discern no error in the District Court's resolution of the parties' cross-motions for summary judgment, we affirm.

I. Facts and Procedural Background

The factual allegations underlying this case are well known to the parties, and therefore, they are not detailed here, except to the extent that they directly bear upon the analysis. On March 29, 2000, appellant Willie J. McCoy, a participant and beneficiary of the Plan, n1 initiated the action which is the subject of these cross-appeals by filing a pro se Complaint against the Plan's Board of Trustees in District Court. In his Complaint, McCoy alleged that the defendant unlawfully refused to provide disability retirement benefits due to him under the Plan after he suffered a back injury on January 5, 1995 which left him disabled and unable to engage in gainful employment. McCoy subsequently retained counsel and, with the permission of the Court, [**3] filed amended complaints in which he named additional defendants and asserted numerous other theories of recovery.

n1 The Plan and its successor by merger, defendant New Jersey Building

Laborers Statewide Pension Fund (which was named in plaintiff's Fourth Amended Complaint, filed after the parties filed their cross-motions for summary judgment), are employee welfare benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(1).

Specifically, in his Fourth Amended Complaint, McCoy alleged that he had been employed for at least twenty years as a laborer in the construction industry, working under a collective bargaining between defendant Laborers' International Union, Local No. 222 and various employers, which required his employers to make health and welfare contributions to the Plan on his behalf. McCoy alleged that, on January 5, 1995, he was injured during the course of his employment as a construction laborer with Enviro Tech, Inc. of Woodbury, N.J. and that, since that time, he has [**4] been totally and permanently disabled, and unable to engage in any gainful employment. He further alleged that, shortly after the accident, he contacted Ms. Freddie McMillan, the Plan's Administrator to request information on how to apply for disability retirement benefits under the Plan and was advised that he had to be out of work for at least six months in order to be eligible to apply for disability benefits under the Plan.

Plaintiff alleged that, based on Ms. McMillan's advice, he waited six months, then returned with the information Ms. McMillan told him he would need to present in order to complete his application for disability retirement benefits. Defendants Edward Harris and Oliver Glass, who were then members of the Plan's Board of Trustees, allegedly refused to accept McCoy's application and advised him that he could not apply for disability retirement benefits under the Plan until his application for social security benefits had been approved and that the Plan would provide him with benefits

for the same period as had been approved by Social Security.

On November 27, 1998, the Office of Hearings and Appeals of the Social Security Administration determined that plaintiff [**5] suffered from a disability within the meaning of the *Social Security Act*, as a result of his job-related injury, and that the period of his disability began on January 9, 1995. On December 28, 1998, Social Security awarded plaintiff monthly disability benefits beginning in July of 1995. The [*398] Notice of Award explained that the first month of benefits was July 1995 because plaintiff had to be disabled for 5 full consecutive calendar months before becoming entitled to benefits.

On December 18, 1998, McCoy submitted an application for disability benefits to the Plan, together with information and materials necessary to process his application. McCoy's application was approved and he began receiving benefits as of January 1, 1999. However, defendants refused to provide him with any benefits for the period prior to January 1, 1999 and allegedly failed to pay any benefits to his wife, despite repeated demands to do so.

The record on appeal shows that McCoy appealed the Board of Trustee's refusal to provide him with retroactive disability benefits. According to the minutes of the meeting of the Trustees, the appeal was considered during meetings held on May 12, 1999, November 18, 1999, and [**6] February 2, 2000, and was repeatedly and unanimously denied.

Based on the foregoing, plaintiff's Fourth Amended Complaint sought, inter alia: (1) unpaid benefits due under the terms of the Plan, declaratory relief clarifying plaintiff's right to future benefits under the Plan, together with attorneys' fees, costs, and interest; (2) compensatory and punitive damages for material misrepresentations, allegedly constituting a breach of the fiduciary duties of Plan trustees Glass and Harris, concerning the process for applying

for benefits; (3) an order holding the Plan Administrator personally liable in an amount up to $ 100.00 a day for failing to provide him with a notice explaining the basis for the Board of Trustees' decision to deny his appeal and his options should he wish to appeal further; and (4) an injunction compelling defendants to provide all Plan participants and beneficiaries with a revised Summary Plan Description reflecting its amendment.

With respect to the benefits due under the Plan, plaintiff alleged that defendants wrongfully refused to provide him with retroactive disability retirement benefits dating back to the first day on which he was eligible to receive [**7] a disability benefit under the *Social Security Act*. Plaintiff also alleged that his retirement benefits should have been calculated at a monthly rate of $ 107.00 or $ 120.00, based on amendments to the Plan effective January 1, 1998 and January 1, 1999, respectively, rather than the $ 80.00 monthly rate used by the defendants, which was based on an amendment to the Plan effective January 1, 1997.

