Tab 5

LEXSEE 231 F.R.D 186

**MELVIN PELL and ELLEN PELL, Plaintiffs, v. E.I. DUPONT DE NEMOURS & COMPANY INCORPORATED, et al., Defendants.**

**Civil Action No. 02-21 KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*231 F.R.D. 186; 2005 U.S. Dist. LEXIS 22504; 63 Fed. R. Serv. 3d (Callaghan) 222*

**October 4, 2005, Decided**

**PRIOR HISTORY:** *Pell v. E.I. DuPont De Nemours & Co., 348 F. Supp. 2d 306, 2004 U.S. Dist. LEXIS 28133 (D. Del., 2004)*

**COUNSEL:** [**1] For Robert Jacobs, Esq., Jacobs & Crumplar, P.A., Wilmington, Delaware, for Plaintiffs.

For Mary E. Cooper, Esq., Kathleen Furey McDonough, Esq., Potter Anderson & Corroon LLP, Wilmington, Delaware, for Defendants.

**JUDGES:** JORDAN, District Judge.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

### [*187] MEMORANDUM OPINION

October 4, 2005
Wilmington, Delaware

Kent A. Jordan

**JORDAN, District Judge**

## I. INTRODUCTION & BACKGROUND n1

n1 The factual background of the case is described in detail in *Pell v. E.I. DuPont De Nemours & Co., Inc., 348 F. Supp. 2d 306 (D. Del. 2004).*

Presently before me is a Motion for Reconsideration (Docket Item ["D.I."] 137; the "Motion") filed by plaintiffs Melvin Pell, a retired employee of DuPont, and Ellen Pell, his wife (collectively, "Plaintiffs") pursuant to *Federal Rule of Civil Procedure 59(e)*. Plaintiffs' Motion comes in response to my December 8, 2004 Opinion, in which I granted summary judgment for defendants E. [**2] I. du Pont de Nemours & Co. Inc. and the Board of Benefits and Pensions of E.I. du Pont de Nemours & Co. Inc. ("the Board") (collectively "DuPont") after finding that "the evidence of record simply does not support Mr. Pell's assertion that he relied on the January 13, 1984 letter from Consol in making the decision to transfer to DuPont." (D.I. 136 at 12.) This finding was based on Mr. Pell's deposition testimony regarding when he signed the documents transferring his employment to DuPont. (*Id.* citing D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004. at 72:23-24).) Based on the arguments presented

231 F.R.D. 186, *; 2005 U.S. Dist. LEXIS 22504, **;
63 Fed. R. Serv. 3d (Callaghan) 222

in the summary judgment memoranda, his testimony appeared to be subject to only one reasonable interpretation: that he changed employment status before receiving the January 13, 1984 letter (the "Letter"). (*See id.*) Thus, I found that Mr. Pell had received only an oral representation of his future benefits, which was insufficient as a matter of law to modify an ERISA benefit plan. *See, e.g., Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1164 (3d Cir. 1990).* I therefore held that Plaintiffs did not have sufficient evidence to establish that Dupont should be equitably [**3] estopped from calculating Mr. Pell's pension based on a later start date. (D.I. 136 at 12-18.) Additionally, I held that Plaintiffs could not prove a breach of fiduciary duty because they could not establish that they relied to their detriment on a representation of future benefits. (*Id.*)

Based on additional evidence highlighted by the Plaintiffs, their Motion will be granted. Because the Motion will be granted, Defendants' Motion to Strike the Report and Preclude the Testimony of Plaintiffs' Proposed Expert Witness (D.I. 105; the "Motion [*188] to Strike and Preclude") will also be addressed herein.

## II. STANDARD OF REVIEW

### A. Motion for Reconsideration

Motions for reconsideration are to correct manifest errors of law or fact or to present newly discovered evidence. *Seawright v. Carroll, 2004 U.S. Dist. LEXIS 3267, No. 02-1258-KAJ, 2004 WL 396310, at *1 (D. Del. Mar. 2, 2004)* (citing *Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)*). "A motion for reconsideration is not appropriate to reargue issues that the court has already considered and denied." *Id.* (internal citation omitted). A court may grant a motion for reconsideration "if the moving party [**4] shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need

to correct a manifest injustice." *Id.* (citing *Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)*).

### B. Motion to Exclude Testimony

Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 749 (3d Cir. 1994)* (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard) (internal citations omitted). "When the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment," the Court of Appeals will give those rulings "a 'hard look' to determine if a district court has abused its discretion in excluding evidence as unreliable." *Id. at 750.*

## III. DISCUSSION

### A. Motion for Reconsideration

Plaintiffs argue that the issue of whether Mr. Pell agreed to become [**5] a DuPont employee before receiving the Letter was not specifically raised in DuPont's Motion for Summary Judgment (D.I. 116), and thus, "Plaintiffs were, to an extent, deprived of an opportunity to fully research, brief and answer the arguments raised by the Court." (D.I. 137 at 1.)