The parties filed cross-motions for summary judgment on December 14, 2001. The District Court granted in part and denied in part each of the cross-motions. The Court rejected defendants' assertion that McCoy had failed to exhaust his administrative remedies under the Plan on the basis that defendants waived their right to contest plaintiff's failure to exhaust and that defendants' delay in asserting this affirmative defense prejudiced plaintiff. The Court granted summary judgment in plaintiff's favor on the issue of his entitlement to disability retirement benefits dating back to when he became eligible to receive a disability benefit under the *Social Security Act*, i.e., July 1995.

Regarding the amount of retroactive benefits owed, however, the District Court held that plaintiff's benefits [**8] should be calculated according to the terms of the Plan applicable to participants who became eligible for benefits on or after January 1, 1994 but before Decem-

ber 31, 1995. Accordingly, the District Court awarded plaintiff $ 60 per year of credit earned prior to January 1, 1986 and $ 75 per year of credit earned on or after January 1, 1996. See *McCoy v. Board of Trustees of the* [*399] *Laborers' International Union, Local No. 222 Pension Plan, et al., 188 F. Supp. 2d 461, No. 00-1481 (D. N.J. Feb. 26, 2002)* ("Dist. Ct. Op."), app. at 26 (citing Amendment No. 3 to Plan). Notably, this amount was less than the $ 80 a month which the defendants had initially awarded plaintiff based on their reading of the Plan. Additionally, the Court rejected plaintiff's assertion that the amount of benefits he was owed from the effective date of his pension going forward should have been set at $ 120 per month per year of credit. However, because neither party had asked the Court to reduce McCoy's future benefits from the $ 80 per month per credit year computed by the Plan Administrator, the Court did not reduce that figure. See *188 F. Supp. 2d 461, App. at 28 n.8.*

The District Court also granted defendants' motion for summary judgment in [**9] part by dismissing plaintiff's claims of breach of fiduciary duty against Glass and Harris, the individual trustees named in the Complaint. The Court reasoned that any recovery for breach of fiduciary duty would be duplicative of the benefits which the Court was awarding plaintiff for retroactive benefits. Finally, the District Court granted plaintiff the injunction he sought, ordering defendants to furnish him with a copy of an official Summary Plan Description of the Plan succeeding the Plan in effect during his employment within 10 days of the next regularly scheduled meeting of the trustees of that Plan.

On March 7, 2002, plaintiff filed a motion for reconsideration. The Court denied the motion. McCoy timely appealed the District Court's orders on the parties' cross-motions for summary judgment and on his motion for re-

consideration. Defendants timely cross-appealed.

II. Jurisdiction and Standard of Review

The District Court exercised jurisdiction over this matter under *29 U.S.C. § 1132(e)* and *28 U.S.C. § 1331.* We have appellate jurisdiction under *28 U.S.C. § 1291.*

The standard of review applicable to [**10] an order granting summary judgment is plenary. See *Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).* We apply the same test employed by a District Court under *Federal Rule of Civil Procedure 56(c).* See *Kelley v. TYK Refractories Co., 860 F.2d 1188, 1192 (3d Cir. 1988).* Accordingly, the District Court's grant of summary judgment was proper only if it appears that "there is no genuine issue as to any material fact and that [each of] the moving parties is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* In evaluating the evidence, we are required "to view [the] inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)* (citation omitted).

"The standard of review for a denial of a motion for reconsideration varies with the nature of the underlying judicial decision." *Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986).* Because this court is addressing the District Court's rulings on motions for summary judgment, this Court has plenary review. See *id. at 349.* [**11]

III. Discussion

McCoy argues on appeal that the District Court erred in calculating the amount of additional benefits which he is entitled to receive under the Plan. He asserts that he is entitled to monthly disability retirement benefits at the rate of $ 120 per year based on an amendment to the Plan increasing the pension rate for disability retirees eligible for benefits on or after January 1, 1999 to $ 120 per year of credited

60 Fed. Appx. 396, *; 2003 U.S. App. LEXIS 5756, **

service. Alternatively, McCoy argues that he is entitled to at least the $ 80 monthly **[*400]** benefit originally provided to him based on an amendment to the Plan effective January 1, 1998, which increased the monthly benefit for participants eligible on or after January 1, 1997 through December 30, 1998 to $ 80 multiplied by total years of credit. Essentially, McCoy argues that the District Court erred by determining that he was entitled to benefits at the lower rate in effect when he first became disabled because the amount of benefits to which he is entitled depends on when he became eligible to receive benefits and he did not become eligible until January 1, 1999, the effective date of his pension, or, at the earliest, in 1998, when he was awarded disability **[**12]** benefits under the *Social Security Act*. n2

> n2 McCoy also asserts that the District Court erred by dismissing the counts of his Complaint seeking damages for defendants' material misrepresentations of the Plan's provisions because genuine issues of material fact existed due to defendants denial that they made the alleged misrepresentations. He concedes that the claims are moot based on the case's current procedural posture, but seeks the opportunity to try these claims should the Court grant defendants' cross-appeal.