First, Plaintiffs assert that there is more than one way to interpret Mr. Pell's deposition testimony. Specifically, Plaintiffs say that when Mr. Pell stated, "that was at the end of '83," he was referring to when he became a DuPont employee, not when he signed the documents to transfer. (D.I. 137 at 4; D.I. 140 at 5.) Thus, Plaintiffs claim, with reasonable inferences drawn in their favor, as the summary judgment standard of review requires, Mr. Pell's testimony should be sufficient to create a genuine issue of material fact as to whether Mr. Pell reasonably relied upon the Letter. (D.I. 137 at

4-8.) Second, Plaintiffs argue that they were entitled to rely on the pension "estimates" received by Mr. Pell during his employment with DuPont because they "estimated" the "value of his monthly pension benefit," not "the underlying data" of the numbers of years used to calculate his pension. (*See id.* at 9.) **[**6]** Plaintiffs assert that the testimony of Ms. Uhde, supports their argument as well. (D.I. 137 at 9-10.) Finally, Plaintiffs assert that DuPont breached its fiduciary obligation by failing "to provide full and accurate data when requested." (*Id.* at 10-11.) Plaintiffs argue that "the continued misrepresentations clearly stopped Mr. Pell in 1984, 1991, 1992, and 1998 from making informed decisions based on vested rights." (*Id.* at 11.)

In response, DuPont argues that my ruling is "amply supported" by the record and was based on arguments clearly presented in the briefing on its motion for summary judgment. (D.I. 139 at 3.) DuPont asserts that Plaintiffs' argument regarding the Letter is "surprising" because Plaintiffs sought to rely upon the Letter in their Opposition brief. (*Id.*) Thus, DuPont argues that if Plaintiffs had believed that DuPont's Reply Brief raised a new issue on which they needed to present argument, "they should have brought it to the Court's attention at that time." (*Id.* at 3-4.) Second, although DuPont does not take issue with Plaintiffs' characterization of the "estimates," as estimating the value of the monthly pension benefit, not the underlying data **[**7]** of the number of years used to calculate Mr. Pell's pension (D.I. 139 at 6-8), **[*189]** DuPont does attack the Plaintiffs' use of Ms. Uhde testimony as "allegedly newly-discovered evidence," arguing that it "should have ... [been brought] to the court's attention immediately," instead of "after receiving an unfavorable ruling... ." (*Id.* at 7.) Third, DuPont argues that *Maiuro v. Federal Express Corp., 843 F. Supp. 935 (D.N.J. 1994)*, "did not involve or discuss fiduciary duties or appropriate remedies for breach of fiduciary duties," and therefore does not support Plaintiffs' assertion that DuPont breached a fiduciary duty. (*Id.* at

8-9.) Thus, DuPont asserts, both parties' positions were adequately considered and supported by the facts in the record. (*Id.* at 9.)

### 1. Equitable Estoppel

### a. The Letter

### i. The Timing of Mr. Pell's Receipt of the Letter

Upon review of the Plaintiffs' argument, I agree that Mr. Pell's depositiontestimony regarding when he received the Letter is reasonably subject to more than one interpretation, which presents a question of fact. Because the timing of Mr. Pell's receipt of the Letter was not raised in DuPont's Opening **[**8]** Brief in Support of its Motion for Summary Judgment (D.I. 117), and was not specifically addressed by Plaintiffs in their Answering Brief in Opposition to DuPont's Motion for Summary Judgment (D.I. 125), it is appropriate to reconsider my decision granting summary judgment to DuPont. My rulings on Plaintiffs' equitable estoppel and breach of fiduciary duty claims were premised on my conclusion that Plaintiffs' could not show reasonable or detrimental reliance, *see supra* Part I, a conclusion which in turn was based on Mr. Pell's deposition testimony about the Letter.

Mr. Pell's deposition testimony was as follows:

> Q. What actions did you take in reliance on this January 13, 1984, letter?
>
> A. This basically laid out the conditions and terms of my transfer to DuPont should I choose to take it. And I know I -- as a result of the letter I guess is when I finally signed up, signed the documents.
>
> Q. Which documents are those?

Case 1:05-cv-00760-JJF     Document 56-3     Filed 08/15/2006     Page 5 of 17

Page 4

231 F.R.D. 186, *; 2005 U.S. Dist. LEXIS 22504, **;
63 Fed. R. Serv. 3d (Callaghan) 222

A. To become a DuPont employee. That was at the end of '83. (D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004, at 72:18-73:2.)

I agree with Plaintiffs that Mr. Pell's deposition testimony could be reasonably understood to mean that he was referring [**9] to his change in employment when he stated, "to become a DuPont employee. That was at the end of '83." (*Id.* at 73:1-2.) One reasonable interpretation of the events surrounding Mr. Pell's change in employment status is that he signed the documents to effectuate his transfer after receiving the Letter, but that his transfer was deemed effective as of January 1, 1984. Thus, there is a genuine issue of material fact as to whether, before he signed the documents to effectuate the transfer, Mr. Pell had received the Letter, which informed him what his pensions benefits at DuPont would be if he transferred employment. Accordingly, contrary to my earlier holding, Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact as to whether they reasonably and detrimentally relied upon the Letter. n2

n2 An equitable estoppel cause of action requires the plaintiff to establish "(1) a material representation, (2) reasonable and detrimental reliance upon the representation," and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994).* In the instant case, there are genuine issues of material fact which preclude a finding of summary judgment in favor of DuPont. First, whether an affirmative misrepresentation was "material," is a mixed question of law and fact. *Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993)* (internal quotation omitted). "In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if