Defendants argue in their cross-appeal that they properly applied the terms of the Plan which were in effect when plaintiff was injured, at a benefit rate in effect when the employer contributions to fund plaintiff's benefits ceased. They assert that plaintiff's benefit *level* was properly set at the rate in effect in 1997, when he left covered employment and ceased being an active Plan participant. Additionally, defendants assert that their decision to fix the *date* Plaintiff would begin to **[**13]** receive benefits at January 1, 1999 was consistent with

the version of the Plan in effect when plaintiff was injured. Defendants assert that the District Court erred in concluding that the benefits which they awarded plaintiff were inconsistent with the Plan.

We affirm substantially for the reasons set forth in the District Court's thorough and well reasoned opinion. The District Court expressly recognized that it could not disturb the Plan Administrator's interpretation of the Plan unless it was arbitrary and capricious. See *Dist. Ct. Op., app. at 22, 188 F. Supp. 2d 461* (citing *Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 173 (3d Cir. 2001)).* The Court correctly noted, however, that it need not defer to an interpretation of the Plan which contravenes its plain language. See *id.* (citing *Epright v. Entl. Res. Mgmt., Inc. Health and Welfare Plan, 81 F.3d 335, 342 (3d Cir. 1996)).*

With respect to plaintiff's eligibility for retroactive disability retirement benefits, the Court looked to the plain language of Amendment No. 4 to the Plan, effective January 1, 1988, amending Section 4.3 of the Plan. The Amendment provided, in relevant part, that an applicant **[**14]** for disability retirement benefits who proved that he had been awarded a disability benefit under the provisions of the *Social Security Act* "shall be eligible to receive a Disability Retirement Benefit which shall begin as of the first day that he is eligible to receive a disability benefit under the *Social Security Act*." *Dist. Ct. Op., app. 23, 188 F. Supp. 2d 461* (citing Amendment No. 4 to Plan, app. at 142). The Court concluded that this provision of the Plan was controlling because it went into effect on January 1, 1998, some eleven months before plaintiff's December 18, 1998 application for benefits under the Plan.

In reaching its conclusion the Court rejected defendants' assertion that they were obliged to treat plaintiff's application as though the 1995 version of the Plan was still in effect lest he benefit from contributions made to the

pension fund on behalf of all actively working members of his union even though minimal contributions had **[*401]** been made to the Plan in the years prior to his application based on his own work. The Court also rejected defendants' assertion that Section 4.3 of the Plan, which was amended by Amendment No. 4, was inapplicable to plaintiff because his application was more **[**15]** appropriately considered as one under section 4.4 of the Plan for a deferred vested retirement benefit. The Court noted that Section 4.4, by its express terms, applied only to participants who, unlike plaintiff, were not otherwise entitled to receive a retirement benefit.

With respect to the amount of retroactive benefits due plaintiff, the Court reasoned that, because plaintiff became eligible for disability retirement benefits under the Plan dating back to when he became eligible to receive a disability benefit under the *Social Security Act* (July 1995), his retroactive benefits should be calculated according to the terms of the Plan applicable to Plan participants who became "eligible on or after January 1, 1994 through December 31, 1995." Dist Ct. Op., app. at 26 (citing Amendment No. 3 to Plan, app. at 140). The

Court therefore awarded plaintiff $ 60 per year of credit earned prior to January 1, 1986 and $ 75 per year of credit earned on or after January 1, 1986. See id.

After carefully considering the competing readings of the Plan advanced by the parties and all of the arguments they present in support of reversing the District Court's orders, we discern no error in the **[**16]** District Court's resolution of the cross-motions for summary judgment.

IV. Conclusion

For substantially the reasons set forth in the District Court's well-reasoned opinion, we deny the cross-appeals from the District Court's order granting in part and denying in part the parties' cross-motions for summary judgment and the order denying plaintiff's motion for reconsideration. We therefore affirm the District Court's orders.

By the Court,

/s/ Judge Julio M. Fuentes

Circuit Judge