and when to retire." *Id.* (internal citations omitted). Thus, there is a genuine issue of material fact as to whether the misrepresentation in the Letter was material, in that it could "mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Id.* Second, as noted above, there is a genuine issue of material fact as to whether Plaintiffs received the Letter before Mr. Pell accepted the transfer to DuPont and therefore could have reasonably and detrimentally relied upon the Letter. Third, the facts in this case bear some similarity to those in *Curcio* and *Smith v. Hartford Insurance Group, 6 F.3d 131, 142 (3d Cir. 1993),* where the Third Circuit found that the plaintiffs had alleged sufficient facts from which to prove the existence of extraordinary circumstances because the defendants had made repeated written and oral assurances of benefits. *See Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553-54 (3d Cir. 1996)* (discussing the cases in which the Third Circuit found extraordinary circumstances). Thus, summary judgment for DuPont is not appropriate on this issue either.

[**10]

n3 That issue was not specifically addressed by either party in the summary judgment briefing.

[*190]  ii. The Binding Effect of the Letter

In footnote 9 of my December 8, 2004 Opinion, I noted that I did not need to reach the issue of whether the Letter, which was executed by a Consol employee, could estop DuPont because it appeared as though Mr. Pell had not received the Letter until after he had already made the decision to transfer to DuPont. *Pell v. E.I. DuPont De Nemours & Co.,*

231 F.R.D. 186, *; 2005 U.S. Dist. LEXIS 22504, **;
63 Fed. R. Serv. 3d (Callaghan) 222

*Inc., 348 F. Supp. 2d 306, 313 n.9 (D. Del. 2004).* Because there is a question of fact as to whether Mr. Pell received the Letter before he decided to transfer to DuPont, I now must address that issue. I, therefore, requested the parties to provide further briefing on whether DuPont could be bound by the terms of the Letter. n3

Plaintiffs assert that Mr. Waddell, the Director of Employee Compensation and Benefits of Consol, had both actual and apparent authority to make the representations regarding Mr. Pell's pension on behalf of DuPont. (D.I. 147 at 1-3.) Plaintiffs argue that under the DuPont [**11] Transfer Policy, "the transferring company has to have an appropriate executive execute the letter to make it an official document." (*Id.* at 2.) Plaintiffs assert that, based on Mr. Waddell's position, he is such an executive and therefore he had actual authority, whether express or implied, to execute the Letter. (*Id.*) Additionally, Plaintiffs assert that Mr. Waddell had apparent authority to write the Letter and that Mr. Pell's reliance upon its terms was therefore reasonable. (*Id.* at 2-3.)

DuPont asserts that the Transfer Policy grants actual authority to DuPont management, not Consol management, to execute letters similar to the one that Mr. Pell received. (D.I. 150 at 1.) Additionally, DuPont argues that "apparent authority is not relevant under the facts of this case. ... [because Mr. Pell] accepted employment with DuPont prior to receiving the letter from Mr. Waddell. ... [and, therefore,] the 1984 letter cannot bind DuPont on the basis of apparent authority." (*Id.* at 2.)

"Actual authority is that authority which a principal expressly or implicitly grants to an agent." *Billops v. Magness Const. Co., 391 A.2d 196, 197 (Del. 1978).* Additionally, [**12] "it is well settled that apparent authority (1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the

agent is authorized." *Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 989 (3d Cir. 1995)* (internal quotations omitted).

The Transfer Policy Guidelines (the "Guidelines") are "designed to assist management at Du Pont locations as they administer Du Pont Compensation ... Plans and Practices for employees *permanently* transferred to Du Pont from Conoco/Consol. ... [and] also will assist management in informing employees being transferred to Conoco/Consol from Du Pont." (D.I. 147, Ex. D at D000019 (emphasis in original).) The Guidelines also state that "similar guidelines are being issued by Conoco Human Resources personnel to cover Conoco employee benefits for transferred employees." (*Id.*) There is thus a persuasive argument that the Guidelines were meant to cover someone in Mr. Pell's position, although the form letter attached to the Guidelines indicates it would be used for employees transferring from DuPont. Whether or not [**13] the Guidelines constituted a grant of actual authority to make statements binding upon DuPont, n4 there is in these documents [*191] and in the dealings of DuPont and CONSOL executives with Mr. Pell enough to at least raise a factual issue as to whether Mr. Waddell was acting with apparent authority from DuPont.

n4 Plaintiffs also assert that the Letter satisfies the Transfer Policy requirements because an appropriate executive executed it as shown in the sample letter of Exhibit A of the Guidelines. (D.I. 147 at 2; D.I. 147, Ex. D at D000040.) The sample letter, however, is "to be given *to a Du Pont employee permanently transferred to Conoco/Consol,* by the appropriate management of the Sending Department." (*Id.* at D000040 (emphasis added).) The "Sending Department," in the context of the sample letter, clearly refers to an employee transferred *from* DuPont, not Consol. Thus, the sample

231 F.R.D. 186, *; 2005 U.S. Dist. LEXIS 22504, **;
63 Fed. R. Serv. 3d (Callaghan) 222

letter does not support Plaintiffs' argu-
ment because Mr. Pell was transferred to
DuPont, not *from* DuPont.

DuPont's only [**14] argument as to why
Mr. Waddell did not have apparent authority is
that "Plaintiff accepted employment with Du-
Pont *prior* to receiving the letter from Mr.
Waddell." (D.I. 150 at 2 (emphasis in origi-
nal).) That, however, goes to the question of
Mr. Pell's reliance, not the apparent authority of
Mr. Waddell. Moreover, as earlier noted,
whether Mr. Pell received the Letter before
transferring employment to DuPont is itself a
genuine issue of material fact. *See supra* at Part
III.A.1.a.

**b. The Pension Estimates**

The Third Circuit's holding in *In re Unisys
Corp. Retiree Medical Benefit "ERISA" Litig.,
58 F.3d 896, 907-08 (3d Cir. 1995),* that an
employee's reliance on an employer's represen-
tation is unreasonable as a matter of law when
an employer reserves the right to change the
terms of future benefits, is distinguishable from
the case at hand because it does not address the
specific issue raised by Plaintiffs regarding past
benefits for the number of years noted in the
"estimates." The Third Circuit's opinion does
not address the issue of reliance upon a disclo-
sure, such as the date upon which pension
benefits begin to accrue.

Nevertheless, my finding [**15] that Plain-
tiffs could not establish that they relied to their
detriment on the benefits estimates remains un-
altered because Mr. Pell had already changed
jobs and moved to Delaware before receiving
those estimates. (*See* D.I. 136 at 14.) The only
other alleged detriment asserted by Plaintiffs
was "a misrepresentation about the vested pen-
sion years that Mr. Pell had in 1984." (D.I. 137
at 6.) Plaintiffs, however, offer no support for
their assertion that a misrepresentation is itself
a detriment, regardless of whether Plaintiffs can
establish that they took any action in reliance

upon the misrepresentation. Thus, the only
written representation upon which Plaintiffs
may have reasonably relied to their detriment
was the Letter.

**3. Breach of Fiduciary Duty**

My finding that Plaintiffs could not estab-
lish detrimental reliance on the pension esti-
mates, a *prima facie* element of a breach of fi-
duciary duty cause of action, remains unaltered.
My decision to reconsider Plaintiffs' equitable
estoppel cause of action does not require me to
reconsider my findings with respect to whether
DuPont breached a fiduciary duty. The Letter
was not a "statement furnished by [the plan]
administrator" [**16] in response to a written
request by a "participant or beneficiary." *29
U.S.C. § 1025.* n5 Further, I reject Plaintiffs'
argument that the pension estimates violated
*Section 1025* because Plaintiffs have not estab-
lished that they relied to their detriment based
upon the representations contained in the esti-
mates. Therefore, I will not reconsider my deci-
sion with respect to Plaintiffs' breach of fiduci-
ary duty cause of action.

n5 *29 U.S.C. § 1025* provides, in
relevant part:

(a) Statement furnished by
administrator to participants
and beneficiaries

*Each adminis-
trator of an em-
ployee pension
benefit plan
shall furnish to
any plan par-
ticipant or bene-
ficiary who so
requests in writ-
ing,* a statement

indicating, on the basis of the latest available information--

(1) the total benefits accrued,
(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

*29 U.S.C. § 1025* (emphasis added).

[**17]

**B. Motion to Strike and Preclude**

*Federal Rule of Civil Procedure 26(a)(2)(B)* requires that proposed expert testimony

be accompanied by a written report prepared and signed by the witness ... [which] contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, [*192] including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and

testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*Fed. R. Civ. P. 26(a)(2)(B).*

*Federal Rule of Evidence 702* obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). Rule 702* provides that "if scientific, [**18] technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise ...." The party offering the expert testimony has the burden of proving admissibility. *See Daubert, 509 U.S. at 592 n. 10* (citation omitted). The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Id. at 589-90.* Further, *Rule 702* requires that expert testimony assist the trier of fact. In other words, it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id. at 591-92.*

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts at issue. *Id. at 592-93.* As part of that inquiry, the [**19] court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999).*

Expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field. *See Redman v. John D. Brush & Co., 111 F.3d 1174, 1179 (4th Cir. 1997)* (metallurgist not qualified to testify about industry standards for safes); *Barrett v. Atl. Richfield Co., 95 F.3d 375, 382 (5th Cir. 1996)* (expert not qualified to testify about correlation of chemical effects on rats and on humans). Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder. *See McGowan v. Cooper Indus., Inc., 863 F.2d 1266, 1273 (6th Cir. 1987)* (expert permitted to testify as to the customary duty of factory representatives in the air compressor industry, but should not have been permitted to opine [**20] on breach of such duty because the jury was equally qualified to make that determination); *SEC v. Lipson, 46 F. Supp. 2d 758, 763 (N.D, Ill. 1998)* ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

In its Motion to Preclude and Strike (D.I. 105), DuPont asserts that I should strike the expert report and preclude the testimony of Plaintiffs' proposed expert witness, Dr. Francis Tannian. (D.I. 105 at 1.) First, DuPont argues that Dr. Tannian's report (the "Report") does not contain the required disclosures pursuant to *Federal Rule of Civil Procedure 26(a)(2)(B)*. (*Id.* at 1-4.) Specifically, DuPont asserts that the Report does not contain "any evidence of his qualifications to give expert testimony in this case-there is no identification of employment history, no identification of publications, no listing of other cases in which Dr. Tannian has testified, and no indication of his compensation from Plaintiffs." (*Id.* at 2.) Further, DuPont argues that the Report does not identify all of the data or other information considered by Dr. Tannian in [**21] forming his opinions, nor all of his proposed opinions. For example,

Dr. Tannian states that "estimates will be made of the pension Mr Pell would have received under the Consol Pension Plan ... [,]" but does not provide any indication of what those estimates will be or what his conclusions based on those estimates will be. (*Id.* at 3.) Thus, DuPont asserts that the Report fails to contain a complete statement of all opinions [*193] to be expressed and the basis and reasons therefor as required by *Rule 26(a)(2)(B)*. (*Id.* at 4.)

Second, DuPont asserts that the Report and Dr. Tannian's proposed expert testimony fail to satisfy the requirements for expert testimony under *Daubert,* namely "qualifications, reliability, and fit." (*Id.* at 4 quoting *Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000)*.) Specifically, DuPont notes that the only information it has received from Plaintiffs about Dr. Tannian's qualifications is that he is a former University of Delaware professor who holds a Ph.D. in Economics. (*Id.* at 5.) DuPont asserts that without disclosing the underlying data for his opinions, there is no way to determine whether his proposed testimony is [**22] fit, i.e., whether the requisite link between the underlying data and the opinions expressed has been established. (*Id.* at 5-6.) Finally, DuPont argues that Dr. Tannian's proposed testimony is irrelevant and will not assist in determining any factual issue in the case because his testimony pertains to money damages which are not an appropriate remedy in ERISA actions. n6 (*Id.* at 6-7.)

n6 DuPont also asserts that even if Dr. Tannian's opinion on damages is relevant to the issue of future damages, determining the amount due to Mr. Pell involves a simple mathematical calculation which does not require expert testimony to explain. (D.I. 115 at 4.)

Plaintiffs' counsel does not dispute that the Report fails to satisfy "the technical aspects of

... *Rule [26(a)(2)(B)]*" (D.I. 111 at 3), but asserts that they "have complied in spirit with *Rule 26(a)(2)*" (*id.* at 1 ). First, Plaintiffs' counsel blame part of their failure on their incorrect assumption that DuPont's counsel somehow already knew of Dr. Tannian's [**23] qualifications. (*Id.* at 2-3.) Second, Plaintiffs assert that Dr. Tannian "used the methodology of all economists with respect to calculating future earnings," namely specifying a wage growth rate (8.0% per year from 1983 through 1990; 6.0% per year from 1991 through 2001) for Mr. Pell's wages over a specified period of employment. (*Id.*) Finally, Plaintiffs' counsel apologizes for their oversights with regard to complying with *Rule 26(a)(2)(B)* and includes Dr. Tannian's curriculum vitae and testimony listings as part of an exhibit to its brief in response to DuPont's Motion to Strike and Preclude. (*Id.* at 3, Exs. C, D.)

Additionally, Plaintiffs assert that Dr. Tannian's proposed testimony satisfies the standards delineated in *Daubert.* (*Id.* at 4-7.) First, Plaintiffs argue that the underlying data upon which Dr. Tannian relied in forming his opinions was information supplied by Plaintiffs' counsel, including the deposition testimony of Mr. Miller, Mr. Pell's supervisor. (*Id.* at 4.) Second, Plaintiffs assert that Dr. Tannian's testimony on wage growth is relevant to the issue of Mr. Pell's reliance and change of position, and the equitable relief they are seeking, [**24] namely a correction of future payments. (*Id.* at 5.)

I agree that the Report fails to even come close to satisfying the requirements for expert reports under *Federal Rule of Civil Procedure 26(a)(2)(B)*. Specifically, the Report does not contain Dr. Tannian's qualifications to give expert testimony, namely an identification of his employment history, or identification of publications, or a listing of other cases in which he has testified, or an indication of his compensation from Plaintiffs. (*See* D.I. 105, Ex. A.) Dr. Tannian states in the Report that "estimates will

be made of the pension Mr Pell would have received under the Consol Pension Plan ... [,]" but does not provide any indication of those estimates or what his conclusions based on those estimates will be. Dr. Tannian chooses 6.0% and 8.0% wage growth rates for a number of years without any explanation of how or why he chose those numbers. (D.I. 105, Ex. A. at 2 ("Had he remained at Consol, and gained wage increases of only 8.0% a year through 1990, dropping back to 6.0% a year through 2001, his pay level in 2001 under these lower (than previous actual) wage growth rate assumptions [**25] would have been $ 17,356 a month in 2001").) Thus, the Report fails to contain a complete statement of all opinions to be expressed and the basis and reasons therefor as required by *Rule 26(a)(2)(B)*.

Moreover, Dr. Tannian's proposed testimony and Report fail to satisfy the *Daubert* [*194] standards for the admissibility of expert testimony. Without including Dr. Tannian's qualifications, there is no way for me to determine whether he is qualified to render the expert opinions he has proposed in the Report. There are also clear analytical gaps in Dr. Tannian's opinions, namely, the methodology he used to derive the 6% and 8% wage growth rate figures. It is therefore impossible to judge the reliability of Dr. Tannian's methods. Thus, Dr. Tannian's report fails to meet the requirements of both *Rule 26(a)(2)(B)* and *Daubert.*

Under *Federal Rule of Civil Procedure 37(c)(1)*,

> [a] party that without substantial justification fails to disclose information required by *Rule 26(a)* ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed. In additional to or in lieu of this [**26] sanction, the court, on mo-

Case 1:05-cv-00760-JJF    Document 56-3    Filed 08/15/2006    Page 11 of 17

Page 10

231 F.R.D. 186, *; 2005 U.S. Dist. LEXIS 22504, **;
63 Fed. R. Serv. 3d (Callaghan) 222

tion and after affording an opportunity to be heard, may impose other appropriate sanctions. ... [including] requiring payment of reasonable expenses, including attorney's fees, caused by the failure... .

*Fed. R. Civ. P. 37(c)(1).*

If Plaintiffs choose to remedy the deficiencies of Dr. Tannian's report, DuPont will have another opportunity to depose Dr. Tannian to determine whether his report satisfies the requirements of *Rule 26(a)(2)(B)* and whether his testimony satisfies the standards enunciated in *Daubert.* The reasonable expenses incurred by DuPont as a result of Plaintiff's failures under *Rule 26(a)(2)(B)* will be paid by Plaintiffs, including DuPont attorney time spent in preparation for, and deposition of, Dr. Tannian, and time to make a subsequent motion to strike and preclude, should Plaintiffs be unable to remedy the deficiencies noted above. *See Tarlton v. Cumberland County Correctional Facility, 192 F.R.D. 165, 169 (D.N.J. 2000)* (noting the self-executing nature of *Rule 37(c)(1)*, i.e., there is no need for a litigant to make a motion to invoke the possible sanctions of the Rule). [**27] Should Plaintiffs choose not to remedy the deficiencies of Dr. Tannian's report and proposed testimony, DuPont's Motion to Strike and Preclude will be granted for all of the reasons discussed. The Plaintiffs must make their election within three weeks of the date of this Order.

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion for Reconsideration (D.I. 137) will be granted to the extent that Plaintiffs have established that genuine issues of material fact exist as to whether Mr. Waddell acted with apparent authority and whether they reasonably and detrimentally relied upon the Letter such that DuPont should be equitable estopped from asserting a different

start date upon which to calculate Mr. Pell's pension benefits. n7 Additionally, Plaintiffs will be permitted, should they so choose, to supplement Dr. Tannian's expert report and will bear the reasonable expenses and costs associated with DuPont's preparation to depose Dr. Tannian, the deposition itself, and any renewed motion with respect to *Rule 26(a)(2)(B)*.

n7 I reach the decision to grant Plaintiffs' Motion for Reconsideration (D.I. 137) independent of any consideration of whether Plaintiffs may appropriately rely upon Ms. Uhde's deposition testimony, which was not presented in Plaintiffs' Answering Brief in Opposition to DuPont's Motion for Summary Judgment (D.I. 125).

[**28]

## ORDER

For the reasons set forth in the Memorandum Opinion issued in this matter today, IT IS HEREBY ORDERED that Plaintiffs' Motion for Reconsideration (D.I. 137) is GRANTED;

IT IS FURTHER ORDERED that Plaintiffs will notify the court and opposing counsel within 15 days of this Order whether they wish to attempt to remedy the deficiencies in Dr. Tannian's report in accordance with today's Opinion; and

IT IS FURTHER ORDERED that counsel for all parties shall within that same time frame submit a revised, joint scheduling order and shall call chambers to arrange for a *Rule 16* teleconference.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

October 4, 2005
Wilmington, Delaware

# Tab 6

LEXSEE 2004 U.S. DIST. LEXIS 15664

### CHARLES STANZIALE, Plaintiff, v. MORRIS NACHTOMI, et al., Defendants.

### Civil Action No. 01-403 KAJ

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

### *2004 U.S. Dist. LEXIS 15664*

### August 6, 2004, Decided

**PRIOR HISTORY:** *Stanziale v. Nachtomi, 2004 U.S. Dist. LEXIS 7375 (D. Del., Apr. 20, 2004)*

**DISPOSITION:** **[*1]** Plaintiff's motion for reargument was denied.

**COUNSEL:** For CHARLES A. STANZIALE, plaintiff: John Leonard Reed, Duane Morris LLP, Wilmington, DE.

For STEVEN L. GELBAND, STEPHEN A. OSBORN, HENRY P. BAER, LEO-ARTHUR KELMENSON, ELI J. SEGAL, TERRY V. HALLCOM, defendants: Bruce E. Jameson, Prickett, Jones & Elliott, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

### MEMORANDUM ORDER

### I. Introduction

Presently before me is a motion (Docket Item ["D.I."] 34; the "Motion") filed by plain-tiff Charles A. Stanziale, Jr., in his capacity as Chapter 7 Trustee of Tower Air, Inc. ("Plain-tiff"), seeking reargument of the Memorandum Opinion dated April 20, 2004 (D.I. 33) in which I granted the motion to dismiss filed by defendants Morris K. Nachtomi, Stephen L. Gelband, Stephen A. Osborn, Henry P. Baer, Leo-Arthur Kelmenso, Eli J. Segal, and Terry V. Hallcom (collectively the "Defendants"). I have jurisdiction over this case pursuant to *28 U.S.C. § 1334*. For the reasons that follow, the motion will be denied.

### II. Background

Because the factual and procedural history of this case is set forth in the Memorandum **[*2]** Opinion dated April 20, 2004 (D.I. 33), it will not be repeated here. Rather, the facts per-tinent to the motions currently before me are incorporated in the discussion below.

### III. Standard of Review

Motions for reconsideration or reargument should be granted only "sparingly." *Karr v. Castle, 768 F. Supp. 1087, 1090 (D. Del. 1991)*. In this district, motions for reconsidera-tion are granted only if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues pre-

sented by the parties, or has made an error not of reasoning, but of apprehension. *Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)* (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983))*. "Courts should be particularly vigilant that motions for reargument or reconsideration are not used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Id.*

Further, a district court should grant a motion for reconsideration which alters, amends, or offers relief from a judgment only when: (1) there **[*3]** has been an intervening change in the controlling law; (2) there is newly discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice. *See Max's Seafood Cafe by Lou Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)* (citation omitted).

### IV. Discussion

Plaintiff "moves for reargument and/or for alteration or amendment" of the April 20, 2004 Memorandum Opinion because the Plaintiff believes that I erroneously imposed the "heightened" pleading standard of *Fed. R. Civ. P. 23.1*, n1 which applies to shareholder derivative suits, in dismissing its claims. (D.I. 34 at 3-4.) Plaintiff claims that this is not a derivative lawsuit, but is "brought directly by the Debtor against former officers and directors for harm committed by them." (*Id.* at 7.)

---

n1 *Rule 23.1* specifies several pleading requirements "in a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may prop-

erly be asserted by it ..." Among those requirements is that the complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

**[*4]**

Plaintiff's argument that I "misapprehended the proper standard or committed legal error in applying the *Rule 23.1* standard" (*Id.*) is not well founded for several reasons. First, the April 20, 2004 Memorandum Opinion does not rely upon, apply, or even mention *Rule 23.1* in dismissing Plaintiff's Amended Complaint. Second, although I cited *In re General Motors Class E Sec. Litig., 694 F. Supp. 1119, 1132 (D. Del. 1988)* and *Brehm v. Eisner, 746 A.2d 244, 255 (Del. 2000)*, both of which involve shareholder derivative suits, Plaintiff wrongly believes that I applied the *Rule 23.1* pleading standard by citing those cases. I cited *In re General Motors* and *Brehm* for the proposition that a plaintiff "may prevent the application of the business judgment rule with well-pleaded facts establishing that the directors acted out of self-interest," and that "in order to overcome the presumption of the business judgment rule," in the absence of any allegations of self-dealing, "plaintiffs must allege with particularity facts which establish that the contested decision was not a product of valid business judgment." *In re General Motors, 694 F. Supp. at 1132.* **[*5]**

The requirement of well-pleaded facts to overcome the business judgment rule, which is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interest of the company, is well established in Delaware. n2 The requirement also applies

where, as here, a bankruptcy trustee brings suit against former directors and officers of the Debtor. In *In re RSL Com Primecall, Inc., 2003 Bankr. LEXIS 1635, Nos. 01-11457 et. al., 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003),* the trustee alleged that the defendants wrongfully concealed RSL's insolvency and wrongfully prolonged the corporate existence of RSL. In granting defendant's motion to dismiss several of the trustee's duty of care claims, n3 the court held that a "plaintiff bears the burden of alleging well pleaded facts to overcome the presumption [of the business judgment rule] and survive a motion to dismiss," and that "absent well pleaded allegations of specific acts of self-dealing or even bad faith, Plaintiffs cannot overcome the presumption afforded by the business judgment rule that the directors acted reasonably **[*6]** and in good faith." *2003 Bankr. LEXIS 1635, [WL] at *9-10.*

n2 *See Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156 (Del. 1995)* ("unless effectively pled factual allegations in the ... plaintiff's complaint successfully rebut the presumption of the business judgment rule, the Directors would be protected by the substantive operation of the business judgment rule"); *Crescent/Mach I Partners L.P., 846 A.2d 963, 984 (Del. Ch. 2000)* ("In order for plaintiffs' duty of care claims to survive a motion to dismiss, they must sufficiently plead facts which if true would take defendants' actions outside the protection afforded by the business judgment rule."); *Ash v. McCall, 2000 Del. Ch. LEXIS 144, No. Civ. A. 17132, 2000 WL 1370341 at *10 (Del. Ch. Sept. 15, 2000)* ("This Court has stated on several occasions that mere allegations that directors made a poor decision - absent some showing of self-dealing or suspect motivation -- does not state a cause of action ...").

n3 The court denied defendants' motion to dismiss the claims premised on the alleged issuance of $ 1.6 billion guarantee of the outstanding debt of the parent corporation by RSL USA, without any board approval, at a time both entities were allegedly insolvent. *2000 Del. Ch. LEXIS 144, [WL] at *11.* In permitting the trustee to proceed on claims for breach of the director's duty of care relating to the issuance of the guarantees, the court determined that the trustee's factual allegations "adequately alleged self-dealing." *2000 Del. Ch. LEXIS 144, [WL] at *11-12.*

**[*7]**

Plaintiff cites *Grimes v. Donald, 673 A.2d 1207 (Del. 1996)* and *Pereira v. Cogan, 2001 U.S. Dist. LEXIS 2461, 2001 WL 243537 (S.D.N.Y. Mar. 13, 2001)* for the notion that in breach of duty cases that are direct, the less stringent notice pleading standards of *Fed. R. Civ. P. 8* apply, rather than the heightened standards of *Rules 9or 23.1.* Plaintiff states that "the Court was required to assume the truthfulness of all well-pleaded allegations in the Amended Complaint and dismiss the [Plaintiff's] claims only if it determined with reasonable certainty that the [Plaintiff] could not have prevailed on any set of facts that could be inferred from the Amended complaint." (D.I. 34 at 8-9.) I do not disagree with Plaintiff with respect to what the pleading standards of *Rule 8* require.

However, what Plaintiff evidently fails to comprehend is that the business judgment rule applies to this case and means that Plaintiff was required to rebut the presumption of that rule with well-pleaded facts, not conclusory allegations. *See Grobow v. Perot, 539 A.2d 180, 188 n.6 (Del. 1988)* ("Even under the less stringent standard of a *[Rule* **[*8]** *12(b)(6)]* motion to dismiss, all facts of the pleadings and reasonable inferences to be drawn therefrom are ac-

cepted as true, but neither inferences nor conclusions of fact unsupported by allegations of specific facts upon which the inferences or conclusions rest are accepted as true"); *McMillan v. Intercargo Corp., 768 A.2d 492, (Del. Ch. 2000)* (granting motion dismissing claims for breach of fiduciary duties because "as on a *Rule 12(b)(6)* motion ... a court ... will not rely upon conclusory allegations of wrongdoing or bad motive unsupported by pled facts"); *Weinberger v. UOP, Inc., 409 A.2d 1262, 1264 (Del. Ch. 1979); Cohen v. Mayor of Wilmington, 34 Del. Ch. 39, 99 A.2d 393, 395 (Del. Ch. 1953).*

Plaintiff's conclusory allegations that the Defendants breached their fiduciary duties of care, loyalty, and good faith did not rebut the presumption of the business judgment rule, and that is the holding of the April 20, 2004 Memorandum Opinion. (D.I. 33 at 8, 10, 15, 16, 17.) Because I have neither misapprehended nor committed legal error in granting the Defendants' motion to dismiss, and because Plaintiff has not alleged any new, well-pleaded **[*9]** facts that were not available at the time Defendants' motion to dismiss was granted, Plaintiff's Motion must be denied.

Plaintiff also believes that I "misapprehended and/or erred as a matter of law" in interpreting Delaware case law governing claims with respect to a board of directors' duty to oversee the corporation's affairs. (D.I. 34 at 4.) Specifically, Plaintiff states that my construction of *Caremark Int'l, Inc., Deriv. Litig, 698 A.2d 959 (Del. Ch. 1996))* "is premised on a misapprehension of the law." (D.I. 34 at 14.) In the April 20, 2004 Memorandum Opinion, I held that *Caremark* was inapplicable to Plaintiff's claim that the Defendants were liable for their failure to monitor the conditions or activities of the corporation because Plaintiff did not allege that the Defendants failed to comply with the law. (D.I. 33 at 13.) In *Caremark,* Chancellor Allen stated:

a director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses **[*10]** caused by noncompliance with applicable legal standards.

*698 A.2d at 970.* Even if Chancellor Allen intended "applicable legal standards" to include "the legal standards governing the fiduciary duties owed by directors," n4 as Plaintiff alleges (D.I. 34 at 14-15), and not just compliance with criminal and regulatory law (which defendant Caremark violated, resulting in $ 250 million in costs and liability being imposed on the corporation), this case is not one of the "circumstances" where the directors will be liable.

n4 Specifically, the duty of care, which, according to Plaintiff, includes a duty to monitor. (See D.I. 34 at 15.)

In *Caremark,* Chancellor Allen said:

Generally, where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation ... only a sustained or systematic failure of the board to exercise oversight ... will establish the lack of good faith that is a necessary condition to liability. **[*11]** Such a test of liability -- lack of good faith as evidence by sustained or systematic failure of a director

to exercise reasonable oversight --
is quite high.

*698 A.2d at 971*. In this case, as in *Caremark*, there apparently "is no evidence that the director defendants were guilty of a sustained failure to exercise their oversight function." *Id. (See* D.I. 33 at 13-15.) More to the point, though, there are no facts alleged to support "the conclusion that the defendants either lacked good faith in the exercise of their monitoring responsibilities or conscientiously permitted a known violation of law by the corporation to occur." *698 A. 2d at 972*; *see also Guttman v. Huang, 823 A.2d 492, 506-507 (Del. Ch. 2003)* (to proceed on *Caremark* claim, plaintiff must plead a conscious dereliction of duty; plaintiff's "conclusory complaint is empty of the kind of fact pleading that is critical to a *Caremark* claim ..."). Therefore, Plaintiff's Motion must be denied.

**V. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for reargument (D.I. 34) is denied.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

August 6, 2004
Wilmington, **[*12]** Delaware